# Exhibit 14

**Civil Action No. 25-0955 (CKK)**

BRENNAN
CENTER
FOR JUSTICE
TWENTY
YEARS

ANALYSIS: THE EFFECTS OF REQUIRING DOCUMENTARY PROOF
OF CITIZENSHIP TO REGISTER TO VOTE

*Ian Vandewalker*

BRENNAN CENTER FOR JUSTICE

This document amasses the available evidence on the effects that documentary proof of citizenship laws have on citizens' ability to register to vote, including a new Brennan Center analysis of data from Kansas reported here for the first time. To date, only two states have implemented documentary requirements: Arizona and Kansas. (Although Alabama and Georgia passed similar laws, they have never been put into practice.). Their experiences, buttressed by national surveys and other evidence, show that these requirements can have a significant and negative impact on Americans' access to voting. In sum, the evidence shows:

• In Kansas, tens of thousands of attempted registrations have already been blocked — between eight and fourteen percent of new registrants — in the first years of the requirement. Almost all of these registrants were eligible citizens.

• Tens of thousands were prevented from registering in Arizona, as well, including an estimated 17,000 citizens in Maricopa County alone.

• Surveys show that millions of American citizens — between five and seven percent — don't have the most common types of document used to prove citizenship: a passport or birth certificate.

• A look at the concrete reality of obtaining citizenship documents shows how hard it can be for some. Low-income citizens may be completely prevented from complying — and therefore voting — by the costs and steps involved.

## The Kansas Experience

States with laws demanding documentary proof of citizenship to register offer a kind of natural experiment to test the policy's real-world effects. Several studies have examined Kansas since it implemented its law in 2013. The effects have been stark: All the studies agree that tens of thousands of registrations have been blocked at least temporarily, and the portion of new registrants kept off the rolls is in the range of eight to fourteen percent.

These analyses likely underestimate the effects of a documentary proof of citizenship requirement. That's because the Kansas rule has been weakened by the courts, which have required the state to accept applications without documentary proof of citizenship if submitted through the Department of Motor Vehicles or using the federal registration form. In addition, Kansas has completed some applications submitted without documentary proof of citizenship by checking state databases for evidence of citizenship, such as birth certificate records.

Even so, it's clear that, for tens of thousands of Kansans, the documentary requirement was a major obstacle to voting. Although most of the blocked registrations were eventually made effective, the delay kept voters from participating in at least one election in many instances.

The overwhelming evidence is that almost all of the blocked registration applications were submitted by eligible citizens. In lawsuits challenging the requirement, Kansas has presented evidence of less than 30 noncitizens registering to vote or being blocked by the law. At one point, a Kansas official claimed that 80 noncitizens have attempted to register since 2013, but that number is contested by parties to the suit.

*Expert: 14 percent of all new registrants between 2013 and 2015 blocked*

Nationally recognized voting expert Michael McDonald, Ph.D., examined attempted registrations in Kansas from 2013 to 2015 in connection with a lawsuit challenging the documentary proof requirement for certain voters. He found that more than 14 percent of new registrants — 35,000 people — were blocked by the documentary requirement. This group was disproportionately young and unaffiliated with a political party. By the end of 2015, about 8,900 of the blocked applicants were able to register (about one-quarter of the total), but the rest remained unable to vote due to the proof of citizenship rule. McDonald also concluded that the "practice of requiring documentary proof of citizenship has both an immediate and a long-term harm on voter

participation," since obstacles to voting may have long-lasting power to discourage potential voters.

*Federal court: 8 percent of motor voter registrants from 2013 to 2016 blocked*

A federal district court that heard a challenge to the Kansas law noted that "the sheer number" of people blocked "evidences the difficulty of complying with the law as it is currently enforced." The court found that more than 18,000 people who tried to register at the state's motor vehicle offices were prevented from registering between 2013 and 2016 "as a direct result" of the state's documentary proof of citizenship requirement. That amounted to eight percent of the people who tried to register to vote in the three years after the law was implemented. This total is smaller than McDonald's analysis because the court examined only "motor voters"— those who register to vote while applying for or renewing a driver's license.

*Brennan Center: 12 percent of new registrants in 2016 blocked*

The Brennan Center conducted an analysis using a similar methodology as McDonald's and reached a similar result: 12 percent of the Kansans who attempted to register in 2016 were blocked by the law, at least temporarily. That amounted to 28,000 blocked registrations. Most of these voters managed to register by the beginning of 2017, but the available data don't reveal how many were still blocked on Election Day in November. The full analysis of how we reached these results is attached as an appendix to this document.

The Brennan Center analysis does indicate that many people were prevented from voting in the primary elections in Kansas in August of 2016. Data collected just eight days after the primary elections shows that more than 20,000 attempted registrations were blocked at that time. These people had all attempted to register at some point between the 2013 implementation of the citizenship document requirement and the 2016 registration deadline for the August primaries. Since it is improbable that so many people filled out registration forms in eight days, it is likely that the great majority of these registrants were not able to vote in the primary elections.

*Other analyses: tens of thousands of registrants between 2013 and 2014 blocked*

Older analyses by Kansas news outlets also lend support to these recent studies, showing that tens of thousands of attempted registrations were caught up in the law's enforcement. The League of Women Voters of Kansas found in August of 2015 that more than 30,000 applications were held up because of the documentary requirement.

Large tallies from immediately before the elections in 2014 offer evidence that many Kansans were unable to vote because of the documentary proof law. News reports found that between 21,000 and 22,000 people who had attempted to register were still blocked from voting by the documentary requirement just days before the election that November. Similarly, in the days before the primary elections in July of 2014, almost 24,000 people were blocked because they had not shown citizenship documents. The number of people prevented from registering has varied over time because of new attempted registrations, blocked registrants being allowed to register once the state establishes their citizenship, and the state's practice of purging applications from its file if citizenship is not established within 90 days. Whatever the exact number, these press reports buttress the other studies' conclusions that tens of thousands of people were blocked from registering by the documentary requirement in Kansas.

A 2017 report from the Kansas Advisory Committee to the U.S. Commission on Civil Rights examined the difficulty of compliance with the Kansas law and its potential to prevent people from voting. The committee conducted a study of the impact of voting requirements implemented in Kansas in 2013, including the documentary proof of citizenship requirement as well as a requirement to show photo ID to vote. The committee's report found that Kansans were "struggling to comply" and that "as many as two percent of registered voters may not have their votes counted."

BRENNAN CENTER FOR JUSTICE

## The Arizona Experience

Arizona implemented a proof-of-citizenship-to-register law in 2005, offering an additional chance to measure the impact. The evidence shows that Arizona's law acts as a significant obstacle to registration, as measured by the tens of thousands whose attempts to register have been rejected.

According to press reports immediately before the November election in 2005, more than 10,000 people in Maricopa County alone were blocked. The county, home to Phoenix, is by far Arizona's most populous county. A Maricopa official said that "most probably are U.S. citizens whose married names differ from their birth certificates or who have lost documentation." An official in Pima County, which includes Tucson, appeared to agree, saying: "The biggest bloc of people who are impacted are the legitimate citizens." Across the state's three most populous counties, one in three applicants was rejected due to the documentary requirement in the first five months of the law. In the law's second year, 16 percent of attempted registrations in Maricopa County were rejected for lack of citizenship documents.

Two-and-a-half years after Arizona's law was implemented, it had blocked at least 31,550 applicants from registering, according to a federal district court. (The court also noted that it wasn't clear how many of those people lacked citizenship documents, or how many were eligible to vote.) Approximately 30 percent of these were able to register by September of 2007, meaning about 20,000 Arizonans may have been prevented from voting in the 2006 elections. By 2008, the number of rejected applications reportedly had reached 38,000.

A 2017 report by the newly-elected Maricopa County Recorder, Adrian Fontes, noted that, during 2016 and before, the recorder's office set aside voter registration forms that did not include proof of citizenship in boxes. Some voters were sent a form letter informing them that their application was rejected for lacking citizenship documents, while officials searched Motor Vehicle Department records for evidence of citizenship for other voters. The boxes of registration forms that had been set aside for lack of citizenship documents contained approximately 100,000 forms received in Maricopa County. Fontes's preliminary analysis indicates that around 17,000 of the rejected forms were filled out by citizens. As in Kansas, although the exact number is not known, the document requirement kept a large number of citizens from registering despite being eligible to vote.

## Millions of Americans Lack Documents to Prove Citizenship

The experience in Arizona and Kansas shows that documentary proof of citizenship laws create a significant obstacle to voter registration. There is no reason to believe those states are unique. In fact, national studies show that between five and seven percent of Americans don't have any documents to prove their citizenship. Birth certificates are frequently lost or destroyed. The most recent State Department statistics indicate that 59 percent of Americans don't have passports. For people without the required documents, a law like those in Arizona and Kansas can mean a complete loss of the ability to vote.

- A nationwide survey by the Brennan Center in November 2006 found that seven percent of the citizen voting age population, or 13 million people, did not possess documents that would prove their citizenship. The rate is twice as high among citizens earning less than $25,000 per year. Women who changed their name upon getting married are especially likely to lack the relevant documents: A third of voting-age women don't have proof of citizenship that reflects their current name.

- A study by the Center on Budget and Policy Priorities in September 2006 reached substantially the same conclusion: Almost six percent of adults born in the United States don't have access to a passport or birth certificate — around 11 million people. The study found that certain groups are especially likely to lack the documents: low-income citizens, the elderly, African Americans, and citizens from rural communities.

- There is also evidence that, even when the consequences are as dire as losing access to health care, many Americans are simply unable to comply with a requirement to show documentary proof of citizenship. Several studies of a requirement that Medicaid recipients show documentary proof of citizenship, first implemented in 2006, found that large numbers of citizens would lose coverage for lack of documents. Scholars at George Washington University reached a "conservative" estimate that more than five percent of adult Medicaid recipients would lose coverage due to the rule, but predicted that "ultimately the effects will be far greater." Several states reported large declines in Medicaid enrollment after the rule took effect, even as participation in other programs like food stamps rose, and administrators complained that it was American citizens who bore the brunt.

## Documents to Prove Citizenship Can Be Hard to Obtain

The millions of Americans without documentary proof of citizenship can face substantial obstacles to obtaining acceptable documents. These hurdles can be particularly difficult to overcome for low-income citizens.

Some elderly people, especially African Americans born in an era of official discrimination and Native Americans born on reservations, were not born in a hospital, and their births were never officially recorded. For these citizens, there is no birth certificate to obtain. Birth certificates can be required to obtain other forms of identification or citizenship proof, compounding the difficulty of obtaining proof of citizenship.

The financial cost of obtaining documents can be prohibitive for some. Official fees can be as high as $30 for birth certificates. A first-time application for a passport card costs $55, plus the cost of photos. A replacement naturalization certificate costs $555. Besides the fees, applicants for passports and birth certificates are typically required to show documents to prove citizenship or identity. Therefore, there may be additional costs for those without these documents.

Finally, it takes time to obtain citizenship documents. The U.S. Department of State estimates processing time of four to six weeks for passports. Many states say it takes several weeks to comply with birth certificate requests. In New York, a mailed request takes 10 to 12 weeks to fulfill; in Georgia, 8 to 10 weeks. In-person requests are typically processed much faster, but a trip to the relevant agency — potentially in another state for people who have moved since they were born — can be impossible for those who have difficulty securing time off from work or lack access to transportation. Requests can be expedited for an additional fee, an option that's useless for those who have trouble paying the base rate. For the many people who try to register to vote in the final weeks before an election, this delay can mean completely losing the chance to vote.

## Requiring Citizenship Documents Hinders Voter Registration Drives

Document requirements also stymie voter registration drives, which add hundreds of thousands of citizens to the voter rolls every election cycle. These efforts are conducted both by political campaigns and non-partisan groups like the League of Women Voters, and they can be especially effective in underserved communities. Prospective voters approached in public can usually register with the information that people typically have with them. But under a documentary requirement like the one in Kansas, they would have to be carrying their birth certificate or passport to complete the process — which is highly unlikely. And those who do carry citizenship documentation would still need to find a means of copying those documents to submit a complete registration.

Registration efforts in Kansas have suffered since the state implemented its law. The Kansas Advisory Committee to the U.S. Commission on Civil Rights found that community groups are "struggling to comply." One local League of Women Voters chapter

went from registering over 300 voters in a year to under 40 in the year after the Kansas law went into effect. In certain counties, the group has halted its registration operations altogether. Voter-registration groups now have to rely on potential voters to take the initiative to supply the necessary documents to election officials, an extra step that may discourage some voters.

\* \* \*

Everyone agrees election integrity is important, and the rules must be enforced. At the same time, protections against noncitizens registering to vote should be proportionate to the threat. It is extremely rare for noncitizens to attempt to register, and when they do it is typically because of "mistaken understandings of the eligibility requirements" rather than intent to commit fraud.

Requirements to show documentary proof of citizenship, on the other hand, have the potential to ensnare millions of eligible voters nationwide. As a federal judge weighing the Kansas law wrote, "even if instances of noncitizens voting cause indirect voter disenfranchisement by diluting the votes of citizens, such instances pale in comparison to the number of qualified citizens who have been disenfranchised by this law."

Policymakers should consider the available evidence on the effects of document requirements. The analyses collected here show that such rules create major obstacles to registering for a significant number of citizens. Demanding citizenship documents results in eligible voters' registrations being delayed, sometimes until after they've missed an election, and some citizens will never be able to afford to comply. Any potential added protections from a document requirement should be weighed carefully against the costs for eligible voters.

BRENNAN CENTER FOR JUSTICE

## Appendix: Brennan Center Methodology for Analyzing Kansas 2016 Data

The Brennan Center's analysis of the effects of the Kansas documentary proof of citizenship law in 2016 is based on voter registration data collected from the state. We obtained the voter file, or list of registered voters in the state, as of January of 2017.

Kansas places voter registration applicants whose registration is incomplete on a "suspense list." Reasons for being placed on suspense include failing to provide an address or signature, or failing to show documentary proof of citizenship. The people on the suspense list are not registered and cannot vote. If they provide the missing information, their registrations will be completed and they will be added to the voter file.

We obtained six suspense lists covering the period between February of 2016 and January of 2017. Each suspense list is a snapshot of all the applicants who were in suspense at the time the list was generated. Using the unique registrant identification number Kansas assigns to each individual, we were able to create a single cumulative suspense list covering the entire 11-month period we studied.

We filtered this list to remove records of people who were put on the suspense list for reasons other than failure to provide documentary proof of citizenship. We eliminated individuals who were less than 18 years old when they attempted to register. We eliminated records without an actual Kansas address, using geocoding. And we eliminated records marked as "UOCAVA." This is an acronym for the Uniformed and Overseas Civilian Absentee Voting Act, a federal law that provides for voting by members of the military and citizens living abroad. Kansas appears to list UOCAVA voters on the suspense list because they can't vote in person, only by mail.

The suspense list and voter file include the date the person first attempted to register. We focused on registrations attempted in 2016 to supplement Michael McDonald's study, which only included data through 2015.

The filtered cumulative suspense list showed that 28,332 people who had tried to register since the beginning of 2016 were in suspense due to the documentary proof of citizenship rule. The voter file showed that 206,824 people successfully registered to vote in 2016. That means 12 percent of the 235,156 people who attempted to register in 2016 were blocked by the document requirement.

Since one of the suspense lists we obtained was generated on August 10, 2016, and a primary election was held in Kansas on August 2, 2016, we used the August 10 list to estimate how many people were blocked from being able to vote in the primary. We filtered the list for people under 18, UOCAVA voters, and blank addresses, although we did not perform geocoding on this list. The filtered suspense list contained 21,244 people who had attempted to register between the beginning of 2013 and the deadline to register for the primary, July 12, 2016.