# Exhibit 17

**Civil Action No. 25-0955 (CKK)**

## Akron Law Review

Volume 57 | Issue 1    Article 2

2025

# Citizenship, Federalism, and Delayed Birth Registration in the United States

Betsy L. Fisher

Follow this and additional works at: https://ideaexchange.uakron.edu/akronlawreview

 Part of the Fourteenth Amendment Commons

Please take a moment to share how this work helps you through this survey. Your feedback will be important as we plan further development of our repository.

Recommended Citation
Fisher, Betsy L. (2025) "Citizenship, Federalism, and Delayed Birth Registration in the United States,"
*Akron Law Review*: Vol. 57: Iss. 1, Article 2.
Available at: https://ideaexchange.uakron.edu/akronlawreview/vol57/iss1/2

This Article is brought to you for free and open access by Akron Law Journals at
IdeaExchange@UAkron, the institutional repository of The University of Akron in Akron, Ohio, USA.
It has been accepted for inclusion in Akron Law Review by an authorized administrator of
IdeaExchange@UAkron. For more information, please contact mjon@uakron.edu,
uapress@uakron.edu.

# CITIZENSHIP, FEDERALISM, AND DELAYED BIRTH REGISTRATION IN THE UNITED STATES

*Betsy L. Fisher*[*]

I.      Introduction ...................................................................50
II.     Birth Registration............................................................52
        A.  Birth Registration and Human Rights.......................53
        B.  Birth Registration in the United States.....................55
            1.  The Federal System of Birth Registration..............55
            2.  Birth Registration and Exclusion .........................58
            3.  Birth Registration and Processes to Establish U.S. Citizenship.........................................................60
III.    Born Without Proof.........................................................65
        A.  Societal Exclusion for Unregistered Individuals.........65
        B.  Reasons why Births are Unregistered........................69
IV.     Birth Registration and Federalism....................................70
        A.  Variation in State Law on Delayed Birth Registration: Two Scenarios.........................................................71
        B.  Birth Registration and Federalism............................74
V.      Birth Registration, U.S. Citizenship, and Statelessness......77
VI.     Conclusion.....................................................................79

"That day I had started work as usual signing birth certificates which made regular citizens, recognized by the state, out of new-born infants."

Yusuf Idris, Death from Old Age[1]

[*]Betsy L. Fisher is a lecturer in International Refugee Law at the University of Michigan Law School and a *pro bono* advisor to United Stateless, a U.S.-based and stateless-led NGO that advocates for the rights of stateless people in the United States. B.A., Denison University; M.A., University of Michigan Rackham Graduate School in Middle Eastern and North African Studies, and J.D., University of Michigan Law School. Thanks to Don Herzog and Sam Erman for helpful comments on earlier drafts, to Shay Elbaum from the University of Michigan Law Library, and Kelly Grugan and Michael Pfennig for their research on state delayed birth registration law.

1. YUSUF IDRIS, THE ESSENTIAL YUSUF IDRIS: MASTERPIECES OF THE EGYPTIAN SHORT STORY 123 (Denys Johnson-Davies, ed. (2009)).

49

## I.  INTRODUCTION

Alecia Pennington was born to U.S. citizen parents in their Texas home.[2] The midwife who attended Alecia's birth agreed not to report the birth to the local registrar, and her parents never registered her birth.[3] Alecia was never enrolled in a school outside of the family's home, never went to the hospital or a doctor's or dentist's office, and she had neither bank nor immunization records.[4]

Under U.S. law, a child born in the United States is automatically, in almost all circumstances, a U.S. citizen, because citizens include everyone "born in the United States, and subject to the jurisdiction thereof."[5] Birth registration would not have constituted Alecia's claim to U.S. citizenship, and the Fourteenth Amendment does not limit citizenship to individuals with a birth certificate.[6] But without the birth certificate, neither the Texas nor the U.S. government recognized her as a citizen, and Alecia could not access the rights of her U.S. citizenship or establish her legal identity.[7] Without a contemporaneously registered birth, Alecia sought to register

---

2.  RadioLab: *The Girl Who Doesn't Exist*, WNYC Studios (Aug. 29, 2016), https://radiolab.org/episodes/invisible-girl [https://perma.cc/TMY2-YHNL](downloaded using Spotify).

3.  *Id.* (quoting Alecia to say, "my dad kind of adopted some of those ideas, that the government should not have a number assigned to us.").

4.  *Id.*

5.  Immigration and Nationality Act, 8 U.S.C. § 1401 (1994); *see also* United States v. Wong Kim Ark, 169 U.S. 649 (1898). The only exception to birthright citizenship for individuals born in the United States is children born in the United States to foreign diplomats; those children are not considered to be "subject to the jurisdiction" of the United States, and they receive lawful permanent residence rather than U.S. citizenship at birth. 8 C.F.R. § 101.3(a)(1) (1982). This exception did not apply to Alecia—her birth in Texas entitled her to U.S. citizenship. Birth to U.S. citizen parents also generally entitles a person to U.S. citizenship, but when born outside the United States, the birth registered with the country in which the child is born, and U.S. citizenship is verified by filing the Consular Report of Birth Abroad. 22 C.F.R. § 50.7 (2018).

6.  This Article generally refers to U.S. citizenship rather than U.S. nationality. The terms citizenship and nationality are often used interchangeably, but there are two distinctions. First, in international law, nationality refers to the legal bond between a person and a state that entitles a state to assert the person's rights in the international plane vis-à-vis other states. Citizenship refers to the legal bond between the person and the state that operates in the domestic sphere. Thus, nationality entitles a person to rights like diplomatic protection, while citizenship entitles a person like voting rights or access to social benefits. PAUL WEIS, NATIONALITY AND STATELESSNESS IN INTERNATIONAL LAW, 4–5 (1979). Second, in U.S. immigration and nationality law, individuals born in the United States and some of its territories are U.S. citizens. Individuals born in American Samoa are non-citizen nationals of the United States, a status which entitles them to travel to the United States without visas but not vote. Fitisemanu v. United States, 1 F.4th 862, 865 (10th Cir. 2021), *cert. denied*, 143 S. Ct. 362 (2022) (noting that "American Samoans are denied the right to vote, the right to run for elective federal or state office outside American Samoa, and the right to serve on federal and state juries. They are, however, entitled to work and travel freely in the United States and receive certain advantages in the naturalization process.").

7.  RadioLab, *supra* note 2.

her birth through her state's delayed registration procedures, which allow individuals to register after the mandatory reporting period.[8] For Alecia to access the rights of U.S. citizenship, she needed the state to accept the facts of birth, and for the federal government to agree that she was a U.S. citizen. Until then, without any government claiming her as its citizen, she was stateless.

Four Parts and a Conclusion follow this introduction. Part II provides background on birth registration, including the relationship between delayed birth registration and other processes that can be used to establish U.S. citizenship. Part III explores the experiences of individuals whose births were never registered and who spend a considerable period without access to the rights of U.S. citizens. It offers explanations for why births may go unregistered in the United States. This Part complicates what it means to be a U.S. citizen, pointing to a gap between *entitlement* to citizenship and *government recognition* of that entitlement. Individuals who are entitled to citizenship by the facts of their birth but whose births are not registered face a major disadvantage in being recognized as citizens and accessing the benefits of their U.S. citizenship.

Part IV demonstrates that federal law has limited governance of delayed birth registration and that state law varies widely in delayed birth registration policies and procedures. Alecia was finally able to register her birth after the Texas legislature amended its delayed birth registration process—responding directly to Alecia's compelling circumstances.[9] This manifests a previously unexplored aspect of immigration federalism[10] and citizenship federalism:[11] the impact of state law on

---

8.   *See infra* Part IV.

9.   RadioLab, *supra* note 2. It should be noted, though, that in some cases, federal agencies will require additional information to substantiate birth in the United States or challenge a delayed birth certificate, particularly for children born to immigrant and noncitizen parents. Angela R. Remus, *Caught Between Sovereigns: Federal Agencies, States, and Birthright Citizens*, 34 STAN. L. & POL'Y REV. 225, 227–28, 235 (2023).

10.   Hiroshi Motomura, *Federalism, International Human Rights, and Immigration Exceptionalism*, 70 U. COLO. L. REV. 1361, 1361 (1999) (defining immigration federalism as situations when "states and localities . . . mak[e] and implement[] law and policy relating to immigration and immigrants"); Cristina M. Rodríguez, *The Significance of the Local in Immigration Regulation*, 106 MICH. L. REV. 567, 569 (2008) (describing immigration federalism as "state and local efforts designed to control immigrant movement, define immigrant access to government, and regulate the practices of those with whom immigrants associate in the private sphere, namely employers and landlords."); Stella Burch Elias, *The New Immigration Federalism*, 74 OHIO ST. L. J. 703, 707 (2013) (defining immigration federalism as "the engagement by national, state, and local governmental actors in immigration regulation.").

11.   Emily Chertoff, *Citizenship Federalism*, 81 MD. L. REV. 503, 507 (2022) (defining citizenship federalism as "the practice of setting different boundaries for who is within the community than the federal government does" in areas like property rights and family law) (original emphasis removed).

whether a person is recognized as a U.S. citizen. State recognition is necessary but insufficient for a person to secure federal recognition of a claim to citizenship, because federal agencies and courts can revisit the facts of birth and deny a claim to U.S. citizenship recognized by a state government. As a result, delayed birth registration also presents a new model of federal-state cooperation: [12] dual-concurrence federalism, in which the state and federal governments must both accept the facts of birth for an individual to be recognized as a citizen and to gain the benefits of citizenship.

Finally, Part V reflects on the relationship between statelessness and citizenship in the United States. It argues that when a person is entitled to citizenship in the United States but is not recognized by the U.S. government or any other state as a citizen, international law offers a term for that person's citizenship status: stateless. [13] The definition of a stateless person is someone whom "no State considers to be its national under the operation of its law"[14]—a situation that includes when a person ought to be recognized as a national. Because most births in the United States are registered promptly, the experiences of individuals whose births are unregistered offer insight into the impact of the federal birth registration system on individuals' access to recognition of their entitlement to U.S. citizenship.

## II. BIRTH REGISTRATION

Birth registration is "the continuous, permanent and universal recording within the civil registry of the occurrence and characteristics of birth, in accordance with the national legal requirements."[15] Birth registration is key to establishing legal identity: "the basic characteristics of an individual's identity, for example, name, sex, and place and date of birth, conferred through registration and the issuance of a certificate by an

---

12. Bridget Fahey, *Coordinated Rulemaking and Cooperative Federalism's Administrative Law*, 132 YALE L.J. 1320, 1323 (2023) (noting the absence of theory for administrative law in cooperative federalism).

13. While this situation may sometimes be referred to as *de facto* statelessness, many scholars consider this term unhelpful, because *de facto* statelessness has no legal definition or impact, and in many instances are best considered to be, simply, stateless, under a correct application of the definition of statelessness, as explored further in Part VI. *See generally*, LAURA VAN WAAS, NATIONALITY MATTERS: STATELESSNESS UNDER INTERNATIONAL LAW 20-25 (2008).

14. Convention Relating to the Status of Stateless Persons art. 1, *opened for signature* Sept. 28, 1954, 360 U.N.T.S. 117 [Hereinafter, *Stateless Convention*] .

15. Off. of the U.N. High Comm'r for Hum. Rts., *Birth Registration and the Right of Everyone to Recognition Everywhere as a Person Before the Law*, ¶ 4, U.N. Doc. A/HRC/27/22 (June 17, 2014).

authorized civil registration authority following the occurrence of birth."[16] Thus, a person's birth registration records the facts of birth such as parentage and place of birth, establishes a person's legal identity, and demonstrates that the state recognizes the facts of birth.

Part II.A describes the role of birth registration as a widely recognized human right, and Part II.B provides background on birth registration in the United States. Part II.B.1 outlines the cooperative federal nature of birth registration in the United States, with each state operating a unique birth registration system, implemented by thousands of doctors, midwives, and other reporters supplying information on births. Part II.B.2 recognizes the dark history of birth registration as a tool of discrimination in the United States. Finally, Part II.B.3 explores birth registration's relationship to other legal processes to establish U.S. citizenship.

## A.   Birth Registration and Human Rights

Access to birth registration is a human right recognized in numerous widely ratified treaties, including the Convention on the Rights of the Child (CRC)'s article 7, which indicates that:

> The child shall be registered immediately after birth and shall have the right from birth to a name [and] the right to acquire a nationality . . . . State Parties shall ensure the implementation of these rights in accordance with their national law and their obligations under the relevant international instruments in this field, in particular where the child would otherwise be stateless.[17]

Article 8 mandates that states respect the rights of the child

> to preserve his or her identity, including nationality, name, and family relations as recognized by law without unlawful interference [and] provide appropriate assistance and protection [if a child is] illegally deprived of some or all of the elements of his or her identity . . .[18]

Article 24 of the International Covenant on Civil and Political Rights (ICCPR) requires governments to ensure that children "shall be registered immediately after birth and shall have a name."[19]

---

16. U.N. Secretary-General, *Introduction of the United Nations Legal Identity Agenda: A Holistic Approach to Civil Registration, Vital Statistics and Identity Management*, ¶ 4, E/CN.3/2020/15 (Dec. 18, 2019).

17. Convention on the Rights of the Child, *opened for signature* Nov. 20, 1989, 1577 U.N.T.S. 3.

18. *Id.* at art. 8.

19. International Covenant on Civil and Political Rights at art. 24(2), *opened for signature* Dec. 19, 1966, S. TREATY DOC. NO. 95–20 [hereinafter ICCPR].

In global efforts to end statelessness and improve child protection, international organizations such as the U.N. High Commissioner for Refugees (UNHCR)[20] and the U.N. Children's Fund (UNICEF)[21] advocate for universal birth registration.[22] Birth registration is essential to ensuring that the state will recognize a person's citizenship later in life. "Recording birth provides a record of an individual's life-a name, a family, a country, a sex; in short, recording birth provides an identity. The birth certificate (the receipt, so to speak, of this registration) is evidence of one's existence and identity-and citizenship."[23] Most people are entitled to citizenship at birth because of birth in territory or parentage, but in practice, without birth registration, a person may find themselves unable to prove the facts that entitle them to citizenship.[24] Where nationality law states that a person is a citizen at birth, but other legal provisions or practices mean that the state does not recognize the person as a citizen, a person is stateless.[25] As such, birth registration is key to safeguarding the right to a nationality, which is guaranteed in the Universal Declaration of Human Rights and the ICCPR.[26] The Convention on the Reduction of Statelessness requires that states provide

---

20. UNHCR, GLOB. ACTION PLAN TO END STATELESSNESS: 2014 – 2024, https://www.unhcr.org/ibelong/global-action-plan-2014-2024/ [https://perma.cc/XDL3-5A5G] (listing among the Global Action Plan's 10 initiatives, to ensure birth registration to prevent statelessness).

21. UNICEF, Birth Registration, https://www.unicef.org/protection/birth-registration [https://perma.cc/QYT5-NRJ8] (last accessed Mar. 26, 2023) (noting the benefits of birth registration, reasons that births go unregistered, and UNICEF's actions addressing birth registration). See, e.g., UNICEF, THE 'RIGHTS' START TO LIFE: A STATISTICAL ANALYSIS OF BIRTH REGISTRATION, available at https://books.google.ca/books?id=rbvnF0hTQnoC&printsec=frontcover#v=onepage&q&f=false [https://perma.cc/GE52-BWVQ] (last visited July 1, 2023) (noting that birth registration is essential to access many other rights).

22. Off. of the U.N. High Comm'r for Hum. Rts, *supra* note 16, at ¶ 4.

23. Annette R. Appell, *Certifying Identity*, 42 CAP. U. L. REV. 361, 368 (2014) (citation omitted).

24. Betsy L. Fisher, *Gender Discrimination and Statelessness in the Gulf Cooperation Council States*, 23 MICH. J. GENDER & L. 269, 285 (2016) ("When a child's birth is not documented, the child's nationality may not be recognized by her state of nationality for lack of proof that she is entitled to that nationality. If she does not have another nationality, she will likely be left stateless.").

25. A stateless person is someone "who is not considered as a national by any State under the operation of its law." Stateless Convention, *supra* note 15, art. 1(1); *see* Betsy L. Fisher, *'The Operation of Law' in Statelessness Determinations under the 1954 Statelessness Convention*, 33 WIS. INT'L L.J. 254, 260 (2015) (arguing that the 1954 Stateless Convention's definition of statelessness requires consideration of how nationality laws are implemented).

26. G.A. Res. 217A (III), Universal Declaration of Human Rights, art. 15 (Dec. 10, 1948); ICCPR *supra* note 20, at art. 24(3) (guaranteeing "the right to acquire a nationality.").

nationality where children would otherwise be stateless[27] or where a child's parentage is unknown.[28]

Birth registration also provides documentary proof of a person's date of birth, and thus of a child's legal status as a minor that entitles them to child-specific protections.[29] The ICCPR requires governments to provide children "such measures of protection as are required by his status as a minor."[30] Birth registration is also a tool "to track trends in birth rates, provide denominators to calculate early age mortality rates, serve as the fundamental input into population projections, and inform government planning for health (e.g. childhood vaccinations), education and social services."[31]

## B.  Birth Registration in the United States

### 1.  The Federal System of Birth Registration

The U.S. Constitution's Fourteenth Amendment does not require birth certificates for those born in the United States to prove a claim of U.S. citizenship. Indeed, the Fourteenth Amendment recognized formerly enslaved people as U.S. citizens due to their birth in the United States, but the majority of those who benefitted would not have had records of their births, due to factors including the institution of slavery and infrequency of birth registration at that time.[32] Birth registration was not commonplace in the United States until the early twentieth century.[33]

In the United States, state law governs birth registration processes.[34] More than 6,000 local registrars "in 57 vital event registration areas—the

---

27. Convention on the Reduction of Statelessness, art. 1(4), *opened for signature* Aug. 30, 1961, 989 U.N.T.S. 175.

28. *Id.* at art. 2.

29. Appell, *supra* note 24, at 32; Jonathan Todres, *Birth Registration: An Essential First Step toward Ensuring the Rights of All Children*, 10 HUM. RTS. BRIEF 32, 33 (2003).

30. ICCPR, *supra* note 20, at art. 24(1).

31. Adair T. Lopez, *How Reliable are Self-reported Estimates of Birth Registration Completeness? Comparison with Vital Statistics Systems*, 16 PLOS ONE: e0252140 (2021), *available at* https://doi.org/10.1371/journal.pone.0252140 [https://perma.cc/5TT5-2HP6].

32. *See generally* Brian A. Robinson & Claire Heckel, *People Not Property: Slave Deeds of North Carolina*, 58 THE S. Q. No. 2, 84 (2022) (noting the difficulties tracking genealogy of enslaved individuals prior to the 1870 census and exploring legal documents including deeds of sale as sources of information about formerly enslaved individuals in North Carolina).

33. Remus, *supra* note 9, at 230.

34. Stephen Schwartz, *The U.S. Vital Statistics System: The Role of State and Local Health Departments, in* VITAL STATISTICS: SUMMARY OF A WORKSHOP 77, 78 (National Research Council (US) Committee on National Statistics 2009) (observing that "[i]n the United States, all vital events are local. What we see as national vital statistics start out as births, deaths, terminations of pregnancy, marriages, and divorces that are registered locally.") [hereinafter NRC, "Vital Statistics"].

Akron Law Review, Vol. 57 [2025], Iss. 1, Art. 2

50 states, the District of Columbia, New York City (separate from the rest of New York state), and four U.S. commonwealths and territories—collect vital event data from local officials."[35] Further, "data providers [who report births to these 57 jurisdictions] do not work for vital statistics. They are the physicians, nurse midwives . . . hospital and clinic directors, clerks, and temporary staff who complete the worksheets and certificates that eventually become data."[36] These data providers and registrars are responsible to document vital events like births and deaths and to compile data relevant to public health.[37] In most instances, a birth occurs in a medical facility or is attended by a physician or medical professional, and the institution or medical professional submits a report of the birth with relevant data to the relevant state authority, which then issues a birth certificate.[38] Where a birth is not registered within a period after birth (often one year), the birth must be registered through a state-administered delayed birth registration process, which requires documentation of the facts of birth.[39]

While local authorities are responsible for receiving reports of births and issuing birth certificates, federal authorities play a coordinating role, including compiling national statistics and suggesting models for state legislation and forms.[40] Because birth registration is essential in proving a person's entitlement to citizenship, the U.S. government has come to view birth registration as a priority for national security and fraud prevention.[41] Still, federal governance of birth registration processes is minimal. Federal legislation in 2004 required states to certify that their birth certificate forms and processes met basic minimum requirements, including certifying birth certificates and using safety features to prevent fraud and require proof and verification of identity when issuing birth certificates.[42] Each of the 57 registering jurisdictions also participates in the National Association for Public Health Statistics and Information

---

35. *Id.*, *Introduction*, at 1; *Id.*, *The Federal-State Cooperative Relationship*, at 36 (noting that more than 6,000 registrars report vital events).

36. *Id.* at 81.

37. *Id.*, *Methodological Issues and the 2003 Revision of Standard Instrument*, at 50 ("The revised 2003 birth certificate now includes some 60 data items, providing extensive information on pregnancy, labor and delivery, infant health, and maternal health factors").

38. U.S. DEP'T OF HEALTH AND HUMAN SERVICES, HOSPITALS' AND PHYSICIANS' HANDBOOK ON BIRTH REGISTRATION AND FETAL DEATH REPORTING 5-6 (1987).

39. Betsy L. Fisher, Delayed Birth Registration Laws by State (on file with author).

40. NRC, "Vital Statistics", *supra* note 35, *Introduction*, at 1.

41. *Id.*, *The Federal-State Cooperative Relationship*, at 37 ("vital records offices are also front lines in *national security* efforts . . . birth certificates have become particularly sensitive because they are breeder documents that are the basis for many other important documents and legal statuses.").

42. Intelligence Reform and Terrorism Protection Act § 7211(b)(3) (codified as a note to 5 U.S.C. § 301) (2004).

Fisher: Citizenship, Federalism, and Delayed Birth Registration

Systems (NAPHSIS).[43] Despite the coordinating role of the federal government, a revised model birth certificate form issued in 2003 was not adopted nationwide until 2016, after which a few states continued to omit a handful of data fields from the 2003 revised form.[44] Requirements to register a birth certificate, and the process by which registration is done, vary widely among U.S. states and territories.

Despite the robust literature on civil registration in many developing countries,[45] recent literature is sparse about the prevalence and adequacy of birth registration in the United States. Academic studies from decades ago evaluated the completeness of birth registration in the United States but have not been repeated in nearly 75 years.[46] Studies on the prevalence of at-home births draw their data from birth registration records, meaning that they do not account for births that go unregistered.[47] The Committee on the Rights of the Child frequently examines state parties' compliance with birth registration-related mandates in its periodic reviews.[48] However, the United States occupies the unique status of being the only United Nations member state that has not ratified the Convention on the Rights of the Child,[49] and is thus not subject to review of the adequacy of its birth registration systems.[50] Without nationwide studies or mandatory

---

43. NRC, "Vital Statistics", *supra* note 35, "The U.S. Vital Statistics System: The Role of State and Local Health Departments," at 78.

44. Marian F. MacDorman & E. Declercq, *Trends and State Variations in Out-of-Hospital Births in the United States, 2004–2017*, 46 BIRTH 279, 279 (2019) ("The slow adoption by states of the 2003 revised birth certificate has meant that a number of key variables . . . were not available nationally until 2016.").

45. *See, e.g.*, Amiya Bhatia, Nancy Krieger, Jason Becfield, Aluisio Barros, and Cesar Victora, *Are Inequities Decreasing? Birth Registration for Children under Five in Low-Income and Middle-Income Countries, 1999–2016*, BMJ GLOBAL HEALTH 4:e00192 (2019) https://gh.bmj.com/content/bmjgh/4/6/e001926.full.pdf [https://perma.cc/MU2J-5WDG]; Andrea Wendt, Franciele Hellwig, Ghada E. Saad, Cheikh Fate, Ties Boerma, Aluisio J.D. Barros, and Cesar G. Victora, *Birth Registration Coverage According to the Sex of the Head of Household: An Analysis of National Surveys from 93 Low- and Middle-income Countries*, 22 BMC PUBLIC HEALTH, 1942 (2022), https://bmcpublichealth.biomedcentral.com/articles/10.1186/s12889-022-14325-z [https://perma.cc/89YQ-NZVG].

46. Sam Shapiro & Joseph Schachter, *Birth Registration Completeness United States, 1950*, 67 PUBLIC HEALTH REPS. (1896-1970) 513 51*Cooperative Federalism and SIJS*, 61 B.C. L. REV. 2869A3 (1952), https://doi.org/10.2307/4588130; P. K. Whelpton, *The Completeness of Birth Registration in the United States*, 29 J. AM. STAT. ASS'N 125, 125 (1934).

47. *See* MacDorman & Declercq, *supra* note 45, at 280 (noting that data from out-of-hospital births is drawn from birth certificates).

48. COMM. ON THE RTS. OF THE CHILD, REPORTING GUIDELINES, https://www.ohchr.org/en/treaty-bodies/crc/reporting-guidelines [https://perma.cc/HEA8-NQ7X] (last visited July 4, 2023).

49. U.N. TREATY BODY DATABASE, RATIFICATION STATUS FOR CRC - CONVENTION ON THE RIGHTS OF THE CHILD, https://tbinternet.ohchr.org/layouts/15/TreatyBodyExternal/Treaty.aspx?Treaty=CRC&Lang=en/ [https://perma.cc/69HM-G5SZ] (last visited Apr. 2, 2023).

50. The United States likewise has not ratified the Convention on the Reduction of Statelessness. *See* U.N. TREATY COLLECTION, CONVENTION ON THE REDUCTION OF STATELESSNESS,

treaty reporting, there is very little evidence of how many births in the United States go unregistered.

One source of data is anecdotal reports of individuals like Alecia who lack documentation[51] of their birth in the United States.[52] In 2006, the Brennan Center for Justice found that as many as seven percent of U.S. citizens lacked evidence of their U.S. citizenship, representing millions of individuals, disproportionately affecting low-income citizens and women (who were less likely to have proof of citizenship because they were more likely to change their names when getting married).[53] The same study found that up to 11% of U.S. citizens lacked "current, unexpired government-issued identification with a photograph," disproportionately affecting seniors, African-American citizens, and citizens with low incomes.[54] More recently, a Colorado official reported that about 100 people seek to record their births in Colorado through delayed processes every year.[55] These sources demonstrate that birth registration in the United States is not truly universal.

### 2. Birth Registration and Exclusion

Birth registration is not only a tool for good. As a method of inscribing race, sex, and proving citizenship, birth registration has also

---

https://treaties.un.org/Pages/ViewDetails.aspx?src=IND&mtdsg_no=V-4&chapter=5&clang=_en [https://perma.cc/FBR6-PXX8] (last visited Apr. 29, 2023).

51.  *See* Brett Barrouquere, *Sisters Sue to Show They Exist, Get Social Security Numbers*, SEATTLE TIMES, (Aug. 4, 2011), https://www.seattletimes.com/life/lifestyle/sisters-sue-to-show-they-exist-get-social-security-numbers/ [https://perma.cc/UZ6W-8LKS] (outlining a similar situation of two sisters born in rural Kentucky whose births were not registered); Max Diekneite & Laura Garrison, *Born without a Birth Certificate, a Lifelong Struggle for Some in the South*, WTOC, (Apr. 21, 2021), https://www.wtoc.com/2021/04/21/born-without-birth-certificate-lifelong-struggle-some-south/ [https://perma.cc/5LCP-RXV9]; *The Boy Who Doesn't Exist*, DAILY MAIL, June 24, 2013, https://www.dailymail.co.uk/news/article-2346977/Noah-Boyce-raised-grid-birthday-19.html [https://perma.cc/87X8-DTYW]; *Born in the USA; Without a Shred of Proof*, THE GAZETTE, (Sept. 30, 2011), https://gazette.com/news/born-in-the-usa-without-a-shred-of-proof/article_a9a684fd-d024-531d-9b17-2282578cda4a.html [https://perma.cc/8RYK-DMWG].

52.  Children of Mexican and Mexican-American families may also face legal challenges to their U.S. citizenship, often because, for reasons of convenience, their births were registered in both the United States and Mexico. *See, e.g.*, Acosta v. United States, No. C14-420 RSM, 2015 WL 1965318, at *5 (W.D. Wash. Apr. 29, 2015) (noting that the child's birth was registered in Mexico to access medical care in Mexico); Villafranca v. Blinken, No. 1:19-CV-173, 2022 WL 1210762, at *3 (S.D. Tex. Apr. 25, 2022) (similar).

53.  BRENNAN CENTER FOR JUST., CITIZENS WITH PROOF: A SURVEY OF AMERICANS' POSSESSION OF DOCUMENTARY PROOF OF CITIZENSHIP AND PHOTO IDENTIFICATION, at 2 (2006).

54.  *Id.* at 3.

55.  Barbara Cotter, *Born in the USA; Without a Shred of Proof*, THE GAZETTE, (Sept. 30, 2011), https://gazette.com/news/born-in-the-usa-without-a-shred-of-proof/article_a9a684fd-d024-531d-9b17-2282578cda4a.html [https://perma.cc/8D5W-LHXV].

been used for discrimination and exclusion on the basis of race, parents' immigration status, and gender.[56] Birth registration assigns individuals with a race at birth and was used in the Jim Crow era to preserve white-only spaces through legally mandated segregation and to enforce bans on interracial marriage.[57] More recently, U.S. border officials have deported noncitizen mothers with U.S. citizen newborns before the children were issued U.S. birth certificates, likely depriving those children of the ability to prove their U.S. citizenship later in life.[58] The state of Texas denied birth certificates to children of undocumented individuals for a period before settling a lawsuit that challenged the practice.[59]

Birth registration records the newborn's sex assigned at birth; in some states, laws continue to limit the ability of transgender people to amend their birth certificates to match their identity.[60] But birth certificates are not inherently permanent: every state's legal provisions reissue birth certificates upon the adoption of a child, reflecting the adoptive parents as the birth parents.[61] State laws vary widely, though, on

---

56. Appell, *supra* note 23, at 367 ("the birth certificate performs stealthy work as a creator and proponent of racial and heterosexual norms through its reifying regulation of sexual identity, gender, race, family, and citizenship.").

57. Susan J. Pearson, *Birth Registration and the Administration of White Supremacy*, 5 MOD. AM. HIST. 117 (2022); Garrett Epps, *How Birth Certificates Are Being Weaponized Against Trans People*, THE ATLANTIC, (June 8, 2018), https://www.theatlantic.com/ideas/archive/2018/06/how-birth-certificates-are-being-weaponized-once-again/562361/ [https://perma.cc/W2CT-GFYT] ("Under the law, there were two and only two answers: "white" or "colored." The notation was important: It would determine whom the individual could marry, where he or she could seek medical care, and even where he or she could be buried."). By the same token, notations of race are critical to establishing a claim to Hawaiian Home Land homestead claims, which provide land to individuals who can prove at least a 50% native Hawaiian blood quantum. DEP'T OF HAWAIIAN HOME LANDS, APPLYING FOR HAWAIIAN HOME LANDS, https://dhhl.hawaii.gov/applications/applying-for-hawaiian-home-lands/ [https://perma.cc/AZ77-V9LM] (last visited on Apr. 29, 2023).

58. Tanvi Misra, *Revealed: US Citizen Newborns Sent to Mexico under Trump-Era Border Ban*, THE GUARDIAN, (Feb. 5, 2021), https://www.theguardian.com/us-news/2021/feb/05/us-citizen-newborns-mexico-migrant-women-border-ban [https://perma.cc/37EJ-GGSC].

59. Alexa Ura, *Texas Agrees to Resolve Birth Certificate Case With Undocumented Families*, TX. TRIB., (July 25, 2016), https://www.texastribune.org/2016/07/25/texas-agrees-to-resolve-birth-certificate-case/ [https://perma.cc/3LEV-F7GE] (noting that the child's birth certificates); Manny Fernandez, *"Immigrants Fight Texas' Birth Certificate Rules"*, N.Y. TIMES, (Sept. 17, 2015), https://www.nytimes.com/2015/09/18/us/illegal-immigrant-birth-certificates.html [https://perma.cc/6SKU-9PYY] (noting that hundreds of undocumented families in Texas were unable to register their child's births); Elisa Carino, *Made in America: How Birth Certificate Applications Infringe on the Right to Citizenship*, 43 N.Y.U. L. REV. & SOC. CHANGE 225 (2019); Anna Laura Lichtenberger, *Undocumented Citizens of the United States: The Repercussions of Denying Birth Certificates*, 49 ST. MARY'S L.J. 435, 438-39 (2018).

60. Epps, *supra* note 58.

61. Gregory D. Luce, *FAQ: Original Birth Certificates*, ADOPTEE RIGHTS LAW CENTER PLLC (last visited June 11, 2023), https://adopteerightslaw.com/faq-obc [https://perma.cc/7DJ4-59Z5].

the adoptees' ability, later in life, to access the original birth certificate.[62] Adoptees' rights advocates argue that preventing an adoptee from accessing their original birth certificate and thus identifying their birth parents is harmful.[63]

This Article will not comprehensively explore these connections between racial and other forms of discrimination and birth certificates. Rather, it demonstrates the impact that individuals experience when they are excluded from birth registration. Still, it is vital to note that, because of discrimination, the impacts of non-registration disproportionately affect racially minoritized and immigrant, rural, and low-income communities.

### 3. Birth Registration and Processes to Establish U.S. Citizenship

Documents such as birth certificates and passports do not constitute U.S. citizenship. For individuals born in the United States and under the jurisdiction of the U.S. government, their birth in territory establishes their citizenship, without further requirements. But in practice, access to documentation is critical to access the benefits of citizenship. Efforts to undermine claims to citizenship often target individuals' access to passports and birth certificates. The State Department revoked passports from Yemeni-Americans while they were outside of the United States,[64] a practice which many argue violates the privileges and immunities guaranteed to U.S. citizens by the Fourteenth Amendment.[65] Further literature describes the challenges that Mexican-Americans often face to their claims of U.S. citizenship, even when births are registered in the United States.[66]

Federal agencies and state officials both conduct individualized assessments of the individual's entitlement to U.S. citizenship. Federal agencies assess a person's citizenship in passport applications[67] and in

---

62. *Id.*

63. ADOPTEES UNITED, POSITION STATEMENTS, https://adopteesunited.org/positions/ [https://perma.cc/6Z67-XPRF] (last visited June 11, 2023).

64. Ramzi Kassem, *Passport Revocation as Proxy Denaturalization: Examining the Yemen Cases*, 82 FORDHAM L. REV. 2099, 2110 (2014).

65. *Id.*; Patrick Weil, *Citizenship, Passports, and the Legal Identity of Americans: Edward Snowden and Others Have a Case in the Courts*, 123 YALE L. J. F. 565, 567 (2014).

66. Elisa Carino, *supra* note 60; Lichtenberger, *supra* note 60, at 453; Gavriela M. Bogin-Farber, *Birth Certificate Challenges for Children of Immigrants: Unintended Consequences of Anti-Immigrant Restrictionism*, 16 HARV. LATINO L. REV. 169, 175–77 (2013).

67. 22 U.S.C. § 211(a) (1994) (authorizing the Secretary of State to issue passports). The registrant has the burden of proving that he or she is entitled to U.S. citizenship. 22 C.F.R. § 51.40 (2007).

removal proceedings or related immigration processes.[68] State birth registration documents the facts of birth that entitle a person to U.S citizenship, but birth certificates issued by states may not be accepted by federal government agencies.[69] Registration showing birth in the United States is insufficient to guarantee recognition of citizenship for two reasons. First, there is an exceptional situation under which a person born in the United States is not a citizen: a child born to a diplomat credentialed to represent a foreign state in the United States does not receive birthright citizenship.[70] Second, federal and state government agencies can also require additional evidence or rebut evidence of birth in the United States with evidence of birth outside the United States.[71] As noted by a federal court, "while a state birth certificate is considered 'primary evidence of birth in the United States' for purposes of determining citizenship . . . [the] Secretary of State[] retains the discretion to require additional evidence of citizenship before granting a passport."[72]

Still, federal agencies generally require state-issued birth certificates when assessing eligibility for federal benefits tied to citizenship. When applying for a passport for the first time, a person "born in the United States generally must submit a birth certificate."[73] However, "primary evidence of birth in the United States" includes only a birth certificate that is filed "within one year of the date of birth," even when a later-registered

---

68. Individuals claiming U.S. citizenship in removal proceedings must generally pursue claims of U.S. citizenship in those proceedings. Dessouki v. Kelly, 311 F. Supp. 3d 686, 691 (E.D. Pa. 2018) (noting that 8 U.S.C. § 1503(a) bars use of declaratory judgment for individuals whose claims arise in removal proceedings); *see also* Hillary Gaston Walsh, *Unequivocally Different: The Third Civil Standard of Proof*, 66 U. KAN. L. REV. 565, 572 (2018). The Administrative Procedure Act may also provide a remedy to resolve questions of citizenship in exceptional situations. Valerio v. Limon, 533 F. Supp. 3d 439, 464 (S.D. Tex. 2021) (holding, that because § 1503 did not provide an adequate remedy, the Administrative Procedure Act gave the federal court subject matter jurisdiction over a challenge to individuals' applications for certificates of citizenship.).

69. Remus, *supra* note 10, at 227.

70. 8 C.F.R. § 101.3(a)(1) (1982).

71. *See* Candela-Rios v. Sessions, No. CVSA16MC00220JWP, 2017 WL 8131999, at *1 (W.D. Tex. Mar. 2, 2017), *aff'd,* 737 F. App'x 187 (5th Cir. 2018) (holding that "[a]lthough petitioner submitted prima facie evidence in the form of a delayed Texas birth certificate, this evidence was rebutted by petitioner's contemporaneously recorded Mexican birth record, along with evidence that petitioner repeatedly stated under oath that he was born in Mexico, provided conflicting testimony on this issue and was not credible."); De La Cruz v. Clinton, No. A-11-CV-675-AWA, 2012 WL 1941373, at *4 (W.D. Texas May 29, 2012) (denying a passport to an individual with a birth certificate issued through delayed birth registration procedures in Texas). For an exploration of people with state birth registration whose entitlement to citizenship is challenged by the U.S. government, *see* Remus, *supra* note 10.

72. Garcia v. Clinton, 915 F. Supp. 2d 831, 834 (S.D. Tex. 2012), *aff'd sub nom*; Garcia v. Kerry, 557 F. App'x 304 (5th Cir. 2014).

73. 22 C.F.R. § 51.42(a) (2007).

birth would not be considered delayed in the state where it was registered.[74] Secondary evidence is that which is

> sufficient to establish to the satisfaction of the Department that he or she was born in the United States [such as] hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth.[75]

While passport applications rely on similar forms of documentation as delayed birth registration,[76] passport regulations are more flexible and less prescriptive than most state birth registration statutes.[77] In many states, delayed birth registration processes require a registrant to present a minimum number of specified kinds of documents established by a particular period.[78]

Where a federal agency denies a person a right of citizenship, such as refusing to issue a passport for insufficient evidence of citizenship, the person can seek a declaratory judgment of their citizenship in federal court under 8 U.S.C. § 1503(a).[79] In theory, birth registration is not strictly

---

74.  *Id.*

75.  22 C.F.R. § 51.42(b) (2007). In 1955, an article in the Columbia Law Review argued that state's birth registration could not be "be held to be binding when the question of national citizenship is at issue," and that "[i]ndependent state action in the field would seriously interfere with the constitutional requirement that such regulation be uniform." *Evidentiary Effect of Delayed Birth Certificate*, 55 COLUM. L. REV. 565, 568 (1955) (citation omitted). State practice then and now shows significant 'independent state action,' as shown below in Part IV, but is not determinative of U.S. citizenship.

76.  *See* Cobos v. Kerry, No. CIV.A. H-13-02897, 2015 WL 3965660, at *2 (S.D. Tex June 30, 2015) (stating that parents of a child obtained a delayed birth certificate in Texas, based on baptism certificates and affidavits from witnesses of birth); De La Cruz v. Clinton, No. A-11-CV-675-AWA, 2012 WL 1941373, at *3 (W.D. Tex. May 29, 2012) (assessing proffered evidence, including a delayed Texas birth certificate, a driver's license, a baptismal certificate, and affidavits).

77.  *Compare* 22 C.F.R. § 51.42(b) (2007) (requiring the applicant, if lacking a birth certificate issued within one year of birth, to "submit secondary evidence sufficient to establish to the satisfaction of the Department that he or she was born in the United States [including] hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth."), *with* IOWA ADMIN. CODE r. 641-96.18(3) (2013); D.C. MUN. REGS. tit. 29, § 2804 (1991); N.D. ADMIN. CODE 33-04-06-06 (2008) (setting out requirements for Iowa, the District of Columbia, and North Dakota requiring two pieces of evidence to establish the facts of birth for registrations filed within seven years, and three pieces for registrations filed seven years or more after birth); MICH. ADMIN. CODE r. 325.3220 (current as of Apr. 1, 2023) (allowing registration in Michigan with several combinations of evidence).

78.  *See infra* Part III.C.

79.  8 U.S.C. § 1503(a) (1996) ("If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States,

necessary to obtain recognition of citizenship from a federal agency, as § 1503(a) does not require a birth certificate,[80] but in practice federal agencies and processes rely on state birth registration. Overwhelmingly, individuals present a late-issued birth certificate as one piece of evidence to support an application for a U.S. passport or in a suit for declaratory judgment.[81] Generally, petitions for declaratory judgment are brought not by individuals who lack birth registration, but by individuals whose births were registered in the United States *and* another country (usually in Mexico).[82] Mexican-American families commonly registered births in both Mexico and the United States for convenience for Mexican-American families to ensure that the children would qualify for services in Mexico.[83]

In a review of 150 decisions under § 1503(a) spanning five years, not a single person filed a petition for declaratory judgment—let alone was issued a declaratory judgment of U.S. citizenship—without a record of birth issued by a U.S. state.[84] Perhaps § 1503(a) could also be a vehicle to

---

such person may institute an action . . . against the head of such department or independent agency for a judgment declaring him to be a national of the United States."); Cobos v. Kerry, No. CIV.A. H-13-02897, 2015 WL 3965660, at *6 (S.D. Tex. June 30, 2015) ("8 U.S.C. § 1503(a) allows any person denied a right or privilege because she is not a United States national to file a declaratory judgment action for a *de novo* determination of citizenship." (citation omitted)).

80.  8 U.S.C. § 1503(a) (1996).

81.  *See, e.g.*, *De La Cruz*, 2012 WL 1941373, at *4 (denying a passport application to an individual with a Texas birth certificate issued through delayed birth registration).

82.  *See, e.g.*, Moreno-Gonzales v. Tillerson, No. EP-15-CV-00312-ATB, 2018 WL 882393, at *1 (W.D. Tex. Feb. 14, 2018); Garcia v. Clinton, 915 F. Supp. 2d 831, 834 (S.D. Tex. 2012), *aff'd sub nom*; Candela-Rios v. Sessions, No. CVSA16MC00220JWP, 2017 WL 8131999, at *1 (W.D. Tex. Mar. 2, 2017), *aff'd*, 737 F. App'x 187 (5th Cir. 2018); De la Cruz v. Clinton, No. A-11-CV-675-AWA, 2012 WL 1941373, at *4 (W.D. Texas May 29, 2012) (each challenging an individual's citizenship based on conflicting evidence of birth in Mexico); *but see* Patel v. Rice, 403 F. Supp. 2d 560, 561 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. 2007) (denying a U.S. passport to an individual born to parents who were born in India).

83.  *See* Picasso v. Pompeo, No. 1:17-CV-00171, 2019 WL 13193245, at *1 (S.D. Tex. Sept. 11, 2019) ("Plaintiffs parents and Midwife Pineda registered Plaintiffs birth in Hidalgo County, Texas. . . . Plaintiff's parents lived in Reynosa and obtained a false Mexican birth certificate for Plaintiff to qualify for the free educational and medical benefits guaranteed all Mexican citizens.").

84.  *See, e.g.*, Angelino v. N.Y.C Dept. of Health, No. 156470/2019, 2019 WL 4575695 (N.Y. Sup. Ct. Sept. 17, 2019); *In re.* Tucker v. N.Y.C. Dep't of Health, 785 N.Y.S.2d 862 (2004); Evans v. Bureau of Vital Stat., 212 A.D.3d 613 (2023); Peterson v. L.A. Dep't of Health and Hospitals, 2008 WL 5022993 (La.Dist.Ct.); Matter of Harris, No. 1195 C.D. 2021, 2023 WL 2643194 (Pa. Commw. Ct. Mar. 27, 2023); La. *ex rel.* Dupas v. New Orleans, 125 So. 2d 375 (La. 1960) (each concerning a person seeking a court order for the registration of birth in the United States). *But see* Eusiquio v. Or. *ex rel.* Dep't of Hum. Servs., for Health Stat., 259 P.3d 917, 918 (Or. Ct. App. 2011) (seeking a court order to register a birth "in a migrant camp"). *See also* Villafranca v. Blinken, No. 1:19-CV-173, 2022 WL 1210762, at *2 (S.D. Tex. Apr. 25, 2022) ("the midwife registered Plaintiff's birth with the Texas Department of State Health Services, reporting her birth as having taken place on July 30 in

Akron Law Review, Vol. 57 [2025], Iss. 1, Art. 2

confirm U.S. citizenship for individuals born in the United States who lack birth registration, but it is used at best infrequently for this purpose. Rather, case law suggests that state birth registration is seen as a prerequisite to a § 1503(a) petition.

The same person can receive different treatment from the state and federal governments and within the federal government from various federal agencies, such as the Department of Homeland Security versus the Department of State.[85] For example, the Department of State refused to issue a U.S. passport to Angel Alcantar Lopez, stating that he had presented insufficient documentation of birth in the United States.[86] By that time, Mr. Lopez had obtained a delayed birth certificate showing his birth in Oregon, was registered to vote, and had an Oregon driver's license—all demonstrating that the state of Oregon considered him a U.S. citizen.[87] Similarly, U.S. Citizenship and Immigration Services (a subagency of the federal Department of Homeland Security) approved a petition filed by Mr. Lopez to sponsor a relative for a family-based green card, indicating that that agency also considered Mr. Lopez to be a U.S. citizen.[88] Yet, the Department of State denied Mr. Lopez's claim of U.S. citizenship before he filed a lawsuit seeking declaratory judgment. The facts underlying dozens of § 1503(a) cases show that records of birth in the United States are in practice necessary, but do not guarantee government recognition of, U.S. citizenship.[89]

The next Part explores the consequences that individuals face when they lack birth registration.

---

Brownsville, Texas. . . . On August 15, the couple registered Plaintiff's birth in Madero, Mexico, recording that she had been born in that city.").

85.    Even validly-issued passports can be revoked on the grounds that a person was not, in fact a citizen. As stated by the U.S. Department of State Foreign Affairs Manual, a U.S. passport "identifies the bearer as a U.S. citizen . . . and thereby may facilitate the bearer receiving the benefits associated with U.S. citizenship." U.S. STATE DEP'T, 8 FOREIGN AFF. MANUAL, 101.1-1(g), *Introduction to U.S. Passports* (citation omitted) (last update June 28, 2022). But this carries a critical caveat: "An intact, full validity, unexpired passport is acceptable as proof of United States citizenship. . . when issued to a U.S. citizen . . ." *Id.* By this circular logic, a valid passport proves citizenship only when its bearer is a citizen, providing an escape hatch by which a government agency can argue that the person was not a citizen and that the validly-issued passport thus did not prove citizenship.

86.    Lopez v. U.S. Dep't of State, *ex rel.* Clinton, No. 3:11-CV-I069-AC, 2013 WL 121804, at *1 (D. Or. Jan. 9, 2013).

87.    *Id.* at *5.

88.    *Id.* at *6.

89.    For example, Maria Magdalena Garcia sought a declaratory judgment of her U.S. citizenship, claiming birth in Santa Maria, Texas. Garcia v. Pompeo, No. 1:18-CV-59, 2019 WL 13164664, at *1 (S.D. Tex. Dec. 2, 2019). Her birth was initially recorded as taking place in Mexico, but she also obtained a delayed birth certificate showing birth in Texas. *Id.* at *2. Considering all the evidence, a federal court denied her request for declaratory judgment. *Id.* at *5.

### III. BORN WITHOUT PROOF

The experience of Alecia Pennington shows that the U.S. government does not recognize every person who, because of birth in U.S. territory, is entitled to U.S. citizenship. The prevalence of birth registration heightens the cost of exclusion for the few who lack it.[90] In 1986, a federal court pointed to

> the vital nature of a birth certificate in modern times: without that slip of paper, a person's identity and legitimacy are at risk in a variety of aspects. In one way or another, the right to vote, the right to enroll in public schools, the right to participate in certain social programs, the right to travel internationally, are all dependent on the production of a birth certificate. A parent might well believe that a child whose birth was not "officially" recorded would go through life as a faceless non-person, substantially disadvantaged in terms of access to educational opportunities, employment, government programs, and the like.[91]

Without reliable, national data sources on unregistered births, Part III.A draws examples from case law, news media, and internet forums. It explores the many forms of societal exclusion that unregistered individuals face. Part III.B explores reasons that births may go unregistered.

#### A.  Societal Exclusion for Unregistered Individuals

This Section reviews the experiences of people whose births were not registered during their early childhoods. These stories are based on narratives in the public record, including news articles, case law in petitions filed by individuals seeking delayed birth registration, and internet forums such as Reddit.

Alecia Pennington was unable to obtain a driver's license or social security number.[92] Without a social security number, she could not obtain

---

90. June Gibbs Brown, *Birth Certificate Fraud*, DEP'T OF HEALTH AND HUM. SERV., OFF. OF INSPECTOR GEN., 6 OEI-07-99-00570 (Sept. 2000) (noting that birth certificates are "used extensively for employment purposes, to obtain benefits or other documents (e.g., driver's licenses, Social Security cards, and passports)), to assist in determining eligibility for public assistance and other benefits, to enroll children in school, and as proof of age eligibility for sports and other age-restricted activities."); Bogin-Farber, *supra* note 67, at 175–77 ("Over the last two decades, laws requiring written proof of lawful immigration status have proliferated at the federal, state, and local levels."). *See also* Neha Jain, *Manufacturing Statelessness*, 116 AM. J. INT'L L. 237, 239 (2022) (urging scholars and activists to "scrutinize the legal framework and political conditions within which modern identity management systems are implemented to avoid perpetuating or expanding existing forms of exclusion.").

91. DeLeiris v. Scott, 642 F. Supp. 1552, 1565–66 (D.R.I. 1986).

92. RadioLab, *supra* note 2.

Akron Law Review, Vol. 57 [2025], Iss. 1, Art. 2

66                              AKRON LAW REVIEW                          [57:49

a job.[93] She could not register to vote.[94] After Alecia's grandmother successfully lobbied the Texas legislature to amend its statute governing delayed birth registration, Alecia was able to register her birth. She started the process of accessing these basic documents, obtaining a driver's license and the ability to vote.[95]

Eli Angelino applied to register his birth through New York's delayed processes as an adult.[96] He stated that he was born in 1982 in New York City, and he presented a letter from a hospital and a baptismal record.[97] The court order denying his request for birth registration did not cite any evidence suggesting that Mr. Angelino was born anywhere else; Mr. Angelino simply could not present sufficient documents stating that he was born on a given date in a given place.[98] His request was denied, leaving him unable to access social security benefits.[99]

Timothy Tucker eventually requested birth registration so "that his presence in society is legitimized and so that he can be recognized as a productive member of society," and specifically noted that he could not apply for college or get a driver's license without a birth certificate.[100] Despite minimal documentary evidence, Mr. Tucker was successful in seeking to register his birth based on affidavits from individuals with direct personal knowledge of his birth.[101]

Two sisters were born in Kentucky outside medical institutions, and they did not attend school.[102] In their twenties, both sisters pursued birth registration because, without birth certificates, they could not obtain social security numbers or gainful employment.[103] They had been forced to work odd jobs, and one posed as her mother to be able to work.[104] After obtaining birth registration records through delayed processes in Kentucky, the sisters sued the Social Security Administration and

---

93.    *Id.*

94.    *Id.*

95.    *Id.*

96.    Angelino v. N.Y.C. Dept. of Health, No. 156470/2019, 2019 WL 4575695, at *2 (N.Y. Sup. Ct. Sept. 17, 2019).

97.    *Id.*

98.    *Id.*

99.    *Id.*, at *1.

100.   Tucker v. New York City Dep't of Health, 785 N.Y.S.2d 862, 863 (Sup. Ct. 2004).

101.   *Id.*

102.   Barrouquere, *supra* note 52 (though the article does not specify, presumably these lawsuits were brought under 8 U.S.C. § 1503(a)).

103.   Bruce Schreiner & Brett Barrouquere, *2 Sisters in Ky. Fight for Social Security Number*, SAN DIEGO UNION-TRIB. (Aug. 14, 2011), https://www.sandiegouniontribune.com/sdut-2-sisters-in-ky-fight-for-social-security-number-2011aug14-story.html    [https://perma.cc/A99Q-VAJX] (outlining a similar situation of two sisters born in rural Kentucky whose births were not registered).

104.   *Id.*

eventually reached a settlement that allowed them to obtain social security numbers. [105]

Likewise, Jamie Lanosga's birth was not registered as a child. Without a birth certificate, she faced obstacles to participating in youth athletics tournaments, and she was unable to obtain a driver's license. Unable to access student loans, she could not attend college. [106]

Noah Boyce was raised on a Michigan farm, never attended school, and had no identification or documentation of his birth. [107] As an adult, he was able to register his birth using affidavits of personal knowledge of the facts of his birth. [108]

A lawyer described unregistered births as "commonplace in rural, minority communities" across the south of the United States, noting: "I had one gentleman who carried around a social security check. It was his first sort of lump sum check when he started getting benefits. . . He carried it around for almost a year. He couldn't cash it, because he didn't have a bank account, because he didn't have a photo ID, because he didn't have a birth certificate." [109]

One particularly poignant Reddit post from an author whose birth was unregistered begged parents to register their children's births, noting the difficulty that lack of registration caused the author. [110]

These stories provide three insights. First, without birth registration, individuals faced significant forms of exclusion and hardship, [111] including the inability to obtain identification including driver's licenses, [112] formal

---

105.   Brett Barrouquere, *Sisters Settle over Social Security Cards*, BLUE RIDGE NOW (Nov. 23, 2011), https://www.blueridgenow.com/story/news/2011/11/23/sisters-settle-suit-over-social-security-cards/28285148007/ [https://perma.cc/U3ZB-4HZW].

106.   Barbara Cotter, *Born in the USA; Without a Shred of Proof*, THE GAZETTE (Sept. 30, 2011), https://gazette.com/news/born-in-the-usa-without-a-shred-of-proof/article_a9a684fd-d024-531d-9b17-2282578cda4a.html [https://perma.cc/XK4N-V6UY].

107.   *The Boy Who Doesn't Exist*, DAILY MAIL (June 24, 2013, 8:53 AM), https://www.dailymail.co.uk/news/article-2346977/Noah-Boyce-raised-grid-birthday-19.html [https://perma.cc/LQ2N-PVCU].

108.   *Id.*

109.   Diekneite & Garrison, *supra* note 52.

110.   REDDIT, *Dear Parents: Do Not Have a Off-the-Grid Baby*, https://www.reddit.com/r/self/comments/fvjkgw/dear_parents_do_not_have_a_offthegrid_baby/ (last visited July 3, 2023), [https://perma.cc/YHH2-URLD].

111.   Jain, *supra* note 91, at 239 (calling on "agencies to scrutinize the legal framework and political conditions within which modern identity management systems are implemented to avoid perpetuating or expanding existing forms of exclusion."); *see id.* at 273 ("As states undertake efforts to consolidate and strengthen their processes for identity management, individuals and groups who do not fall within the state's political imaginary may either be systematically left out of documentation processes.").

112.   *See* RadioLab, *supra* note 2 (noting that Alecia Pennington could not obtain a driver's license); Tucker v. New York City Dep't of Health, 785 N.Y.S.2d 862, 863 (Sup. Ct. 2004) (noting

---

Akron Law Review, Vol. 57 [2025], Iss. 1, Art. 2

employment (because they lack social security numbers),[113] or government benefits including social security benefits.[114] In turn, without identification, some applicants could not access financial services, even to deposit a check,[115] or to vote.[116] Birth registration is the step that allows individuals to have their "presence in society [be] legitimized" to be "recognized as a productive member of society."[117]

Second, these individuals' experiences indicate that the U.S. government agencies did not recognize them as citizens. Many sought birth registration to access benefits like authorization to work in the United States or to register to vote—privileges of U.S. citizenship. When government agencies deny individuals these privileges, those agencies indicated that they did not recognize the individuals as U.S. citizens.

Third, registering their births with the state of birth was a prerequisite to establishing U.S. citizenship. In several instances, the individuals mentioned above were able to resolve their predicament after (and only after) their birth was registered through state-delayed registration processes.[118] Others, in addition to obtaining state registration, also had to sue a federal agency to obtain recognition of citizenship; none were able to resolve their status without state birth registration. These experiences demonstrate that registering a person's birth with the state is a prerequisite to securing federal recognition of U.S. citizenship.

The next Part discusses the relationship between federalism and delayed birth registration processes.

---

that Timothy Tucker sought birth registration to obtain a driver's license); *Born in the USA*, *supra* note 107 (noting that Jamie Lanosga was unable to obtain a driver's license without birth registration).

113. *See* RadioLab, *supra* note 2 (noting that, without a social security number, Alecia Pennington could not work); *see also* Schreiner & Barrouquere, *supra* note 104.

114. Angelino v. N.Y.C. Dept. of Health, No. 156470/2019, 2019 WL 4575695, at *1 (N.Y. Sup. Ct. Sept. 17, 2019).

115. Diekneite & Garrison, *supra* note 52 (quoting a lawyer recounting that a client was unable to cash a check without photo identification, which the client could not obtain without a birth certificate).

116. *See* RadioLab, *supra* note 2.

117. Tucker v. New York City Dep't of Health, 785 N.Y.S.2d 862, 863 (Sup. Ct. 2004).

118. *See* RadioLab, *supra* note 2 (noting that, after birth registration, Alecia was able to obtain a driver's license and to vote); Barrouquere, *supra* note 106 (noting that the two sisters, after registering their birth, sued the Social Security Administration and reached a settlement allowing them to obtain social security numbers).

## B.  Reasons why Births are Unregistered

The review of court documents and newspaper reports above suggests three explanations for why births now go unregistered.[119] First, racial discrimination and discrimination against immigrants leads to some children lacking birth registration, as demonstrated by recent examples of expulsions of noncitizen mothers with U.S. citizen infants who did not yet have birth certificates and Texas officials' refusal to issue birth certificates to children of undocumented noncitizens[120] Other undocumented noncitizens may decline to approach officials for fear of being apprehended by immigration authorities.[121]

Second, births may go unregistered due to increased numbers of out-of-institution births—in particular for parents choosing to deliver at home.[122] Births that occur in a hospital or other institution will be registered by the hospital staff as a matter of course.[123] Likewise, physicians, midwives, and other healthcare workers who deliver babies outside of institutions are generally obligated to report births promptly.[124] Requirements to register births that occur outside of medical institutions often have higher evidentiary requirements.[125] These higher requirements may also lead to some births going unregistered.

---

119.  Diekneite & Garrison, *supra* note 52 (noting many people lived without birth registration in the United States in decades past, particularly in racially minoritized communities and rural areas).

120.  Misra, *supra* note 59; Ura, *supra* note 60 (noting that children born in the United States were denied birth certificates after the state of Texas refused to register the births of children absent certain forms of identification presented by the parents); Fernandez, *supra* note 60 (noting that hundreds of undocumented families in Texas were unable to register their child's births).

121.  *See* Daniela Alulema & Jacquelyn Pavilon, *Immigrants' Use of New York City Programs, Services, and Benefits: Examining the Impact of Fear and Other Barriers to Access*, CTR. FOR MIGRATION STUD. (Jan. 31, 2022), https://cmsny.org/publications/nyc-programs-services-and-benefits-report-013122/ [https://perma.cc/9DY6-5DNP] (noting that immigrant families may decline to seek public benefits because of fear about immigration consequences); *see* Bogin-Farber, *supra* note 67, at 170-71; *In re* Garcia-Eusiquio, 259 P.3d 917, 918 (Or. Ct. App. 2011) ("According to petitioner . . . she feared that her son's father would be arrested if authorities were informed that petitioner and the father had conceived another child.").

122.  *See* MacDorman & Declercq, *supra* note 45 at 279 ("Home births increased by 77% from 2004–2017.").

123.  *Id.* at 280.

124.  *See, e.g.*, CONN. GEN. STAT. § 7-49 (1995) (suspending the license of a medical practitioner in Connecticut who fails to file a birth certificate until the certificate is filed); S.C. CODE. ANN. § 44-63-161 (2003) (making willful violation of the duty to report a birth a criminal misdemeanor in South Carolina).

125.  N.M. CODE R. § 7.2.2.10(E) (LexisNexis 2019); N.M. CODE R. 7.2.2.9 (LexisNexis 2019) (requiring that, if an unattended birth is not registered within a year, the delayed registration process is unavailable and can only be registered via a court order); *see also* ARIZ. ADMIN. CODE § R9-19-204 (2020); CONN. GEN. STAT. § 7-48(b) (2008); CONN. AGENCIES REGS. § 19a-41-1 (1996); D.C. CODE § 7-231.08(h) (2018) (requiring additional evidence, including for immediate birth

Finally, children's births may go unregistered if their parents align with certain religious and political movements that discourage birth registration and interaction with government agencies.[126] Adherents of the sovereign citizen movement, for example, believe that "your birth certificate and Social Security card are not benign documents, but contracts that enslave you."[127] Just as internet forums like Quora and Reddit include posts of people trying to register their births, they also include posts from parents inquiring about the consequences of failing to obtain a birth certificate for a child.[128]

## IV. BIRTH REGISTRATION AND FEDERALISM

Part IV.A takes two case studies loosely based on Alecia Pennington's situation. It demonstrates that the same person with the same evidence of birth may face divergent outcomes depending on the state in which she seeks to register. Part IV.B argues that state law's influence over a person's access to birth registration procedures is an example of citizenship federalism: the impact of state and local government on a natural person's ability to secure recognition of their entitlement to U.S. citizenship. Because recognition of citizenship requires individualized adjudication and concurrence of both the federal and state governments,

---

registrations, when births are out of institutions and unattended by licensed medical professionals such as doctors or midwives).

126.  *See, e.g.*, Barrouquere, *Sisters Settle over Social Security Cards*, *supra* note 106; Barbara Cotter, *Born in the USA; Without a Shred of Proof*, THE GAZETTE, Sept. 30, 2011, https://gazette.com/news/born-in-the-usa-without-a-shred-of-proof/article_a9a684fd-d024-531d-9b17-2282578cda4a.html [https://perma.cc/AKZ3-ZBBG]; *see also The Boy Who Doesn't Exist*, DAILY MAIL, June 24, 2013, https://www.dailymail.co.uk/news/article-2346977/Noah-Boyce-raised-grid-birthday-19.html [https://perma.cc/7ATX-BV8Z] (each describing situations of parents who refused to register their children's births due to political or religious beliefs); *see also Sovereign Citizens Movement*, S. POVERTY L.CTR., https://www.splcenter.org/fighting-hate/extremist-files/ideology/sovereign-citizens-movement [https://perma.cc/WU4Z-TC8F] (last visited Mar. 1, 2024) (noting that, according to sovereign citizens, "government has pledged its citizenry as collateral by selling their future earning capabilities to foreign investors, effectively enslaving all Americans. This sale, sovereign citizens claim, takes place at birth with the issuance of a birth certificate. . . . Sovereigns say that the government then uses that birth certificate to set up a corporate trust in the baby's name . . . .").

127.  Ashley Powers, *How Sovereign Citizens Helped Swindle $1 Billion From the Government They Disavow*, N.Y. TIMES (Mar. 29, 2019), https://www.nytimes.com/2019/03/29/business/sovereign-citizens-financial-crime.html [https://perma.cc/B93B-DVS6].

128.  QUORA, *What Happens When I Don't Register My Newborn Child a Birth Certificate?*, https://www.quora.com/What-happens-when-I-dont-register-my-newborn-child-a-birth-certificate [https://perma.cc/3D7T-SBW5] (last visited July 1, 2023); QUORA, *In the USA, is it Illegal to Never File a Birth Certificate like if, for Example, You Had a Home Birth?*, https://www.quora.com/In-the-USA-is-it-illegal-to-never-file-a-birth-certificate-like-i-f-for-example-you-had-a-home-bi rth [https://perma.cc/378Q-VLLG] (last visited July 3, 2023).

delayed birth registration presents a new model of cooperative federalism: dual concurrence federalism.

### A.    Variation in State Law on Delayed Birth Registration: Two Scenarios

It is through a state's action to record a birth that a person can demonstrate their entitlement to U.S. citizenship—or, conversely, through the state's refusal to register a birth that leaves a person without a way to demonstrate that entitlement. Federal agencies play a coordinating role in birth registration, including providing funding, compiling statistics from birth registration, and suggesting model forms and laws. But birth registration is ultimately governed by state law with very little federal oversight.[129]

Sharp variations in state law and procedures about birth registration mean that two people seeking to register their birth based on identical evidence but in two different states may achieve different results, depending on the applicable laws of the state where they were born. This Section demonstrates the administrative aspects of state law that result in federal benefits of recognition as citizenship, contributing to "the under-theorized nature of the *administrative law* of federal-state cooperative relationships."[130]

It explores this concept by considering two case studies loosely based on Alecia Pennington's situation. Alecia applied for birth registration when she was over the age of 18, and her parents refused to assist her in registering her birth.[131] She had three pieces of evidence: an "old record" from an orthodontist; a letter from her uncle, a doctor, who treated her as a child; and an affidavit from her grandmother, who was present at her birth.[132] This Section will assume additional details for two fictional registrants who, like Alecia, attempt to register their births and explore whether each individual could register in various jurisdictions. For fictional registrant Blair, we will assume that the records were issued when the registrant was relatively young. For fictional registrant Cruz, we will assume newer records issued farther in time from the applicant's birth. A word of caution is required in these predictions of outcomes under state law, as state law may lack precision, be supplemented by additional

---

129.    NRC, *Vital Statistics*, *supra* note 35 ("The Role of State and Local Health Departments").
130.    Remus, *supra* note 10, at 251 (citing Fahey, *supra* note 13).
131.    RadioLab, *supra* note 2.
132.    RadioLab, *supra* note 2.

Akron Law Review, Vol. 57 [2025], Iss. 1, Art. 2

agency policy or practice, or give state registrars discretion to require additional evidence or to waive requirements.[133]

Blair attempts to register their birth as an adult using three documents: 1) an orthodontic record that was issued when Blair was six, 2) a doctor's note issued when the child was four and that mentions Blair's parents by name, and 3) an affidavit from an older relative who was present for Blair's birth. In several states, this evidence would suffice to register Blair's birth through the administrative delayed process. For example, Alabama requires three documents to show the date and place of birth, of which only one can be an affidavit, and one document other than an affidavit must show a child's parentage.[134] Alabama requires that documents other than affidavits must have been at least five years old or established before the child's tenth birthday.[135] The documents in this fictional scenario meet both requirements. Similarly, in California, birth can be established by two pieces of documentary evidence, if the documents were established at least five years prior to the date of application for a registrant over twelve years of age.[136] Again, Blair's documents should suffice.

But other states would likely reject Blair's application for birth registration. For example, in Georgia, an application to register a birth filed seven years or more after birth must be supported by three pieces of documentary evidence, and personal affidavits are not accepted.[137] Wyoming requires a registrant who is twelve years of age or older to present at least three pieces of documentation established at least five years before the registration request.[138] As a result, Blair would be able to register their birth had it occurred in some states and unable to register had their birth occurred in others, based on the same facts and supporting evidence.

Now consider the fictional registrant Cruz, who has similar evidence but whose evidence was established longer after Cruz's birth. Cruz has an orthodontic record that was issued when he was thirteen years old. He also has a doctor's note that reports treatment when Cruz was a young child but that was issued after he turned eighteen, and which Cruz requested

---

133.  *See, e.g.*, 10-146 ME. CODE REGS. ch. 9, § 2 (current as of Jan. 25, 2023) (stating that the Maine state registrar has discretion to deny an application if they find "reasonable cause to question the validity or adequacy" of statements or evidence); *see also* Part IV.C.

134.  ALA. CODE § 22-9-A-9(3)(d) (1975).

135.  ALA. CODE § 22-9-A-9(3)(e) (1975).

136.  CAL. HEALTH & SAFETY CODE § 102585 (West 1996); CAL. HEALTH & SAFETY CODE § 102850 (West 1995).

137.  GA. COMP. R. & REGS. 511-1-3-.09 (2013); GA. COMP. R. & REGS. 511-1-3-.10 (2013).

138.  *See* 048-0059-11 WYO. CODE. R. § 1(c) (LexisNexis 2018).

from the doctor to support his request to register his birth. Finally, he has an affidavit from a relative with personal knowledge of Cruz's birth. Many of the states that would have registered Blair's birth likely would not register Cruz's birth. For example, Alabama requires that the documents supporting birth must have been established at least five years before registration or prior to the registrant's tenth birthday.[139] This means that Cruz could use such a document to support an application for birth registration, but he would have to wait five years after the doctor's note was written for it to be an acceptable form of documentation, leaving him unable to register in the interim.

Some states would likely register Cruz's birth with this supporting evidence. The state of Washington requires at least three forms of evidence to register the birth of a child over twelve, one of which may be a sworn statement.[140] Documents submitted to support delayed birth registration for adults must be "at least five years old, or based on records established at least five years prior to the date of the request."[141] As a result, if the registrar were to accept that the doctor's letter was based on records that were established at the time of treatment, Cruz may be able to register in Washington. In Virginia, registration on or after the registrant's seventh birthday requires three documents, only one of which may be an affidavit.[142]

While some states accept Cruz's evidence and register the birth, Cruz will be able to register in a narrower set of jurisdictions than Blair. Cruz's scenario is likely closer to reality for most adults who are applying to register their births without the cooperation of their parents. Such a person must turn over every possible stone to find previously established forms of evidence because new evidence will be unacceptable to support delayed birth registration in most states until several years have passed. A person whose request for registration through delayed birth registration is denied would be left to petition for a court order that would mandate birth registration, and in those court proceedings, the petitioner continues to carry the burden of proof to register their birth.[143]

---

139. ALA. CODE § 22-9A-9(3)(e) (1975).
140. WASH. ADMIN. CODE § 246-490-081 (2015).
141. WASH. ADMIN. CODE § 246-490-081(4) (2015).
142. 12 VA. ADMIN. CODE § 5-550-260 (2003).
143. *See supra* Part IV.B Note that a person in this situation could also seek a benefit related to U.S. citizenship with a federal agency and, if rejected, pursue declaratory judgment requesting a determination of citizenship. 8 U.S.C. § 1503 (1996) The declaratory judgment would not establish a birth record, but it would establish the applicant's claim to citizenship.

Akron Law Review, Vol. 57 [2025], Iss. 1, Art. 2

## B.  Birth Registration and Federalism

The federal government governs immigration and nationality law, superseding state authority: this is the plenary power doctrine.[144] But the federal-state system of birth registration is not accounted for in current theories of cooperative federalism or immigration federalism. A recent article about delayed birth certificates called for greater theorization of cooperative federalism to account for the federal-state system of issuing birth certificates to document citizenship.[145] This Section will argue that the U.S. birth registration system demonstrates two concepts. First, it demonstrates a new understanding of *citizenship federalism*, in which a person's access to the rights of citizenship can turn on their treatment under state law. Second, it demonstrates *dual-concurrence federalism*: a situation in which a person must have favorable adjudications from both the state and federal government to receive a benefit, in which neither federal nor state governments can, in practice, unilaterally guarantee access to that benefit.

Previous scholarship has extensively explored the concept of *immigration federalism*, which is the impact of state and local law on noncitizens' access to immigration benefits or vulnerability to immigration enforcement.[146] State and local law can impact noncitizens' access to immigration benefits; as one example, noncitizens seeking special immigrant juvenile status (SIJS) must receive a state court adjudication of their status to receive federal immigration benefit.[147] Federal immigration law defining crimes that lead to removal and deportation include crimes defined by state law.[148] Increasingly, states seek to participate in—or to shield noncitizens from—immigration enforcement.[149] The concept of citizenship builds on immigration federalism and points to the impact of state and local law on the ability of a noncitizen to access other rights of citizenship like property rights and parental rights.[150]

---

144.  *See generally* Ping v. United States, 130 U.S. 581 (1889); *see also* David A. Martin, *Why Immigration's Plenary Power Doctrine Endures*, 68 OKLA. L. REV. 29 (2015).

145.  Remus, *supra* note 10, at 229 (noting that "existing theories fail to address federal-state coordination on delayed birth certificate issuance and recognition.").

146.  Motomura, *supra* note 11, at 1 (defining immigration federalism); Rodríguez, *supra* note 11, at 569; Elias, *supra* note 11.

147.  Shani M. King & Nicole S. Hall, *Cooperative Federalism and SIJS*, 61 B.C. L. REV. 2869, 2872-73 (2020).

148.  *States' Commandeered Convictions: Why States Should Get a Veto Over Crime-Based Deportation*, 132 HARV. L. REV 2322, 2327 (2019).

149.  Juliet P. Stumpf, *States of Confusion: The Rise of State and Local Power over Immigration*, 86 N.C. L. REV. 1557, 1596–1597 (2008); Motomura, *supra* note 11, at 1365–69.

150.  *Chertoff, supra* note 11.

State and local laws governing delayed birth registration can impact a person's access to rights typically associated with U.S. citizenship, but they can also impact whether the state and federal government will agree that the person *has* U.S. citizenship. As a result, these varied processes reflect a second understanding of citizenship federalism: where state and local law and practice impact the U.S. government's recognition of a person's citizenship. Of course, a person has no agency in choosing which state laws apply to their birth registration.

Further, the federal system of birth registration does not fall within existing theories of cooperative federalism, and instead demonstrates dual-concurrence federalism.[151] In one previously-described model, the federal government "draft[s] states into partnership" implementing federal policy. Examples include Medicaid, in which the federal government provides funding and guidelines, which states then implement. In another model, the federal government passively incorporates principles of state law into federal benefits. Examples include federal immigration benefits, which rely on state definitions of marriage; in this model, the individual participates in a state-based legal process to establish some condition or benefit under state law. A second adjudication with a federal agency merely incorporates that status from state law as a condition precedent.[152]

In the domain of birth registration, federal regulation of state-issued birth certificates is quite minimal, limited to compiling data and requiring a handful of fraud prevention measures. Even so, after a state agency or state court adjudicates an individual's request for delayed birth registration, if the individual seeks a federal benefit federal agencies retain authority and broad discretion to reject a claim to U.S. citizenship and to reject the facts of birth established by a delayed birth certificate.[153] The federal-state relationship does not rely on regulation or regulatory action, but on independent adjudications of an individual's status.[154]

This is dual-concurrence federalism,[155] in which a person accesses a right only when two conditions are met. First, state agency or court must affirmatively determine that an individual meets the requirements for a

---

151.  For a review of literature about cooperative federalism, *see* Taleed El-Sabawi, *MHPAEA & Marble Cake: Parity & the Forgotten Frame of Federalism*, 124 DICK. L. REV. 591, 602–05 (2020).

152.  Remus, *supra* note 10, at 248–49.

153.  *Id.* at 250.

154.  *Id.*

155.  The term 'double jeopardy federalism' is tempting. But double jeopardy refers to being tried twice for the same crime by the same sovereign; birth certificate recognition is rather the opposite: two sovereigns must both reach a conclusion that a person was born in the United States to access recognition as a citizen.

birth certificate under its substantive and procedural laws and policies; this adjudication is made with minimal oversight or regulation from federal law or authorities.[156] Second, a federal agency or court independently assesses the finding that the individual is a U.S. citizen. The federal agency's role is not to govern by providing a policy basis that states implement, nor to incorporate a decision under state law into an outcome for federal law. The federal court or agency may refuse to accept a delayed birth certificate or may require additional evidence to substantiate the facts of birth.[157] This is because state birth registration establishes only a presumption of birth in the United States that can be rebutted by evidence that the applicant was born outside the United States.

In theory, the declaratory judgment statute in § 1503(a) provides a safeguard against state decisions that fail to recognize U.S. citizens. Strictly speaking, this means that a federal agency or court's decision can trump a decision under state law. But extensive research of recent § 1503(a) petitions shows that the statute does not fill this role.

While § 1503(a) does not require a petitioner to provide a birth certificate, research into § 1503(a) decisions over the last five years did not reveal a single case of a person pursuing a claim of citizenship (let alone securing recognition as a citizen) without a state-issued birth certificate.[158]

Taking together the circumstances of parents seeking to avoid birth registration for their children, high bars for delayed birth registration under varied state law, and the de facto requirement of state birth registration to access federal law, there is a real risk that a small number of U.S. citizens by birth are not recognized as such.

---

156. Remus, *supra* note 10, at 236–39. Note that Congress did require states to implement certification processes and safety features when issuing birth certificates. Despite these statutory mandates, states retain significant variety in their laws and regulations, as described in Part IV. Intelligence Reform and Terrorism Protection Act § 7211(b)(3) (codified as a note to 5 U.S.C. § 301) (2004).

157. *See* Remus, *supra* note 10, at 227; *see also* Candela-Rios v. Sessions, No. CVSA16MC00220JWP, 2017 WL 8131999, at *1 (W.D. Tex. Mar. 2, 2017), *aff'd*, 737 F. App'x 187 (5th Cir. 2018) (holding that "[a]lthough petitioner submitted prima facie evidence in the form of a delayed Texas birth certificate, this evidence was rebutted by petitioner's contemporaneously recorded Mexican birth record, along with evidence that petitioner repeatedly stated under oath that he was born in Mexico, provided conflicting testimony on this issue and was not credible."); De La Cruz v. Clinton, No. A-11-CV-675-AWA, 2012 WL 1941373, at *4 (denying a passport to an individual with a birth certificate issued through delayed birth registration procedures in Texas). Administrative agency decisions whether to recognize a person as a citizen, such as by issuing or refusing them a benefit such as a passport, are not generally a matter of public record. As a result, the reasons and factual circumstances for additional scrutiny are unclear.

158. Remus, supra note 10, at 245 ("[F]ederal authority reigns supreme in birth certificate issues, even though states judge citizenship claims in the first instance.").

## V. BIRTH REGISTRATION, U.S. CITIZENSHIP, AND STATELESSNESS

This Part explores the connection between birth registration, U.S. citizenship, and statelessness. Having seen that some individuals born in the United States and entitled to citizenship lack recognition of their status because their births are unregistered, we come now to recognize that these individuals are not just in a situation of legal limbo: at least some of these individuals are stateless. A person who was born in the United States may simultaneously be *entitled* to U.S. citizenship but, if *not considered* as a citizen by the United States or another state, be stateless.[159]

Reports on stateless people in the United States often emphasize that U.S. nationality law has robust protections against statelessness because of birthright citizenship for children born in the United States.[160] Existing literature has considered statelessness in the United States to be experienced exclusively by people who arrive in the United States through immigration.[161] But this Article challenges the view that all stateless individuals in the United States must have been born elsewhere. There is at least some gap between people who are born in the United States and entitled to U.S. citizenship, on one hand, and those who can prove their birth in the United States to the satisfaction of government authorities.[162]

A stateless person, as defined in the 1954 Convention relating to the Status of Stateless Persons, is a person "who is not *considered as a national by any State* under the operation of its law."[163] Statelessness is not just an absence of citizenship but also includes situations in which the

---

159. U.N. HIGH COMM'R FOR REFUGEES [hereinafter "UNHCR"], GUIDELINES ON STATELESSNESS NO. 1: THE DEFINITION OF "STATELESS PERSON" IN ARTICLE 1(1) OF THE 1954 CONVENTION RELATING TO THE STATUS OF STATELESS PERSONS ¶ 15, U.N. Doc. HCR/GS/12/01 (Feb. 20, 2012), http://www.refworld.org/docid/ 4f4371b82.html [https://perma.cc/3934-3ED4] ("The reference to 'law' in [the definition of statelessness] should be read broadly to encompass not just legislation, but also ministerial decrees, regulations, orders, judicial case law (in countries with a tradition of precedent) and, where appropriate, customary practice.").

160. *See, e.g.*, Stephanie Sy & Lena I. Jackson, *Hundreds of Thousands of Stateless People are Living in Legal Limbo in the U.S.*, PBS NEWSHOUR, Apr. 5, 2022, https://www.pbs.org/newshour/show/hundreds-of-thousands-of-stateless-people-are-living-in-legal-limbo-in-the-u-s [https://perma.cc/U5VP-YUGX] ("Statelessness may be hard to grasp for many Americans, because the U.S. Constitution guarantees citizenship for anyone born here."); CTR. FOR MIGRATION STUD., STATELESSNESS IN THE UNITED STATES: A STUDY TO ESTIMATE AND PROFILE THE US STATELESS POPULATION 11 (2020) ("Generous US citizenship policies—anchored by the Fourteenth Amendment of the US Constitution's guarantee of citizenship to 'All persons born or naturalized in the United States, and subject to the jurisdiction thereof'—operate as a strong check against statelessness for those born in the United States.")

161. CTR. FOR MIGRATION STUD., STATELESSNESS IN THE UNITED STATES, *supra* note 161, at 3–5 (outlining the survey's methodology).

162. *See supra* Part III.

163. *See* Statelessness Convention, *supra* note 14, at art. 1(1) (emphasis added).

relevant government does not recognize a person's claim to citizenship.[164] This definition emphasizes the government's view as to whether the person is its citizen. In referring to "the operation of its law," the definition emphasizes, moreover, government practice rather than nationality law or even a broader body of legislation. This definition is not just a matter of customary international law;[165] it also makes excellent policy sense, because a person who is entitled to citizenship but whose state rejects them as a citizen cannot access the benefits of citizenship in practice.

The UNHCR states that

> To establish whether a State considers an individual to be its national, it is necessary to identify which institution(s) is/are the competent authority(ies) for nationality matters in a given country with which he or she has relevant links. Competence in this context relates to the authority responsible for conferring or withdrawing nationality from individuals, or for clarifying nationality status where nationality is acquired or withdrawn automatically. The competent authority or authorities will differ from State to State and in many cases there will be more than one competent authority involved.[166]

In the United States, there is no central form of national identification, nor one agency with exclusive authority in determining who is a national.[167] As seen above in Part II.B.3, many authorities are competent to assess claims to citizenship, including the Department of State, for purposes of issuing passports;[168] the Department of Justice, for determining whether a person has naturalized or is a U.S. citizen in removal proceedings;[169] federal courts, to issue declaratory judgments of citizenship;[170] and many others.

A person is stateless when they have sought and been denied a document or benefit incident to citizenship because of questions about their citizenship status and lack of any other citizenship. Thus, if a person whose birth is unregistered is denied access to registration in school

---

164. *See* Fisher, *'The Operation of Law', supra* note 25, at 260.

165. Int'l L. Comm'n, Rep. on the Work of its Fifty-Eighth Session, at 49, U.N. Doc. A/61/10 (2006) (noting that the Stateless Convention's definition of a stateless person can "no doubt be considered as having acquired a customary nature.").

166. UNHCR, Guidelines on Statelessness, *supra* note 160, at ¶ 27 (citation omitted).

167. Russell Berman, *The Obvious Voting-Rights Solution That No Democrat Will Propose*, THE ATLANTIC (Aug. 30, 2021) https://www.theatlantic.com/politics/archive/2021/08/voting-rights-national-id-card/619772/.

168. 22 C.F.R. § 51.40 (2007).

169. U.S. DEP'T' OF JUST., EXEC. OFF. OF IMMIGR. REV., IMMIGRATION COURT PRACTICE MANUAL, Limited Proceedings, 7.4(f) (last updated June 21, 2023), https://www.justice.gov/eoir/reference-materials/ic/chapter-7/4 [https://perma.cc/V8F4-86TZ].

170. 8 U.S.C. § 1503(a).

because they are unvaccinated, this would not make them stateless, because the reason for denial is unrelated to their citizenship status. Similarly, a person denied a job or a bank account for a lack of social security number would not suffice, because the entities denying access to a given benefit are private actors. But when a U.S. government agency denies a person a social security number, passport, or other privilege of U.S. citizenship, that would demonstrate that the U.S. government does not consider the person as its citizen. If no other government recognizes the person as a citizen, the person would be stateless.

The experiences of people who lack birth registration show that at least some of them are stateless, with many noting particularly the exclusion created by the lack of a social security number.[171] Many of them had sought to register their births and spent years attempting to secure documentation of their identity, with several of their situations unresolved even after these efforts. These experiences are similar to those of stateless people born outside the United States, particularly in challenges navigating bureaucratic situations that require proof of legal identity and challenges obtaining employment because of a lack of work authorization.[172]

This exploration of people who lack birth registration demonstrates that individuals born in the United States may experience statelessness. It may be only small numbers of people who lack birth registration and experience these forms of exclusion, but these individuals nonetheless experience great hardship.

## VI. CONCLUSION

In Yusuf Idris' classic short story "Death from Old Age," the registrar issued birth certificates, "ma[king] regular citizens, recognized by the state, out of new-born infants."[173] The story is astute in observing the dual function of birth registration: to document the facts of birth and to ensure state recognition of the legal identity and citizenship of

---

171.   *See supra* Part III.A.

172.   CTR. FOR MIGRATION STUD., *supra* note 161, at 68–73; *see also* Betsy L. Fisher, *Discretion in Immigration Law: A Partial Remedy for Stateless People in the United States*, 15 NE. U. L. REV. 359 (2023).

173.   IDRIS, *supra* note 1, at 123.

newborns. Despite widespread literature on birth registration in low- and middle-income countries,[174] no such data exists in the United States.[175]

This Article has demonstrated that at least some people born in the United States do not have their births registered as newborns, and without official documentation of the facts of their birth, they experience significant exclusion. The U.S. birth registration system demonstrates dual-concurrence federalism, in which a person must have documentation of their birth from the state and concurrence from federal agencies to be recognized as a U.S. citizen. A federal court noted in 1961:

> that citizenship of the United States is a very precious thing; that natural-born citizens very frequently have a great deal of difficulty in proving their status due to uncertainties of birth records and that this circumstance should not lead to a lack of stability of citizenship because, if it did, many a legitimate citizen of the United States would find himself deprived of it.[176]

Perhaps sixty years later, it is a small few rather than "many" a citizen that experiences these hardships, but the resulting deprivation that the individual faces is likely more acute because of the prevalence of birth registration in the United States.

The first step for a person who lacks birth registration to secure "stability of citizenship" will be to apply to state authorities to register their births through delayed processes.[177] These processes are governed

174. *See, e.g.*, Jazmine Hesham Elmolla, *Birth Registration in Crisis: Exploring a Rights-Based Approach to Birth Registration through the Experience of Syrian Refugees*, 31 INT'L J. REFUGEE L. 541 (Dec. 2019), https://doi-org.libproxy.law.umich.edu/10.1093/ijrl/eez043; Cyril Bennouna, Brooke Feldman, Rahmadi Usman, Rama Adiputra, Santi Kusumaningrum, and Lindsay Stark, *Using the Three Delays Model to Examine Civil Registration Barriers in Indonesia*, 11 PLoS ONE e0168405 (2016) doi:10.1371/journal. pone.0168405. https://journals.plos.org/plosone/ article?id=10.1371/journal.pone.0168405 [https://perma.cc/ZHQ9-M5BN]; Amiya Bhatia, Nancy Krieger, Jason Beckfield, Aluisio Barros, and Cesar Victora, *Are Inequities Decreasing? Birth Registration for Children under Five in Low-Income and Middle-Income Countries, 1999–2016*, BMJ GLOBAL HEALTH 4:e00192 (2019) https://gh.bmj.com/content/bmjgh/4/6/e001926.full.pdf [https://perma.cc/MU2J-5WDG]; Andrea Wendt, Franciele Hellwig, Ghada E. Saad, Cheikh Fate, Ties Boerma, Aluisio J.D. Barros, and Cesar G. Victora, *Birth Registration Coverage According to the Sex of the Head of Household: An Analysis of National Surveys from 93 Low- and Middle-income Countries*, 22 BMC PUBLIC HEALTH, 1942 (2022), https://bmcpublichealth.biomedcentral.com/ articles/10.1186/s12889-022-14325-z [https://perma.cc/89YQ-NZVG].

175. The most recent available studies on the completeness of birth registration in the United States are from 1934 and 1950. Sam Shapiro & Joseph Schachter, *Birth Registration Completeness United States, 1950*, 67 PUBLIC HEALTH REPS. (1896-1970) 513 (1952), https://doi.org/10.2307/4588130; P. K. Whelpton, *The Completeness of Birth Registration in the United States*, 29 J. AM. STAT. ASS'N 125 (1934).

176. Liacakos v. Kennedy, 195 F. Supp. 630, 634 (D.D.C. 1961).

177. United States government agencies such as the Department of State may challenge the U.S. citizenship of children with delayed birth registration, particularly those "born to noncitizen parents,

by state law, meaning that a person's ability to secure recognition as a citizen can be impacted significantly by variations in state law. A federal agency with relevant jurisdiction – a competent authority – may still refuse to recognize a person as a citizen despite their entitlement to citizenship under the Fourteenth Amendment. If such a person lacks citizenship anywhere else, that person is stateless.[178] This also means that the experience of statelessness in the United States is not confined to people born elsewhere.

Here, we heed the call to "scrutinize the legal framework and political conditions within which modern identity management systems are implemented to avoid perpetuating or expanding existing forms of exclusion."[179] The harms of unregistered birth is not borne evenly; requirements to carry identification have been used "to maintain a hold over *non*citizens, and to cleave those whom the majority perceived to be *unreliable* citizens"; they have been imposed "almost always . . . on people outside our circle of citizenship—on free blacks, on Chinese immigrants, on aliens, on (racialized) vagrants."[180] While lack of registration may impact people across racial, ethnic, and (formal) citizenship lines, we can assume that the impacts of non-registration of birth are disproportionately harsh for the children of immigrants, communities of color, and low-income individuals.

How can policy makers best address the challenges that individuals face in registering their births through delayed processes? The U.S. Congress could pass legislation that would require states to adopt consistent evidentiary rules and procedures. But federal legislation would likely result in higher evidentiary thresholds and thus excluding more U.S. citizens from access to their rights rather than safeguarding against the hardships experienced by unregistered individuals. State legislatures can also, as the Texas legislature did in response to Alecia Pennington's case, facilitate greater flexibility to allow people entitled to U.S. citizenship to register their births.

Within existing legal frameworks, state administrative agencies, legal aid providers, and social workers can assist unregistered individuals. State birth registrars can publish information about delayed registration processes, provide plain-language instructions to would-be registrants,

---

children born in rural areas or border regions, and children whose parents were marginalized by virtue of race or poverty." Remus, *supra* note 10, at 228.

178.  Stateless Convention, *supra* note 14, at art. 1(1).

179.  Jain, *supra* note 91, at 239.

180.  Jonathan Weinberg, *Proving Identity*, 44 PEPPERDINE L. REV. 731, 798, 734 (2017) (emphasis in original).

Akron Law Review, Vol. 57 [2025], Iss. 1, Art. 2

and train agency and court officials on delayed birth registration processes to ensure consistent and timely action on requests to register. Legal aid and *pro bono* lawyers and social workers can assist individuals to identify and obtain possible forms of evidence to support a request for birth registration and to navigate administrative and judicial birth registration petitions.

Attorneys could also support recognition of unregistered citizens through strategic litigation. Section 1503(a) provides a vehicle for people entitled to citizenship to petition for recognition of those claims. Recent jurisprudence, though, showed only petitions brought by individuals whom the federal government asserted may have born outside the United States. Attorneys could carefully select and support petitioners with unregistered births and who do not have competing possible places of birth. Such a petition could establish a precedent—or at least a model—for stateless citizens to access the privileges to which that their birth entitles them.