**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br>  Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>  Defendants. | Civil Action No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>  Defendants. | Civil Action No. 25-0955 (CKK) |

**DEMOCRATIC PARTY PLAINTIFFS' OPPOSITION TO MOTION TO AMEND THE SCHEDULING ORDER AS TO SECTION 7 OF THE EXECUTIVE ORDER (ECF NO. 68)**

The Democratic Party Plaintiffs strongly oppose any modification to the existing and previously agreed-upon preliminary injunction briefing schedule. That includes any request to retroactively limit the scope of schedule or to delay resolution of any part of the motion that the Democratic Party Plaintiffs filed on April 7 in accordance with that schedule. The existing schedule was proposed by the LULAC and League Plaintiffs and agreed to by the Democratic Party Plaintiffs. ECF No. 30. It was then entered by the Court. ECF No. 31. Modifying it after the Democratic Party Plaintiffs have filed their preliminary injunction motion in reliance on that schedule would not only be fundamentally unjust, it would exacerbate the ongoing irreparable harm that led them to promptly seek preliminary relief from the President's unlawful Executive Order ("E.O.") in the first place. *See* ECF No. 53.

Despite having previously proposed the exact briefing schedule entered by the Court, the LULAC Plaintiffs now request that the Court modify that schedule as to a single set of claims—claims against Section 7 of the E.O.—and ask that resolution of the Democratic Party Plaintiffs' preliminary injunction motion as to those claims be delayed by over a month, from April 16 to May 19, so that the LULAC Plaintiffs may move for summary judgment on their Section 7 claims on the later schedule. *See* ECF No. 68 at 2–3.[1] Respectfully, the LULAC Plaintiffs have not shown cause for such delay or for placing a post hoc and arbitrary restriction on the Democratic Party Plaintiffs' right to seek preliminary relief that they requested in their Prayer for Relief and have now extensively briefed on the previously agreed upon timeline.

The LULAC Plaintiffs claim they make this request so that they might have "the opportunity to address the merits of their [own] Section 7 claims." *Id.* at 5. But no one is denying

---

[1] All references to the docket are to docket number 25-cv-946 unless otherwise indicated.

1

them that opportunity. The LULAC Plaintiffs could have addressed their Section 7 claims in their own preliminary injunction motion filed on April 7.[2] Moreover, they remain free to brief these claims at *any time*, including by later summary judgment motion. Nor do the Democratic Party Plaintiffs object to the Court allowing the LULAC Plaintiffs to file a supplemental brief as to their Section 7 claims, or to permit the federal Defendants a short additional response to address any novel arguments raised by LULAC Plaintiffs.

But the LULAC Plaintiffs' strategic preference that the Court *not* consider any briefing on the Section 7 claims made by any Plaintiffs until the LULAC Plaintiffs file a motion for summary judgment on their unilaterally preferred timetable does not provide a justifiable reason to prejudice the Democratic Party Plaintiffs' clear right to seek preliminary relief on their Section 7 claims on the previously entered schedule.

The Court should deny the motion and maintain the existing schedule.

## BACKGROUND

President Trump signed Executive Order 14248, entitled *Preserving and Protecting the Integrity of American Elections*, on March 25. In the E.O., President Trump unlawfully seeks to impose radical changes on a wide array of ways in which elections across the country are administered—changes that threaten to severely harm the electoral prospects of the Democratic Party, deeply injure the Democratic Party Organizations' essential missions, and run roughshod over the voting rights of their members and supporters, in many cases leading to their complete disenfranchisement. *See DNC v. Trump*, No. 25-cv-952-CKK, ECF No. 1 ¶ 5 (D.D.C. Mar. 31,

---

[2] Indeed, the LULAC Plaintiffs agree that "Section 7 is causing ongoing and irreparable harm and confusion and request that its unlawfulness be fully and quickly adjudicated." ECF No. 72 at 3–4. They just want to brief the issue on their own belated schedule.

2

2025) ("Democratic Party Pls.' Compl."); *see also* ECF No. 53-1 at 9–20; 36–43. Among the E.O.'s many patently unlawful dictates is Section 7(a), which orders the Attorney General to immediately begin taking "all necessary action . . . against States" to nullify numerous state ballot receipt deadline laws, E.O. § 7(a), based on the President's flawed conclusion that such laws violate federal law (they don't), *see* ECF No. 53-1 at 22–29. This is a coercive threat that is looming *now* over each of the nearly 30 States that have laws that allow for the counting of timely-cast ballots that arrive in the mail after election day—including many in which the Democratic Party Plaintiffs' members serve as Governors, and in which the Democratic Party Plaintiffs have tens of millions of voters—promising retribution unless those States abandon those laws and reject those ballots. *See* Democratic Party Pls.' Compl. ¶¶ 103–109; *see also* ECF No. 53-1 at 37–39. As explained in the Democratic Party Plaintiffs' Complaint and motion for a preliminary injunction, those laws are especially crucial to Democratic Party Plaintiffs' competitive interests, and if they are going to be radically altered, the Democratic Party Plaintiffs need to know that now, as they make critical strategic decisions about how to prepare for coming elections and how to best protect the constitutional rights of their supporters. *See* Democratic Party Pls.' Compl. ¶¶ 72–77; *see also* ECF No. 53-1 at 9–10, 13–14, 17.

On March 31, the Democratic Party Plaintiffs and LULAC Plaintiffs filed separate lawsuits in this district challenging numerous provisions of the E.O., including sections 2, 3, 4, and 7. *See* Democratic Party Pls.' Compl., Prayer for Relief ¶¶ A, B; *see also* ECF No. 1 ("LULAC Pls.' Compl."), Prayer for Relief ¶ A. Both complaints requested preliminary relief without reservation

as to any specific provision. *See* LULAC Pls.' Compl., Prayer for Relief.[3] The Democratic Party Plaintiffs' Complaint expressly requested that the Court "[p]reliminarily and permanently enjoin" the Attorney General and Department of Justice from enforcing Section 7(a) and also "[p]reliminarily and permanently enjoin" the Election Assistance Commission and its Commissioners from enforcing Section 7(b). *See* Democratic Party Pls.' Compl., Prayer for Relief ¶¶ E, F.

On April 1, the Court ordered the Democratic Party Plaintiffs to confer with all parties to each of the three cases about consolidation. *See* No. 25-cv-952, ECF No. 15 at 2. The same order advised that "any motion for preliminary relief in this matter" should address various issues as to "each claim" for which they moved for preliminary relief. *Id.* The parties conferred as instructed, agreed that consolidation was proper, and moved the Court for consolidation, while requesting the right to file separate motions and briefs. *See* No. 25-cv-952, ECF No. 18 at 2. On April 3, the Court issued an order directing Plaintiffs to consolidate briefing to the extent "practicable," but recognizing that different Plaintiffs may need to "request different relief." No. 25-cv-952, ECF No. 20 at 4.

On April 4, the LULAC and League Plaintiffs filed a motion seeking clarification as to whether they could file separate briefs from the Democratic Party Plaintiffs. *See* ECF No. 30. The Democratic Party Plaintiffs consented to the request given their "distinct interests," including the "additional Executive Order provisions challenged" and "additional claims asserted" in their Complaint. *Id.* at 4–5. LULAC and the League's motion for clarification noted that both groups of

---

[3] On April 1, the League Plaintiffs also filed suit in this district, challenging Sections 2 and 4—but not Section 7— of the E.O. *See League of Women Voters v. Trump*, No. 25-cv-955, ECF No. 1 (D.D.C Apr. 1, 2025). Because they do not challenge Section 7, League Plaintiffs take no position here. *See* ECF No. 68 at 6.

4

Plaintiffs would file separate motions for preliminary relief by April 7. *Id.* at 2–3. The proposed order submitted by the LULAC and League Plaintiffs further asked the Court to set an April 14 response deadline for Defendants, and to set a reply deadline for Plaintiffs on April 16. Shortly thereafter, the Court issued an Order entering the briefing schedule that adopted an April 7 deadline for preliminary injunction motions, including as to the "Democratic Party Plaintiffs['] . . . separate Motion for a Preliminary Injunction," ECF No. 31 at 3, and entered the remainder of the briefing schedule requested by LULAC and the League in their proposed order. Nothing in the Court's Order restricted the scope of any motion for preliminary relief, nor was any such restriction requested in the LULAC Plaintiffs' motion for clarification or proposed order. *See generally* ECF Nos. 30, 31. On April 7, the League Plaintiffs, LULAC Plaintiffs and the Democratic Party Plaintiffs each filed their motions for preliminary injunction, in compliance with the Court's Order. *See* ECF Nos. 34, 53.

## DISCUSSION

In their motion filed this morning, the LULAC Plaintiffs seek to retroactively and unilaterally modify the pre-existing scheduling order to effectively prohibit preliminary injunction briefing on claims against Section 7 of the E.O by delaying resolution of the Democratic Party Plaintiffs' motion seeking preliminary relief on those claims until the LULAC Plaintiffs file a summary judgment brief at the end of the month. *See* ECF No. 68 at 3. The LULAC Plaintiffs seek this relief so that they may have "the opportunity to address the merits of their Section 7 claims" in that forthcoming motion, which they intend to file nearly three weeks from today. *Id.* at 5. Respectfully, the LULAC Plaintiffs' litigation decisions are not sufficient reason to alter the briefing schedule in a way that would clearly prejudice the Democratic Party Plaintiffs. Nothing in the Court's scheduling order prohibited the LULAC Plaintiffs from briefing their claims against

5

Section 7 of the E.O. in their own preliminary injunction motion, and the Democratic Party Plaintiffs have no objection to the LULAC Plaintiffs seeking relief on their claims against Section 7 at the time of their own choosing, whether by later summary judgment motion or through a supplemental filing to their existing preliminary injunction motion. *Supra* at 2. Simply put, there is no actual problem here that needs solving.

The LULAC Plaintiffs' desire to file their own later motion for permanent relief as to Section 7—and their choice to forego seeking such relief in their own preliminary injunction motion—is no reason to delay the *Democratic Party Plaintiffs'* timely and already-briefed request for preliminary relief as to that provision. *See* ECF No. 53-1 at 3–4, 10–11, 13–14, 17, 22–29, 37–41. The Democratic Party Plaintiffs indicated in their Complaint that they sought preliminary relief from Section 7. *See* Democratic Party Pls.' Compl., Prayer for Relief ¶¶ E, F. The Court's order setting a schedule imposed no restriction on seeking such preliminary relief. *See* ECF No. 31. No party ever sought such a restriction prior to the April 7 deadline. *See* ECF No. 30. And no federal or local rule otherwise restricts the Democratic Party Plaintiffs' right to seek preliminary relief on their own claims based on the unilateral (and here, belatedly expressed) preferred approaches of other Plaintiffs in a consolidated action. *See generally* Fed. R. Civ. P. 65; LCvR 65.1; *cf. Hall v. Hall*, 584 U.S. 59, 70–76 (2018).

The Court should not now impose such a restriction retroactively. The Democratic Party Plaintiffs moved swiftly for preliminary relief from Section 7 because *it is irreparably harming them*. *See* ECF No. 53-1 at 37–39. To that end, the Democratic Party Plaintiffs expended extraordinary resources to not only prepare a comprehensive motion for preliminary relief but also to swiftly introduce six declarations—including from the Party's legislative leaders in a coordinate branch of government—stressing the ongoing irreparable harm caused by President Trump's

assault on state ballot receipt laws that put the Democratic Party Plaintiffs at a competitive disadvantage, and is currently informing (and impeding) their strategic choices. *See* ECF Nos. 53-2–53-7. These laws are currently in place—and have been central to the resource allocation and strategy decisions of the Democratic Party Plaintiffs for many election cycles—in nearly 30 States and it cannot be overemphasized the dramatic measures that the Party Plaintiffs will have to take unless the E.O. is enjoined. Making seismic changes like the ones that will be required to alter and rebuild programs of these magnitudes is like trying to stop a large container ship already in motion. And each day that passes with the E.O.'s declaration that all such state laws are illegal causes irreparable harm to the Democratic Party Plaintiffs as they prepare for coming elections.

    In other words, the harm to the Democratic Party Plaintiffs is not limited to the obvious harm of directly burdening how Democratic Party Plaintiffs' members and supporters vote, *e.g.*, ECF No. 53-2 ¶¶ 6–7 (Leader Jeffries describing the "devastating impact" Section 7 will have on Democratic voters), but also includes the immediate harms that are being imposed now on the Democratic Party Plaintiffs' efforts to prepare, budget, and strategize for campaigns in dozens of states—efforts underway *at this very moment*, yet cast into limbo by the President's attack on ballot receipt deadlines, *e.g.*, ECF No. 53-4 ¶ 17; 53-6 ¶ 15. It further includes distinct harms, not shared by any other plaintiffs, to the DGA and its members—Democratic Governors who face loss of funding to their States, and harm to their electoral prospects, if they do not acquiesce to the Presidents' dictates in Section 7. *See* ECF No. 53-5. ¶¶ 4–12.

    The fact that the LULAC Plaintiffs elected not to pursue similar relief—or simply wish to brief their Section 7 claims on a separate timeline or at summary judgment—is no reason to delay or effectively deny the Democratic Party Plaintiffs' request for preliminary relief to redress the irreparable that those Plaintiffs are suffering. To do so would impose extraordinary prejudice on

7

the Democratic Party Plaintiffs, permitting another party's preferred briefing schedule to trump their amply demonstrated irreparable harm, and essentially cast aside the "distinct interests" that warranted separate preliminary injunction motions in the first place. ECF No. 30 at 4–5.

Further still, granting the relief requested by the LULAC Plaintiffs would unfairly deprive the Democratic Party Plaintiffs of their procedural right to seek preliminary relief. The LULAC Plaintiffs' request, in effect, is that their later-in-time motion for *permanent* relief be aligned with Democratic Party Plaintiffs' already-briefed motion for *preliminary* relief. That is improper, consolidation notwithstanding. The Supreme Court has been clear that consolidation "is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, *or change the rights of the parties*." *Hall*, 584 U.S. at 70 (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933)) (emphasis added). The underlying actions do "not lose their separate identity because of consolidation." *Id.* at 76 (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2382 (3d ed. 2008)). Thus, consolidation should not "deprive any party of any substantial rights which [they] may have possessed had the actions proceeded separately." *Id.* (citation omitted). There is no dispute that the Democratic Party Plaintiffs would have had the right to seek preliminary relief on their claims against Section 7 absent consolidation, and they should not be deprived of that significant right at the insistence of a consolidated party with "distinct interests." ECF No. 30 at 2, 3 (noting distinct interests of nonpartisan plaintiffs).

Finally, the relevant equities tip strongly in favor of maintaining the existing schedule. On the one hand, the LULAC Plaintiffs chose not to seek preliminary relief as to their Section 7 claims yet still may obtain such relief through either supplemental briefing, *supra* n.1, or as an ancillary result of any such relief obtained by the Democratic Party Plaintiffs. And they may, of course, seek

8

a permanent injunction through their own latter motion. In other words, the LULAC Plaintiffs face no prejudice under the existing schedule. The LULAC Plaintiffs complain that they may not be able to offer *party* briefing in any appealable order stemming from the Democratic Party Plaintiffs' motion. *See* ECF No. 68 at 2. It is not clear that is even correct, as the LULAC Plaintiffs could move to intervene on appeal. They could also file an amicus brief or seek to consolidate any subsequent appeal stemming from the LULAC Plaintiffs' own forthcoming motion for relief on their claims against Section 7.

In contrast, granting the proposed modification effectively deprives the Democratic Party Plaintiffs of their right to seek preliminary relief redressing ongoing irreparable harm. And it would do so *retroactively* after the Democratic Party Plaintiffs poured significant resources into seeking such relief on the very timeline that the LULAC Plaintiffs proposed for resolution of such motions. Further still, it would do so pursuant to a proposed schedule with briefing deadlines considerably more generous to Defendants than those provided under this Court's own rules. *Compare* LCvR 65.1 (permitting defendants 7 days to respond to application for a preliminary injunction), *with* ECF No. 68 at 3 (proposing that defendants here be given 14 days to response to the LULAC Plaintiffs' motion and effectively 35 days to respond to the Democratic Party Plaintiffs' motion as to Section 7). Such a schedule is not necessary or proper for what the Democratic Party Plaintiffs agree are largely "pure[] legal claims," ECF No. 68 at 2, that have already been extensively briefed in other federal litigation. In view of those lopsided interests, the LULAC Plaintiffs have no shown cause for the relief sought in their motion.

## CONCLUSION

For the reasons stated above, the Court should deny the motion to modify the existing schedule. Alternatively, it should substantially maintain the existing schedule, but permit limited supplemental briefing if LULAC Plaintiffs wish to seek preliminary relief as to section 7.

Finally, to the extent the Court does grant the motion, the Democratic Party Plaintiffs respectfully request the opportunity to file their own motion for summary judgment in accordance with any schedule set by the Court.

Dated: April 9, 2025

Respectfully submitted,

*/s/ Marc E. Elias*
**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Aria C. Branch (DC 1014541)
Lalitha D. Madduri (DC 1659412)
Christopher D. Dodge (DC 90011587)
Jacob D. Shelly (DC 90010127)
James J. Pinchak (NY 5965397)*
Julie Zuckerbrod (DC 1781133)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave. Suite 2100
Seattle, WA 98101
T: (206) 656-0177

*Admitted pro hac vice*