**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br>　　　　Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>　　　　Defendants. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>　　　　Defendants. | Civil Action No. 25-0955 (CKK) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO LEAGUE AND LULAC**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 2

   A.    Executive Order 14,248 ......................................................................................... 2

   B.    Procedural History ................................................................................................. 3

      1.   Plaintiffs' Complaints ...................................................................................... 3

      2.   Plaintiffs' Motion for Preliminary Injunction .............................................. 4

   C.    EAC Background .................................................................................................... 5

III.    STANDARD OF REVIEW ...................................................................................... 6

IV.     ARGUMENT .............................................................................................................. 7

   A.    Plaintiffs Do Not Have Standing ........................................................................ 8

      1.   Plaintiffs' Alleged Harm is Neither Actual nor Imminent, nor Caused by the Executive
Order ............................................................................................................................ 9

      2.   Plaintiffs' Alleged Costs Do Not Confer Standing ..................................... 11

      3.   Plaintiffs Have Not Established Associational Standing .............................. 13

   B.    Preliminary Injunction ......................................................................................... 16

      1.   Likelihood of Success on Merits ..................................................................... 16

         a.   Section 2(a) Accords with Separation-of-Powers Principles ...................... 17

         b.   There Has Been no Usurping of Power from Congress or the EAC ....... 18

      2.   Irreparable Harm .............................................................................................. 20

         a.   Plaintiffs Fail to Demonstrate that Irreparable Harm Would Result in the Absence
of a Preliminary Injunction .................................................................................. 20

         b.   Plaintiffs cannot satisfy *Newby*'s organizational harm standards ........... 22

         c.   Any harm here would not be "beyond remediation" ................................. 25

      3.   Balance of Equities/Public Interest ................................................................ 26

   C.    Plaintiffs' Claims Lack Prudential Ripeness Necessary for Judicial Review .............. 27

   D.    The Court Must Require a Bond if it Issues a Preliminary Injunction .......................... 30

V.      CONCLUSION .......................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*A.B.-B. v. Morgan*, 548 F. Supp. 3d 209 (D.D.C. 2020)....................................................................7

*Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D.N.C. 2016)...........................................................23

*Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan*, 870 F.2d 723 (D.C. Cir. 1989) .......................28

*Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382 (D.C. Cir. 2012) ........................................................27

*Arizona v. Inter Tribal Council of Ariz., Inc.* ("*ITCA*"), 570 U.S. 1 (2013) ..............................19

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) .................................................................... 8, 13

*Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462 (D.C. Cir. 2009) .......... 8

*AstraZeneca Pharms. LP v. Food & Drug Admin.*, 850 F. Supp. 2d 230 (D.D.C. 2012)............17

*Attias v. CareFirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017)..................................................................8

*Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331 (D.D.C. 2009) ........................7

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002)................18

*Brown v. District of Columbia*, 888 F. Supp. 2d 28 (D.D.C. 2012).........................................20, 21

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) .............................................................................17

*Cal. Medical Ass'n v. FEC*, 453 U.S. 182 (1981)............................................................................8

*Center for Democracy & Technology v. Trump*, 507 F. Supp. 3d 213 (D.D.C. 2020), *vacated as moot sub nom. Center for Democracy & Technology v. Biden*, No. 21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9, 2021) ...........................................................................................................................11

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)* ..........................passim

*Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021)* ........................................... 16, 27, 28, 29

*Clapper v. Amnesty Int'l. USA*, 568 U.S. 398 (2013)* ............................................. 8, 9, 11, 12

*Common Cause v. Trump*, 506 F. Supp. 3d 39 (D.D.C. 2020)* ..................................................18

*DCCC v. Federal Election Comm'n*, No. 24-cv-2935, 2024 WL 4650907 (D.D.C. Nov. 1, 2024)...........17

*Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013).........................................10, 11

*DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999).............................................................30

*Elec. Priv. Info. Ctr. v. Pres. Adv. Comm. on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017)........16, 17

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363 (D.D.C. 2012) ..................29

*Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) ......................................................11

*Fla. State Conf. of Branches & Youth Units of the NAACP v. Byrd*, 680 F. Supp. 3d 1291 (N.D. Fla. 2023) ........................................................................................................................................24

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) ...........................................7

*Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)* .........................12, 13

*Gilliard v. McWilliams*, 315 F. Supp. 3d 402 (D.D.C. 2018) ..................................................25, 26

*Greater Birmingham Ministries v. State*, 161 F. Supp. 3d 1104 (N.D. Ala. 2016)*................24

*Hanson v. Dist. of Columbia*, 120 F.4th 223 (D.C. Cir. 2024) ......................................................26

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ...............................................................13

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ...................................13

*In re Al-Nashiri*, 47 F.4th 820 (D.C. Cir. 2022) ...........................................................................27

*Ind. State Conf. of the NAACP v. Lawson*, 326 F. Supp. 3d 646 (S.D. Ind. 2018) ...................23

*League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155 (N.D. Fla. 2012) .........24

*League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998 (W.D. Mo. 2018) ..............23

*League of Women Voters of the U.S. v. Newby*, 195 F. Supp. 3d 80 (D.D.C.) ............................................21

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)* ................................................passim

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..............................................................................2, 9, 15

*Marx v. General Revenue Corp.*, 568 U.S. 371 (2013)..............................................................................17

*Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684 (D.C. Cir. 2015)....................................................................8

*Munaf v. Geren*, 553 U.S. 674 (2008)................................................................................................passim

*N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 16-cv-1274, 2016 WL 6581284
(M.D.N.C. Nov. 4, 2016) ........................................................................................................................24

*Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6 (D.C. Cir. 2011).............................................................8

*Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14 (D.D.C. 2018) ....................................................23, 26

*Nat'l Park Hosp. Ass'n v. Department of the Interior*, 538 U.S. 803 (2003) ..............................................27

*Nken v. Holder*, 556 U.S. 418 (2009).....................................................................................................26

*Obama v. Klayman*, 800 F.3d 559 (D.C. Cir. 2015) ................................................................................17

*Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198 (S.D.N.Y. 2021) ............................................18

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27 (D.C. Cir. 1992) ...........10

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) ........................................................24

*Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1 (D.D.C. 2018)............................................22

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ..................................................................................................27

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500 (D.C. Cir. 2016) ................................26

*Raines v. Byrd*, 521 U.S. 811 (1997) ........................................................................................................9

*Saline Parents v. Garland*, 88 F.4th 298 (D.C. Cir. 2023), *cert. denied*, 145 S. Ct. 144 (2024) .................9

*Sandoz, Inc. v. Food and Drug Admin.*, 439 F. Supp. 2d 26 (D.D.C. 2006), *aff'd* No. 06-5204, 2006 WL
2591087 (D.C. Cir. Aug. 30, 2006) ......................................................................................................1, 6

*Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22 (D.D.C. 2010) ......................................................7

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108 (D.D.C. 2015) ...............................26

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) ...................................................................................7

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)* ................................................................................14

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ...........................................................................25

*Travelers United, Inc. v. Hyatt Hotels Corp.*, — F. Supp. 3d —, 2025 WL 27162, (D.D.C. 2025)*..13, 14,
15, 16

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) ...........................10

*United States v. Chem. Found.*, 272 U.S. 1 (1926).....................................................................................28

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ..........................................................................................10

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .....................................................................1, 7

*Wis. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) .......................................................................20, 21

## Statutes

18 U.S.C. § 611 ........................................................................................................................................26

44 U.S.C. § 3507(a)–(b).........................................................................................................................6, 28

5 U.S.C. § 553 ........................................................................................................................................6, 28

5 U.S.C. § 704 ..........................................................................................................................................25

52 U.S.C. § 20505(a)(1) .............................................................................................................................5

52 U.S.C. § 20508(a) ..............................................................................................................................5, 6

52 U.S.C. § 20508(a)(1) .........................................................................................................................6, 28

52 U.S.C. § 20508(b)(1) ................................................................................................ 18, 19
52 U.S.C. § 20921 ............................................................................................................... 5
52 U.S.C. § 20928 .......................................................................................................... 6, 28
52 U.S.C. § 20929 .......................................................................................................... 5, 19
Help America Vote Act of 2002 ("HAVA"), Pub. L. No. 107-252, 116 Stat. 1666 ...................... 5
U.S. Const. amend. XXVI ................................................................................................. 26

Other Authorities

Executive Order 14,248, "Preserving and Protecting the Integrity of American Elections," 90 Fed. Reg. 14005 (Mar. 25, 2025)* ........................................................................................ passim
Safeguard American Voter Eligibility Act,  H.R. 22, 119th Cong. (2025) ................................. 12

**Rules**

Fed. R. Civ. Pro. 65(c) ...................................................................................................... 30

**Regulations**

52 U.S.C. § 20508(a)(2) ......................................................................................... 6, 10, 18, 28
75 Fed. Reg. 47729 ............................................................................................................. 6
90 Fed. Reg. 11159 ........................................................................................................ 6, 28

## I.    INTRODUCTION

Defendants[1] request that this Court deny League and LULAC Plaintiffs'[2] demand for a preliminary injunction that seeks to enjoin the implementation of President Trump's Executive Order, 14,248, which protects the integrity of United States elections.

Like the DNC Plaintiffs in their Motion, Plaintiffs here likewise fail to meet the very high bar required for the extraordinary relief they seek.  A preliminary injunction is an "extraordinary and drastic remedy" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) and "must be sparingly granted." *Sandoz, Inc. v. Food and Drug Admin.*, 439 F. Supp. 2d 26, 30 (D.D.C. 2006), *aff'd* No. 06-5204, 2006 WL 2591087 (D.C. Cir. Aug. 30, 2006).  Plaintiffs must show they are "likely to succeed on the merits" and "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs cannot demonstrate a likelihood of success on the merits; their claims, exactly like the DNC Plaintiffs, amount to nothing more than a politically motivated design to stop the President's Executive Order.

Again like DNC Plaintiffs in their Motion, League and LULAC Plaintiffs provide no nexus between the Presidential Executive Order and the injury that they speculate will befall unnamed and unidentified voters.  An "injury in fact" must be "concrete and particularized," "actual or imminent" and not "conjectural" or "hypothetical." *Lujan v. Defs. of Wildlife*, 504

---

[1] Defendants in this Motion include the Executive Office of the President, Department of Justice, Department of Defense, Election Assistance Commission, Federal Voting Assistance Program, Pamela Bondi, Peter B. Hegseth, Donald L. Palmer, Thomas Hicks, Christy McCormick, J. Scott Wiedmann, and Brianna Schletz.
[2] League and LULAC Plaintiffs include League of Women Voters Education Fund, League of Women Voters of the United States, League of Women Voters of Arizona, Hispanic Federation, National Association for the Advancement of Colored People, OCA – Asian Pacific American Advocates, Asian and Pacific Islander American Vote, League of United Latin American Citizens, Secure Families Initiative, and Arizona Students' Association.

U.S. 555, 560–61 (1992).  It is telling that of all the Plaintiffs in this case, *none* are individually named voters who claim they would be injured but for this Court's immediate intervention.  And these Plaintiffs have thus far been unable to identify by name the voters they purport to represent.

The League and LULAC Plaintiffs cannot point to a *single* action to implement this Executive Order that has caused harm remediable by this Court.  Because their alleged harms are hypothetical and speculative, Plaintiffs cannot establish standing to assert them.  Again, this Court cannot substitute its judgment for the Attorney General's prosecutorial discretion in determining whether and when to bring enforcement actions regarding the Election Day statutes. Preliminary injunctive relief is an extraordinary remedy, and the burden lies on Plaintiffs to show that they have a substantial likelihood of success, that they would suffer irreparable harm, and that the balance of the equities lies in their favor.  They fail at every turn.  This Court should deny League and LULAC Plaintiffs' Motion along with the DNC Plaintiffs' motion.

## II.    BACKGROUND

### A.  Executive Order 14,248

On March 25, 2025, President Trump issued Executive Order 14,248, entitled "Preserving and Protecting the Integrity of American Elections," 90 Fed. Reg. 14005 (Mar. 25, 2025) ("Executive Order"; sections cited as "EO § n").[3]  The Executive Order explains that "[f]ree, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic.  The right of American citizens to have their votes

---

[3] Federal Register, Preserving and Protecting the Integrity of American Elections (Mar. 28, 2025), https://www.federalregister.gov/documents/2025/03/28/2025-05523/preserving-and-protecting-the-integrity-of-american-elections.

properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election." *Id.* § 1. "Under the Constitution, State governments must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error." *Id.* President Trump declared that "[i]t is the policy of [his] Administration to enforce Federal law and to protect the integrity of our election process." *Id.*

For example, while "[s]everal Federal laws, including 18 U.S.C. §§ 1015 and 611, prohibit foreign nationals from registering to vote or voting in Federal elections . . . States fail adequately to vet voters' citizenship, and, in recent years, the Department of Justice has failed to prioritize and devote sufficient resources for enforcement of these provisions." *Id.* In furtherance of that policy, and specifically "[t]o enforce the Federal prohibition on foreign nationals voting in Federal elections," the Executive Order stated that "the Election Assistance Commission [("EAC")]" "shall take appropriate action to require, in its national mail voter registration form [("Federal Form")] issued under 52 U.S.C. 20508," "documentary proof of United States citizenship [("DPOC")] consistent with 52 U.S.C. 20508(b)(3)." *Id.* § 2(a)(i). "Nothing in [this Executive Order]" is to "be construed to impair or otherwise affect [] the authority granted by law to an executive department or agency, or the head thereof[.]" *Id.* § 1(a)(i)." And the Executive Order must "be implemented consistent with applicable law[.]" *Id.* § 11(b).

### B. Procedural History

#### 1. Plaintiffs' Complaints

On March 31, 2025, Plaintiffs League of United Latin American Citizens, Secure Families Initiative, and Arizona Students' Association ("LULAC Plaintiffs") filed a complaint in this Court challenging, *inter alia*, the President's legal authority to direct EAC to require DPOC

pursuant to EO § 2, under an *ultra vires* separation of powers constitutional claim. *League of United Latin American Citizens v. Executive Office of the President*, No. 1:25-cv-00946 (D.D.C. Mar. 31, 2025). LULAC Plaintiffs also made several other claims related to EO § 2 under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), and the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501, *et seq*. On March 31, 2025, Plaintiffs Democratic National Committee, Democratic Governors Association, DSCC, DCCC, U.S. Senate Minority Leader Charles E. Schumer, and U.S. House of Representatives Minority Leader Hakeem S. Jeffries ("Democratic Party Plaintiffs") filed a complaint in this Court challenging several sections of the Executive Order, including EO § 2, on constitutional grounds as well as under the APA and the Privacy Act, 5 U.S.C. § 552a, and naming numerous defendants, including President Trump, the EAC, and the EAC Commissioners. *Democratic Nat'l Comm. v. Trump*, No. 1:25-cv-00952 (D.D.C. Mar. 31, 2025). And on April 1, 2025, Plaintiffs League of Women Voters Education Fund, League of Women Voters of the United States, League of Women Voters of Arizona, Hispanic Federation, National Association for the Advancement of Colored People, OCA – Asian Pacific American Advocates, and Asian and Pacific Islander American Vote ("League Plaintiffs") filed a complaint ("LWV complaint") in this Court against President Trump, the EAC, and the EAC Commissioners. *League Of Women Voters Educ. Fund v. Trump*, No. 1:25-cv-00955 (D.D.C. Apr. 1, 2025). The League Plaintiffs challenge EO §§ 2 and 4, claiming those sections violate federal law and seeking equitable relief.

### 2. Plaintiffs' Motion for Preliminary Injunction

On April 7, 2025, the Non-partisan Plaintiffs filed a joint motion for preliminary injunction. League and LULAC Plaintiffs' Mot. for Prelim. Inj., ECF No. 34; *see also* League and LULAC Plaintiffs' Mem. In Supp. Of Mot. for Prelim. Inj., ECF No. 34-1 ("Mem.");

[Proposed] Order, ECF No. 34-33.  Plaintiffs ask this Court to preliminarily enjoin the EAC and its Commissioners from implementing EO § 2(a).  Mem. 35.

### C.  EAC Background

The National Voter Registration Act of 1993 ("NVRA") requires States to "accept and use" a uniform federal form ("Federal Form") to register voters for federal elections.  52 U.S.C. § 20505(a)(1).  The Federal Form is developed by the EAC, a bipartisan, "independent entity," 52 U.S.C. § 20921, created under the Help America Vote Act of 2002 ("HAVA").  Pub. L. No. 107-252, 116 Stat. 1666, 1726 (codified as amended at 52 U.S.C. §§ 20901 *et seq*.).

The EAC has limited rulemaking authority and cannot issue any rule, promulgate any regulation, or take any other action that imposes any requirement on any State or unit of local government, except to the extent permitted under 52 U.S.C § 20508(a).  52 U.S.C. § 20929.  The EAC is statutorily required to perform the following duties:

> (1) in consultation with the chief election officers of the States, shall prescribe such regulations as are necessary to carry out paragraphs (2) and (3);
>
> (2) in consultation with the chief election officers of the States, shall develop a mail voter registration application form for elections for Federal office;
>
> (3) not later than June 30 of each odd-numbered year, shall submit to the Congress a report assessing the impact of this chapter on the administration of elections for Federal office during the preceding 2-year period and including recommendations for improvements in Federal and State procedures, forms, and other matters affected by this chapter; and
>
> (4) shall provide information to the States with respect to the responsibilities of the States under this chapter.

52 U.S.C. § 20508(a).  The EAC thus conducts changes to the Federal Form consistent with 52 U.S.C. § 20508(a).

To implement EO § 2 and add a DPOC requirement, the EAC must follow certain statutory procedures.  52 U.S.C. § 20508(a).  The EAC must first prepare an update to the regulations to allow for new content on the form.  Ex. 1, Schletz Decl. ¶ 2.  Implementing new regulations requires approval of at least three Commissioners.  Ex. 1, Schletz Decl. ¶ 3; *see also* 52 U.S.C. § 20928.  The regulations update must then follow the Administrative Procedure Act's (APA) notice-and-comment rulemaking procedures.  Ex. 1, Schletz Decl. ¶ 4; *see also* 5 U.S.C. § 553.  The EAC must also consult with the chief election officers of the States to prescribe the content of the Federal Form.  Ex. 1, Schletz Decl. ¶ 4; 52 U.S.C. § 20508(a)(1).  This consultation requirement may be satisfied by the public comment period provided in a notice of proposed rulemaking.  Ex. 1, Schletz Decl. ¶ 4; *see also* 75 Fed. Reg. 47729.  Following the public comment period, the EAC must consult with the chief election officers of the States to develop a revised Federal Form.  Ex. 1, Schletz Decl. ¶ 5; *see also* 52 U.S.C. § 20508(a)(2).  Following consultation, three Commissioners must then approve the issuance of a revised Federal Form.  Ex. 1, Schletz Decl. ¶ 6; 52 U.S.C. § 20928.  And the EAC must comply with the Paperwork Reduction Act requirement that the EAC submit the new form as an information collection to the Director of the Office of Management and Budget for approval.  Ex. 1, Schletz Decl. ¶ 7; *see also* 44 U.S.C. § 3507(a)–(b); 90 Fed. Reg. 11159.

## III.    STANDARD OF REVIEW

"A preliminary injunction is an ***extraordinary and drastic remedy***.  It is never awarded as of right," *Munaf*, 553 U.S. at 689–90 (cleaned up) (emphasis added), and "must be sparingly granted," *Sandoz, Inc. v. Food and Drug Admin.*, 439 F. Supp. 2d 26, 30 (D.D.C. 2006) (citation omitted) (finding merely economic harm insufficient to justify injunctive relief), *aff'd* No. 06-5204, 2006 WL 2591087 (D.C. Cir. Aug. 30, 2006).

This "very high" standard for granting injunctive relief is "very well established." *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22, 44 (D.D.C. 2010). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[4]

Plaintiffs must do more than merely show the possibility of prevailing on the merits; rather Plaintiffs must show "a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiffs also must establish irreparable harm, as failure to do so is "grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). This too is a "high standard." *Id.* First, the injury "must be both certain and great; it must be actual and not theoretical." *Id.* "The moving party must show the injury complained of is of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* (citations omitted) (emphasis in original). "Second, the injury must be beyond remediation." *Id.*

## IV.    ARGUMENT

The Executive Order only directs agencies to act according to their normal duties and statutory authority, and no final action has yet been taken. Therefore, Plaintiffs have not

---

[4] The D.C. Circuit has taken no position as to whether the "sliding scale" approach to weighing the four factors for injunctive relief, which "allow[s] that a strong showing on one factor could make up for a weaker showing on another," *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011), has been abandoned in light of *Winter*. *See, e.g.*, *A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 218–19 (D.D.C. 2020). Regardless, "the movant must, at a minimum, 'demonstrate that irreparable injury is *likely* in the absence of an injunction.'" *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 331, 334–35 (D.D.C. 2009) (quoting *Winter*, 555 U.S. at 22).

established any injury sufficient for standing; they have not established that the President has exceeded the scope of his power to enforce statutory requirements or that they meet any of the other requirements for a preliminary injunction; and there is no ripe controversy.  In the unlikely event that this Court issues a preliminary injunction, the Court must require a bond.

### A.  Plaintiffs Do Not Have Standing

"Standing is a prerequisite to the existence of a 'Case[]' or 'Controvers[y],' which is itself a precondition to the exercise of federal judicial power."  *Attias v. CareFirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (alterations in original) (citation omitted) (relying on *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 410-414 (2013) to find no standing where "harm could only occur through the happening of a series of contingent events[.]").  "The 'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation, and (3) redressability."  *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009) (citation omitted).  "Thus, to establish standing, a litigant must demonstrate a personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (alterations and citation omitted).

"[A] showing of standing is an essential and unchanging predicate to any exercise of [federal court] jurisdiction."  *Id.* (citation omitted).  That includes actions for "prospective declaratory and injunctive relief."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Cal. Medical Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981) ("A party seeking to invoke [a challenged statute] must have standing to raise the constitutional claim.").  Because Plaintiffs seek "forward-looking relief," they "must show [they are] suffering an ongoing injury or face an immediate threat of injury."  *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 689 (D.C. Cir. 2015)

(citation omitted).  To claim standing based on alleged future harm, a plaintiff must show that the threatened harm is "certainly impending," or there is a "substantial risk" that the injury will occur."  *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409, 414 n.5 (2013).  This injury requirement "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy."  *Saline Parents v. Garland*, 88 F.4th 298, 304 (D.C. Cir. 2023), *cert. denied*, 145 S. Ct. 144 (2024) (cleaned up).

Moreover, "the law of Art[icle] III standing is built" on fundamental separation-of-powers principles, *Raines v. Byrd*, 521 U.S. 811, 820 (1997) (citation omitted), and "serves to prevent the judicial process from being used to usurp the powers of the political branches," *Clapper*, 568 U.S. at 408.  Accordingly, application of Article III standing requirements must be "especially rigorous when," as here, "reaching the merits of the dispute would force [a court] to decide whether an action taken by [another] branch[] of the Federal Government was unconstitutional."  *Raines*, 521 U.S. at 819–20.

### 1. Plaintiffs' Alleged Harm is Neither Actual nor Imminent, nor Caused by the Executive Order

An "injury in fact" for standing purposes must be "concrete and particularized," "actual or imminent" and not "conjectural" or "hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Threatened injury must be "certainly impending" or present a "substantial risk."  *Clapper*, 568 U.S. at 410; *id.* at 414 n.5.  These are high standards, and a mere "objectively reasonable likelihood" is not sufficient.  *Id.* at 410.

Plaintiffs complain that Democratic voters will be disproportionately harmed by a documentary proof of citizenship requirement to register to vote using the Federal Form, and that they themselves will be unable to engage in their core mission of registering voters.  Mem. *passim*.  The Executive Order itself does *not* add a DPOC requirement to the Federal Form; it

9

acknowledges that any update must be made by the EAC. *See* EO § 2(a). And Plaintiffs cannot dispute that the EAC has clear statutory authority to prescribe such forms. *See* 52 U.S.C. § 20508(a)(2) (the EAC "shall develop a mail voter registration application form"). Plaintiffs have not established that the EAC has begun—let alone finished—the process to update the Federal Form, nor have Plaintiffs established when it might do so. *See* Ex. 1, Schletz Decl. (describing process). Plaintiffs' abstract concerns—that the forms the EAC will eventually issue will "upend nationwide election rules," Mem. 6—are inherently speculative.[5]

Courts have repeatedly held that claimed harm based on potential agency actions that have not yet occurred—indeed may *never* occur—is insufficient for Article III standing. "Article III standing requires more than the possibility of potentially adverse regulation." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324–25 (D.C. Cir. 2013); *see also Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) ("Allegations of injury based on predictions regarding future legal proceedings are, however, 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990))). For example, in *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) (Scalia, J.), the D.C. Circuit rejected standing based on a claim that an executive order could lead to agencies taking future adverse actions against them. *Id.* at 1378–81. Likewise, in *Center for Democracy & Technology v. Trump*, 507 F. Supp. 3d 213 (D.D.C. 2020), *vacated as moot sub nom. Center for Democracy & Technology v. Biden*, No. 21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9,

---

[5] The U.S. House of Representatives recently passed the "Safeguard American Voter Eligibility Act" or the "SAVE Act." H.R. 22, 119th Cong. (2025). The SAVE Act, if approved by the U.S. Senate, would amend the NVRA to require proof of United States citizenship to register to vote in Federal elections. *Id.* Thus, DPOC may be congressionally *mandated* in the near future.

2021),[6] the court found that the potential that an agency would promulgate adverse regulations in implementing an executive order was insufficient for standing, explaining: "To be sure, the government might issue regulations that CDT does not like. But it is just as possible that it will not. 'Article III standing requires more than *the possibility* of potentially adverse regulation.'" *Id.* at 223 (quoting *Perciasepe*, 714 F.3d at 1324–25). Plaintiffs' claim for standing fails this well-established case law.

Plaintiffs not only fail to meet the first required step, but they also fail to meet the second. Referred to interchangeably as causation or traceability, this step "examines whether it is substantially probable that the challenged acts of the defendant, not of some third party, will cause the particularized injury of the plaintiff." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). Plaintiffs complain that they will not be able to register individuals who lack documentary proof of citizenship using the Federal Form, Mem. 11, and that individuals who do have documentary proof of citizenship will be concerned about giving their documents to Plaintiffs. Mem. 12. The actual causes of the alleged injury, then, are individuals exercising their own right to make decisions about whether to obtain documentary proof of citizenship, whether to carry that proof of citizenship with them in public, whether to provide that proof of citizenship to non-governmental third parties, and whether to register via a non-governmental third party or via some other means. These intervening individual choices are thus not traceable to Defendants.

### 2. Plaintiffs' Alleged Costs Do Not Confer Standing

When a harm is not "certainly impending," the costs that a plaintiff incurs to avoid an anticipated harm do not confer standing. *Clapper*, 568 U.S. at 416 (holding in part that plaintiffs

---

[6] The D.C. Circuit dismissed the appeal and vacated the judgment as moot because the President rescinded the executive order at issue during the pendency of the appeal.

lacked Article III standing because they failed to show the future injury was certainly impending). "In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III simply by making an expenditure based on a nonparanoid fear." *Id.* Because there is no "certainly impending" harm here (as described above), Plaintiffs' alleged costs and diversions of resources, Mem. 14–17, do not confer standing.

Moreover, Plaintiffs assert injury because they will have to expend resources on public education and updating educational materials related to voter registration, Mem. 15–17. But Plaintiffs allege that such public education is part of their core mission. *See, e.g.*, Mem. 11 ("Plaintiffs are nonpartisan, nonprofit organizations whose core missions and activities center around empowering voters, safeguarding the right to vote, and promoting an accountable democracy through voter education, public outreach, and voter registration."). *See also* LWV complaint ¶¶ 11, 13, 16, 17, 22; Proaño Decl. ¶ 13; Streyder Decl. ¶ 19; Nitschke Decl. ¶ 13–14. Plaintiffs complain, therefore, not that they will be prevented from engaging in parts of their core mission related to the Executive Order, but rather that they would have to spend more money on that some parts of their core mission than they currently do. Mem. 14-17.

The Supreme Court has recently and firmly rejected the notion that "standing exists when an organization diverts its resources in response to a defendant's actions." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). If that were enough, it "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* Thus, the Supreme Court has distinguished (and rejected) a diversion of resources theory from

the "unusual" situation where a defendant provided false information that directly impaired an organization's ability to engage in its related core business activities. *Id.* at 495-96 (distinguishing between the facts before the Court and the Court's opinion in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). Unlike in *Havens*, the Executive Order does not directly prevent or impair Plaintiffs from engaging in their core public education activities. Indeed, they assert that they will continue to engage in educating the public about voter registration. Mem. 14–16. Accordingly, Plaintiffs' diversion of resources theory fails. *See also All. for Hippocratic Med.*, 602 U.S. at 394 (noting that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action," where plaintiff was an advocacy organization and therefore it diverted resources to engage in a core business activity).

### 3. Plaintiffs Have Not Established Associational Standing

An organization may establish associational standing by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests [the organization] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "[A]ll three requirements are jurisdictional, and unless each is satisfied . . . associational standing is not a valid basis for a federal court's exercise of subject-matter jurisdiction over the case." *Travelers United, Inc. v. Hyatt Hotels Corp.*, — F. Supp. 3d —, 2025 WL 27162, *12 (D.D.C. 2025) (citation omitted); *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).

Three plaintiff organizations assert associational standing: League of United Latin American Citizens (LULAC), Secure Families Initiative (SFI), and Arizona Students'

13

Association (ASA).  *See* Mem. at 32–33 (making claims for associational standing based on

declarations submitted from the three organizations).  However, they entirely fail to show that

their members would have standing to sue in their own right.  Indeed, they make no showing at

all that any individual member has been or will be injured, instead relying on general and

formulaic statements from persons representing the organizations.  *See, e.g.*, Proaño Decl. ¶ 30

("LULAC members across the country . . . rely on the Federal Form to register to vote without

undue burden."); Streyder Decl. ¶ 9 (SFI members "likely" use the Federal Form); Nitschke

Decl. ¶ 7 ("[M]any ASA members . . . lack DPOC, and therefore will be unable to register to

vote because of the requirement.").

These allegations are insufficient to confer jurisdiction.  Indeed, a court cannot simply

"accept[] the organization's self-description of the activities of its members" and determine that

"there is a statistical probability that some of those members are threatened with concrete

injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (rejecting the dissent's

proposal).  Accepting such claims would "make a mockery" of Supreme Court precedent

"requir[ing] plaintiff-organizations to make specific allegations establishing that at least one

identified member had suffered or would suffer harm."  *Id.* at 498.  The "requirement of naming

the affected members has never been dispensed with in light of statistical probabilities, but only

where *all* the members of the organization are affected by the challenged activity."  *Id.* at 498–

99.  "In part because of the difficulty of verifying the facts upon which such probabilistic

standing depends, the Court has required plaintiffs claiming an organizational standing to

identify members who have suffered the requisite harm[.]"  *Id.* at 499.

In *Travelers United v. Hyatt Hotels Corp.*, — F. Supp. 3d —, 2025 WL 27162 (D.D.C.

2025), this Court held that the plaintiff failed to establish associational standing in a case for

injunctive relief because it did not establish that any member had standing in his or her own right. *Id.* at *15. In particular, because the plaintiff had sued a hotel chain, plaintiff would have needed to name even one member who had a specific plan to book a hotel room at that chain at a definite point in the future. *Id.; see also Lujan*, 504 U.S. at 564 (holding that generalized "'some day' intentions—without any description of concrete plans, or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury" that is necessary to show Article III standing). In this case, that means that Plaintiffs—at the *very least*—must name a member without qualifying documentary proof of citizenship and with a specific plan to register to vote using the Federal Form at a definite point in the future.

In addition to failing to establish that any members would have standing in their own right, plaintiff organizations in this case also fail to establish that the relief requested does not require the participation of individual members in the lawsuit. In *Travelers United*, this Court held that plaintiffs could have done this by filing affidavits or declarations from some members establishing the requisite standing, but instead the plaintiff had "not alleged or shown that *anyone*, let alone any of its own members, plan[ned] to book a Hyatt hotel room in the future." 2025 WL 27162, at *15. Absent "any indication that any of [plaintiff's] members have standing to pursue injunctive relief," the court would "eventually need to consider additional, member-specific facts to determine whether at least one member has standing to seek injunctive relief." *Id.* at *16. As the court recognized, this created a significantly different situation from other cases "in which courts have allowed organizations to pursue non-monetary relief on behalf of their individual members," because at least one member declaration had been filed in those

cases.[7]  *Id.*  Because organizational Plaintiffs here have not filed any declarations making the required showings, they have not established associational standing.

Plaintiffs support their motion for preliminary injunction without a single declaration from one of their members.  Accordingly, because LULAC, SFI, and ASA submit only generalized declarations that do not establish that any one of their members have standing to sue in their own right, because they therefore are not in a position to establish that their claims asserted or relief requested do not require the participation of individual members in the lawsuit, the three organizations have not established associational standing.

### B. Preliminary Injunction

#### 1. Likelihood of Success on Merits

Plaintiffs are unlikely to succeed on the merits because they have failed to establish standing or ripeness, *see infra*, and this Court accordingly need not address the substance of their claims.  *Church v. Biden*, 573 F. Supp. 3d 118, 136 (D.D.C. 2021) (citing *Elec. Priv. Info. Ctr. v. Pres. Adv. Comm. on Election Integrity*, 878 F.3d 371, 375 n.2 (D.C. Cir. 2017) (affirming denial of preliminary injunction where plaintiff failed to show substantial likelihood of standing)); *see also Munaf*, 553 U.S. at 690 (noting that "[a] difficult question as to jurisdiction" makes success on the merits "more *unlikely* due to potential impediments to even reaching the merits" (emphasis in original)).  "[T]he 'merits' on which plaintiff must show a likelihood of success

_____

[7] One of the cases distinguished by the *Travelers United* court is relied on by plaintiffs. *Compare* Mem. 33 n.26 (citing *Center for Sustainable Economy* for the principle that individual members need not participate in the lawsuit individually) *with Travelers United*, 2025 WL 27162 at *16 ("For example, in *Center for Sustainable Economy v. Jewell*, 770 F.3d 588 (D.C. Cir. 2015), the D.C. Circuit held that an organization had associational standing to seek invalidation of an agency action where the plaintiff organization had already filed declarations by two of its members describing those members' ongoing interests in the places affected by the challenged action.  *Id.* at 596-96. [sic]  The court concluded that those declarations established that the individual members had standing to sue "in their own right," supporting the organization's associational standing.  *Id*.")

encompass not only substantive theories but also establishment of jurisdiction." *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) (opinion of Williams, J.) (citation omitted) (holding that speculation of future scope of and motive for defendants' actions does not create standing). Because Plaintiffs lack standing under any theory, they are "*ipso facto* unlikely to succeed." *See Elec. Priv. Info. Ctr.*, 878 F.3d at 375 n.2; *DCCC v. Federal Election Comm'n*, No. 24-cv-2935, 2024 WL 4650907, at *6 (D.D.C. Nov. 1, 2024) (plaintiff must establish standing to show likelihood of success on merits); *see also Munaf*, 553 U.S. at 690 (2008) (noting that "[a] difficult question as to jurisdiction" makes success on the merits more unlikely due to potential impediments to even reaching the merits"). Their failure to establish ripeness is likewise fatal to their claim for injunctive relief. *See AstraZeneca Pharms. LP v. Food & Drug Admin.*, 850 F. Supp. 2d 230, 241–42 (D.D.C. 2012) (denying a preliminary injunction because plaintiffs' claim was not ripe and thus unlikely to succeed on the merits). This Court should dismiss the Motion on these bases alone. *Id.*

### a. Section 2(a) Accords with Separation-of-Powers Principles

Should the Court find it necessary to evaluate the substance of Plaintiffs' request, the merits similarly fail to establish a likelihood of success. First, the President's Executive Order presents no infringement on separation-of-powers guarantees because it directs the EAC to "take *appropriate* action," EO § 2(a)(i), that is "consistent with applicable law," EO § 11(b), and that should not be construed to impair "the authority granted by law" to the agency, EO § 11(a)(i). Courts should interpret an executive order in a manner that "gives effect to every word," *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013), rather than in a way that gives meaning to one passage "only at the expense of rendering the remainder . . . superfluous." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011).

The court's conclusion in *Common Cause v. Trump*, 506 F. Supp. 3d 39 (D.D.C. 2020) is instructive here.  The executive order in that case directed the Secretary of Commerce to provide the President with "information to support excluding illegal aliens, to the extent feasible, from the enumeration used to apportion the House of Representatives." *Id.* at 41.  In so doing, the executive order instructed the Secretary "to take 'appropriate action, consistent with the Constitution and other applicable law,' providing information permitting the President to carry out the policy 'to the extent practicable.'" *Id.* at 47 (citation omitted).  "And it end[ed] with a general instruction that '[t]his memorandum shall be implemented consistent with applicable law.'" *Id.* (citation omitted).  The court there determined that it "[could not] ignore these repeated and unambiguous qualifiers imposing lawfulness and feasibility constraints on implementing the memorandum." *Id.* (citation omitted).  The Executive Order here similarly instructs the EAC to follow the law, and it would be speculative to suggest that the EAC or the President intends to do otherwise.  *See Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002); *Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198, 215-16 (S.D.N.Y. 2021).

### b.  There Has Been no Usurping of Power from Congress or the EAC

Plaintiffs are correct that Congress outlines the EAC's authority to make changes to the Federal Form, but they cannot argue that the President has ordered the EAC to deviate from the statutory procedures required to make such changes.  The Executive Order explicitly says otherwise: "Nothing in [the Executive Order]" is to "be construed to impair or otherwise affect . . . the authority granted by law to an executive department or agency, or the head thereof[.]" *Id.* § 1(a)(i)."  And the Executive Order must "be implemented consistent with applicable law[.]" *Id.* § 11(b).  The EAC is statutorily authorized to include a DPOC requirement if, after consultation

with the States, the EAC deems such a requirement necessary to enable State election officials to assess eligibility.  52 U.S.C. §§ 20508(a)(2), (b)(1).

As the Supreme Court recognized in *Arizona v. Inter Tribal Council of Ariz., Inc.* ("*ITCA*"), 570 U.S. 1, 17 (2013), "it would raise a serious constitutional question 'if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications.'" *League of Women Voters of U.S. v. Newby* ("*Newby*"), 838 F.3d 1, 11 (D.C. Cir. 2016).  Section 9(b) of the NVRA, 52 U.S.C. § 20508(b)(1), requires the EAC to include information shown to be "necessary."  Thus, "if the proposed change to the Federal [Form] is 'necessary' to enforce voter qualifications, then the NVRA and probably the Constitution require its inclusion; if not, the NVRA does not permit its inclusion and the Constitution is silent." *Newby*, 838 F.3d at 11.

As Plaintiffs acknowledge—and do not challenge—both the FEC and the EAC exercised their lawful authority when they considered whether DPOC was necessary in the past.  Mem. at 5.  While the FEC and the EAC previously determined that the attestation regarding citizenship was sufficient previously, the EAC is entitled to undergo the same rulemaking procedures it previously conducted to reassess the necessity of DPOC.  And the NVRA makes no express prohibition against an agency finding that DPOC is necessary to determine eligibility.  *See ITCA*, 570 U.S. 19, 19 n.10.  There is no tension between the Executive Order and the notice-and-comment requirement under the APA, 52 U.S.C. § 20929, or the PRA requirements for information collection, nor is there a delegation of authority, as the EAC already resides within the executive branch.  Plaintiffs' claim fails on its merits.

### 2.  Irreparable Harm

#### a.  Plaintiffs Fail to Demonstrate that Irreparable Harm Would Result in the Absence of a Preliminary Injunction

At the outset, Plaintiffs all but concede that the EAC's compliance with federal law in taking "appropriate action" "consistent with applicable law," (per EO §§ 2(a)(i), 11(b)), would *not* warrant preliminary injunctive relief.  *See* Mem. at 25 (offering to withdraw PI motion). Notwithstanding that implicit concession, Plaintiffs have failed to establish that a preliminary injunction is necessary to prevent irreparable harm, which is alone grounds to deny their motion for preliminary injunction.

Plaintiffs have not shown that they will face a "certain and great," "actual and not theoretical" injury "of such *imminence* that there is a 'clear and present' need for equitable relief."  *Chaplaincy*, 454 F.3d at 297 (emphasis in original).  Plaintiffs' claimed injury rests on speculation about future actions the EAC may take pursuant to EO § 2(a), and future actions they may take as a result.  Mem. at 36.  The requirement for imminent irreparable harm is arguably more onerous than the requirement for Article III injury in fact, requiring the movant to "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future."  *Brown v. District of Columbia*, 888 F. Supp. 2d 28, 32 (D.D.C. 2012) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Plaintiffs have failed to do so.  Instead, Plaintiffs offer "[b]are allegations" of what they speculate "is likely to occur," which "are of no value" in supporting a motion for preliminary injunction. *Wis. Gas Co.*, 758 F.2d at 674.  *See, e.g.*, Sterling Decl. ¶ 16 ("If the federal voter registration form is changed . . ."); Miranda Decl. ¶ 20 ("If the Executive Order is implemented . . ."); Sheoran Decl. ¶ 26 ("If the Executive Order is not implemented . . . .  If, instead, the Executive Order is implemented . . ."); Stewart Decl. ¶ 24 ("confusion about potential changes to

the Federal Form and the impacts of the Executive Order").  Indeed, the very high standard for

granting a preliminary injunction is "quite high," *Brown,* 888 F. Supp. 2d at 31 (citing

*Chaplaincy*, 454 F.3d at 2970), as the irreparable injury must 'be both certain and great,'"

*Brown*, 888 F. Supp. 2d at 31-32 (quoting *Wis. Gas Co.*, 758 F.2d at 674).

Contrary to Plaintiffs' assertion that *Newby* is "analogous," "binding," and "remarkably

like this case," Mem. at 30-31, the factors that caused the *Newby* court to find irreparable harm

are not present here.  The D.C. Circuit Court in *Newby* found that the enforcement of Federal

Form DPOC requirements on Alabama- and Georgia-based plaintiff organizations was

"foreseeable," and therefore "unquestionably" made it more difficult for Plaintiffs to accomplish

their primary mission of registering voters.  *Newby*, 838 F.3d at 8–9; *see* Mem. at 30.

With voter registration deadlines looming, the *Newby* plaintiffs filed their injunctive

relief motion nearly 20 days *after* the EAC Executive Director made the unilateral decision to

change the Federal Form (taking effect on the form shortly thereafter).  *League of Women Voters

of the U.S. v. Newby*, 195 F. Supp. 3d 80, 83 (D.D.C.), *rev'd sub nom. League of Women Voters

of the U.S. v. Newby*, 671 F. App'x 820 (D.C. Cir. 2016), and *rev'd sub nom. League of Women

Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016).  It was "[b]ecause, as a result of the"

Director's decision, made weeks prior to the motion for injunction, that "those new obstacles

unquestionably [made] it more difficult" for the *Newby* plaintiffs.  *Newby*, 838 F.3d at 9.  And

the Director's post-decision, post-implementation incorporation of DPOC on the Federal Form at

the doorstep of the upcoming federal election voter registration deadline made the *Newby*

plaintiffs' harms clearly "foreseeable."  *Id*.

But Plaintiffs urge this Court to put the cart before the horse.  Plaintiffs' claimed injury

first rests on speculation about future actions the EAC may take pursuant to EO § 2(a), and

future actions they, Plaintiffs, *may* take as a result.  Mem. 24-27; *see* Ex. 1.  By April 24, 2025,

the EAC "shall take appropriate action" that would be "consistent with applicable law."  EO §§

2(a)(i), 11(b); *see also* Ex. 1, Schletz Decl. (describing process).  Under that presumption of

regularity, *see supra* pp. 7-15, EO § 2(a) will be implemented according to its own statutes under

HAVA, NVRA, the APA, and the PRA.  And irreparable harm, if any, would not spontaneously

manifest the day that a rulemaking process begins, despite Plaintiffs' hand-wringing.  Mem. 24-

27; *see also Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 21 (D.D.C. 2018)

(denying preliminary injunction even after agency began rulemaking process).[8]

### b.  Plaintiffs cannot satisfy *Newby*'s organizational harm standards

Plaintiffs seem to conflate *Newby*'s two-part irreparable harm standard, explained *supra*,

with *Newby*'s organizational harm standard (also two parts).  Mem. at 31.  Nonetheless, Plaintiffs

have not demonstrated organizational harm under *Newby*.  An organization is harmed if (1) the

"'actions taken by [the defendant] have 'perceptibly impaired' the organization's programs'"—

the initial question being whether a defendant's conduct has made the organization's activities

more difficult.  *Newby*, 838 F.3d at 8 (citation omitted).  If so—to ensure that organizations

cannot engage in activities simply to create an injury—(2) "the organization must then also show

that the defendant's actions 'directly conflict with the organization's mission.'"  *Id*. (internal

citations omitted).

Plaintiffs have expressly defeated their own claim of organizational harm under *Newby*

because to "prevent[] the EAC and its officers from acting pursuant to the Executive Order to

implement [DPOC]," Plaintiffs "seek injunctive relief against the EAC and its officers, not the

---

[8] And any effect relating to Arizona's upcoming special congressional election would be purely
speculative.

President" and not any of the other Defendants in these consolidated cases. Mem. at 39–41. *Newby*'s test requires not an analysis of a hypothetical future action, but instead an evaluation of "actions" and "conduct" taken by "the defendant." *Newby*, 838 F.3d at 8. The EAC and its officers have not taken any of the challenged actions. Thus, this Court has no conduct or action to review, and no basis for determining that Plaintiffs have suffered any harm under *Newby*'s organizational standard.

For the same reason, Defendants' actions could not have "perceptively impaired" Plaintiffs' organizational ability to carry out missions. *Id.* And no Defendant's actions have caused a "direct conflict" with their mission or caused lost opportunities to conduct election-related activities. *Id.* The Federal Form has not been changed, maintaining the status quo. And the EAC's challenged future action is not in *direct conflict* with Plaintiffs' mission-driven activities, as incorporating DPOC would not prohibit voter registration. Where the challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission (i.e., not "at loggerheads"), then it is "entirely speculative" whether the challenged practice will actually impair the organization's activities. *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 42 (D.D.C. 2018) (cleaned up).

This same reasoning also applies to the several other cases Plaintiffs cited in support, where challenges were made not to pending, theoretical, or hypothetical actions, but instead to current processes and existing statutes and rules being enforced. Mem. at 26-27, 26 n.25 (citing *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1005 (W.D. Mo. 2018) ("*Ashcroft*") for "collecting cases").[9]

---

[9] *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1002 (W.D. Mo. 2018) (challenge to "current processes"); *Ind. State Conf. of the NAACP v. Lawson*, 326 F. Supp. 3d 646, 658 (S.D. Ind. 2018) (challenge to existing state statute providing specific voter registration

Among those collected cases is *Greater Birmingham Ministries v. State*, 161 F. Supp. 3d 1104, 1117 (N.D. Ala. 2016) ("*GBM*"). But that case only proves Defendants' point. There, the plaintiffs claimed that Alabama's voter ID law forced them to "divert significant amounts of their scarce resources from their regular activities to protecting the rights of those affected voters." *GBM*, 161 F. Supp. 3d at 1117. The State's voter ID law, which requires "some form of photo identification before casting a ballot," *id.* at 1107, had been implemented and enforced for more than a year prior to the plaintiffs' motion for preliminary injunction. Nonetheless, the district court concluded that the plaintiffs in that case failed to demonstrate irreparable injury because their supposed harms "amount[ed] to no more than a loss of money and time, which is generally not irreparable harm in the preliminary injunction context." *Id.* Thus, the district court denied the plaintiffs' preliminary injunction motion. If the *GBM* plaintiffs could not show irreparable harm in challenging an existing, implemented, and enforced voter ID law, the Party Organizations certainly cannot demonstrate irreparable harm stemming from an executive order which has not yet been implemented by agencies which have not yet acted. If the *GBM* plaintiffs failed to show irreparable injury, so do the Plaintiffs in this case. Here, Plaintiffs' argument for irreparable injury is *even weaker*. Not only is their alleged injury mainly in the vein of a loss of "resources," Mem. 14–18, but they also cannot even show that those injuries are likely or caused

---

procedures); *Action NC v. Strach*, 216 F. Supp. 3d 597, 610 (M.D.N.C. 2016) (challenge to alleged failure to comply with existing statute's procedures (NVRA)); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320,1332 (N.D. Ga. 2016) (challenging alleged failure to comply with disclosure requirements of existing statute (NVRA)); *N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 16-cv-1274, 2016 WL 6581284 (M.D.N.C. Nov. 4, 2016) (challenging voter removal under NVRA); *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1157 (N.D. Fla. 2012) (challenging state statute and rule that regulated organizations that conduct voter-registration drives); *Fla. State Conf. of Branches & Youth Units of the NAACP v. Byrd*, 680 F. Supp. 3d 1291, 1299 (N.D. Fla. 2023) (challenge to existing state statute with clear requirements and effective date of those requirements).

by the Executive Order.  Unlike the Alabama law, the Executive Order *has not even begun to be implemented*.

### c. Any harm here would not be "beyond remediation"

The speculative harm feared by Plaintiff has not come to pass.  Indeed, there has been *no action* and there is no harm, much less imminent harm.  Necessarily, there is no harm that is "beyond remediation."  *Chaplaincy*, 454 F.3d at 297.  Final agency actions are reviewable in district court under the Administrative Procedure Act's general judicial review provision.  *See* 5 U.S.C. § 704.  Plaintiffs fear injury resulting from a *future* adverse administrative action, *e.g.*, "harder to register voters" from a future DPOC requirement on the Federal Form, Mem. 24.  But that EAC action would be subject to further review under the APA and thus their speculative harms are "redressable" because no action has been made and nothing has been implemented. *Chaplaincy*, 454 F.3d at 298.  Plaintiffs therefore do not allege an irreparable harm.  *Id.*  It is "far too speculative to warrant preliminary injunctive relief."  *Id.*

While Plaintiffs could argue that "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs," *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., Thomas, J., concurring in part) (emphasis in original), that's just not the situation here.  In this case, there is no comparable regulation because no action has been taken on the Executive Order.  *Cf. Newby*, 838 F.3d at 8–9 (finding irreparable harm after the decision to change Federal Form had already occurred, and the change already implemented).  Plaintiffs cannot complain that they have been forced to expend costs, Mem. 19, to comply with a non-existent regulation.  Nor have they adequately explained why "present circumstances" warrant their preemptive diversion of resources to address a speculative harm. *Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 417 (D.D.C. 2018).  And so Plaintiffs fail to

show that such expenditures "constitute such an extraordinary matter," *id.*, that can be resolved

with only an "extraordinary and drastic" remedy. *Munaf*, 553 U.S. at 689–90. That logic

therefore must also apply to anticipated expenditure of resources.

Moreover, in "fail[ing] to establish Article III standing because they have failed to

establish an injury in fact," *see supra*, "[P]laintiffs have not suffered the higher threshold of

'irreparable harm' that is required for a preliminary injunction." *Nat'l Fair Hous. All. v. Carson*,

330 F. Supp. 3d 14, 63 (D.D.C. 2018) (citing *Newby*, 838 F.3d at 7).

For the foregoing reasons, Plaintiffs do not make a showing of irreparable harm, and the

Motion should be denied. *See Chaplaincy*, 454 F.3d at 297; *see also Save Jobs USA v. U.S.*

*Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015) ("[T]he movant must always

show irreparable harm or injury, and if a party makes no showing of irreparable injury, the court

may deny the motion for injunctive relief without considering the other factors.").

### 3.  Balance of Equities/Public Interest

The balance of the equities and public interest weigh decidedly against injunctive relief.

These last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556

U.S. 418, 435 (2009); *see also Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d

500, 511 (D.C. Cir. 2016). A court analyzing the two factors together "must carefully balance

the equities by weighing the harm to the moving party and the public if there is no injunction

against the harm to the government and the public if there is." *Hanson v. Dist. of Columbia*, 120

F.4th 223, 246 (D.C. Cir. 2024) (citing *Newby*, 838 F.3d at 12–14).

There is a "fundamental" public interest in "maintaining our constitutional Republic" by

ensuring that federal elections are "[f]ree, fair, and honest," and "unmarred by fraud, errors, or

suspicion," EO § 1, consistent with federal prohibitions against noncitizen voting or registration,

see, e.g., U.S. Const. amend. XXVI; 18 U.S.C. § 611 (voting by aliens). "Confidence in the

integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). That integrity is what the Executive Order seeks to preserve. *See* EO § 1. "Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government," and "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id.* Further, separation-of-powers concerns do not tip the scale of equities in Plaintiffs' favor because EAC is tasked to "take appropriate action," EO § 2(a)(i)), "consistent with applicable law," EO § 11(b).

Comparatively, Plaintiffs' interest is minimal, because they seek to prevent putative harm based on speculation about a series of future contingencies.

## C. Plaintiffs' Claims Lack Prudential Ripeness Necessary for Judicial Review

Even if this Court finds that Plaintiffs have standing, their request for preliminary injunctive relief should be rejected as prudentially unripe without reaching the merits. *Church v. Biden*, 573 F. Supp. 3d 118, 135 (D.D.C. 2021) ("Even if a case is constitutionally ripe" under Article III standing, "there may still be prudential reasons for refusing to exercise jurisdiction.") (cleaned up). "The ripeness doctrine requires that the federal courts reserve judicial power for resolution of concrete and fully crystalized disputes." *In re Al-Nashiri*, 47 F.4th 820, 826 (D.C. Cir. 2022) (cleaned up). This principle "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hosp. Ass'n v. Department of the Interior*, 538 U.S. 803, 807 (2003) (quotation marks omitted). To determine whether a claim satisfies prudential ripeness, courts consider: (1) the "fitness of the issues for judicial decision"; and (2) the "extent to which withholding a decision will cause hardship to the parties.'" *Church*, 573 F. Supp. at 135 (quoting *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 387 (D.C. Cir. 2012)). Assessing whether an issue is "fit" for adjudication requires courts to consider

whether the issue "is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Id.* (citation omitted).

Plaintiffs fail to establish the first prong for prudential ripeness because no concrete legal dispute fit for adjudication exists here. At the outset, EO § 2(a) states that the EAC "shall take appropriate action" to require documentary proof of citizenship in the Federal Form within 30 days of the Executive Order. *See* EO § 2(a). The Executive Order's direction that the EAC's action be "appropriate" underscores the President's intention that said action be conducted lawfully and in accordance with the agency's regular rulemaking procedures set forth by statute. The "presumption of regularity," which requires courts to presume that public officers have "properly discharged their official duties" absent evidence to the contrary, supports this reading of EO § 2(a). *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989) (applying presumption to President).

Under that presumption, EO § 2(a) will be implemented according to its own statutes under HAVA, NVRA, the APA, and the PRA. But, importantly, as of the date of this filing, many steps in the process to change a form have not been completed. Ex. 1, Schletz Decl. (describing process). The EAC needs to prepare a proposed, updated regulation and approve it by a vote of at least three Commissioners. *Id.* ¶ 2-3; *see also* 52 U.S.C. § 20928. There are a number of additional steps that need to be completed after the regulation has received approval, such as going through the APA's required notice-and-comment process for rulemaking and consulting with chief election officers for the states. *Id.* ¶ 4-5; *see also* 5 U.S.C. § 553; 52 U.S.C. § 20508(a)(1)-(2). Three Commissioners would need to approve the issuance of the new form. *Id.* ¶ 6; *see also* 52 U.S.C. § 20928. And finally, the new form must be submitted as an

information collection to the Director of the Office of Management and Budget for approval.  *Id.*
¶ 7.

In sum, EO § 2(a) has not yet led to any changes to the Federal Form or any other
substantive measures affecting voter registration, nor is there any indication that any such
changes are imminent.  As such, "this is plainly a case in which further development of the
factual record is required" to determine whether Plaintiffs are entitled to relief for the harm they
allege.  *Church*, 573 F. Supp. 3d at 136.  "The absence of any factual record" forming the basis
for any violation of HAVA, NVRA, APA, or PRA "hamstrings the Court's ability to evaluate the
merits of the Complaint's constitutional and statutory claims."  *Id*.

Given that the EAC has not yet taken any final agency action, Plaintiffs likewise fail to
show that "delayed judicial review would cause them immediate and significant hardship" to
satisfy the second prong for prudential ripeness.  *Id.* (citing *Finca Santa Elena, Inc. v. U.S. Army
Corps of Eng'rs*, 873 F. Supp. 2d 363, 371 (D.D.C. 2012)).  Premature adjudication of the EAC's
actions in the way Plaintiffs desire "denies the agency an opportunity to . . . apply its expertise"
in implementing the DPOC requirement consistent with its regular rulemaking procedures.  *See
Finca Santa Elena, Inc.*, 873 F. Supp. 2d at 369 (citation omitted).

Although Plaintiffs rely heavily on *Newby*, factual distinctions between the two cases
show just how unripe the present circumstances are.  In *Newby*, the EAC's executive director—
not the Commission itself—approved three States' requests to add a DPOC requirement to their
state-specific instructions.  *Newby*, 838 F.3d at 6.  Three days after his approval, the modified
version of the state-specific instructions went into effect.  *Id.*  While Plaintiffs correctly note that
it was unclear whether two of the states were enforcing their proof-of-citizenship laws, unlike in
the present context, the executive director took a unilateral action contrary to statutory

procedures and thus ripe for the court's review.  No such actions have occurred in the present

context.  For these reasons, and those set forth further above on irreparable harm, Plaintiffs'

challenges to EO § 2(a) are not ripe for adjudication.

### D.  The Court Must Require a Bond if it Issues a Preliminary Injunction

"The court may issue a preliminary injunction . . . only if the movant gives security in an

amount that the court considers proper to pay the costs and damages sustained by any party

found to have been wrongfully enjoined or restrained."  Fed. R. Civ. Pro. 65(c).  District courts

have "broad discretion . . . to determine the appropriate amount of an injunction bond."  *DSE,*

*Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).  Accordingly, Defendants request that

this court require a bond if it grants a preliminary injunction.

## V.    CONCLUSION

For these reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion

for Preliminary Injunction.

Date: April 14, 2025                            Respectfully Submitted,


                                                HARMEET K. DHILLON
                                                Assistant Attorney General
                                                Civil Rights Division


                                                /s/  *Michael E. Gates*_____
                                                MICHAEL E. GATES
                                                (CA Bar No. 258446)
                                                Deputy Assistant Attorney General
                                                Civil Rights Division
                                                United States Department of Justice
                                                950 Constitution Avenue, NW
                                                Room 5744
                                                Washington, DC 20530
                                                Telephone: (202) 616-3790
                                                E-mail:
                                                Michael.Gates2@usdoj.gov

ANDREW M. DARLINGTON
(FL Bar No. 1018895)
Counsel
Civil Rights Division
United States Department of Justice
950 Constitution Avenue, NW
Washington, DC 20530

R. TAMAR HAGLER
Chief, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Phone: (202) 305-5451
Fax: (202) 307-3961
E-mail:  Tamar.Hagler@usdoj.gov

*Attorneys for all Defendants*