# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br> Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-0955 (CKK) |

**MOTION TO INTERVENE BY THE
REPUBLICAN NATIONAL COMMITTEE
<u>AND MEMORANDUM IN SUPPORT</u>**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................... ii

Introduction ........................................................................................................................... 1

Background ........................................................................................................................... 2

Interests of the Republican National Committee ................................................................. 2

Key EO Provisions of Special Interest to the RNC ............................................................... 4

Argument ............................................................................................................................... 5

    I.    The RNC Has a Right to Intervene Under Rule 24(a). ............................................. 5

          A.    The RNC has standing. ................................................................................... 5

                1.    Organizational Standing ...................................................................... 6

                2.    Associational Standing ........................................................................ 7

                3.    Political-Competitor Standing ............................................................. 7

          B.    Intervention is timely. .................................................................................... 8

          C.    The lawsuit implicates the RNC's legally protected interests. ..................... 8

          D.    The RNC's interests could be impaired or impeded. .................................. 10

          E.    The RNC will defend unique private rights not fully represented by the United States ............................................................................................. 11

    II.   RNC has a sufficient interest in the subject of the lawsuit to merit permissive intervention under Rule 24(b). ............................................................................ 13

Conclusion .......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022) .................................................................................................. 13

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*,
  2020 WL 5658703 (S.D.N.Y. 2020) ........................................................................... 9

*Builders Ass'n of Greater Chi. v. Chicago*,
  170 F.R.D. 435 (N.D. Ill. 1996) ................................................................................ 10

*Citizens United v. Gessler*,
  2014 WL 4549001 (D. Col. Sept. 15, 2014) ............................................................... 9

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. DOI*,
  100 F.3d 837 (10th Cir. 1996) ...................................................................................11

*Conservation Law Found. of N.E., Inc. v. Mosbacher*,
  966 F.2d 39 (1st Cir. 1992) ....................................................................................... 12

*Cooper Tech. v. Dudas*,
  247 F.R.D. 510 (E.D. Va. 2007) .................................................................................. 8

*Crossroads Grassroots Pol'y Strategies v. FEC*,
  788 F.3d 312 (D.C. Cir. 2015) ...............................................................................5, 11

*DNC v. Bostelman*,
  No. 3:20-cv-249 (W.D. Wisc. Mar. 28, 2020) .......................................................... 14

*Elec. Priv. Infor. Ctr. v. U.S. Dep't of Com.*,
  928 F.3d 95 (D.C. Cir. 2019) ...................................................................................... 7

*Emerson Hall Assocs., LP v. Travelers Casualty Ins.*,
  2016 WL 223794 (W.D. Wis. Jan. 19, 2016) ........................................................... 13

*Franconia Minerals (US) LLC v. United States*,
  319 F.R.D. 261 (D. Minn. 2017) ............................................................................... 13

*Fund for Animals v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) .............................................................................. 8, 10

*Ga. Aquarium, Inc. v. Pritzker*,
  309 F.R.D. 680 (N.D. Ga. 2014) ............................................................................... 13

*Ga. Republican Party, Inc. v. Raffensperger*,
  No. 1:20-cv-5018 (N.D. Ga. Dec. 11, 2020) .............................................................. 9

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) .................................................................................................... 7

*Issa v. Newsom*,
  2020 WL 3074351 (E.D. Cal. June 10, 2020) ............................................................ 9

*Karsner v. Lothian*,
    532 F.3d 876 (D.C. Cir. 2008) .......................................................................................... 5, 8

*\*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ............................................................................................ 9, 11

*Mi Familia Vota v. Hobbs*,
    2021 WL 5217875 (D. Ariz. Oct. 4, 2021) ........................................................................... 9

*Mi Familia Vota v. Hobbs*,
    No. 2:22-cv-509 (D. Ariz. Oct. 27, 2022) ............................................................................. 2

*Nat. L. Party of U.S. v. FEC*,
    111 F.Supp.2d 33 (D.D.C. 2000) .......................................................................................... 7

*New Ga. Project v. Raffensperger*,
    No. 1:24-cv-3412 (N.D. Ga. Dec. 16, 2024) ......................................................................... 2

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ............................................................................................ 11

*Ohio Democratic Party v. Blackwell*,
    2005 WL 8162665 (S.D. Ohio Aug. 26, 2005) ..................................................................... 9

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ................................................................................................................ 12

*\*RNC v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ............................................................................................... 6

*\*RNC v. Wetzel*,
    120 F.4th 200 (5th Cir. 2024) .................................................................................... 3, 6, 10

*RNC v. Wetzel*,
    2024 WL 3559623 (S.D. Miss. July 28, 2024) ..................................................................... 6

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
    331 F.R.D. 5 (D.D.C. 2019) ................................................................................................. 8

*Security Ins. Co. of Hartford v. Schipporeit, Inc.*,
    69 F.3d 1377 (7th Cir. 1995) .............................................................................................. 13

*\*Shays v. FEC*,
    414 F.3d 76 (D.C. Cir. 2005) ......................................................................................... 7, 10

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2001) ............................................................................................ 9

*Stone v. First Union Corp.*,
    371 F.3d 1305 (11th Cir. 2004) .......................................................................................... 10

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ............................................................................................................ 11

*U.S. House of Representatives v. Price*,
    2017 WL 3271445 (D.C. Cir. Aug. 1, 2017) ...................................................................... 13

*Utahns for Better Transp. v. DOT*,
  295 F.3d 1111 (10th Cir. 2002) ............................................................................... 12

*Wash. All. of Tech. Workers v. DHS*,
  395 F. Supp. 3d 1 (D.D.C. 2019) .............................................................................. 11

*Wood v. Raffensperger*,
  No. 1:20-cv-4651 (N.D. Ga. Nov. 18, 2020) .............................................................. 9

*Wood v. Raffensperger*,
  No. 1:20-cv-5155 (N.D. Ga. Dec. 28, 2020) ............................................................. 11

**Statutes**

52 U.S.C. §30101(14) ....................................................................................................... 2

**Rules**

Fed. R. Civ. P. 24 .................................................................................................... passim

**INTRODUCTION**

On March 31, 2025, the Democratic National Committee and other plaintiffs sued the United States government defendants seeking a declaration that certain provisions of Executive Order No. 14248 violate federal law, and requesting a preliminary and permanent injunction against implementation of those provisions. The DNC and the other plaintiffs claim standing based on their voter registration and get-out-the-vote activities, which they allege might be negatively affected by the EO. *See* Complaint at ¶¶103-25, *DNC v. Trump*, No. 25-0952 (D.D.C. March 31, 2025).

The Republican National Committee is a direct political competitor of the DNC. Like the DNC, the RNC also engages in extensive voter registration and get-out-the-vote activities. The RNC supports election integrity and deploys thousands of election observers, both paid and volunteer, to ensure that only qualified voters vote and that unqualified voters do not dilute the votes cast by lawful voters. An essential part of the RNC's mission is to promote efficient election administration and protect their voters' confidence in elections by ensuring the accuracy and integrity of election outcomes. The RNC has an interest in defending key provisions of the EO because they affect the RNC's political programs. If the DNC has standing to challenge the EO, then the RNC has a mirror-image interest to defend the EO. Thus RNC thus moves to intervene in this case.

Counsel for the RNC conferred with the parties on this motion. The LULAC Plaintiffs and the League Plaintiffs oppose the RNC's intervention. The United States and the Democratic Party Plaintiffs take no position. The RNC directs this motion to the DNC's case, since that's where its political interests are most apparent. But in consolidated cases like this one, courts have granted the RNC party status in the consolidated cases for efficiency and administrability. *See, e.g.*, Doc.

154, *New Ga. Project v. Raffensperger*, No. 1:24-cv-3412 (N.D. Ga. Dec. 16, 2024) (directing clerk to identify the RNC as defendant in "this consolidated case" after granting the RNC's motion filed before consolidation); Doc. 160, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-509 (D. Ariz. Oct. 27, 2022) (granting the RNC's motion to intervene in DNC case and denying "as moot" another motion to intervene after consolidation).

## BACKGROUND

On March 25, 2025, President Trump issued Executive Order No. 14248 titled "Preserving and Protecting the Integrity of American Elections," which directs various federal agencies to implement certain measures to bolster the integrity of federal elections. On March 31, the DNC and other plaintiffs commenced this civil action alleging that certain measures violate the Constitution and should be declared unconstitutional or otherwise unlawful and enjoined.

Plaintiffs moved for an emergency preliminary injunction on April 7. The United States opposed the motion, and the Court heard argument. On April 24, the Court granted the motion for preliminary injunction in part and denied it in part. Of particular relevance to this motion, the Court ruled that the DNC and the other party plaintiffs likely have Article III standing to challenge certain sections of the EO on the basis that they satisfy the requirements of organizational, associational, and political competition standing. *See* PI Opinion, ECF No. 104, at 40-47.

The case is now proceeding to discovery and an eventual decision on the merits. The RNC moves to participate in the merits litigation in order to protect its interests.

## INTERESTS OF THE REPUBLICAN NATIONAL COMMITTEE

The Republican National Committee is the national organization of the Republican Party, representing Republican voters and candidates nationwide, as defined by 52 U.S.C. §30101(14). The RNC helps Republican candidates achieve electoral victories at the local, state, and national

2

levels. Of particular relevance to this motion, the RNC engages in a variety of activities to register voters at the state and local levels.[1] The RNC also identifies likely voters, contacts voters to encourage them to vote, and engages in get-out-the-vote drives to increase voter turnout. The RNC engages in these activities directly and assists state and local parties in doing the same. Also central to the RNC's mission are its programs to promote sound election administration and election integrity because they are critical to protecting the voting rights of qualified voters and ensuring both the accuracy of election outcomes and public confidence in elections. The RNC monitors all aspects of election administration and deploys staff and volunteers to observe election administration. As part of these programs, the RNC devotes significant resources to identifying both qualified and unqualified voters who might dilute the votes of qualified voters. The RNC devotes millions of dollars each year to these activities.

As part of its efforts to ensure election integrity, the RNC litigates important election administration issues. The Complaint here acknowledges the RNC's successful effort to enforce observance of Election Day as the conclusion of all voting in federal elections in *RNC v. Wetzel*, 120 F.4th 200 (5th Cir. 2024), and requests that this Court countermand that decision. DNC Complaint ¶¶50-53. The RNC has a direct and unique interest in defending the lawfulness of that court ruling here against Plaintiffs' collateral attack in this Court. The DNC also claims that the executive order harms Democrats' "competitive interests in upcoming elections" in part because "Democratic voters use mail ballots at higher rates than their Republican counterparts in many States," and because those voters' ballots tend to arrive "past the deadline" for ballot receipt. DNC Complaint ¶107. Because elections are zero-sum, if the DNC has competitive interests in attacking the executive order, the RNC has mirror interests in defending measures that ensure voters cast

---

[1] *See* Declaration of RNC Chief of Staff Michael Ambrosini attached as Exhibit A.

3

ballots on time by election day. Likewise, the RNC has a direct interest preventing non-citizens from voting in federal elections and diluting the votes of its members, and in defending provisions that assist states in maintaining accurate voter rolls, which the RNC relies on to turn out voters.

## **KEY EO PROVISIONS OF SPECIAL INTEREST TO THE RNC**

The RNC supports the EO because it addresses important election subjects that improve election administration and promote election integrity. Of particular significance to the RNC are the following measures directed by the EO:

- Sections 2(a) and 2(d) enforce 18 U.S.C. §611's prohibition against non-citizen voter registration and voting (challenged in Counts I, II, VI, X, and XI)[2];

- Sections 2(b) and 3(a) provide essential information to states regarding deceased voters and other information to assist states in maintaining accurate registration rolls as required by [NVRA] (Challenged in Counts I and IX)[3];

- Section 7(a) enforces 2 U.S.C. §7 and 3 U.S.C. §1, which set a uniform national Election Day (challenged in Counts I, III, IV).[4]

The RNC has interests in these measures because they directly affect the RNC's voter registration, get-out-the-vote, and election-integrity efforts. These programs are central to the RNC's mission

---

[2] Section 2 of the Executive Order is similarly challenged in Counts One, Two, and Five of the Plaintiffs' Complaint in *League of United Latin American Citizens v. Exec. Off. of the President*, *see* Complaint at 41-44, 46-47, No. 25-946 (D.D.C. March. 31, 2025), and Counts I and II of the Plaintiffs' Complaint in *League of Women Voters Education Fund v. Trump*, *see* Complaint at 31-33, No. 25-955 (D.D.C. April 4, 2025).

[3] Plaintiffs' Complaints in consolidated cases raise similar arguments with respect to Section 2 of the Executive Order, but do not squarely address Section 3(a). *See supra* n.2.

[4] Section 7(a) of the Executive Order is similarly challenged in Count Three of the LULAC Complaint. *See* LULAC Complaint at 44-45. Section 7(a) is not directly challenged in the League of Women Voters Complaint but is mentioned in ¶55. *See* League of Women Voters Complaint at 18, ¶55.

as a political party. The RNC has a direct stake in state efforts to maintain accurate voter rolls because it relies on voter rolls to communicate with voters, advise candidates, and turn out voters to vote. The RNC's candidates, members, and voters are also directly affected by measures to ensure elections are conducted properly, yield accurate results, and the votes of American voters are not diluted by the votes of non-citizens or voters who fail to vote by Election Day.

## ARGUMENT

### I. The RNC Has a Right to Intervene Under Rule 24(a).

Rule 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The D.C. Circuit requires five elements: (1) the intervenor has standing under Article III; (2) the intervenor's motion is timely; (3) the intervenor has a "legally protected" interest in the action; (4) the action threatens the intervenor's interest; and (5) no other party adequately protects the intervenor's interest. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015) (standing is required); *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (setting forth requirements of the rule). RNC satisfies each of these requirements.

#### A. The RNC has standing.

If the DNC has standing, so does the RNC. The Court summarized the general principles of organizational, associational, and political competitor standing in its ruling on the preliminary injunction. PI Opinion at 42-47. Under those principles, the RNC has Article III standing on the same grounds that the Democratic Party plaintiffs have standing because it engages in similar voter-registration and get-out-the-vote activities to elect Republicans in upcoming elections.

5

1. Organizational Standing

The RNC spends millions of dollars each year to register qualified voters, identify qualified voters, identify unqualified voters, contact voters, and turn out qualified voters to vote in elections. Additionally, the RNC's mission includes direct efforts to ensure election integrity. An essential service the RNC renders to its members, candidates, campaigns, and state and local parties is tracking, monitoring, and objecting to the registration of unqualified voters. Registering qualified voters, conducting get-out-the-vote drives, and guarding against the participation of unqualified voters are "core" business activities of the RNC that are directly impacted by Plaintiffs' effort to enjoin enforcement of the Executive Order. *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 396-97 (4th Cir. 2024); *see also* Ambrosini Decl. ¶¶10-13.

In the very case that Plaintiffs attempt to undermine, the Fifth Circuit affirmed that the RNC has organizational standing to challenge post-election receipt of mail ballots. *RNC v. Wetzel*, 120 F.4th at 205 & n.3. As the district court in that case explained, post-election receipt of mail ballots requires the RNC "to perform more extensive and expensive ballot-chasing and poll-watching efforts necessitated by the acceptance of absentee ballots received after election day." *RNC v. Wetzel*, 2024 WL 3559623, at *4 (S.D. Miss. July 28, 2024). The court found on summary judgment that the extended competition for mail ballots "frustrates and impedes the Republican Party's mission of 'represent[ing] the interests of the Republican Party and secur[ing] the election of Republican candidates for state and federal office.'" *Id.* The Fifth Circuit affirmed that portion of the order, holding that "[j]urisdiction is proper" because "this case fits comfortably within our precedents." *RNC v. Wetzel*, 120 F.4th at 205 & n.3. The RNC thus has organizational standing. *See* PI Opinion at 61-62.

6

## 2. Associational Standing

An organization can have standing to advance a claim on behalf of its members. *See, e.g., Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Elec. Priv. Infor. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019). As demonstrated by the attached Declaration of the RNC's Chief of Staff, members of the Republican Party include Republican voters, candidates, and party members. Ambrosini Decl. ¶¶2, 6. These members have direct and personal interests in the voter registration process. RNC members participate in the registration of qualified voters. They participate in programs to prevent the registration of unqualified voters. They observe and object to the registration of unqualified voters. They engage in direct political and legal action to prevent the dilution of qualified voters' votes by unqualified votes and improper ballots, including those cast after the applicable deadline. They engage in a number of activities to ensure the integrity of the election administration process and the accuracy of election results, from registration through the casting and counting of ballots. The RNC thus has associational standing. *See* PI Opinion at 62-63.

## 3. Political-Competitor Standing

The RNC is a direct competitor of the DNC and the other party plaintiffs. As the national political party organization of the Republican Party, the RNC competes in election activities and get-out-the-vote efforts with the Democratic party plaintiffs. The RNC has an acute, non-speculative interest in its "right to compete for election under lawful 'rules of the game.'" PI Opinion at 65 (*citing Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005); *Nat. L. Party of U.S. v. FEC*, 111 F.Supp.2d 33, 47 (D.D.C. 2000)). The RNC thus has competitive standing. *See* PI Opinion at 63-65.

### B. Intervention is timely.

Whether intervention is timely depends upon the circumstances of each case. Courts consider the time elapsed since the inception of the case, prejudice to the current parties, the purpose for which intervention is sought, and the need for intervention to protect the intervenor's rights. *Karsner*, 532 F.3d at 886.

The RNC's motion to intervene is filed while the United States is still answering the Complaints in this case and before the case has proceeded to discovery, dispositive motions, or trial. This motion comes approximately less than two months after the DNC's Complaint was filed, which makes it timely. *See Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (intervention two months after complaint was timely). The RNC commits to abiding by the Court's scheduling order (ECF No. 122) and any forthcoming procedural orders. It has attached proposed answers to the complaints, and it does not anticipate taking any discovery. There can be no credible prejudice to the existing parties given the posture of the case. The RNC's participation will not disrupt Plaintiffs' ability to pursue their case or make their proof or schedule the case going forward.

### C. The lawsuit implicates the RNC's legally protected interests.

The RNC has legally protected rights at stake in this lawsuit for the same reasons it has Article III standing, outlined above and in the Court's preliminary injunction opinion. *See* PI Opinion at 40–47. A party that has constitutional standing has "necessarily shown that they have a legally protectable interest in the action." *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 12 (D.D.C. 2019) (citing *Fund for Animals*, 322 F.3d at 735).

Parties "governed by" statutory schemes that are challenged as unconstitutional have interests "sufficient to support intervention." *Cooper Tech. v. Dudas*, 247 F.R.D. 510, 514 (E.D. Va. 2007). The RNC and its members are governed by the election rules set forth in the Executive

8

Order and statutes it applies. Indeed, federal courts "routinely" find that political parties have interests supporting intervention in litigation regarding election rules. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *see, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001). Every election cycle, party organizations like the RNC "expend significant resources" on the election process—"conduct" that laws like those at issue here "unquestionably regulat[e]." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). And courts recognize that injury to an organization's programmatic activities is a legitimate "interest" under Rule 24(a)(2). *E.g.*, *Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. 2020). Given their inherent and intense interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014). That is certainly true where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005). Under such circumstances, "there [was] no dispute that the Ohio Republican Party had an interest in the subject matter of this case." *Id.*

Under these principles, the Democratic and Republican Parties have successfully intervened in numerous election cases. *See, e.g.*, *Mi Familia Vota v. Hobbs*, 2021 WL 5217875 (D. Ariz. Oct. 4, 2021) (granting intervention to RNC, NRSC, DSCC, and DCCC); Mot. to Intervene at 8-9, *Ga. Republican Party, Inc. v. Raffensperger*, No. 1:20-cv-5018 (N.D. Ga. Dec. 11, 2020); Mot. to Intervene at 17-19, *Wood v. Raffensperger*, No. 1:20-cv-4651 (N.D. Ga. Nov. 18, 2020). And courts have recognized that "mirror-image" interests in a lawsuit are "sufficient to satisfy Rule 24(a)(2)." *See, e.g.*, *Builders Ass'n of Greater Chi. v. Chicago*, 170 F.R.D. 435, 440-

9

41 (N.D. Ill. 1996). The DNC's and RNC's countervailing interests in the outcome of this litigation and the rules governing elections justify the RNC's participation in this case.

### D.     The RNC's interests could be impaired or impeded.

A court should look at the "practical consequences" of denying intervention to determine if a putative intervenor has interests that could be impaired. *Fund for Animals*, 322 F.3d at 735. Here, the RNC's interests in registering qualified voters, preventing the registration of unqualified voters, and participating in elections that are fair and accurate are analogous to the interests asserted by the Democratic party plaintiffs to bring this action. The RNC has as significant an interest in defending the measures set forth in the Executive Order as the Democratic Party Plaintiffs assert in challenging the measures. Changes to election rules necessarily impact the allocation of party resources and campaign strategies. For the RNC, that includes both voter registration activities and its programs to ensure election integrity. *See, e.g., Shays*, 414 F.3d at 87 ("Because Shays and Meehan have asserted equivalent injury—competition intensified by BCRA-banned practices—and thus face an equivalent need to adjust their campaign strategy, they too suffer harm to their legally protected interests.").

The DNC Complaint directly attacks the Fifth Circuit's ruling in *RNC v. Wetzel*, 120 F.4th 200 (5th Cir. 2024), an important election integrity case initiated and won in the Fifth Circuit by the RNC. DNC Complaint at ¶¶51-53. The RNC has an obvious legal and practical interest in defending Plaintiffs' attack on this precedent. Indeed, the RNC's legal interests would be impaired were this Court or an appellate court to rule that the Fifth Circuit's decision is incorrect. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (holding that the "persuasive effects" of one court's opinion on other courts can be significant and thus warrant intervention). The RNC's interests in defending its own favorable precedent are similar to the interests recognized by the

10

D.C. Circuit in challenges to FEC decisions. *See, e.g.*, *Crossroads*, 788 F.3d at 320 (recognizing the interests of FEC respondents to defend favorable actions by the FEC).

### E. The RNC will defend unique private rights not fully represented by the United States.

When addressing adequate representation, it is sufficient that a putative intervenor "shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). This language of Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967).

"[I]t is well-established that governmental entities generally cannot represent the 'more narrow and parochial financial interest' of a private party.'" *Wash. All. of Tech. Workers v. DHS*, 395 F. Supp. 3d 1, 21 (D.D.C. 2019). Unique organizational interests like those of the RNC have "satisfied" this Court in numerous cases "that the Organizations have made the requisite minimal showing that the Government may not adequately represent the Organizations' interests." *Id.* As the Democratic Party has explained, political parties "have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither defendants nor any other party in this lawsuit share." Mot. to Interv. at 16, *Wood v. Raffensperger*, No. 1:20-cv-5155 (N.D. Ga. Dec. 28, 2020). Movants' interests are inherently "partisan," *La Union del Pueblo Entero*, 29 F.4th at 309, which means the United States can't defend them, *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996) (government necessarily represents "the public interest"). The RNC's interests in the provisions of the Executive Order and its defenses, including in defense of the Fifth Circuit's decision in *Wetzel*, are not identical to the interests and defenses anticipated from the United States.

11

For example, Count X of the DNC Complaint asserts that the Executive Order is unlawful because it violates the Plaintiffs' constitutional rights under the First and Fifth Amendments. DNC Complaint ¶¶205-12. The RNC will assert in defense that the EO is consistent with the First and Fifth Amendments. Enjoining the election integrity provisions would remove measures protecting the RNC's constitutional and statutory rights to participate in fair and honest federal elections based on sound election rules that protect qualified voters from dilution by unqualified voters, tardy ballots, and inaccurate election results. These rules promote voter confidence, which "is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Voter confidence and election integrity also have a direct effect on voter turnout, *see id.*, which is key to the Republican Party's mission to elect Republican candidates. Although the United States is likely to oppose Plaintiffs' assertion of a constitutional violation, the United States is unlikely to assert the RNC's private constitutional rights as a defense. These constitutional rights can be asserted only by a private election participant, not the government. A second example is the RNC's substantive defense of the Fifth Circuit's decision in *RNC v. Wetzel*. As the party who filed and won that case in the Fifth Circuit, the RNC is not only uniquely qualified to argue the merits—it has a particular interest in defending that precedent on the grounds articulated by the Fifth Circuit.

Finally, that the United States takes no position on intervention at least raises doubts that it can adequately defend the RNC's unique interests. As courts have stressed, the government's "silence on any intent to defend [the Movants'] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). Because State Defendants "nowhere argue" that they "will adequately protect [Movants'] interests," Movants have "raised sufficient

doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017). Movants thus should be granted intervention under Rule 24(a)(2).

**II.    RNC has a sufficient interest in the subject of the lawsuit to merit permissive intervention under Rule 24(b).**

As an alternative to mandatory intervention under Rule 24(a), Rule 24(b) grants the Court broad discretion to permit intervention where the putative intervenor defense and the main action have a question of law or fact in common and the intervention will not unduly delay or prejudice adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(1)(B). The RNC meets this standard for permissive intervention. The RNC's defenses to Plaintiffs' claims join defenses in common with those of the United States.

The RNC's intervention will not unduly delay this litigation or prejudice anyone. There is no undue delay or prejudice where intervenors file their motion when "litigation is in a relatively nascent stage." *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 691 (N.D. Ga. 2014). Any purported "burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022). Responding to the RNC's arguments will not unduly prejudice the Plaintiffs, since they "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants also commit to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Casualty Ins.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016). Allowing Movants to intervene will allow the Court "to profit from a diversity of viewpoints as [Movants] illuminate the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017).

13

Finally, allowing the RNC to intervene in this case will promote fairness in the law and allow the Court to consider all competing, "mirror-image" interests at one time. *See, e.g.*, Order at 11, *DNC v. Bostelman*, No. 3:20-cv-249 (W.D. Wisc. Mar. 28, 2020) (granting permissive intervention under Rule 24(b) to the RNC because "they are uniquely qualified to represent the 'mirror-image' interests of the plaintiffs, as direct counterparts to the DNC/DPW").

## CONCLUSION

The RNC has as much standing to defend the election administration measures set forth in the Executive Order as the DNC and the other plaintiffs have to challenge them. For the reasons set forth above, the Court should grant the RNC's motion to intervene and direct the Clerk to docket the RNC's attached Answers.

Dated: June 3, 2025

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Lee E. Goodman (D.C. Bar 435493)
Michael Columbo (D.C. Bar 476738)
DHILLON LAW GROUP
2121 Eisenhower Ave., Ste. 608
Alexandria, VA 22314
(415) 433-1700
lgoodman@dhillonlaw.com
mcolumbo@dhillonlaw.com

Thomas R. McCarthy (D.C. Bar 489651)
Gilbert C. Dickey (D.C. Bar 1645164)
Conor D. Woodfin (D.C. Bar 1780807)
William Bock IV* (Ohio Bar o105262)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, Virginia 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com
wbock@consovoymccarthy.com

**pro hac vice* forthcoming

*Counsel for Proposed Intervenor-Defendant*
*The Republican National Committee*