UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br>　　v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>　　　　　　*Defendants*. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　　*Defendants*. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　　*Defendants*. | Civil Action No. 25-0955 (CKK) |

**NONPARTISAN PLAINTIFFS' OPPOSITION TO THE REPUBLICAN NATIONAL COMMITTEE'S MOTION TO INTERVENE**

**BACKGROUND**

On March 25, 2025, President Trump issued Executive Order 14248 ("EO" or "Order"). The Order violates the constitutionally mandated separation of powers by purporting to grant the

1

President the power to dictate and change certain rules for Federal Elections. Because the EO directed the independent, bipartisan Election Assistance Commission ("EAC") to take certain actions within 30 days, Order, § 2(a)(i)(A), the three sets of plaintiffs here filed their complaints mere days after the Order issued.[1]

This Court ordered the plaintiffs to confer on consolidation, and to file a motion to consolidate as appropriate. The plaintiffs did so and moved to consolidate. Doc. 18 (Case No. 25-cv-0952). The Court granted that request, issued detailed instructions on joint briefing, and then, following a motion from the League and LULAC Plaintiffs ("Nonpartisan Plaintiffs"), modified those instructions to allow the Democratic Party Plaintiffs and Nonpartisan Plaintiffs to file separate briefs. Docs. 12, 30, and 31. All plaintiffs requested that their motions for preliminary injunctive relief be briefed and decided on an expedited schedule. Doc. 30, at 3–5. Briefing on those motions concluded on April 16, 2025, and a hearing was held on April 17, 2025. Doc. 88.

On April 24, 2025, this Court granted a preliminary injunction as to Sections 2(a) and 2(d) of the EO. Doc. 104 (PI Op.) at 3. The Court determined that both provisions were "issued *ultra vires* and cannot lawfully be implemented." *Id.* at 112, 114. Since then, the parties have conferred multiple times on the schedule for the litigation and the scope of anticipated discovery to bring all

---

[1] Plaintiffs in *League of United Latin American Citizens et al. v. Executive Office of the President et al.*, No. 25-cv-0946, are League of United Latin American Citizens, Secure Families Initiative, and Arizona Students' Association ("LULAC Plaintiffs"). Plaintiffs in *League of Women Voters Education Fund et al. v. Trump et al.*, No. 25-cv-0955, are League of Women Voters Education Fund, League of Women Voters of the United States, League of Women Voters of Arizona, Hispanic Federation, National Association for the Advancement of Colored People, OCA-Asian Pacific American Advocates, and Asian and Pacific Islander American Vote ("League Plaintiffs"). Plaintiffs in *Democratic National Committee et al. v. Trump et al.*, No. 25-cv-0952, are the Democratic National Committee, Democratic Governors Association, Democratic Senatorial Campaign Committee, Democratic Congressional Campaign Committee, U.S. Senate Minority Leader Charles E. Schumer, and U.S. House of Representatives Minority Leader Hakeem S. Jeffries ("Democratic Party Plaintiffs").

claims in these cases to a prompt and final resolution. Defendants did not appeal the preliminary injunction, have already answered two of three complaints, Doc. 123 & 124, and will answer the third by tomorrow, *see* Doc. 122. Thus, the case is well on its way to final adjudication of the merits of plaintiffs' claims, particularly regarding the provisions currently enjoined.

On June 3, 2025, more than two months after plaintiffs filed their complaints, and more than a month after this Court granted a preliminary injunction, the Republican National Committee ("RNC") filed its motion to intervene. Doc. 125. Additionally, over two months ago, several States also filed challenges to the EO. *See California v. Trump*, 25-cv-10810 (D. Mass. filed Apr. 3, 2025); *Washington v. Trump*, 25-cv-0602 (W.D. Wash. filed Apr. 4, 2025). The RNC has not sought to intervene in those cases, although the Republican Party of Arizona has participated as amicus in the District of Massachusetts litigation.

The motion to intervene should be denied in its entirety. To the extent that the Court does allow intervention, its scope should be strictly limited to issues other than those relating to Sections 2, 3(d), and 4(a) of the Order. Such limits are needed to ensure that the RNC is not granted party status as to issues where it has not even attempted to demonstrate an impairment of a legally protected interest, as well as to prevent unnecessary delay and burdens on the existing parties and the Court.

## LEGAL STANDARD

### A.     Intervention as of Right

Federal Rule of Civil Procedure 24(a) governs intervention as a matter of right. Intervenors as of right must demonstrate:

(1) the timeliness of the motion;

(2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action;

(3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and

(4) whether the applicant's interest is adequately represented by existing parties.

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (internal citations and quotation marks omitted).

This Court requires parties seeking to intervene under Rule 24(a)—including as defendant-intervenors—to demonstrate that they have Article III standing. *See Old Dominion v. FERC*, 892 F.3d 1223, 1232 n.2 (D.C. Cir. 2018); *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015); *Fund for Animals*, 322 F.3d at 731–32. "The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316 (citing *Deutsche Bank Nat'l Trust v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013)).

### B. Permissive Intervention

Federal Rule of Civil Procedure 24(b) governs permissive intervention. In exercising its discretion to permit intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### C. Restrictions on Intervenor Participation

Where intervention is granted, even as of right, district courts may impose limits and restrictions upon the intervenor's participation. *Fund for Animals*, 322 F.3d at 737 n. 11; *see United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980). The ability to impose such limits flows from the district court's inherent case management power, and the court's ability "to prevent [a] single lawsuit from becoming fruitlessly complex or unending.'" *Ctr. for Food Safety*

*v. EPA*, No. 1:23-cv-1633-CKK, 2024 WL 1299338 at *3 (D.D.C. Mar. 26, 2024) (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969)).

## ARGUMENT

### I. The RNC's Motion to Intervene Fails to Satisfy the Requirements for Intervention as of Right.

The RNC's motion fails to satisfy each of the requirements for intervention as of right and should accordingly be denied.

#### A. The RNC Has Not Even Attempted to Demonstrate Article III Standing as to Each Challenged Provision of the EO.

Any intervenor—whether intervening as plaintiff or defendant—must demonstrate Article III standing. *Old Dominion*, 892 F.3d at 1232 n.2; *Crossroads*, 788 F.3d at 316–17. Standing "turns on whether [the RNC] alleges a sufficient injury in fact, which the Supreme Court has described as including an invasion of a legally protected interest that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Crossroads*, 788 F.3d at 316–17 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). And again, "[t]he standing inquiry for an intervening-defendant is the same as for a plaintiff." *Id.* at 316. Thus, a defendant-intervenor must have standing "for each claim that [it] press[es] and for each form of relief that [it] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *see also* Doc. 104 at 41.

The RNC fails to allege sufficient facts to show Article III standing and, in turn, to support its intervention. Plaintiffs' complaints in these cases address multiple provisions of the EO under various legal claims.[2] The RNC does not address the specifics of the challenged EO provisions in any detail, nor does it attempt to tie the requirements of the challenged provisions to specific injuries

---

[2] All plaintiffs challenge Section 2(a), the Democratic Party Plaintiffs challenge Sections 2(b), 2(d), 3(a), 4(c), 4(d), and 5(b), and LULAC Plaintiffs and Democratic Party Plaintiffs challenge Sections 3(d), 4(a), 7(a), and 7(b).

5

that it will purportedly suffer if they are enjoined. Instead, it simply asserts broad interests in "voter registration, get-out-the-vote, and election-integrity efforts." Doc. 125, at 9. But that is insufficient to establish Article III standing to intervene in these actions generally, as well as to intervene to defend the specific provisions of the EO at issue.

For example, the RNC asserts that "[e]njoining enforcement of . . . proof-of-citizenship requirement[s]" would force it to divert resources to "poll-watching activities, [and] voter-roll monitoring." Doc. 125-1 (Decl. of Michael Ambrosini), ¶ 26. But these cases are not about enjoining proof-of-citizenship requirements in the abstract. Through the Help America Vote Act, Congress mandated that the Federal Voter Registration Form (the "Federal Form") include two specific questions, along with check boxes, for the applicant to indicate whether they meet U.S. citizenship and age requirements to vote, as well as instructions not to complete the Federal Form if the answer to either question is no. *See* 52 U.S.C. § 21083(b)(4)(A). That congressionally enacted requirement is mandatory and unaffected by this litigation. The RNC makes no attempt to tie its asserted interests and purported injury to the President's unconstitutional instructions in the EO that the EAC require specific forms of documentary proof of citizenship for the Federal Form.

The same lack of specificity necessary to establish Article III standing is true with respect to each of the other challenged EO provisions. Moreover, the RNC need not allocate its resources any differently today than it did before the EO was issued or this litigation commenced. There has never been a requirement to produce a passport or other citizenship document to register to vote using the Federal Form. This Court's preliminary injunction merely preserved this status quo. As such, this Court should reject the RNC's contention that it is entitled to intervention as of right.

### B. The Motion to Intervene Is Untimely.

The motion should also be denied because it is untimely. To determine whether a motion to intervene is timely, courts consider "all the circumstances, especially weighing the factors of time

6

elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (internal quotations omitted).

The RNC waited more than two months after three groups of plaintiffs filed suit in this consolidated action, and more than a month after the Court adjudicated the motions for preliminary injunction before moving to intervene. Indeed, the RNC waited to seek intervention until after Defendants made substantive determinations about interlocutory appeal and initial decisions about discovery. Doc. 119 at 5–6; Doc. 122. The RNC offers no explanation for its delay. Instead, it premises its motion on its status as "a direct political competitor of the DNC." Doc. 125 at 6. But the RNC has surely been aware of its purported interest since the date the Democratic Party Plaintiffs' complaint was filed.[3]

As discussed *infra*, the RNC does not have a legally cognizable interest in this litigation, and thus its purpose for intervention appears to be directed solely at counteracting the interests of its political rivals, the Democratic Party Plaintiffs. Such purpose does not support intervention here. And, as also discussed *infra*, the RNC cannot show that its intervention is necessary to preserve its rights.

---

[3] These lawsuits have been highly publicized. *See, e.g.*, Deena Zaru, *Civil Rights Groups Sue Trump Over Executive Order Requiring Citizenship Proof in Registering to Vote*, ABC News (Apr. 1, 2025), https://abcnews.go.com/US/civil-rights-groups-sue-trump-executive-order-requiring/story?id=120377609; Nidia Cavazos & Fin Daniel Gómez, *LULAC Sues Trump Administration Over Executive Order Aiming to Overhaul U.S. Elections*, CBS News (Mar. 31, 2025), https://www.cbsnews.com/news/lulac-sues-trump-administration-over-executive-order-aiming-to-overhaul-u-s-elections/; Nick Corasaniti, *Democrats Sue President Over Executive Order on Elections*, N.Y. Times (Mar. 31, 2025), https://www.nytimes.com/2025/03/31/us/politics/trump-executive-order-elections-lawsuit.html.

The final timeliness factor also cuts against the RNC. Intervention is likely to prejudice the parties already in the case. As referenced *supra*, the parties have already conferred several times to discuss a schedule that would accommodate swift resolution of these actions. Another entrant months after these cases were filed risks delaying the parties' deliberations and undermining judicial economy. At best, "[a]ny arguments or evidence that [the RNC] would offer 'will be merely cumulative to what [Defendants] will offer, and in that respect it may create unwarranted delay and prejudice to Plaintiffs.'" *Ctr. for Food Safety*, 2024 WL 1299338, at *10 (quoting *Env't Def. Fund v. Thomas*, No. 85-cv-1747, 1985 WL 6050, at *7 (D.D.C. Oct. 29, 1985)). At worst, the proposed answers foreshadow that the RNC may intend to invoke an inapposite affirmative defense. *See infra* Part I.C. As in *Center for Food Safety*, "allowing [the RNC] to intervene would delay litigation, prejudice Plaintiffs, and result in an inefficient use of judicial resources by broadening scope of litigation beyond Plaintiffs' Complaint, while not significantly contributing to the just and equitable adjudication of the legal question presented." 2024 WL 1299338, at *10.

For these reasons and considering "all the circumstances," *Karsner*, 532 F.3d at 886, the Motion to Intervene should be denied.

### C. The RNC Has Not Asserted Legally Protected Interests That the Litigation Would Impair.

The RNC has asserted no legally protected interests implicated in these actions. Rule 24(a)'s requirement that a putative intervenor have an interest in the action, is "satisfied not by any interest the applicant can put forward, but only by a legally protectable one." *Ctr. for Food Safety*, 2024 WL 1299338, at *7 (internal quotations and alternations omitted). A legally protectable interest is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Id.* (quoting *Am. Tel. & Tel. Co.*, 642 F.2d at 1291–92). Furthermore, there is no legally protected interest "when its asserted legal source . . . does not apply

or does not exist." *See Barhoumi v. Obama*, 234 F. Supp. 3d 84, 86 (D.D.C. 2017) (citing *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997)).

The RNC's generalized interests in "election rules," its desire to defend an out-of-circuit opinion not at issue in these cases, and its apparent plan to raise a wholly inapplicable affirmative defense do not meet Rule 24(a)'s demand for a legally protectable interest. None of these constitutes "an interest relating to the subject of the action." *See Ctr. for Food Safety*, 2024 WL 1299338, at *7 (citing *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009)).

First, the RNC asserts that it has a legally protected interest in this litigation because it is "governed by the election rules set forth in the Executive Order and statutes it applies." Doc. 125 at 13–14. But this statement elides what these cases are about. Intervenors are of course governed by the statutes referenced in the EO, but those statutes are not challenged in these actions, so any interests in the operation of those statutes will not be affected by the "direct operation and effect of the judgment." Instead, these suits are about the separation of powers, as plaintiffs challenge the President's attempt to regulate federal elections, a subject outside the scope of his constitutional power. The RNC's generalized invocations of an interest in "election regulations" writ large is insufficient to establish a legally protectable interest here. Indeed, the very case the RNC cites made plain that an intervenor must establish a "significant protectable interest" that is "protected under some law," and which has a "relationship [to] the plaintiff's claims." *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (citing *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)). The RNC has failed to demonstrate that here.

Second, the RNC's lengthy discussion of *RNC v. Wetzel*, 120 F.4th 200 (5th Cir. 2024), as it relates to LULAC Plaintiffs' challenge to Section 7 of the EO is unavailing. *Wetzel* considered whether Mississippi's ballot receipt deadline conformed to federal law. Here, by contrast, this Court

9

has not been asked to consider the validity of any ballot receipt deadline. Rather, LULAC Plaintiffs contest whether the President can order the Attorney General and the EAC to act based on the President's interpretation of the federal Election Day statutes. Doc. 104 at 97–98.[4] The issue in *Wetzel* is thus not at stake in this litigation. Moreover, the RNC does not explain how this Court's judgment on LULAC Plaintiffs' claims related to Section 7 of the Order is "of such a direct and immediate character that the intervenor will either gain or lose" by such judgment. *Ctr. for Food Safety*, 2024 WL 1299338, at *7 (quoting *Am. Tel. and Tel. Co.*, 642 F.2d at 1291–92). The RNC's attached declaration asserts that it has "vital interests" in "protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in federal and state elections." Doc. 125-1 ¶ 8. But none of the plaintiffs' requested relief would impair the RNC's ability to do these things.

Additionally—and critically—neither the motion nor the attached declaration discusses, in substance, the requirement in Section 2(a) of the EO, that a documentary proof-of-citizenship requirement be added to the Federal Form. Having failed to assert any legally protected interest in this aspect of the litigation, the RNC should at minimum be precluded from intervening to defend this portion of the Order, and any arguments otherwise are forfeited. *Fund for Animals*, 322 F.3d at 737 n.11; *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in [its] opening brief."); *see also infra* Part III.

Finally, the RNC's invocation of the *Purcell* principle as an affirmative defense, Doc. 125-3 at 20; Doc. 125-4 at 11, provides no basis for intervention, and indeed counsels against allowing it. As this Court has already explained, the *Purcell* principle is concerned with maintaining the

---

[4] League Plaintiffs take no position on LULAC and Democratic Party Plaintiffs' claims related to the Order's directive to "enforce" federal Election Day Statutes.

status quo, avoiding altering election rules close in time to an election, guarding state autonomy, and ensuring that lower courts explain themselves when they weigh in on election regulations. Doc. 104 at 109–10. The EO tried to *alter* the status quo by intruding on the prerogative of Congress and the States to set election regulations. This Court's thoroughly explained preliminary injunction largely maintained that status quo. The *Purcell* principle thus has no applicability here.

Furthermore, while the Arizona special election has an upcoming registration deadline, Doc. 104 at 23–24, that election will take place under the current status quo, and plaintiffs are seeking a permanent injunction of the Order for all future elections. *Purcell* is thus doubly inapposite since it applies only to court decisions changing election rules as to fast-approaching elections. *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (mem.) (Kavanaugh, J., concurring). The RNC cannot establish its interest in this litigation based on a wholly inapposite affirmative defense. *See Ctr. for Food Safety*, 2024 WL 1299338, at *7.

### D. The RNC Has Not Established Inadequate Representation.

The RNC also fails to articulate protectable interests that are distinct or not already adequately represented by Defendants. A presumption of adequate representation exists if "both the intervenor and existing party have the same ultimate objective." *See Cobell v. Jewell*, No. 96-cv-01285, 2016 WL 10703793, at *2 (D.D.C. Mar. 30, 2016) (citations omitted). Such is the case here, where the RNC shares the same objectives of defending the EO.

Although the standard for inadequate representation is "not onerous," *Fund for Animals*, 322 F.3d at 735 (quotation marks omitted), it is not met when "it is clear that the party will provide adequate representation for the absentee." *Doe 1 v. Fed. Election Comm'n*, No. 17-2694, 2018 WL 2561043, at *5 (D.D.C. Jan. 31, 2018) (quoting *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)). Absent a showing that its interests are not adequately represented by Defendants, the RNC's motion must be denied. *Sevier v. Lowenthal*, 302 F. Supp. 3d 312, 323 (D.D.C. 2018).

The RNC lists a variety of general public interests that parties already adequately represent, thus failing to make the requisite showing of inadequacy. Doc. 125 at 11–13. Under the RNC's formulation, because any "[c]hanges to election rules necessarily impact the allocation of party resources and campaign strategies," the RNC has interests that are inadequately represented by government entities whenever there is a change to election rules. *Id.* at 15–16. Yet it cannot be the case that the intervention standard is so broad that any change of an election rule anywhere allows the RNC to intervene as of right, especially where the core interests that the RNC cites are general public interests. An entity "seeking to assert some general public interest in a suit in which a public authority charged with the vindication of that interest is already a party" does not provide grounds to intervene in a case. *Doe 1*, 2018 WL 2561043, at *5 (citing *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 149–50 (1967)).

Here, the RNC claims that "[e]njoining the election integrity provisions" of the EO "would remove measures" protecting the right to "participate in fair and honest federal elections." Doc. 125 at 12. But such arguments by Republican committees have been rejected repeatedly as insufficient to support intervention. *See, e.g.*, *Common Cause R.I. v. Gorbea*, No. 1:20-cv-00318-MSM-LDA, 2020 WL 4365608, at *5 (D.R.I. July 30, 2020) (rejecting state Republican Party's rationale "to see that existing laws remained enforced" because "[t]hat is the same interest the defendant agencies are statutorily required to protect"); *see also* Resp. in Opp'n to Intervention Mot. at 8–9, *Republican Nat'l Comm. v. Benson*, No. 1:24-cv-262, (W.D. Mich. Apr. 5, 2024), ECF No. 16 (RNC emphasizing that "proposed intervenors fall far short of showing that the State's interest will be inadequate" because "the State *represents* the interests of voters" and "proposed intervenors have no evidence [showing] that the State's representation will be inadequate"). Moreover, Defendants' representation is focused on precisely the same objectives as the RNC. In recent weeks, the

12

Department of Justice issued a memo revising the mission statement of the Voting Section of the Civil Rights Division, asserting a new remit "to ensure free, fair, and honest elections unmarred by fraud, errors, or suspicion" including a focus on ensuring that "only American citizens vote in U.S. federal elections." Nicholas Riccardi, *Justice Department will switch its focus on voting and prioritize Trump's elections order, memo says*, AP, May 3, 2025, https://apnews.com/article/trump-justice-department-voting-rights-elections-fraud-0717d58a10daa11b3957d277a7ca8e0e. In the same document, the Department stated its intent to "vigorously enforce" the EO. *Id.*

The arguments that the RNC appears poised to make largely overlap with those that will be raised by Defendants. That each will raise the "same legal theories and arguments," only reinforces that Defendants will adequately represent the RNC's interests. *Sevier*, 302 F. Supp. 3d at 323.

Lastly, any interest the RNC maintains in asserting the validity of the reasoning in *RNC v. Wetzel* so as "to challenge post-election receipt of mail ballots," Doc. 125 at 11, may be litigated in other cases, not in this one. The question here is whether the President can order the Attorney General and the EAC to take actions based on his interpretation of federal laws establishing the date of Election Day. Order § 7. Defendants adequately represent the interests at stake in this litigation.

Because the RNC has failed to overcome the presumption of adequate representation and to meet its burden to articulate distinct interests that are inadequately represented by Defendants, this Court should deny the motion to intervene.

## II. The Court Should Also Deny RNC's Motion for Permissive Intervention.

The RNC has not demonstrated that its participation is either necessary or helpful to resolve these cases. To the contrary, the RNC's participation would impose unnecessary burdens on both the parties and the Court and should accordingly be denied.

"[P]ermissive intervention is an inherently discretionary enterprise," *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), and "the court enjoys considerable discretion under Rule 24(b)," *Env't. Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004). "District courts have the discretion . . . to deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action." *EEOC*, 146 F.3d at 1048. Indeed, "[r]eversal of a district court's denial of permissive intervention is a very rare bird . . . so seldom seen as to be considered unique." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994).

This Court has already correctly held "that the President has no constitutional power over election regulation that would support [his] unilateral exercise of authority" that conflicts with statutes enacted by Congress. Doc. 104 at 71. Defendants will continue defend the EO as the actions proceed. But this Court is fully entitled to exercise the "wide latitude" that it enjoys and deny permissive intervention where Proposed Intervenor, at best, seeks only to echo "the same flawed arguments" as other parties. *Sevier*, 302 F. Supp. 3d at 323. Of course, Nonpartisan Plaintiffs would have no objection to the RNC's participation as amicus on whatever discrete legal issues it wishes to brief.

## III. Alternatively, if the Court Permits Intervention, it Should Limit the RNC's Participation to its Asserted Interests and Exclude it From Litigating Sections 2, 3(d), and 4(a) of the Order.

If the Court permits the RNC to intervene—whether as a matter of right or through the Court's discretion—it should confine the RNC's participation to the issues on which it at least

14

attempted to articulate a cognizable interest.[5] District courts may impose appropriate conditions upon an intervenor's participation, regardless of whether they allow a movant to intervene permissively or as a matter of right. *See Fund for Animals*, 322 F.3d at 737 n.11. In either scenario, "the limited nature of the intervenor's interest [may] determin[e] the scope of intervention that should be allowed." *Am. Tel. & Tel. Co.*, 642 F.2d at 1291; *see also Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987) (applicant "may have a sufficient interest to intervene as to certain issues . . . without having an interest in the litigation as a whole"). Or in the case of permissive intervention, it may reflect a court's judgment that limitations are practical "in order to minimize the delay and prejudice to the existing parties." *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.*, 205 F.R.D. 1, 7 (D.D.C. 2000). Both reasons for limiting intervention apply here.

If the Court permits intervention, the RNC's participation should be circumscribed to issues on which the RNC has, at a minimum, tried to articulate a legally protected interest. To be sure, the RNC has failed to do so for any of the EO provisions that the Nonpartisan Plaintiffs challenge. The RNC focuses the brunt of its motion on Section 7(a) of the Executive Order, which relates to post-election day ballot receipt deadlines. *See supra* Part I.C. But the RNC has not even *tried* to assert a specific interest concerning Sections 2, 3(d), and 4(a) of the Executive Order, which are also challenged in one of the Nonpartisan Plaintiffs' cases.

For example, Section 2(a) relates to the President's now-enjoined attempt to force the EAC to require documentary proof of citizenship with the Federal Form. As plaintiffs have argued—and this Court has held—the President has neither express nor implied authority to command the EAC

---

[5] If the RNC is permitted to intervene, irrespective of the scope of intervention, the Court should hold the RNC to its commitment that it will submit all filings in accordance with whatever briefing schedule and procedural orders (including those related to discovery) the Court imposes. Doc. 125 at 13, 18.

15

this way. Doc. 104 at 65–83. Nor does the RNC have a cognizable interest in defending the President's unlawful action. Indeed, the RNC's motion musters only one offhanded mention of Section 2(a), baldly declaring it to be of "particular significance." Doc. 125 at 9. But the RNC doesn't explain what interest it has in Section 2(a) or why that interest isn't protected by the government lawyers who have already defended that provision before this Court. *See supra* Part I.C-D. The RNC does not reference—let alone state an interest in defending—Sections 3(d) or 4(a) of the Executive Order at all. If the RNC is allowed to intervene, the Court should therefore limit the RNC's participation to Section 7(a) of the Executive Order.

In terms of timing, delay, and prejudice, the RNC seeks to duplicate Defendants' efforts to defend the Executive Order, including Section 2(a), which has already been comprehensively briefed. But courts strongly disfavor these "piling on" tactics precisely because of the "delay or prejudice" they inevitably impose on both parties and the courts. *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235 (D.C. Cir. 2004). That concern is of particular importance here, where the issue of Section 2(a) has already been extensively briefed, argued, and adjudicated in preliminary injunction proceedings, and plaintiffs seek to move quickly to permanently enjoin its enforcement. There is no reason that amicus participation at this point would not suffice for any (unstated) points that the RNC would like to offer. *See* 7C Wright & Miller, Fed. Prac. & Proc. Civ. 3d § 1913 (2025) (noting "common practice to allow [] applicant to file a brief amicus curiae" when "court determines to deny intervention").

For the reasons stated *supra*, the RNC falls far short of meeting the standard for intervention as a matter of right. But even if the Court considers it proper to allow the RNC to participate in the case under Rule 24(b), it should not allow the RNC to defend Sections 2, 3(d), or 4(a) of the Executive Order. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987)

16

(Brennan, J., concurring) (noting "highly restrictive conditions may be . . . placed on a permissive intervenor, because [they lack] a statutory right to intervene []or any interest . . . that the other parties will not adequately protect").

Dated: June 6, 2025                              Respectfully submitted,

/s/ Norman L. Eisen                              /s/ Danielle Lang
Norman L. Eisen (D.C. Bar No. 435051)            Danielle Lang (DC Bar No. 1500218)
Tianna J. Mays (D.C. Bar No. 90005882)***        Jonathan Diaz (DC Bar No. 1613558)
Pooja Chaudhuri (D.C. Bar No. 888314523)         Robert Brent Ferguson (DC Bar No. 1782289)
STATE DEMOCRACY DEFENDERS FUND                   Anna Baldwin (DC Bar No. 998713)
600 Pennsylvania Avenue SE #15180                Heather Szilagyi (DC Bar No. 90006787)
Washington, D.C. 20003                           Benjamin Phillips (DC Bar No. 90005450)
(202) 601-8678                                   CAMPAIGN LEGAL CENTER
norman@statedemocracydefenders.org               1101 14th St. NW, Suite 400
tianna@statedemocracydefenders.org               Washington, D.C. 20005
pooja@statedemocracydefenders.org                (202) 736-2200
                                                 dlang@campaignlegalcenter.org
*Counsel for Plaintiffs League of United Latin*  jdiaz@campaignlegalcenter.org
*American Citizens, Secure Families Initiative,* bferguson@campaignlegalcenter.org
*and Arizona Students Association*               abaldwin@campaignlegalcenter.org
                                                 hszilagyi@campaignlegalcenter.org
*Admitted pro hac vice                           bphillips@campaignlegalcenter.org
**Application for D.D.C. admission pending*
***Application for pro hac vice admission
forthcoming*

                                                 /s/ Sophia Lin Lakin
Wendy R. Weiser*                                 Sophia Lin Lakin*
Sean Morales-Doyle*                              Ethan Herenstein*
Eliza Sweren-Becker*                             Jonathan Topaz*
Jasleen K. Singh*                                Clayton Pierce*
Andrew B. Garber*                                Davin Rosborough*
Brennan Center for Justice at                    American Civil Liberties Union Foundation
NYU School of Law                                125 Broad St., 18th Floor
120 Broadway, Suite 1750                         New York, NY 10004
New York, NY 10271                               (212) 549-2500
(646) 292-8310                                   slakin@aclu.org
weiserw@brennan.law.nyu.edu                      eherenstein@aclu.org
morales-doyles@brennan.law.nyu.edu               jtopaz@aclu.org
sweren-beckere@brennan.law.nyu.edu               cpierce@aclu.org
singhj@brennan.law.nyu.edu                       drosborough@aclu.org
garbera@brennan.law.nyu.edu

17

Leah C. Aden*
John S. Cusick*
Brenda Wright*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
jcusick@naacpldf.org
bwright@naacpldf.org

Miranda Galindo*
Cesar Z. Ruiz*
Delmarie Alicea*
Latino Justice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
mgalindo@latinojustice.org
cruiz@latinojustice.org
dalicea@latinojustice.org

Megan C. Keenan (D.C. Bar No. 1672508)
Sarah Brannon (D.C. Bar No. 90024493)
Adriel I. Cepeda Derieux (D.C. Bar No. 90026636)
Jacob Van Leer (DC Bar No. 1742196)
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20001
(740) 632-0671
mkeenan@aclu.org
sbrannon@aclu.org
acepedaderieux@aclu.org
jvanleer@aclu.org

Michael Perloff (D.C. Bar No. 1601047)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
mperloff@acludc.org
smichelman@acludc.org

Niyati Shah (D.C. Bar No. 1659560)
Alizeh Ahmad (D.C. Bar No. 90018919)
ASIAN AMERICANS
ADVANCING JUSTICE-AAJC
1620 L Street, NW, Suite 1050
Washington, D.C. 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
aahmad@advancingjustice-aajc.org

*Counsel for Plaintiffs League of Women Voters Education Fund, League of Women Voters of the United States, League of Women Voters of Arizona, Hispanic Federation, National Association for the Advancement of Colored People, OCA-Asian Pacific American Advocates, and Asian and Pacific Islander American Vote*

*Admitted pro hac vice*