IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br> Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-0955 (CKK) |

**REPLY IN SUPPORT OF MOTION TO INTERVENE
BY THE REPUBLICAN NATIONAL COMMITTEE**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................................... ii

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 2

    I.   The RNC has standing. ..................................................................................................... 2

    II.   The motion is timely and doesn't unduly prejudice anyone. ............................................ 5

    III.   The RNC's interests are inadequately represented. .......................................................... 7

    IV.   Plaintiffs provide no legitimate reason why permissive intervention is inappropriate...... 9

Conclusion ................................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Cases**

*A.C.R.U. v. Martinez-Rivera*,
    166 F. Supp. 3d 779 (W.D. Tex. 2015) ............................................................................. 5

*Appleton v. Comm'r*,
    430 F. App'x 135 (3d Cir. 2011) ...................................................................................... 6

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022) .......................................................................................................... 7

*Black Voters Matter Fund v. Raffensperger*,
    No. 1:20-cv-4869 (N.D. Ga. 2020) ................................................................................... 9

*Center for Food Safety v. EPA*,
    2024 WL 1299338 (D.D.C. 2024) ..................................................................................... 6

*Clark v. Putnam Cnty.*,
    168 F.3d 458 (11th Cir. 1999) ........................................................................................... 9

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996) ........................................................................................... 9

*Common Cause R.I. v. Gorbea*,
    970 F.3d 11  (1st Cir. 2020) ............................................................................................... 8

*Crawford v. Marion Cty. Election Bd.*,
    472 F.3d 949 (7th Cir. 2007) ............................................................................................. 8

*DNC v. Bostelman*,
    2020 WL 1505640 (W.D. Wisc. 2020) ............................................................................ 10

*DNC v. Hobbs*,
    No. 2:22-cv-1369 (D. Ariz. 2022) ................................................................................... 10

*Emerson Hall Assocs., L.P. v. Travelers Cas. Ins. Co. of Am.*,
    2016 WL 223794 (W.D. Wis. 2016) ................................................................................. 6

*Foster v. Gueory*,
    655 F.2d 1319 (D.C. Cir. 1981) ......................................................................................... 5

*Fund For Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ........................................................................................... 7

*Georgia v. U.S. Army Corps of Eng'rs*,
    302 F.3d 1242 (11th Cir. 2002) ......................................................................................... 8

*Hardin v. Jackson*,
    600 F. Supp. 2d 13 (D.D.C. 2009) ..................................................................................... 7

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .......................................................................................................... 4

*Humane Soc. of U.S. v. Clark*,
  109 F.R.D. 518 (D.D.C. 1985) .................................................................................. 10

*Jud. Watch, Inc. v. King*,
  993 F. Supp. 2d 919 (S.D. Ind. 2012) ......................................................................... 5

*La Union del Pueblo Entero v. Abbott*,
  29 F.4th 299 (5th Cir. 2022) ........................................................................................ 9

*Mecinas v. Hobbs*,
  30 F.4th 890 (9th Cir. 2022) .................................................................................. 3, 8

*Meek v. Metro. Dade Cnty.*,
  985 F.2d 1471 (11th Cir. 1993) .................................................................................. 9

*Mi Familia Vota v. Hobbs*,
  No. 2:22-cv-509 (D. Ariz. 2022) ................................................................................ 1

*New Ga. Project v. Raffensperger*,
  No. 1:24-cv-3412 (N.D. Ga. 2024) ............................................................................. 1

*Nielsen v. DeSantis*,
  2020 WL 6589656 (N.D. Fla. 2020) ......................................................................... 10

*NRDC v. Costle*,
  561 F.2d 904 (D.C. Cir. 1977) .................................................................................... 8

*Pub. Int. Legal Found. v. Benson*,
  2022 WL 21295936 (W.D. Mich. 2022) ..................................................................... 5

*RNC v. Benson*,
  No. 1:24-cv-262 (W.D. Mich. 2024) .......................................................................... 8

*RNC v. Mi Familia Vota*,
  145 S. Ct. 108 (2024) ................................................................................................ 10

*RNC v. N.C. State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024) ...................................................................................... 5

*RNC v. Wetzel*,
  120 F.4th 200 (5th Cir. 2024) ................................................................................ 2, 10

*Roane v. Leonhart*,
  741 F.3d 147 (D.C. Cir. 2014) ..................................................................................... 6

*Security Ins. Co. of Hartford v. Schipporeit, Inc.*,
  69 F.3d 1377 (7th Cir. 1995) ...................................................................................... 7

*Shays v. FEC*,
  414 F.3d 76 (D.C. Cir. 2005) .................................................................................. 3, 4

*Tex. Democratic Party v. Benkiser*,
  459 F.3d 582 (5th Cir. 2006) .................................................................................. 3, 8

*U.S. House of Representatives v. Price*,
  2017 WL 3271445 (D.C. Cir. Aug. 1, 2017) .............................................................. 8

*Utah Ass'n of Ctys. v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001) .................................................................................... 9

*Vote Choice, Inc. v. DiStefano*,
  4 F.3d 26 (1st Cir. 1993) .............................................................................................. 4

*W. Org. of Res. Councils v. Jewell*,
  2015 WL 13711094, (D.D.C. 2015) ............................................................................ 1

*Zimmerman v. City of Austin*,
  881 F.3d 378 (5th Cir. 2018) ........................................................................................ 4

**Rules**

Fed. R. Civ. P. 24 ................................................................................................................ 6

**INTRODUCTION**

No party in the DNC case opposes the RNC's intervention, where the RNC's interests are strongest. That's reason enough to grant the RNC's motion in that case. *See, e.g.*, *W. Org. of Res. Councils v. Jewell*, 2015 WL 13711094, at *7 (D.D.C. July 15, 2015) ("[A]bsent any substantive opposition to the applicants' motions for permissive intervention, the Court will treat these motions as conceded."). The only question is whether to grant the RNC party status in the other two consolidated cases, or further complicate this litigation with arbitrary restrictions on the RNC's participation. In their combined response, the League of Women Voters and LULAC Plaintiffs don't attempt to address other ongoing consolidated cases in which the RNC is a party. *See New Ga. Project v. Raffensperger*, No. 1:24-cv-3412 (N.D. Ga. Dec. 16, 2024); *Mi Familia Vota v. Hobbs*, No. 2:22-cv-509 (D. Ariz. Oct. 27, 2022). Those courts recognized what common sense and judicial efficiency advise: walling off a party from half the case makes litigation more complicated, not less. It makes discovery and motions practice more cumbersome, and it invites disagreement on the scope of participation, likely followed by motions this Court will have to resolve. Beyond a desire to prejudice the RNC's interests, Plaintiffs provide no explanation as to how *the Court* would benefit from restricting the RNC's arguments and participation.

The simplest way to resolve this motion is to grant the RNC permissive intervention in the DNC case as unopposed, and grant the RNC the same status in the consolidated cases for judicial efficiency. But if this Court were to consider the intervention motion's merits, the Plaintiffs' arguments fail. When an election law case affects the "electoral prospects" of a national political party, "[v]oluminous persuasive authority" supports the conclusion that the political party has a legally protectible interest in the controversy. DNC Compl. at ¶108 & n.17 (Doc. 1, No. 1:25-cv-952) (cleaned up). That is especially true here, as the DNC is contesting the validity of a legal victory that the RNC secured last year in the Fifth Circuit. *Id*. ¶¶48, 144, 167 (arguing *RNC v.*

1

*Wetzel*, 120 F.4th 200 (5th Cir. 2024) was wrongly decided). The RNC's motion to intervene should be granted for four reasons: (1) the RNC has standing, (2) the motion is timely, (3) the RNC's interests are inadequately represented, and (4) permissive intervention is justified.

## ARGUMENT

### I. The RNC has standing.

Plaintiffs argue the RNC doesn't have any "legally cognizable interest," let alone an Article III interest to support intervention. Pls.' Opp. at 7 (Doc. 130). But they ignore half the RNC's interests. Plaintiffs claim the RNC lacks standing to litigate only the "proof of citizenship provisions" of the Executive Order. *Id*. at 6. They don't dispute that the RNC has a legally protectible interest sufficient for standing to litigate the election-day deadline provisions. At a minimum, the Court should grant the RNC's motion to defend those uncontested claims.

In any event, the RNC has independent standing to litigate the other executive order provisions. Plaintiffs argue that the RNC lacks standing to defend against their other claims, but their argument proves too much. If the RNC doesn't have standing, neither do Plaintiffs. Plaintiffs argue the RNC "simply asserts broad interests in 'voter registration, get-out-the-vote, and election-integrity efforts.'" *Id*. at 6. Even if that were an accurate description of the RNC's asserted basis for standing, Plaintiffs themselves pled standing by merely alleging that the Executive Order "interfere[s] with" their ability to "provid[e] voter registration services throughout the Nation." PI. Op. at 57 (Doc. 104). This Court recognized Plaintiffs' interest in "registering eligible voters." *Id*. If that interest is too "broad" to support the RNC's standing, *cf*. Pls.' Opp. at 6, Plaintiffs' case should be dismissed for *their* lack of standing.

Regardless, the RNC has presented evidence supporting far more specific interests than the Plaintiffs provided. *See generally* Ambrosini Decl. (Doc. 125-1). Enjoining enforcement of the

2

Executive Order's provisions for upcoming elections will injure the RNC in at least four significant ways, each of which independently confirms standing.

***First***, the RNC will "face *intensified* competition" that "may harm" the "electoral prospects" of RNC candidates. *Shays v. FEC*, 414 F.3d 76, 86 (D.C. Cir. 2005). The RNC is "the 'party affiliate' of active candidates for political office" and thus may assert "political-competitor standing." PI Op. at 47; *see* Ambrosini Decl. ¶6. As this Court concluded, Plaintiffs' requested relief, if granted, will result in persons who lack proof of citizenship and are more likely to cast ballots for Democrat candidates being able to register to vote. PI Op. at 63. If the Executive Order's proof-of-citizenship requirement stays in place, Democratic "constituents and likely supporters" will be "unable to register to vote or may be dissuaded" from doing so. *Id.* This Court specifically observed that the "active candidacies for reelection to federal office" for Democratic Party candidates "Jeffries and Schumer" would be improved if the Executive Order's proof-of-citizenship requirement were enjoined because "likely supporters" who would otherwise be "unable to register to vote" and support these candidates would now be able to do so. *Id*.

That more Democratic voters will be able to register to vote if the Executive Order's proof-of-citizenship requirement is enjoined gives the RNC standing. *See Shays*, 414 F.3d at 86. The harm to the RNC's "election prospects" of more likely Democratic voters being able to register to vote is an Article III injury. *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 (5th Cir. 2006); *accord Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022); *see also* PI Op. at 46 n.28 (citing *Benkiser* and *Mecinas*). Since this Court has held that Democratic candidates will benefit if the Executive Order's proof-of-citizenship requirement is enjoined, the RNC has political competitor standing both as an organization and through its candidate members. PI Op. at 63.

3

Plaintiffs argue "the RNC does not have a legally cognizable interest" in "counteracting the interests of its political rivals, the Democratic Party Plaintiffs." Pls.' Opp. at 7. But they ignore this Court's order—supported by *Shays* and a body of precedent—holding that when one political competitor "benefits," the "head-to-head" competitor is "inflict[ed]" with "concrete harms" sufficient to support standing. PI Op. at 46 & n.28. Since the DNC's electoral prospects would improve if the Executive Order is enjoined, the RNC—as the DNC's head-to-head competitor— will suffer concrete harm.

**Second**, Plaintiffs' claims will each require the RNC "to adjust" its "campaign strategy" for future elections to account for court-ordered changes to national election rules. *Shays*, 414 F.3d at 87; *see* Ambrosini Decl. ¶¶24-26. "[C]hanging one's campaign plans or strategies in response to" the rules of the election being altered "can itself be a sufficient injury to confer standing." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018); *see also Vote Choice, Inc. v. DiStefano*, 4 F.3d 26, 36-37 (1st Cir. 1993) (an "impact on the strategy and conduct of an office-seeker's political campaign constitutes an injury of a kind sufficient to confer standing"). Plaintiffs' requested relief invites court-ordered changes to national election rules. Because those changes "necessarily affect the way [Republican] politicians" will "run their campaigns," the RNC candidate-members are "at the very least harmed by having to anticipate" the rules governing the next election cycle. *Shays*, 414 F.3d at 87.

**Third**, the RNC's core organizational activities are at risk of injury. An organization has standing when it alleges "perceptibl[e] impair[ment]" to the "organization's activities" as shown by a "consequent drain on the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The RNC has presented unrebutted evidence that as part of its organizational activities, it "engages in daily voter registration services for candidates, voters, and local state

4

parties" and "relies on state voter rolls for its voter contacts." Ambrosini Decl. ¶¶24-25. The RNC has also presented evidence that "[e]njoining enforcement" of the Executive Order's "proof-of-citizenship requirement for upcoming elections will require the RNC to divert more resources" toward "poll-watching activities, voter-roll monitoring, and voter-registration efforts." *Id*. at ¶26. Without the proof-of-citizenship requirement, the RNC will have to divert resources "to ascertain which" of the "people" who register to vote using the federal form are "registered improperly" and which of the people who register to vote using the federal form "will be able to vote in the upcoming election." *Cf. RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024).

Federal courts have found standing where inaccurate voter rolls frustrate an organization's mission and require the organization to divert resources to monitor the rolls. *E.g.*, *Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919, 925 (S.D. Ind. 2012); *A.C.R.U. v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789-90 (W.D. Tex. 2015); *Pub. Int. Legal Found. v. Benson*, 2022 WL 21295936, *6 (W.D. Mich. Aug. 25, 2022). The Plaintiffs rely on similar harms to their "mission" caused by "divert[ing] resources in order to register voters in" response to the executive order. *See, e.g.*, LULAC Compl. at ¶144, 147. The RNC has presented evidence that if the Executive Order's proof-of-citizenship requirement is enjoined here, the RNC's core political activities will be undermined. Ambrosini Decl., ¶¶24-26. These are injuries sufficient for standing. *RNC*, 120 F.4th at 397.

II. **The motion is timely and doesn't unduly prejudice anyone.**

Plaintiffs argue that because two months and three days elapsed before the RNC moved to intervene, the RNC's motion is untimely. Pls.' Opp. at 7. Plaintiffs cite no precedent establishing that two months and three days is too long. To the contrary, moving to intervene "ten months after the filing of the complaint" can be timely. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). Here, the RNC moved to intervene before discovery, dispositive motions, or trial. "[M]easuring

5

the length of time passed is not in itself the determinative test" for timeliness "because we do not require timeliness for its own sake." *Roane v. Leonhart*, 741 F.3d 147, 210 (D.C. Cir. 2014) (cleaned up). A motion to intervene may be timely "even where a would-be intervenor could have intervened sooner." *Id*. (cleaned up). Moreover, the RNC will not appeal or move to reconsider the Court's order on "the motions for preliminary injunction," and Plaintiffs can't explain why that order would otherwise be relevant to timeliness. Pls.' Opp. at 7.

Plaintiffs have provided no legitimate reason why any potential delay would be "undu[e]." Fed. R. Civ. P. 24(b)(3). Rule 24 considers only "whether the intervention will *unduly* delay or prejudice the adjudication of the original parties' rights." *Id.* (emphasis added). "'Undue' means not normal or appropriate." *Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011). Although "any introduction" of an intervenor "will inevitably cause some 'delay,'" that kind of ordinary delay is irrelevant. *Id*.

Plaintiffs argue that the RNC will "delay[] the parties' deliberations." Pls.' Opp. at 8. But in its motion, the RNC promised that it "will comply with all deadlines that govern the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery." Mot. to Intervene at 13. Plaintiffs ignore that assurance. But it "is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., L.P. v. Travelers Cas. Ins. Co. of Am.*, 2016 WL 223794, at *2 (W.D. Wis. Jan. 19, 2016). Plaintiffs rely on *Center for Food Safety v. EPA* to argue that the RNC's motion isn't timely. Pls.' Opp. at 8. But in that case the court held that a motion to intervene filed "approximately two months after Plaintiffs filed their Complaint" *was* timely. 2024 WL 1299338, at *4 (D.D.C. Mar. 26, 2024). Plaintiffs' own cases prove the RNC's timeliness.

Plaintiffs' only real concerns relate to the routine practice of litigation. They speculate that the RNC will present arguments that "will be merely cumulative to what Defendants will offer"

6

and then in the same breath acknowledge that the RNC intends to invoke an "affirmative defense" that federal Defendants have not raised. Pls.' Opp. at 8 (cleaned up). But the Court need not consider whether the RNC will make truly unique arguments when determining whether the RNC's intervention is timely or unduly prejudicial. "[F]ederal courts routinely handle cases" involving "different attorneys taking different positions" and "[w]hatever additional burdens adding the [RNC] to this case may pose, those burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022).

Plaintiffs also won't be prejudiced by having to argue against "affirmative defense[s]" raised by the RNC. *Contra* Pls.' Opp. at 8. Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). That Plaintiffs' requested relief might be foreclosed by the *Purcell* principle has nothing to do with the timing of the RNC's intervention and everything to do with the timing of Plaintiffs' lawsuit. That Plaintiffs worry they might lose this case if this Court hears what the RNC has to say does not mean the RNC's intervention unduly prejudices them.

### III. The RNC's interests are inadequately represented.

Plaintiffs argue that the RNC hasn't made the minimal "showing that its interests are not adequately represented by Defendants" because the "arguments that the RNC appears poised to make largely overlap with those that will be raised by Defendants," and a news report suggests that Defendants will "vigorously enforce" the challenged Executive Order. Pls.' Opp. at 12-13 (cleaned up). Plaintiffs' speculation about what the RNC will argue in the future and hearsay news report can't overcome sound precedent. The federal defendants do "not oppose intervention, and the D.C. Circuit has repeatedly held" that "private" entities "can intervene on the side of the government, even if some of their interests converge." *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003);

7

*NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977)). Moreover, when the federal defendants "nowhere argue[]" that they will "adequately protect the [RNC's] interests," it "raise[s] sufficient doubt concerning the adequacy" of the federal defendants' "representation" of the RNC's interests. *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017).

Plaintiffs confuse divergence of *interests* with divergence of *argument*. As defendants who oppose Plaintiffs' claims, it is likely that the federal defendants and the RNC will raise similar arguments. But merely because "both believe [Plaintiffs' relief] should be denied" does "not mean that [they] have identical positions or interests." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002). Plaintiffs cite an out-of-circuit district court decision that was *reversed* for purposes of appeal. *See Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020). They also cite a brief filed by the RNC in another case applying the law of another circuit. The RNC argued that in certain election cases the State may adequately represent the interests of voting registration organizations—not a political party. Doc. 16 at 8-9, *RNC v. Benson*, No. 1:24-cv-262 (W.D. Mich. Apr. 5, 2024). Political parties have dramatically different interests than nonpartisan voters and the state. *See, e.g.*, *Benkiser*, 459 F.3d at 586-87 (political parties have unique interest in amassing political power); *Mecinas*, 30 F.4th at 898 (political parties have unique interest in competing against other political parties on the ballot); *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (political party has an interest in conserving party resources).

No party to this case adequately represents the RNC's interests in promoting Republican candidates' electoral success, amassing Republican political power, and conserving Republican Party resources. Defendants are federal officials, who must represent "the public interest." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir.

8

1996). By contrast, the RNC's interest is inherently "partisan." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022). "Neither the State nor its officials can vindicate such an interest while acting in good faith." *Id*. Federal defendants have no interest in the election of Republican candidates, the mobilization of Republican voters, or the costs associated with either. Instead, as federal officials acting on behalf of U.S. citizens and the federal government itself, the federal defendants must consider a range of interests likely to "diverge" from the RNC. *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001). Those clashing interests include the interests of Plaintiffs, "the expense of defending the current [rules] out of [federal] coffers," *Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999), and "the social and political divisiveness of the election issue" to the State, *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). By contrast, the RNC cares about this case's effect on the Republican Party, Republican candidates, and Republican voters. Thus, the federal defendants' representation of the public interest "cannot be assumed to be identical to the individual parochial interest of [the RNC] merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Ctys.*, 255 F.3d at 1256.

**IV.    Plaintiffs provide no legitimate reason why permissive intervention is inappropriate.**

The simplest way to resolve this motion is to grant the RNC permissive intervention. The RNC need not even demonstrate inadequate representation to justify permissive intervention. Doc. 42 at 5, *Black Voters Matter Fund v. Raffensperger*, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020). Plaintiffs resist permissive intervention only because they believe the RNC seeks to "echo" the arguments of the federal defendants. Pls.' Opp. at 14 (cleaned up). Yet Plaintiffs acknowledge that the RNC presents an affirmative defense based on the *Purcell* doctrine that the federal defendants do not—and they get ahead of themselves by prematurely arguing the merits of *Purcell*. *Id*. at 10-11. Even if the RNC had presented exactly the same affirmative defenses as the federal defendants, its analysis of the merits at later stages will aid the Court. In election law cases, the RNC "bring[s]

9

perspective that others miss or choose not to provide." *Nielsen v. DeSantis*, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020). "[I]t cannot be said with assurance that the existing parties will frame the issues so well that the proposed intervention will add nothing of value. Even good lawyers sometimes miss things." *Id*.

Permissive intervention is also warranted because the RNC and DNC are direct political competitors. As the national rival of the DNC, the RNC is "uniquely qualified to represent the 'mirror-image' interests" of the DNC. *DNC v. Bostelman*, 2020 WL 1505640, at *5 (W.D. Wisc. Mar. 28, 2020) (granting permissive intervention to the RNC). The federal defendants don't and can't mirror the DNC's interests. When the DNC challenged Arizona's proof-of-citizenship requirement in federal court, the RNC was granted permissive intervention. Doc. 18 at 1, *DNC v. Hobbs*, No. 2:22-cv-1369 (D. Ariz. Aug. 23, 2022). The RNC's involvement proved essential in that case; it raised arguments and appealed decisions that the state defendants didn't, and it secured emergency relief from the Supreme Court this past election cycle that each state defendant opposed. *See RNC v. Mi Familia Vota*, 145 S. Ct. 108 (2024). No party is better positioned than the RNC to participate in a case brought by the DNC to change the federal rules governing elections.

Finally, the RNC's intervention will aid the Court in resolving relevant legal precedent. Plaintiffs ignore that the Executive Order's election-day provision rests on *RNC v. Wetzel*, a case that the RNC brought and won in the Fifth Circuit. The RNC has a wealth of legal knowledge and experience on those issues that no other party possesses. And it has an obvious legal and practical interest in defending against Plaintiffs' legal attack on this precedent. Because the RNC will "contribute a perspective" that will "not otherwise be represented in this matter," permissive intervention is warranted. *Humane Soc. of U.S. v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985).

## CONCLUSION

For the foregoing reasons, the Court should grant the RNC's motion to intervene.

Dated: June 9, 2025                                              Respectfully submitted,

*/s/ Thomas R. McCarthy*

| | |
|---|---|
| Lee E. Goodman (D.C. Bar 435493) | Thomas R. McCarthy (D.C. Bar 489651) |
| Michael Columbo (D.C. Bar 476738) | Gilbert C. Dickey (D.C. Bar 1645164) |
| DHILLON LAW GROUP | Conor D. Woodfin (D.C. Bar 1780807) |
| 2121 Eisenhower Ave., Ste. 608 | William Bock IV* (Ohio Bar 0105262) |
| Alexandria, VA 22314 | CONSOVOY MCCARTHY PLLC |
| (415) 433-1700 | 1600 Wilson Blvd., Ste. 700 |
| lgoodman@dhillonlaw.com | Arlington, Virginia 22209 |
| mcolumbo@dhillonlaw.com | (703) 243-9423 |
| | tom@consovoymccarthy.com |
| | gilbert@consovoymccarthy.com |
| | conor@consovoymccarthy.com |
| * *pro hac vice* application pending | wbock@consovoymccarthy.com |

*Counsel for Proposed Intervenor-Defendant*
*The Republican National Committee*

11