**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br> Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-0955 (CKK) |

**MEMORANDUM OPINION & ORDER**
(June 12, 2025)

The Republican National Committee (RNC) has moved to intervene as a Defendant in these consolidated cases, seeking to defend provisions of an Executive Order that the Plaintiffs have

1

challenged. RNC's Mot., ECF No. 125. The Federal Defendants[1] and the Democratic Party Plaintiffs[2] take no position on the RNC's motion. *See id.* at 1. The LULAC Plaintiffs[3] and the League Plaintiffs[4] oppose the motion. *See* Nonpartisan Pls.' Opp'n, ECF No. 130. Upon consideration of the parties' submissions,[5] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART** and **DENY IN PART** the RNC's motion, allowing the RNC to intervene as a Defendant against all Plaintiffs' claims regarding Sections 2(a), 2(b), 2(d), 3(a), and 7(a) of Executive Order 14,248.

## I. BACKGROUND

Earlier this year, three groups of Plaintiffs filed actions in this District Court challenging various provisions of Executive Order 14,248, entitled "Preserving and Protecting the Integrity of American Elections." Exec. Order 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Two of the groups of Plaintiffs are groups of nonpartisan, not-for-profit organizations. *See* Compl., Case No. 25-cv-0946; Compl., Case No. 25-cv-0955. The third group consists of various affiliates of the Democratic Party, including two elected officials. *See* Compl., Case No. 25-cv-0952.

Given the overlap among the legal and factual issues involved in each case, the Court consolidated the three actions and directed the parties to consolidate their briefing and argument

---

[1] The Federal Defendants include Donald J. Trump, in his official capacity as President of the United States, and various federal agencies and federal officers in their official capacities.

[2] The Democratic Party Plaintiffs are the Plaintiffs in Case No. 25-cv-552: Democratic National Committee, Democratic Governors Association, DSCC, DCCC, U.S. Senate Minority Leader Charles E. Schumer, and U.S. House of Representatives Minority Leader Hakeem S. Jeffries.

[3] The LULAC Plaintiffs are the Plaintiffs in Case No. 25-cv-946: the League of United Latin American Citizens ("LULAC"), the Secure Families Initiative, and the Arizona Students' Association.

[4] The League Plaintiffs are the Plaintiffs in Case No. 25-cv-955: the League of Women Voters Education Fund, the League of Women Voters of the United States, the League of Women Voters of Arizona, the Hispanic Federation, the National Association for the Advancement of Colored People ("NAACP"), OCA – Asian Pacific American Advocates, and Asian and Pacific Islander American Vote.

[5] The Court's consideration has focused on the RNC's Motion, ECF No. 125, the Nonpartisan Plaintiffs' Opposition, ECF No. 130, and the RNC's Reply, ECF No. 132.

to the extent practicable.  *See* Order, ECF No. 12.  The Court later modified the consolidation order to allow the Democratic Party Plaintiffs to brief the issues in these cases separately from other Plaintiffs without party affiliations.  *See* Order, ECF No. 31.

The Plaintiffs then filed motions for preliminary injunctions, which the Court granted in part and denied in part.  *See League of United Latin Am. Citizens v. Exec. Off. of the President* ("*LULAC I*"), No. 25-cv-0946, --- F.3d. ----, 2025 WL 1187730 (D.D.C. Apr. 24, 2025) (CKK).

The Court later entered a scheduling order directing the parties to meet and confer, file a joint report in accordance with Local Rule 16.3, and appear for an initial conference to discuss a schedule for further proceedings.  *See* Order, ECF No. 122.

The Republican National Committee (RNC) has now filed a motion to intervene as a Defendant in these consolidated cases.  *See* RNC's Mot., ECF No. 125.  The RNC is a "national committee" comprised of 168 voting members, including several members who are currently running for reelection to federal office.  *See* Decl. of Michael Ambrosini ("Ambrosini Decl."), ECF No. 125-1, ¶¶ 2, 6.  The RNC asserts interests in ensuring "that only qualified voters vote and that unqualified voters do not dilute the votes cast by lawful voters," in promoting "efficient election administration," and in protecting "their voters' confidence in elections by ensuring the accuracy and integrity of election outcomes."  RNC's Mot. at 1; *see also* Ambrosini Decl. ¶¶ 5, 8–9.  The RNC asserts these interests both on its own behalf and on behalf of its members.  RNC's Mot. at 4–5; *see also* Ambrosini Decl. ¶ 8.

The RNC asserts that it "supports" the Executive Order at issue in these cases because several of the Executive Order's provisions will positively affect its "voter registration, get-out-the-vote, and election-integrity efforts."  RNC's Mot. at 4; *see also* Ambrosini Decl. ¶¶ 9–26.  Specifically, the RNC asserts an interest in the implementation of Sections 2(b) and 3(a) of the

3

Executive Order, which relate to the maintenance of state voter rolls, because it "relies on voter rolls to communicate with voters, advise candidates, and turn out voters to vote." RNC's Mot. at 4–5; *see also* Ambrosini Decl. ¶ 23–26.  The RNC also asserts an interest in the implementation of Sections 2(a) and 2(d) of the Executive Order, which purport to require new procedures for verifying citizenship before registering new voters, because the RNC's "candidates, members, and voters" are "directly affected" when lawful votes are unlawfully "diluted by the votes of non-citizens." RNC's Mot. at 4–5; *see also* Ambrosini Decl. ¶ 26.  Similarly, the RNC asserts an interest in the implementation of Section 7(a), which purports to direct the Attorney General to "enforce" the Election Day Statutes "against States" that count ballots received after Election Day in federal elections, because the RNC contends that counting ballots received after Election Day unlawfully dilutes other votes cast by or in favor of its "candidates, members, and voters"; affords a political advantage to Democratic Party candidates, whose supporters are more likely to vote by mail close in time to federal elections; undermines public confidence in elections; and forces the RNC to divert resources that it would otherwise expend on other election-related efforts toward "ballot chasing" and other efforts focused on mail-in voting in the period immediately preceding Election Day.  RNC's Mot. at 4–5; *see also* Ambrosini Decl. ¶¶ 11–22.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) provides that upon a "timely motion," the Court "must permit" intervention as of right by "anyone" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

In this Circuit, it is also "settled precedent" that "all would-be intervenors," including defendant-intervenors, must show that they have Article III standing to participate in the case. *See*

4

*Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1233 & n.2 (D.C. Cir. 2018); *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n* ("*Crossroads*"), 788 F.3d 312, 316 (D.C. Cir. 2015). To establish standing, a putative defendant-intervenor must make the same showing that is required of a plaintiff: injury in fact, causation, and redressability. *Crossroads*, 788 F.3d at 316. A putative defendant-intervenor can carry this burden by showing that it "benefits from" an executive action that is at issue in the case and that "an unfavorable decision would remove the [putative defendant-intervenor's] benefit." *See id.* at 316–17.

After assessing standing, courts apply a "four-factor test" when analyzing whether a movant is entitled to intervene as of right under Rule 24(a). *Crossroads*, 788 F.3d at 320. Under this test, the movant must show (1) that the motion to intervene is timely, (2) that the movant has a "legally protected interest," (3) "that the action, as a practical matter, impairs or impedes that interest," and (4) "that no party to the action can adequately represent the potential intervenor's interest." *Id.*

As an alternative route to intervention, Rule 24(b) provides that the Court "may" also allow permissive intervention by "anyone" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion" to grant or deny permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. DISCUSSION

Because the RNC satisfies each of the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a) and has established standing to defend against the Plaintiff's claims for relief from the implementation of Sections 2(a), 2(b), 2(d), 3(a), and 7(a) of Executive Order 14,248, the Court shall grant its motion in part and allow it to intervene to defend those provisions. However, because the RNC has not shown that it has standing to defend other

5

provisions of the Executive Order challenged in the Plaintiffs' Complaints—Sections 3(d), 4(a), 4(b), 4(c), 4(d), and 7(b)—the Court shall deny intervention as to those other provisions.

### A. Standing

The RNC has standing to defend the several provisions of Executive Order 14,248 that it addresses in its motion to intervene. In assessing whether a litigant has standing, the Court must accept the validity of its legal theory regarding the merits of the underlying claims. *See Citizens for Const. Integrity v. Census Bureau*, 669 F. Supp. 3d 28, 32 (D.D.C. 2023) (three-judge panel), *aff'd on other grounds*, 115 F.4th 618 (D.C. Cir. 2024); *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014).

Assuming the validity of its merits arguments, the RNC has standing to intervene to defend several provisions of Executive Order 14,248 for many of the same reasons the Court previously concluded that the Democratic Party Plaintiffs have shown a substantial likelihood of standing to challenge some of those provisions. *See, e.g.*, *LULAC I*, 2025 WL 1187730 at *33–35, *46–48. The RNC has standing both in its own right ("organizational" standing) and standing to represent the interests of its members ("associational" standing) to defend those provisions of the Executive Order that directly benefit the electoral prospects of Republican candidates for federal office. *See Shays v. Fed. Election Comm'n*, 414 F.3d 76, 87 (D.C. Cir. 2005); *see also Nat. L. Party of U.S. v. Fed. Election Comm'n*, 111 F. Supp. 2d 33, 47 (D.D.C. 2000) (ESH) (recognizing political-competitor standing for the "party affiliate" of an active candidate for political office).

In its motion to intervene, the RNC argues that five specific provisions of Executive Order 14,248 directly benefit its members and its mission of electing Republican candidates to office. First, the RNC asserts that Sections 2(b) and 3(a) of the Executive Order, which relate to the maintenance of state voter rolls, benefit the RNC and its members because they each rely on accurate voter rolls to "communicate with voters, advise candidates, and turn out voters to vote."

6

*See* RNC's Mot. at 4–5; Ambrosini Decl. ¶ 23–26.  Second, the RNC argues that Sections 2(a) and 2(d) of the Executive Order, which purport to require new procedures for verifying citizenship before registering new voters, benefit the RNC and its members by preventing unlawful vote dilution.  *See* RNC's Mot. at 4–5; Ambrosini Decl. ¶ 26.   Third, the RNC contends that Section 7(a), which purports to direct the Attorney General to "enforce" the Election Day Statutes "against States" that count ballots received after Election Day in federal elections, will benefit the RNC and its members by avoiding vote dilution; disallowing late-arriving ballots, which historically have been more likely to be cast in favor of Democratic Party candidates than Republican Party candidates; supporting public confidence in elections; and allowing the RNC and its members to devote fewer resources to "ballot chasing" and other efforts related to mail-in voting in the period immediately preceding Election Day.  *See* RNC's Mot. at 4–5; Ambrosini Decl. ¶¶ 11–22.

Assuming the truth of the RNC's factual claims and the validity of its legal theories on the merits, as the Court must do when assessing standing, an order enjoining the implementation of the provisions that the RNC addresses would eliminate these benefits for the RNC and its members and contribute to the "illegal structuring of a competitive environment" in which the RNC and its members compete with other candidates and parties for political power.  *See Shays*, 414 F.3d at 85; *Crossroads*, 788 F.3d at 316–17.  These prospective harms from an adverse decision in this case are neither "indirect" nor "remote."  *Cf. Yocha Dehe v. United States Dep't of the Interior*, 3 F.4th 427, 431 (D.C. Cir. 2021).  Accordingly, the RNC has standing to intervene to defend against the Plaintiffs' claims for injunctive relief against those specific provisions.

However, the RNC has not shown that is has standing to defend other provisions of the Executive Order.  For example, it has presented no argument that it has standing to defend Section 7(b), which directs the U.S. Election Assistance Commission to "condition any available

funding to a State" on the adoption of a rule requiring that all mail-in ballots be received by Election Day. *See generally* RNC's Mot.; *cf. LULAC I*, 2025 WL 1187730, at *53–56 (concluding on the record then before the Court that the Democratic Party Plaintiffs had not shown a substantial likelihood of standing to challenge Section 7(b)). Because "standing is not dispensed in gross" and a litigant "must demonstrate standing separately for each form of relief sought," the RNC cannot intervene to defend against the Plaintiffs' claims regarding these specific provisions without showing that it has standing to do so. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439–40 (2017) (first quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008); and then quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)); *see also Crossroads*, 788 F.3d at 316–17. Accordingly, the Court shall deny the RNC's motion to the extent that it seeks permission to intervene to defend provisions other than those for which it has established standing.

**B.    Timeliness**

The RNC's motion is timely. The timeliness of a motion to intervene "is to be judged in consideration of all the circumstances," including the "time elapsed since the inception of the suit" and "the probability of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). "[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). "Thus, even where a would-be intervenor could have intervened sooner, in assessing timeliness a court must weigh whether any delay in seeking intervention 'unfairly disadvantage[d] the original parties.'" *Id.* (quoting *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977)).

8

Here, the RNC moved to intervene approximately two months after the consolidated cases were filed, before the filing of any dispositive motions or the beginning of any discovery. Although the RNC filed its motion more than one month after the Court resolved the Plaintiffs' motions for preliminary injunctions, the RNC pledges that it "will not appeal or move to reconsider" the Court's Order resolving those motions. RNC's Reply at 6. The RNC also "commits" that it will comply with the existing scheduling order, ECF No. 122, and "any forthcoming procedural orders" the Court may issue. RNC's Mot. at 8.

Finally, The RNC has already filed proposed Answers to each of the three Complaints in these consolidated cases, which can be docketed without delay. *See* ECF Nos. 125-2, 125-3, 125-4. These filings would place the RNC in the same procedural posture as the Federal Defendants, who recently filed their own Answers. ECF Nos. 123, 124, 131. Under these circumstances, the timing of the RNC's motion will not unfairly disadvantage any party. Accordingly, the motion to intervene is timely.

For the same reasons, allowing RNC to intervene will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Accordingly, and in the alternative, the Court finds that RNC would be entitled to permissive intervention under Rule 24(b).

### C.  Protected Interests

The RNC has a "legally protected interest" in the subject matter of these consolidated cases. *See Crossroads*, 788 F.3d at 320. This conclusion follows directly from the Court's conclusion that the RNC has Article III standing to intervene as a Defendant based on its interest in competing in fair contests for public office by registering, educating, and turning out voters. *See supra* Section III.A; *Crossroads*, 788 F.3d at 320.

### D. Impairment of or Impediment to Protected Interests

The resolution of these consolidated cases could "impair[] or impede[]" the RNC's interests. *See Crossroads*, 788 F.3d at 320. When analyzing whether a putative intervenor's interests may be impaired or impeded, courts look to the "practical consequences" of denying intervention. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting *Costle*, 561 F.2d at 909). Accordingly, courts may find an impairment of or impediment to a putative intervenor's interest even if the intervenor could "reverse an unfavorable ruling by bringing a separate lawsuit." *Id.* In these consolidated cases, the RNC's asserted interests could be burdened if the Court accepts the Plaintiffs' arguments that some provisions of Executive Order 14,248 cannot lawfully be implemented. For example, a decision in the Plaintiffs' favor could result in an injunction barring the implementation of provisions that the RNC argues are beneficial to its members' ability to compete in federal elections. *See* RNC's Mot. at 10. Therefore, the RNC has shown that the disposition of these cases could impair or impede its interests.

### E. Adequacy of Representation

Finally, no other party in this case will "adequately represent" the RNC's interests. *See Crossroads*, 788 F.3d at 320. In this Circuit, the burden of showing inadequate representation by existing parties is "not onerous" and is satisfied "unless it is clear that [an existing] party will provide adequate representation." *Id.* at 321 (first quoting *Fund For Animals*, 322 F.3d at 735; and then quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)). Courts in this Circuit also "look skeptically on government entities serving as adequate advocates for private parties," even when "the interest of a federal agency and potential intervenor can be expected to coincide." *Id.* (citing *Fund For Animals*, 322 F.3d at 736, and *Costle*, 561 F.2d at 912–13).

Here, the RNC seeks to intervene in part to argue that Executive Order 14,248 protects its constitutional interest in competing federal elections to advance its own partisan objectives. *See* RNC's Mot. at 12. The Federal Defendants are unlikely to be adequate representatives of these private, partisan interests. *Cf. Warth v. Seldin*, 422 U.S. 490, 499–500 & n.12 (1975) (highlighting prudential limits on the availability of defenses based on the rights of third parties).

Separately, the RNC asserts a unique interest in defending the decision of the U.S. Court of Appeals for the Fifth Circuit in *RNC v. Wetzel*, 120 F.4th 200 (2024), *petition for cert. filed sub nom. Watson v. RNC*, No. 24-1260 (June 6, 2025), in which the RNC was the prevailing party. *See* RNC's Mot. at 12. That decision directly implicates the RNC's private, partisan interests in a particular set of election procedures, and the RNC has no guarantee that the Government will defend against any collateral attack on the *Wetzel* decision in a way that will adequately protect those interests. For all these reasons, the RNC has shown that no existing party in these consolidated cases will adequately represent its interests.

\*   \*   \*

In sum, the RNC has shown that it has standing to defend Sections 2(a), 2(b), 2(d), and 7(a) of Executive Order 14,248, and it has satisfied each of the other requirements for intervention in these consolidated cases. *See* Fed. R. Civ. P. 24(a); *Crossroads*, 788 F.3d at 320. However, the RNC has not shown that it has standing to defend any other provisions of the Executive Order. Accordingly, the Court shall allow the RNC to intervene as a Defendant, but only against the Plaintiffs' claims regarding those provisions of the Executive Order for which the RNC has established standing to intervene.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the RNC's [125] Motion to Intervene is **GRANTED IN PART** and **DENIED IN PART**, as follows: The RNC may intervene as a Defendant against all Plaintiffs' claims for relief from the implementation of Sections 2(a), 2(b), 2(d), 3(a), and 7(a) of Executive Order 14,248.  Accordingly, the Clerk of the Court is respectfully directed to join the RNC as a Defendant-Intervenor in Case Nos. 25-cv-0946, 25-cv-0952, and 25-cv-0955, and to docket the documents at ECF Nos. 125-2, 125-3, and 125-4 as the RNC's Answers to the Plaintiffs' Complaints.  The RNC's Motion to Intervene is otherwise **DENIED**.

It is further **ORDERED** that the RNC shall adhere to all deadlines and scheduling orders previously entered in this matter, including the order to appear in person for an initial scheduling conference at **9:00 a.m. ET on June 18, 2025**, in Courtroom 28-A.  *See* Order, ECF No. 122.

It is further **ORDERED** that the deadline for counsel for all parties, including the RNC, to meet, confer, and file a joint Local Rule 16.3 report is **CONTINUED** to **5:00 p.m. ET on June 16, 2025**.

It is further **ORDERED** that the RNC shall, except as noted below, adhere to all provisions of the Order consolidating these cases, ECF No. 12, including the following:

- The parties shall make all future filings in these cases only on the docket for the earliest-numbered case, Civil Action No. 25-cv-0946, and the parties shall make no further filings on the dockets for Civil Action Nos. 25-cv-0952 and 25-cv-0955.

- Before any party may expand the scope of any of the consolidated cases by adding new claims or parties, the parties to the consolidated cases shall meet and confer to discuss (a) whether each party consents to the proposed expansion and (b) whether the proposed expansion would warrant deconsolidation.  Any motion filed with the Court that would expand the scope of the consolidated cases shall indicate each party's position on these issues.

It is further **ORDERED** that the RNC may brief the issues in these consolidated cases separately from the Federal Defendants, and the page limitations in Local Rule of Civil Procedure 7(e) shall apply to any memorandum filed by the RNC alone.

**SO ORDERED.**

**Dated:** June 12, 2025

/s/ Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge