## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br><br>Defendants. | Civil No. 25-cv-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br><br>Defendants. | Civil No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil No. 25-cv-0955 (CKK) |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTIONS TO COMPEL DISCOVERY, AND**
**MOTION FOR PROTECTIVE ORDER UNDER RULES 37(a)(5)(B) AND 26(c)**

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue,
NW Washington, DC 20530
(202) 353-8679
Bridget.K.O'Hickey@usdoj.gov

MARIANNE F. KIES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 1

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT ................................................................................................................... 8

I.      The Interrogatories Violate This Court's Scheduling Order, which Authorized
        Only "Targeted" Interrogatories Addressing "Ripeness and Justiciability." ....................... 8

II.     The Interrogatories Also Violate Federal Rules of Civil Procedure 26 and 33 ................. 10

III.    If the Court Grants Plaintiffs' Motions, It Should Allow Defendants the Full 30
        Days to Respond (Including to Lodge Specific Objections) and Adjust Related
        Briefing Deadlines Accordingly. ........................................................................ 12

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlanta Channel, Inc. v. Solomon*,
  2020 WL 6781221 (D.D.C. Nov. 18, 2020) ............................................................. 13

*Byrd v. Reno*,
  1998 WL 429676 (D.D.C. Feb. 12, 1998) .......................................................... 13, 14

*Fonville v. District of Columbia*,
  230 F.R.D. 38 (D.D.C. 2005) ................................................................................ 13

*Hispanic Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) ................................................................................ 4

*Martinez v. District of Columbia*,
  2005 WL 8165857 (D.D.C. Aug. 16, 2005) ............................................................ 12

*McCarthy v. Paine Webber Grp., Inc.*,
  168 F.R.D. 448 (D. Conn. 1996) ............................................................................ 11

*Nasreen v. Cap. Petroleum Grp., LLC*,
  340 F.R.D. 489 (D.D.C. 2022) ............................................................................... 14

*Petty v. Am. Fed'n of Gov't Emps.*,
  2022 WL 22716556 (D.D.C. Jan. 21, 2022) ............................................................ 8

*Stanley Works Israel Ltd. v. 500 Grp., Inc.*,
  2018 WL 1960112 (D. Conn. Apr. 26, 2018) .......................................................... 12

*Stiles v. Walmart, Inc.*,
  2020 WL 264420 (E.D. Cal. Jan. 17, 2020) ........................................................... 11

*Zito v. Leasecomm Corp.*,
  233 F.R.D. 395 (S.D.N.Y. 2006) ............................................................................ 11

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................ 12

Fed. R. Civ. P. 26 ................................................................................................. *passim*

Fed. R. Civ. P. 33 .................................................................................................. 4, 14

Fed. R. Civ. P. 37 ........................................................................................... 8, 10, 13, 16

**Other Authorities**

Exec. Order No. 14,248, *Preserving and Protecting the Integrity of American Elections*,
    90 Fed. Reg. 14,005 (Mar. 25, 2025) ............................................................. *passim*

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.) .................................................. 11

## INTRODUCTION

This Court ordered the Democratic Party Plaintiffs and the LULAC Plaintiffs to serve "targeted" factual interrogatories to "efficiently" resolve "issues regarding the ripeness and justiciability" of "certain" of Plaintiffs' claims.[1] Instead, the Democratic Party Plaintiffs served **49 interrogatories** with no discernible connection to the Court's jurisdiction over, or the justiciability of, Plaintiffs' challenges to Executive Order No. 14,248. Because the Interrogatories violate the Court's Scheduling Order, as well as Federal Rules of Civil Procedure 26(b) and 33(a), the Court should deny the Motions to Compel and issue a protective order under Rules 37(a)(5)(B) and 26(c). However, if the Court grants Plaintiffs' Motions, it should revise the Scheduling Order to allow Defendants the full 30 days under Rule 33(b)(2) to respond to Plaintiffs' Interrogatories (i.e., an additional 16 days from the date of any order granting Plaintiffs' Motions).

## PROCEDURAL HISTORY

On April 24, 2025, this Court resolved Plaintiffs' Motion for Preliminary Injunction concerning various provisions of Executive Order No. 14,248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14,005 (Mar. 25, 2025) (the "EO"). Order, ECF 103; Mem. Op., ECF 104. The Court denied the Motion with respect to Plaintiffs' challenges to Sections 2(b), 7(a), and 7(b) of the EO, ECF 103 at 2, because "[o]n the present record, challenges to those provisions are premature," ECF 104 at 2.[2] In particular, as to Section 2(b), the Court held that "because the Court's assessment of the Democratic Party Plaintiffs' challenge to Section 2(b) would benefit from further factual development, this portion of their request for

---

[1] The "Democratic Party" Plaintiffs are the Plaintiffs in Case No. 25-cv-952. The "LULAC" Plaintiffs are the Plaintiffs in Case No. 25-cv-946. ECF 141 at 2 nn.1, 2.

[2] Unless stated otherwise, all record citations in this Memorandum are to the ECF pagination in the upper right corner of the cited document.

preliminary injunctive relief may be prudentially unripe." *Id.* at 83. As to Section 7(a), the Court found, "it is unclear on the present record whether Section 7(a) will lead imminently to any unlawful action." *Id.* at 99. Finally, as to Section 7(b), the Court held that Plaintiffs' claimed injury was "too speculative to support Article III standing" because, *inter alia*, any injury inflicted by Section 7(b) on Plaintiffs' members "will arise only if States respond to the threat of having their funding cut by changing their ballot-receipt deadlines." *Id.* at 103.

After ruling on Plaintiffs' Motion for Preliminary Injunction, the Court directed the parties to file a joint scheduling proposal for further proceedings, and the parties did so. Minute Order, Apr. 28, 2025; *see* Joint Scheduling Proposal, ECF 119. The parties disagreed about the scope of future discovery. Plaintiffs proposed a four-month discovery period, putatively to obtain discovery on "certain claims" as to which "further factual development" may be necessary. ECF 119 at 3 (discussing EO Section 2(b) (quoting ECF 104 at 83)). Defendants countered that no discovery would be necessary because Plaintiffs' claims presented purely legal issues. *Id.* at 5.

Upon consideration of the parties' joint scheduling proposal, "[t]o allow the Court to decide whether discovery is warranted," the Court asked Plaintiffs to specify "the subject matter of any proposed discovery, the claim(s) and provision(s) of Executive Order 14,248 to which the proposed discovery would be relevant, and a discovery plan outlining how Plaintiffs propose to obtain the relevant information." ECF 122 at 2. The Court also set an Initial Scheduling Conference for June 18, 2025. *Id.* As ordered, the parties submitted a Local Rule 16.3 report on June 16, 2025. Joint Civ. R. 16.3 Report to the Court, ECF 137. Plaintiffs repeated their request for four months of discovery, "on claims not included in their preliminary injunction motion" as well as "discovery contemplated in the Court's preliminary injunction order." *Id.* at 2. Namely, Plaintiffs stated their intention to discover a wide range of "information related to the actions

Defendants are taking to implement EO 14,248, the contours of the Executive Order's scope, and the effects that the challenged provisions are having on states, localities, and voters." *Id.* at 3; *see id.* at 5–10. Plaintiffs "anticipate[d]" that their discovery would "involve requests for production of documents, interrogatories, requests for admission, and depositions of relevant fact witnesses (including individuals and Rule 30(b)(6) designees)," as well an administrative record. *Id.* at 3–5. Defendants, in turn, reiterated why Plaintiffs' facial challenges to the EO rendered any discovery unnecessary. *Id.* at 11–14.

Two days later, the Court held the Initial Scheduling Conference. During that conference, the Court rejected Plaintiffs' proposal for immediate, full-blown merits discovery into ongoing implementation of the EO—recognizing that such discovery would run head-long into numerous Executive privileges surrounding nonfinal agency actions. "Both for efficiency and to afford due respect to the deliberative process privilege and other privileges that the executive branch may assert, I would be inclined to resolve all purely legal issues before ordering extensive fact discovery." June 18, 2025, Hr'g Tr. 8:12–17 (internal pagination). The proper vehicle for fact discovery in the short-term, the Court held, would be via a "focused" and "explicit" Rule 56(d) affidavit in opposition to Defendants' forthcoming Motion for Summary Judgment. *Id.* 8:18–9:3, 9:24–10:8 (internal pagination). Only if Plaintiffs' claims survived summary judgment might broader factual discovery, such as an administrative record, potentially be appropriate. *Id.* 10:9–16 (internal pagination).

In the meantime, however, the Court found it would be "helpful to allow a *very targeted* set of interrogatories aimed at illuminating . . . contours of the precise policy at issue." *Id.* 10:17–21 (emphasis added) (internal pagination). "What I would focus on is that interrogatories that could efficiently resolve issues of ripeness and final agency action, which can have a factual component

to them without the need for more intrusive discovery." *Id.* 10:22–25 (internal pagination); *see id.* 13:25–14:3 (discussing "targeted questions about the ripeness and final agency action") (internal pagination). For example, the Court suggested that Plaintiffs propound a "very targeted" Interrogatory about "what actions *have been taken* to implement a particular section of the executive order," which would "get at the issue of ripeness and final agency action." *Id.* 11:1–5 (emphasis added) (internal pagination). The Court emphasized that it was contemplating "one or two" Interrogatories on each of Plaintiffs' claims, and "that's about it"; "I don't want a long list of stuff." *Id.* 13:14–24, 16:21–25 (internal pagination).

Consistent with its statements during the Scheduling Conference, the Court then issued a Scheduling Order directing as follows:

> [T]o efficiently resolve issues regarding the **ripeness and justiciability of certain of Plaintiffs' claims**, the Democratic Party Plaintiffs and LULAC Plaintiffs may propound **targeted** factual interrogatories on the federal agency defendants to discern the existence *vel non* of final agency actions and the "contours of the precise policy at issue" in their claims. *See Hispanic Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018).

Scheduling Order, ECF 141 at 2 (¶ 2) (bold added) (footnotes omitted).[3] The Court set a 14-day response deadline for the Interrogatories—less than half the default under the Federal Rules of Civil Procedure. *Compare* ECF 141 at 2 (¶ 2)*, with* Fed. R. Civ. P. 33(b)(2). The Scheduling Order did not, however, alter the 25-interrogatory limit set by Federal Rule of Civil Procedure 33(a). *See* Local Civ. R. 26.2(b). Because the parties had agreed that no discovery would be necessary as to Section 2(a) of the EO, the Court scheduled summary judgment briefing on Plaintiffs' challenge

---

[3] As it had discussed during the June 18 Scheduling Conference, the Court held that broader discovery *may* be appropriate only *if* one or more of Plaintiffs' claims were to survive Defendants' future Motions for Summary Judgment. ECF 141 at 3 (¶ 5).

to that Section to begin on July 11, 2025. ECF 141 at 2 (¶ 3); *see* ECF 145 & 146 (Plaintiffs' Motions for Partial Summary Judgment as to EO Section 2(a)).

On June 27, 2025, the Democratic Party Plaintiffs served **49 interrogatories**, which they divided among 10 federal Agencies: The Department of Defense ("DOD"), the Department of Homeland Security ("DHS"), the Department of Interior ("DOI"), the Department of Justice ("DOJ"), the Department of State ("DOS"), the Small Business Administration ("SBA"), the Social Security Administration ("SSA"), the U.S. DOGE Service ("USDS"),[4] the U.S. Election Assistance Commission ("EAC"), and the Department of Veterans Affairs ("VA").[5] In the Definitions incorporated into the Interrogatories, Plaintiffs defined "Executive Order" to include Section 2(a)—despite having agreed that no discovery as to that Section would be needed. *E.g.*, ECF 147-2 at 4 ¶ 4 (Definitions with Interrogatories to EAC). *But see* ECF 137 at 5. The 49 Interrogatories were not contiguously numbered 1–49; instead, Plaintiffs served between three and seven Interrogatories on each Agency, beginning each set at number 1. *See generally* ECF 147-2.[6]

Many of the Interrogatories are not tailored to particular Defendants' alleged involvement in the EO implementation process. *See* ECF 147-1 (Democratic Party Plaintiffs' Motion to Compel) at 13 (acknowledging that "many of the[ir] interrogatories are the same across agencies"). More important, the Interrogatories are sweeping in content and not "targeted" to "efficiently resolve issues of ripeness and final agency action." June 18, 2025, Hr'g Tr. 10:22–25 (internal pagination). For example, Plaintiffs directed each of the 10 Agencies to independently:

---

[4] Defendants do not concede that the U.S. DOGE Service is an "Agency" for purposes of statutes not relevant here but use the term colloquially in this Memorandum.

[5] The LULAC Plaintiffs joined in a subset (27) of the Interrogatories.

[6] After Defendants' original deadline to respond to the Interrogatories had passed and two days before moving to compel, Plaintiffs informed Defendants via email that they would voluntarily withdraw three interrogatories previously served on the DOJ, reducing the total from 49 to 46.

> **Identify and summarize all non-privileged communications between you and anyone else**, including but not limited to other federal agencies or state and local officials, **concerning the Executive Order**, its meaning, and any actions or efforts you have taken, plan to take, or are considering taking to implement or comply with the Executive Order.

*E.g.*, ECF 147-2 at 7 (Interrogatory 1 to EAC) (bold added). Similarly, Plaintiffs directed each of the 10 Agencies to independently:

> Describe **all actions or efforts** you have made, will make, or are considering making to comply with or implement the Executive Order. For each action or effort, please identify (i) who within your agency was, is, or will be responsible for making each action or effort; and (ii) which provision of the Executive Order that action or effort was or will be taken in response to.

*Id.* (Interrogatory 2 to EAC) (bold added). Several of Plaintiffs' Interrogatories do not even mention the Executive Order, at all, for instance:

> Describe all actions or efforts you have taken, initiated, planned, or considered to assess the citizenship status of enrollees of public assistance programs, including but not limited to any guidance or instructions you have issued, drafted, or plan to issue for carrying out such assessments.

*E.g.*, *id.* at 35 (Interrogatory 3 to DoD).

Further, the vast majority of the Interrogatories (such as boilerplate Interrogatory 2, quoted above), overtly seek deliberative process privileged information about the Agencies' ongoing implementation efforts and intentions for future actions that have not yet materialized. *See also, e.g.*, *id.* at 7 (Interrogatory 3 to EAC: "Describe any action or effort you have taken, **initiated, considered, or planned to take** to withhold federal funds or grants from states that fail to require documentary proof of citizenship from voter registration applicants who use the federal voter registration form"); *id.* at 8 (Interrogatory 5 to EAC: "Describe any action or effort you have taken, **initiated, considered, or planned** to amend the Voluntary Voting System Guidelines 2.0 and issue other guidance establishing standards for voting systems."); *id.* (Interrogatory 6 to EAC: "Describe any action or effort you have taken, **initiated, considered, or planned** pursuant to EO § 4(c) to

6

conduct any audit of a state's use of Help America Vote Act funds."); *id.* (Interrogatory 7 to EAC: "Describe any action or effort you have taken**, initiated, considered, or planned** to withhold federal funds or grants from states that fail to adopt a ballot receipt deadline of election day for all methods of voting." (all bold added)).

Pursuant to Local Civil Rule 7(m), Defendants contacted Plaintiffs to inform them that their Interrogatories violated the Court's Scheduling Order, as well as Federal Rules of Civil Procedure 26 and 33, and invited Plaintiffs to serve tailored Interrogatories. The parties conferred by email on July 9 and 10, 2025, and by videoconference on July 11, 2025. During the July 11 conference, Plaintiffs declined to revise or withdraw any of their 49 Interrogatories, and Defendants explained that they could not respond to the 49 Interrogatories as served. Therefore, the parties agreed they were at an impasse. During the same videoconference, the parties also discussed how to bring the discovery dispute to the Court's attention. Defendants indicated that they were open to initiating briefing by filing a Motion for Protective Order. Plaintiffs, however, stated that they would move to compel, and did so on July 18, 2025. ECF 147 (Democratic Party Plaintiffs), ECF 148 (LULAC Plaintiffs). Defendants now timely respond. *See* ECF 141 at 2 (¶ 2).

## LEGAL STANDARD

"*Unless otherwise limited by court order*, the scope of discovery is as follows": parties may obtain discovery regarding any nonprivileged matter that is (i) relevant to a party's claim or defense and (ii) "proportional to the needs of the case," considering, *inter alia*, "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1) (emphasis added). "On motion or on its own," the Court "must" limit discovery sought if it determines that the discovery is "unreasonably cumulative or duplicative" or "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 26(c)(1)(A) (authorizing court to "issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding the disclosure or discovery"); Fed. R. Civ. P. 37(a)(5)(B) (authorizing court to issue protective order for opponent of meritless motion to compel); *Petty v. Am. Fed'n of Gov't Emps.*, 2022 WL 22716556, at *6 (D.D.C. Jan. 21, 2022) (Kollar-Kotelly, J.) (precluding plaintiff from seeking discovery pursuant to Rule 26(c)).

## ARGUMENT

### I.    The Interrogatories Violate This Court's Scheduling Order, which Authorized Only "Targeted" Interrogatories Addressing "Ripeness and Justiciability."

Federal Rule of Civil Procedure 26(b)(1) allows district courts to "limit[]" the scope of discovery. Here, the Court did so in its Scheduling Order: authorizing Plaintiffs to serve only "targeted" factual interrogatories to "efficiently" resolve the "ripeness and justiciability" of "certain" of Plaintiffs' claims and directing Defendants to respond within 14 days instead of the standard 30 days allowed by Rule 33(b)(2). ECF 141 at 2 (¶ 2). The Court clearly stated its rationale for this limitation during the Scheduling Conference that preceded the Order: "intrusive" discovery into (*inter alia*) Agencies' ongoing, non-final implementation efforts would inherently call for information protected by Executive privileges. June 18, 2025, Hr'g Tr. 8:12–17 (internal pagination); *id.* 10:17–21, 10:22–25, 13:25–14:3 (internal pagination).

The Interrogatories Plaintiffs served are not limited to "certain" of Plaintiffs' claims, as directed by the Court. Instead, Plaintiffs expressly defined "Executive Order" to include all the sections Plaintiffs have challenged in these lawsuits, including Section 2(a) (as to which Plaintiffs previously agreed no discovery was necessary). ECF 137 at 5. Nor are the Interrogatories targeted to resolving "ripeness and justiciability." ECF 141 at 2 (¶ 2). To use two obvious examples, Plaintiffs served 10 Interrogatories seeking "all non-privileged communications between [each

Agency] and anyone else . . . concerning the Executive Order,"[7] and 10 more Interrogatories asking each Agency to describe "any action or effort" that the Agency "will make" or "[is] considering making" to implement the Executive Order. *E.g.*, ECF 147-2 at 7 (Interrogatories 1 and 2). Plaintiffs do not, and cannot, explain how these 20 Interrogatories, which comprise nearly half of the Interrogatories they served, are "targeted" to "efficiently" resolve ripeness and justiciability. An interrogatory seeking "all communications" related to the subject-matter of the litigation (the Executive Order) is not targeted to anything. And by seeking information about efforts that Agencies "will make" or are "considering making," Plaintiffs pursue information protected by the deliberative process privilege, rather than information about final agency actions that might provide a basis for subject-matter jurisdiction over their claims—a result that this Court unambiguously foreclosed.

After their Motion for Preliminary Injunction was resolved, Plaintiffs sought immediate, broad-ranging discovery on all aspects of the merits of their many claims. ECF 137 at 2, 3, 5–10. The Court rejected Plaintiffs' request in favor of a multi-phase process, the beginning of which contemplated only a small number of carefully tailored Interrogatories. June 18, 2025, Hr'g Tr. 8:12–9:3, 9:24–10:25, 13:14–24, 16:21–25 (internal pagination). The Court memorialized its decision in an unambiguous Scheduling Order. ECF 141 at 2 (¶ 2), 3 (¶ 5). In crafting their Interrogatories, Plaintiffs were constrained by the terms of that Order, which supersedes the broader scope of otherwise allowable discovery under Rule 26. Fed. R. Civ. P. 26(b)(1). Because Plaintiffs' Interrogatories violate the Court's terms, their Motions to Compel should be denied, and a protective order should issue, for this reason alone.

---

[7] Plaintiffs insist that Defendants "misquote[]" and "mischaracterize[]" this Interrogatory. *E.g.*, ECF 147-1 at 10, 30. They do not. The Court may and should read the Interrogatory in its entirety (*see* page 5, *supra*), as the text of the Interrogatory controls.

## II.    The Interrogatories Also Violate Federal Rules of Civil Procedure 26 and 33.

The Motions to Compel independently fail because Plaintiffs' Interrogatories violate the proportionality requirement of Rule 26(b)(1) and the numerosity limitation in Rule 33(a)(1).

*First*, Rule 26(b)(1) allows only discovery that is "proportional to the needs of the case," considering, *inter alia*, "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). "On motion or on its own," the Court "must" limit discovery if it determines that the discovery sought is "unreasonably cumulative or duplicative" or "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 26(c)(1)(A) (authorizing court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding the disclosure or discovery"); Fed. R. Civ. P. 37(a)(5)(B) (authorizing court to issue protective order in response to meritless motion to compel). Here, the "needs of the case," Fed. R. Civ. P. 26(b)(1), are to resolve whether Plaintiffs' claims are ripe and justiciable. ECF 141 at 2 (¶ 2). Plaintiffs inaccurately state that Defendants' proportionality claim is rooted solely in the volume of Interrogatories. ECF 147-1 at 27. They are mistaken. The central problem with the Interrogatories, discussed above, is that they are not tailored in accordance with the Scheduling Order. Plaintiffs assert that "defendant-specific interrogatories are necessary to obtain relevant information," but most of their Interrogatories are not even aimed at particular Defendants. *Id.* at 26; *see id.* at 15 ("many of the same interrogatories [are] directed to multiple Defendants").[8] Plaintiffs' expansive, boilerplate Interrogatories therefore are not "proportional" within the meaning of Rule 26(b)(1).

---

[8] Plaintiffs seem to believe that this fact aids their Motions to Compel, as they assert it repeatedly. *E.g.*, ECF 147-1 at 16. But issuing sweeping, verbatim identical Interrogatories to all 10 Agencies shows that the Interrogatories are not "targeted" as the Court ordered. If forced to respond, each of the 10 Agencies would have to identify, collect, and then summarize "all non-privileged communications" they have ever had with any other person or entity concerning the EO.

*Second*, Rule 33(a) sets a limit of 25 Interrogatories per party. Where separate parties are "represented by the same counsel and are acting in unison" (such as the Democratic Party Plaintiffs here), they "may be treated as one 'party' for purposes of the limit on interrogatories." *E.g.*, *Stiles v. Walmart, Inc.*, 2020 WL 264420, at *4 (E.D. Cal. Jan. 17, 2020); *McCarthy v. Paine Webber Grp., Inc.*, 168 F.R.D. 448, 449–50 (D. Conn. 1996) (applying the limit to each side rather than to each party); Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.) ("[N]ominally separate parties should be considered one party for purposes of the 25-interrogatory limitation."); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) (citing Wright & Miller and describing a per-side limitation as the "more sensible approach" where the parties seeking discovery are only "nominally" separate). To hold otherwise would unduly overburden recipients of discovery in multi-party cases and unfairly benefit its proponents.

Even if a per-side Interrogatory limitation were not appropriate in every case, that limitation is manifestly appropriate here. During the June 18, 2025, Scheduling Conference that preceded the Scheduling Order at issue, the Court emphasized that it was contemplating "one or two" Interrogatories on each of Plaintiffs' claims, and "that's about it"; "I don't want a long list of stuff." June 18, 2025, Hr'g Tr. 13:14–24, 16:21–25 (internal pagination). The Court's concern was well-founded. There are three LULAC Plaintiffs, six Democratic Party Plaintiffs, and more than 25 Defendants. Plaintiffs' per-party interpretation would allow for more than **5,625** total Interrogatories (9 Plaintiffs each serve 25 Interrogatories on 25 Defendants, or 9 x 25 x 25). *See* ECF 147-1 at 25 (Democratic Party Plaintiffs arguing that "the Federal Rules" permit the Democratic Party Plaintiffs to serve "far more discovery"). That result would be difficult to administer, unfair, and inconsistent with the goal of the Federal Rules: to "secure the just, speedy,

and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. By serving 49

Interrogatories without prior leave of Court, Plaintiffs have therefore also violated Rule 33(a).

### III.    If the Court Grants Plaintiffs' Motions, It Should Allow Defendants the Full 30 Days to Respond (Including to Lodge Specific Objections) and Adjust Related Briefing Deadlines Accordingly.

For reasons previously stated, Defendants respectfully submit that the Court should deny

Plaintiffs' Motions to Compel and issue a protective order that requires Plaintiffs to serve

Interrogatories compliant with its Scheduling Order and with the Federal Rules of Civil Procedure.

But if the Court grants Plaintiffs' Motions, at a minimum the Court should allow Defendants 30

days to respond—i.e., 16 days from the date of the Court's Order granting the Motions. Moreover,

if the Court grants Plaintiffs' Motions, it should decline Plaintiffs' unfounded request to hold all

future specific objections waived, for at least four independent reasons. *See* ECF 147-1 at 31–34;

ECF 148 at 5.

*First*, Plaintiffs' demand is contrary to the Federal Rules of Civil Procedure and

representations Plaintiffs made in the meet-and-confer process. During their videoconference, the

parties discussed how to bring this discovery dispute to the Court's attention. Defendants offered

to initiate briefing through a Motion for Protective Order. The filing of that Motion would have

stayed Defendants' obligation to respond to the Interrogatories. *See, e.g.*, *Martinez v. District of*

*Columbia*, 2005 WL 8165857, at *1 (D.D.C. Aug. 16, 2005) ("Defendants' failure to engage in

discovery was reasonably justified while the Motion for a Protective Order was lodged."); *accord,*

*e.g.*, *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 2018 WL 1960112, at *4 (D. Conn. Apr. 26, 2018)

(because defendants had timely filed a motion for protective order, "[p]laintiff's contention that

[d]efendants have waived their objections is without merit, and its request to deem the objections

waived will be denied").[9] Plaintiffs rejected Defendants' proposal to brief a Protective Order Motion and stated they would move to compel, instead. Defendants forewent an automatic stay through Rule 26(c) because Plaintiffs decided to present the dispute via Rule 37. It would be fundamentally unfair to penalize Defendants for Plaintiffs' strategery.

*Second*, Plaintiffs' request is unsupported by the caselaw they cite. *See, e.g.*, ECF 147-1 at 31–32. Therein, the responding party had wholly ignored and blown past the operative response deadline without first voicing any concerns with the discovery before the discovery was due. *See, e.g.*, *Fonville v. District of Columbia*, 230 F.R.D. 38, 40, 42 (D.D.C. 2005) (plaintiff served interrogatories on May 25, 2004, but defendant did not respond until July 15, 2004; court emphasized that defendant "did not seek an extension of time, nor has it attempted to demonstrate good cause for its untimely responses and objections"); *see also Byrd v. Reno*, 1998 WL 429676, at *2 (D.D.C. Feb. 12, 1998) ("[T]hree weeks after the November 6, 1997 deadline, [defendant] was still 'hedging his bets' by sending plaintiff's counsel responses but leaving open the possibility that the answers might change before a verified set were sent to plaintiff's counsel."). Here, by contrast, Defendants attempted, in good faith, to resolve the dispute by explaining their view that Plaintiffs' 49 Interrogatories violated the Court's Scheduling Order and Federal Rules of Civil Procedure 26 and 33 and inviting Plaintiffs to serve new Interrogatories that complied with the Court's direction and governing law. Plaintiffs declined. Disputes over the scope of permissible discovery are common, which is why Federal Rules of Civil Procedure 26(c) and 37(a) exist. *See, e.g.*, *Atlanta Channel, Inc. v. Solomon*, 2020 WL 6781221, at *2 (D.D.C. Nov. 18, 2020) ("A party may file a motion to compel discovery if another party has failed to respond to a proper discovery

---

[9] *Cf.* Fed. R. Civ. P. 37(d)(2) ("A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, *unless the party failing to act has a pending motion for a protective order under Rule 26(c).*" (emphasis added)).

request." (citing Fed. R. Civ. P. 37(a))). Believing themselves entitled to a protective order, Defendants' decision not to respond the Interrogatories was entirely proper.

*Third*, even if caselaw contemplating waiver of specific objections as a penalty for failure to respond to discovery were relevant (it is not), waiver is improper where—as here—good cause exists. *See* Fed. R. Civ. P. 33(b)(4); *Nasreen v. Cap. Petroleum Grp., LLC*, 340 F.R.D. 489, 497–98 (D.D.C. 2022) (listing as factors (1) the length of the delay, (2) the reason for the delay, (3) whether there was dilatory or bad faith action by the discovery recipient, (4) whether there is any prejudice to the discovery proponent, (5) whether the discovery request was "properly framed" and "not excessively burdensome," and (6) whether waiver would impose an "excessively harsh" result). Days *before* their deadline to respond had passed, Defendants informed Plaintiffs that the Interrogatories directly conflict with the Court's Scheduling Order and that they were therefore unable to respond. Defendants' attempt to confer was in good faith and supported substantially for the reasons discussed at length in this Memorandum. Factors 1, 2, and 3 counsel against waiver. Nor is there prejudice to Plaintiffs. The Scheduling Order expressly contemplates a Motion to Compel, and Plaintiffs timely filed theirs. ECF 141 at 2 (¶ 2). Plaintiffs concede that at this time, there is no indication that the instant discovery dispute will affect further briefing. ECF 147-1 at 10 n.1. Therefore, Factor 4 is not present. As to Factor 5, Defendants have explained at length why the Interrogatories were not, in fact, "properly framed" in accordance with the Court's Scheduling Order—disproving Factor 5. Finally, a waiver would be "excessively harsh" where, as here, Defendants have lodged a good-faith request for relief under Rule 26(c).[10]

---

[10] The caselaw—and Federal Rules themselves—demonstrate that a waiver of further specific objections would be inappropriate under the circumstances presented here. But under any circumstances, myriad specific objections are not waivable, including (but not limited to) the key specific objections of relevance and privilege. *Byrd*, 1998 WL 429676, at *6 (relevance); *Nasreen*, 340 F.R.D. at 494 (privilege).

14

*Finally*, contrary to Plaintiffs' apparent belief, Defendants did not "violate" the Federal Rules by informing Plaintiffs of their concerns with the Interrogatories prior to the response deadline in lieu of serving specific objections. *E.g.*, ECF 147-1 at 9–10, 23–24; ECF 148 at 3, 4–5. Plaintiffs' position is nonsensical. One of Defendants' objections to the Interrogatories is that they exceed Rule 33(a)'s numerosity limitation, given that the Democratic Party Plaintiffs served 49 (now 46) Interrogatories. If Defendants had lodged their numerosity objection but then responded anyway, Defendants would have thereby waived that objection. Moreover, Defendants' ability to preserve their numerosity objection but still respond to some discovery was thwarted by Plaintiffs' strategic decision not to number their Interrogatories contiguously (i.e., 1 through 49), but instead to restart at 1 for each of the 10 sets directed to the Agencies. Because of this, Defendants could not—for instance—respond to the first 25 Interrogatories but not the 26th through 49th. *See* ECF 147-1 at 26–27 (Democratic Party Plaintiffs arguing that Defendants should have answered up to 25 Interrogatories). Finally, if Plaintiffs' view is that Defendants should have lodged their objections and then refused to answer all 49 of the Interrogatories on the basis of Defendants' objections discussed herein—i.e., Plaintiffs' failure to comply with the Court's Scheduling Order, Rule 26's proportionality requirement, and Rule 33's numerosity limitation—Plaintiffs do not explain how that course of action would have better situated any of the parties or the Court to resolve this dispute. To the contrary, Plaintiffs argue that "[e]ven if Defendants' objections had been specifically made, they would fail." *Id.* at 20–21.

The reality is that, well before the deadline to respond to the Interrogatories had passed, Defendants voiced (orally and in writing) their overarching concerns with the discovery. Defendants thus satisfied their meet-and-confer obligations in furtherance of Defendants' view that a protective order is warranted under Rules 37(a)(5)(B) and 26(c). Local Civ. R. 7(m). Plaintiffs

stated that they wanted to brief their motion to compel instead of responding to a motion for protective order filed by Defendants. In the spirit of compromise, Defendants acceded to Plaintiffs' preference.[11] Defendants' act of good faith does not entitle Plaintiffs to a windfall of discovery without boundaries—a result that would defy the Court's Scheduling Order and rationale therefor.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motions to Compel and grant a protective order to Defendants per Rules 37(a)(5) and 26(c).

Dated: July 25, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue,
NW Washington, DC 20530
(202) 353-8679
Bridget.K.O'Hickey@usdoj.gov

*/s/ Marianne F. Kies*
MARIANNE F. KIES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*

---

[11] In light of the arguments raised by Plaintiffs' Motions, and to secure the relief Defendants require, Defendants have styled this filing as a Cross Motion for Protective Order—as contemplated by Federal Rule of Civil Procedure 37(a)(5)(B).

16