**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., | |
| Plaintiffs, | Civil Action No. 25-cv-0946 (CKK) |
| v. | |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | |
| Defendants. | |
| DEMOCRATIC NATIONAL COMMITTEE, et al., | |
| Plaintiffs, | Civil Action No. 25-cv-0952 (CKK) |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, et al., | |
| Plaintiffs, | Civil Action No. 25-cv-0955 (CKK) |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**DEMOCRATIC PARTY PLAINTIFFS' COMBINED REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Aria C. Branch (DC 1014541)
Lalitha D. Madduri (DC 1659412)
Christopher D. Dodge (DC 90011587)
Jacob D. Shelly (DC 90010127)
James J. Pinchak (DC 90034756)*
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave. Suite 2100
Seattle, WA 98101
T: (206) 656-0177

*Counsel for the Democratic Party Plaintiffs*

*Admitted pro hac vice*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

    I.     Plaintiffs' interrogatories, both as originally issued and revised, comply with
           this Court's scheduling order and the Federal Rules. ............................................ 2

          A.    Each interrogatory seeks information concerning the "contours of the
                 precise policy at issue," as ordered by this Court. ..................................... 2

          B.    Plaintiffs' original interrogatories complied with Rules 33 and 26. ........... 5

          C.    In any event, Plaintiffs' Revised Interrogatories satisfy this Court's
                 scheduling order and the applicable Federal Rules. ................................... 7

    II.    Defendants are not entitled to a protective order and have waived their
           objections. ........................................................................................................... 10

          A.    Defendants make no attempt to satisfy their burden for a protective
                 order and their request comes too late. ..................................................... 10

          B.    This Court should order Defendants to promptly respond to Plaintiffs'
                 interrogatories and find that they waived their specific objections. ......... 11

CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FBI*,
    186 F.R.D. 71 (D.D.C. 1998)...................................................................................... 10

*All. for Retired Americans v. Bessent*,
    No. CV 25-0313 (CKK), 2025 WL 1114350 (D.D.C. Mar. 20, 2025)............................. 3, 5

*Athridge v. Aetna Cas. & Sur. Co.*,
    184 F.R.D. 181 (D.D.C. 1998)...................................................................................... 14

*Bennett v. Spear*,
    520 U.S. 154 (1997)........................................................................................................ 9

*Brittain v. Stroh Brewery Co.*,
    136 F.R.D. 408 (M.D.N.C. 1991) ................................................................................ 11

*Caudle v. D.C.*,
    263 F.R.D. 29 (D.D.C. 2009)........................................................................................ 13

*Clark Floyd Landfill, LLC v. Cnty. of Clark, Indiana*,
    No. 418CV00004RLYDML, 2019 WL 7598843 (S.D. Ind. Sept. 26, 2019)....................... 6

*DL v. D.C.*,
    251 F.R.D. 38 (D.D.C. 2008)................................................................................... 6, 14

*Fonville v. D.C.*,
    230 F.R.D. 38, 40 (D.D.C. 2005).................................................................................. 10

*Hartford Fire Ins. Co. v. The Socialist People's Libyan Arab Jamahiriya*,
    Civ. No. 98-3096 (TFH), 2007 WL 1876392 (D.D.C. June 28, 2007)............................... 10

*In re Benicar (Olmesartan) Prods. Liab. Litig.*,
    319 F.R.D. 139 (D.N.J. 2017)........................................................................................ 6

*In re Subpoena Served on Clark Realty Cap., L.L.C.*,
    No. 23-MC-00049(RC), 2023 WL 8005096 (D.D.C. Nov. 17, 2023)............................... 12

*Inova Health Care Servs. for Inova Fairfax Hosp. & Its Dep't, Life with Cancer v.*
    *Omni Shoreham Corp.*,
    2021 No. 20-CV-784, 2021 WL 6503725 (D.D.C. Jan. 29, 2021)............................... 14, 15

*James v. Cuyahoga Cnty.*,
    648 F. Supp. 3d 897 (N.D. Ohio 2022)............................................................................ 6

*Jefferson v. Austin*,
    345 F.R.D. 249 (D.D.C. 2024)..................................................................................... 6

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
    No. CV 25-0946, 2025 WL 1187730 (D.D.C. Apr. 24, 2025) .............................................. 3

\*Nasreen v. Capitol Petroleum Grp., LLC*,
    340 F.R.D. 489 (D.D.C. 2022)............................................................................... 13, 15

*OCONUS DOD Emp. Rotation Action Grp. v. Cohen*,
    144 F. Supp. 2d 1 (D.D.C. 2000) .......................................................................... 10

*Small v. WellDyne, Inc.*,
    No. 5:16-CV-00062-BO, 2017 WL 2484181 (E.D.N.C. June 8, 2017) .............................. 6

\*Venetian Casino Resort, L.L.C. v. E.E.O.C.*,
    409 F.3d 359 (D.C. Cir. 2005) ........................................................................... 3, 4

**Federal Rules**

Fed. R. Civ. P. 26 ................................................................................................ 6, 10

Fed. R. Civ. P. 33 ................................................................................................ *passim*

Fed. R. Civ. P. 37 ................................................................................................ 12

**Other Authorities**

10A Fed. Proc., L. Ed. § 26:289 ............................................................................. 11

Exec. Order No. 14,248, *Preserving and Protecting the Integrity of American Elections*
    (Mar. 25, 2025) .......................................................................................... 1

## INTRODUCTION

In accordance with this Court's Scheduling Order, Plaintiffs served targeted interrogatories tailored to each challenged provision of Executive Order No. 14,248 and directed to the agencies responsible for implementation. These interrogatories ask a straightforward question: what has the Government done, and what does it plan to do, to carry out the President's commands? Defendants have refused to answer, despite this Court's call to provide "prompt responses," *see* Ex. A ("6/18/25 Tr."), and even as reports confirm implementation is underway. There is no justification for Defendants' categorical refusal to engage in discovery. Because Plaintiffs' interrogatories are consistent with both this Court's scheduling order and the Federal Rules, their motion to compel should be granted, and Defendants' motion for a protective order should be denied.[1]

This Court should further order Defendants to respond to Plaintiffs' interrogatories by no later than **August 8, 2025**—one week before Phase II summary judgment briefing begins. This Court should also find that Defendants have waived any specific objections—the default result contemplated by Rule 33 where, as here, a party fails to make a "timely objection" with "specificity." Fed. R. Civ. P. 33(b)(4). Although Plaintiffs' original interrogatories satisfy both this Court's scheduling order and the Federal Rules, the Revised Interrogatories, which Plaintiffs have further narrowed, remove any doubt. Defendants must be compelled to give prompt, comprehensive responses; their stonewalling risks derailing this Court's briefing schedule and prejudices Plaintiffs' ability to obtain prompt relief.

---

[1] Plaintiffs' initial motion, ECF No. 147-1 ("MTC"), and this reply largely focus on the initial interrogatories previously served by Plaintiffs on Defendants. In addition, and consistent with this Court's order, Minute Order (July 25, 2025), Plaintiffs are also filing a proposed set of Revised Interrogatories together with this motion, *see* Ex. B ("Revised Interrogatories"); *infra* § I.C.

## ARGUMENT

I. **Plaintiffs' interrogatories, both as originally issued and revised, comply with this Court's scheduling order and the Federal Rules.**

    A. **Each interrogatory seeks information concerning the "contours of the precise policy at issue," as ordered by this Court.**

At the June 18, 2025 scheduling conference, this Court made clear that it would be "appropriate" for "plaintiffs to pose an interrogatory" about "what actions have been taken to implement a particular section of the executive order." 6/18/25 Tr. 11:1–4; *see also id.* at 10:19–20 (explaining Plaintiffs could serve interrogatories "aimed at illuminating" the "contours of the precise policy at issue"). That is precisely what Plaintiffs did: they served interrogatories tailored to each challenged provision of the Executive Order and directed those interrogatories to the particular agencies the President made responsible for implementing those provisions. *See* MTC at 5–7. Plaintiffs also served two "global" interrogatories meant to capture any additional implementation efforts that did not fall neatly into a more tailored request, but made clear Defendants could answer them by simply cross-referencing other answers. *Id.* at 5. At bottom, every request simply asked the Government "what actions have been taken," or are planned to be taken, to "implement a particular section of the executive order." 6/18/25 Tr. 11:1–4. Defendants do not meaningfully disagree.

Thus, the interrogatories relate to "ripeness and justiciability" and align with this Court's scheduling order, contrary to Defendants' contentions. Opp. at 8–9. Even if Defendants sincerely believed that *some* interrogatories strayed beyond ripeness and justiciability, they do not seriously dispute that the vast majority call for just such information. *See* MTC Ex. A. And even where Defendants may object to some portions of individual interrogatories, they still had a clear duty to answer each interrogatory "to the extent . . . not objected to," Fed. R. Civ. P. 33(b)(3). Defendants fail to explain why they did not do so.

2

Ripeness and justiciability turn on whether "the policy in question has sufficiently 'crystallized' by taking on a more definite form." *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 364 (D.C. Cir. 2005). That question is difficult to parse where, as here, "only the Defendants know the 'contours' of those actions." *All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025) (quoting *Venetian Casino Resort*, 409 F.3d at 367). Indeed, this Court's preliminary injunction order turned substantially on the public release of information showing that a Defendant's policy had already "crystallized" into concrete action, despite the Government's protestations to the contrary. *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2025 WL 1187730, at *30 & n.29 (D.D.C. Apr. 24, 2025) (explaining that "contrary to Defendants' representations to the Court" the EAC had "in fact, already begun to implement Section 2(a)"). In keeping with this Court's order, Plaintiffs served interrogatories seeking similar information about whether Defendants' efforts to implement other provisions of the Executive Order had yet crystallized into concrete action. Once more, public reports have already indicated that they have, *see* MTC at 6, 9–11, yet Defendants continue to stonewall the discovery process.

Defendants point to two supposedly "obvious examples" of where Plaintiffs sought information beyond ripeness and justiciability, *see* Opp. at 8–9, but the interrogatories at issue in fact sought information relevant to questions soon to be before this Court. The first asks each agency to "summarize" "non-privileged communications" concerning "actions or efforts" to implement the Executive Order, while the second seeks a description of "all actions or efforts" the agencies have "made, or will make" to "implement the Executive Order." MTC at 5 (quoting MTC Ex. A). Defendants make no attempt to explain how either request is deficient. And even if they had, those requests, on their face, seek information concerning the "contours of the precise policy

at issue," ECF No. 141 at 2, and whether Defendants' policies have "crystallized" into concrete action, *Venetian Casino Resort*, 409 F.3d at 364. If Defendants believed the interrogatories swept too broadly, the Federal Rules set out the appropriate response: answer to the extent they believed acceptable and object to the rest. In any event, Plaintiffs have removed these two interrogatories in their Revised Interrogatories, *see infra* § I.C, and Defendants have not lodged a single specific objection to *any* of Plaintiffs' other original interrogatories.

Defendants' remaining arguments about the scheduling order are both limited and wrong. Plaintiffs served a reasonable number of interrogatories to effectuate the discovery ordered by this Court. Democratic Party Plaintiffs' suit involves eleven legal claims challenging ten discrete provisions of the Executive Order that are being implemented by at least ten different federal agencies. *See generally* Case No. 1:25-cv-00952, ECF No. 1. Accordingly, the Democratic Party Plaintiffs served 19 interrogatories, several of which were served on multiple agencies when such agencies are jointly responsible for implementing a particular provision. *See*, *e.g.*, MTC Ex. A at 15–16. Plaintiffs served these requests on a per agency basis as a courtesy to Defendants, so that there would be no ambiguity as to which agency defendant was expected to answer which interrogatory.

Defendants also complain that Plaintiffs improperly sought discovery on Section 2(a), even though it is already enjoined and now subject to summary judgment briefing. *See* Opp. at 8. But none of Plaintiffs' provision-specific interrogatories sought information pertaining to Section 2(a).[2] And to the extent Defendants have belatedly raised concerns over the "deliberative process

---

[2] Plaintiffs originally defined the Executive Order to include Section 2(a) in their interrogatories to maintain consistency with their complaints. To the extent Defendants believed certain

privilege," Opp. at 9, they ignore that Plaintiffs asked only for "non-privileged communications." MTC Ex. A at 6. In any event, Defendants do not claim that they are unable to answer *any* part of the interrogatories without implicating issues of privilege, and so the Federal Rules still require them to respond to each interrogatory "to the extent it is not objected to." Fed. R. Civ. P. 33(b)(3). They did not.[3]

At bottom, Defendants' conduct reflects a continued belief that they have no obligation to provide *any* discovery in this matter. But that is wrong. This Court has already ordered certain discovery, *see* ECF No. 141 at 2, in part to ensure that there is an "adequate record" of "exactly what actions Defendants" are taking to implement the Executive Order, *Bessent*, 2025 WL 1114350, at *3. Creating such a record is critical where, as here, Defendants are likely taking specific actions" beyond "public view." *Id.*; *see also* MTC at 6, 9–11. This Court should reject Defendants' misreading of the scheduling order and reaffirm that Plaintiffs are entitled to seek discovery about whether and how Defendants are implementing the challenged provisions.

**B.    Plaintiffs' original interrogatories complied with Rules 33 and 26.**

Plaintiffs' original interrogatories also comply with the Federal Rules. *See* MTC at 13–23. Defendants passingly allege the interrogatories violate the proportionality requirements of Rule 26, but they root this objection exclusively in their belief that the interrogatories "are not tailored in accordance with the Scheduling Order." Opp. at 10. As just explained, that belief is mistaken.

---

interrogatories called for information about implementing Section 2(a), their proper course was to lodge an objection. *See generally* Fed. R. Civ. P. 33(b). In any event, Plaintiffs' Revised Interrogatories have removed any reference to Section 2(a) from the definition of "Executive Order." *See* Ex. B at 4.

[3] Even though Defendants never raised this privilege during the conferral process, Plaintiffs have revised their interrogatories to further address this concern. *See infra* § I.C.

Beyond that flawed allegation, Defendants cannot explain how any interrogatory served to date does not seek discovery "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). They have therefore failed to state a valid objection, as the Federal Rules require proportionality objections to be lodged as to "particular discovery request[s]." *DL v. D.C.*, 251 F.R.D. 38, 43 (D.D.C. 2008); *see also Jefferson v. Austin*, 345 F.R.D. 249, 252 (D.D.C. 2024) ("To satisfy the burden of showing that a discovery request is not proportional, the refusing party must make a specific, detailed showing." (cleaned up)); *Clark Floyd Landfill, LLC v. Cnty. of Clark, Indiana*, No. 418CV00004RLYDML, 2019 WL 7598843, at *3 (S.D. Ind. Sept. 26, 2019) (explaining a proportionality objection "cannot be resolved on a general basis" and "must be raised in the context of a specific discovery request"); *Small v. WellDyne, Inc.*, No. 5:16-CV-00062-BO, 2017 WL 2484181, at *1 (E.D.N.C. June 8, 2017) ("A party raising a proportionality objection must include specific details in its objection that explain why the request is improper."); MTC at 19–20 (collecting additional authority). The Federal Rules forbid Defendants' reliance on boilerplate proportionality objections. *E.g.*, *In re Benicar (Olmesartan) Prods. Liab. Litig.*, 319 F.R.D. 139, 142 (D.N.J. 2017) (disregarding generalized proportionality objections); *James v. Cuyahoga Cnty.*, 648 F. Supp. 3d 897, 904 (N.D. Ohio 2022) (finding proportionality objections waived where not made on "specific grounds").

Defendants' Rule 33 arguments fare no better. They contend chiefly that the Democratic Party Plaintiffs should be treated collectively as a single party for purposes of counting interrogatories. *See* Opp. at 11. But that argument is a straw man: the Democratic Party Plaintiffs have never claimed that each individual Plaintiff is entitled to its own set of interrogatories. To the contrary, the Democratic Party Plaintiffs have consistently argued that it is the multiplicity of *defendants*—and their discrete responsibilities under the President's far-ranging Executive

Order—that required serving 19 distinct interrogatories to each of the 10 agency defendants, which is well within the limit of 25 interrogatories "per party." *See* MTC at 17–19; MTC Ex. B at 4–5.[4] Consistent with that view, the Democratic Party Plaintiffs served a discrete and targeted set of interrogatories that—even under Defendants' own flawed counting—amounted to fewer than two interrogatories per named Defendant. *See generally* MTC Ex. A. By its plain text, Rule 33 permits many times that number—a fact Defendants do not dispute. *See* Fed. R. Civ. P. 33(a)(1) (permitting up to 25 interrogatories on a "party"); *see also* MTC at 17. Indeed, nowhere do Defendants explain how Rule 33 imposes a strict 25 interrogatory per side limit in a case with approximately two dozen named defendants; nor do they cite any case to that effect. And their baseless allusion to the prospect of Plaintiffs serving over five thousand interrogatories, *see* Opp. at 11, simply highlights the proportionality and reasonableness of the Democratic Party Plaintiffs' actual discovery requests. Defendants have therefore failed to show that Plaintiffs' original requests do not comply with the Federal Rules.

### C.    In any event, Plaintiffs' Revised Interrogatories satisfy this Court's scheduling order and the applicable Federal Rules.

For the reasons above, Plaintiffs believe their original interrogatories comply with this Court's scheduling order and the Federal Rules. Nevertheless, as instructed by this Court, Plaintiffs have prepared a further narrowed, single set of 15 interrogatories. *See* Minute Order (July 25, 2025) ("Plaintiffs shall file a proposed set of no more than 25 total Interrogatories that are narrowly

---

[4] Even before this discovery dispute, Democratic Party Plaintiffs highlighted at the June 18 scheduling conference that "there are a large number of agency defendants in this case" meaning there would likely need to be "very similar interrogatories to different agencies." 6/18/25 Tr. at 17:4–7.

tailored to determining the existence *vel non* of final agency actions and the contours of those actions."); Ex. B. The Revised Interrogatories:

- omit interrogatories and definitions to the extent they request information about the implementation of Sections 2(a) and 2(d), both of which this Court has already enjoined Defendants from enforcing;

- omit the two Global Interrogatories served to capture information about implementation efforts not directly responsive to the more tailored interrogatories;

- remove language requesting information on actions Defendants have "considered" in response to the challenged provisions of the Executive Order;

- remove a clause requesting information on "draft" updates to the Federal Post Card Application from an interrogatory directed at Defendant DOD;

- add a definition of "challenged provisions" to further clarify that the interrogatories seek information only about the provisions at issue in this action; and

- add a clause to definition of "you" and "your" to further clarify that the interrogatories are directed only at Defendant(s) acting to effectuate the relevant challenged provision.

These changes obviate each of Defendants' generalized objections. Starting with numerosity, the Revised Interrogatories consist of a consolidated set of 15 total requests—unambiguously falling within the amount permitted by the Federal Rules, as well as the number specified in this Court's July 25 Order. To the extent Defendants intend to reformulate a numerosity objection by suggesting that multiple agencies will need to provide information in response to some of the interrogatories, this Court should reject any such effort. Defendants should not be permitted to simultaneously insist that they should be treated as "one party," Opp. at 11 (quotation omitted), yet entitled to a single specific interrogatory for each Defendant, even where the interrogatory requests the same information. Indeed, Defendants have already rejected Plaintiffs' effort to facilitate efficient responses using agency-specific sets of interrogatories.

As for proportionality, the changes reflected in Plaintiffs' Revised Interrogatories seek to address the vague concerns that Defendants have expressed. *First*, the Revised Interrogatories

remove requests to the extent the original requests sought information regarding implementation of Section 2(a) and 2(d), *see* Opp. at 8 (complaining that the definition of "Executive Order" encompassed EO § 2(a)).[5]    *Second*, the Revised Interrogatories omit the two Global Interrogatories, even though those requests asked in essence for nothing more than information about "what actions have been taken to implement a particular section of the executive order." 6/18/24 Tr. 11:2–4. Indeed, Plaintiffs repeatedly made clear during the conferral process that Defendants were free to cross-reference other answers in their responses, and that these interrogatories simply served as a catchall in the event that more tailored interrogatories failed to target active implementation efforts. Even so, the Revised Interrogatories omit these requests to aid in resolving Defendants' numerosity complaint.

*Finally*, in response to Defendants' allegation that the original requests pursue "information protected by the deliberative process privilege," Opp. at 9—a complaint they never raised in the conferral process—the Revised Interrogatories remove requests for information about actions that have been "considered" by Defendants, along with a request to DOD seeking information about draft changes to the Federal Post Card Application. *See generally* Ex. B. To the extent Defendants continue to object to requests seeking information about "planned" actions, Opp. at 6–7, the objection is a non-starter. Where Defendants have "planned" an agency action, and need only to act upon it, the "decisionmaking process" has been "consummat[ed]." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). That is especially true where, as here, there is no statutorily prescribed "administrative process" that will "terminate in a reviewable final order" at a later time

---

[5] To be clear, Plaintiffs have expressly reserved their right to press their APA claims against Section 2(a), should that provision survive the pending motion for summary judgment. *See* ECF No. 146-1 at 16 n.3. Thus, if necessary, Plaintiffs will seek appropriate discovery or an administrative record from Defendant EAC so that this challenge can be resolved.

certain. *OCONUS DOD Emp. Rotation Action Grp. v. Cohen*, 144 F. Supp. 2d 1, 6 (D.D.C. 2000) (citing *Env't Def. Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 592 (D.C. Cir. 1971)). Defendants must be ordered to give prompt, complete responses.

## II.    Defendants are not entitled to a protective order and have waived their objections.

### A.    Defendants make no attempt to satisfy their burden for a protective order and their request comes too late.

Defendants have fallen far short of meeting their "burden of making the showing of good cause" necessary for a protective order. *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). "The moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Id.* (quoting *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles,* 179 F.R.D. 41, 48 (D. Mass. 1998)). The moving party cannot rely on "conclusory or speculative statements about the need for a protective order"—it "must make a specific demonstration of facts in support of the request." *Id.*; *see also Fonville v. D.C.*, 230 F.R.D. 38, 40 (D.D.C. 2005).

Defendants cannot meet their heavy burden. Their response lacks any "specific demonstration of facts" justifying a protective order, relying solely on generalized objections that fail to engage with any specific discovery request. Nor do they explain—let alone demonstrate— how any of Plaintiffs' relevant and targeted interrogatory requests risks imposing unwarranted "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c), which dooms their request, *see Hartford Fire Ins. Co. v. The Socialist People's Libyan Arab Jamahiriya*, Civ. No. 98-3096 (TFH), 2007 WL 1876392, at *14 (D.D.C. June 28, 2007) (denying motion for protective order where movant "has not asserted" it will face any of these harms). Defendants have "utterly failed to meet [their] burden of making 'a specific demonstration of facts' to justify a protective order." *Fonville*, 230 F.R.D. at 43 (quoting *Alexander*, 186 F.R.D. at 75).

Even if Defendants had attempted to set forth such facts, their request for a protective order comes too late. "A motion for a protective order must be made before or on the date the discovery is due." 10A Fed. Proc., L. Ed. § 26:289; *see also Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991) ("A motion for a protective order is timely if made prior to the date set for producing the discovery." (collecting authority)). Here, Defendants first requested a protective order two weeks *after* their discovery responses were due. They attempt to excuse this failure by noting that they "offered to initiate briefing" by seeking a protective order. Opp. at 12. But Defendants only made that suggestion on the afternoon of July 11—the same day they were supposed to respond to Plaintiffs' interrogatories. *See* MTC Ex. B at 1. They do not (and cannot) claim they actually sought a protective order from this Court by that date. More importantly, prior to that final conferral, Defendants delayed raising even their generalized objections, while refusing to make any specific objections at all, even where they could have aided the conferral process. *See generally* MTC Ex. B. Their own brief candidly acknowledges that "failure to engage in discovery [is] reasonably justified" only once a motion for a protective order is "lodge[d]." Opp. at 12 (quoting *Martinez v. D.C.*, No. 04-CV-01151(CKK)(AK), 2005 WL 8165857, at *1 (D.D.C. Aug. 16, 2005)). Here, that request came two weeks *after* their deadline to respond—no request for a protective order was lodged at the time Defendants were obligated to respond. Such dilatory efforts, combined with Defendants' failure to meaningfully engage in the conferral process, weighs strongly against awarding Defendants relief. *Cf. Brittain*, 136 F.R.D. at 415.

**B.    This Court should order Defendants to promptly respond to Plaintiffs' interrogatories and find that they waived their specific objections.**

Ultimately, this Court should grant Plaintiffs' motion to compel and find that Defendants have waived any specific objection that they could have lodged on July 11. Defendants unambiguously had a duty to respond to Plaintiffs' interrogatories by that date. Fed. R. Civ. P.

33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."). Their response does not cite a single case or authority relieving them of this obligation. Defendants' generalized objections and belated request for a protective order do not change matters. Under the Federal Rules, a party's failure to serve timely answers to interrogatories is "not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a *pending* motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2) (emphasis added). Defendants did not respond to Plaintiffs' requests as required by Rule 33, nor did they file a timely motion for a protective order. They simply missed this Court's deadline and, in doing so, violated both the Federal Rules and this Court's admonition to provide "very prompt responses." 6/18/25 Tr. 22:13–15.

The consequences should be twofold. *First*, this Court should order Defendants to promptly respond to Plaintiffs' interrogatories. *See, e.g.*, *In re Subpoena Served on Clark Realty Cap., L.L.C.*, No. 23-MC-00049(RC), 2023 WL 8005096, at *4 (D.D.C. Nov. 17, 2023) (ordering party to respond to discovery after rejecting its objections and denying its request for a protective order). As this Court repeatedly noted at the scheduling conference, Defendants must provide complete responses before further merits briefing can proceed. *See* 6/18/25 Tr. 22:6–8 (explaining "it would be helpful to get as quick a response as possible so that all of the briefing can move"); *see also id.* at 13:2–3, 22:10–15 (similar). Defendants' stonewalling has created a significant bottleneck that risks delaying the case.

Accordingly, this Court should order Defendants to respond to Plaintiffs' interrogatories by no later than August 8, 2025—one week before Defendants' opening Phase II motion for summary judgment is due. *See* ECF No. 141 at 3. That weeklong period will permit Plaintiffs to at least raise initial concerns over Defendants' responses with this Court before dispositive motion

practice commences.[6] Defendants' contrary proposal—a 16-day extension of their time to respond (Opp. at 8, 12)—would likely require this Court to significantly amend the Phase II briefing schedule and would reward Defendants for their dilatory tactics, effectively tripling their original time to respond from 14 days to roughly 6 weeks. This Court made clear well over a month ago that Defendants must disclose "what actions have been taken to implement" the challenged "section[s] of the executive order" 6/18/25 Tr. 11:2–4, and Defendants should now be prepared to promptly answer such questions.

*Second*, this Court should find that Defendants have waived any specific objections that could have been raised in a timely manner. The Federal Rules are clear: "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); *see also* MTC at 23–26 (explaining why this Court should find waiver). Defendants nowhere justify their refusal to object in a timely, specific manner. And their dilatory tactics, superficial efforts at conferral, and categorical refusal to serve specific objections or responses in compliance with this Court's scheduling order warrant such a finding of waiver. *See e.g.*, *Nasreen v. Capitol Petroleum Grp., LLC*, 340 F.R.D. 489, 498 (D.D.C. 2022) (finding waiver appropriate based on similar considerations); *Caudle v. D.C.*, 263 F.R.D. 29, 33 (D.D.C. 2009) (similar). Defendants should not be given the opportunity to engage in further resistance to discovery through objections that could have—and should have—been raised weeks ago.

---

[6] It remains Plaintiffs' goal to preserve the existing briefing schedule to the greatest extent possible. In the event Defendants serve incomplete or improper interrogatory responses, however, Plaintiffs reserve the right to seek further relief from this Court and to request appropriate amendment of the briefing schedule.

Defendants offer four unavailing theories of "good cause" to excuse their violation of Rule 33. *First*, they suggest the parties jointly agreed to proceed via a motion to compel by Plaintiffs instead of a motion for a protective order from Defendants. *See* Opp. at 12–13. But, as explained, Defendants do not claim they ever intended to file a motion for a protective order on July 11, and no motion was filed. A half-hearted request for a protective order in Defendants' response brief should not *ipso facto* immunize them from Rule 33, under which waiver is the consequence of failing to respond, absent extenuating good cause.[7]

*Second*, Defendants contend that case law does not support finding waiver where a party at least raises generalized objections. *See* Opp. at 13–14. That is wrong. *See, e.g.*, *DL*, 251 F.R.D. at 47 (finding waiver where party raised "general objection" that plaintiffs' requests were "vague" without "clarif[ying] or indicat[ing] the aspects of the requests at issue which it was unable to comprehend"); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 191 (D.D.C. 1998) (similarly finding a party "waived its right to object" where it only raised "general objections" and stressing that the "Federal Rules speak directly to the necessity to state objections with specificity with regard to responses to interrogatories"). Indeed, as Judge Bates recently concluded, the plain text of Rule 33 dispels this argument: "'Any ground not stated in a timely objection'—*with the requisite level of specificity*—'is waived unless the court, for good cause, excuses the failure.'" *Inova Health Care Servs. for Inova Fairfax Hosp. & Its Dep't, Life with Cancer v. Omni Shoreham Corp.*, No. 20-CV-784 (JDB), 2021 WL 6503725, at *3 (D.D.C. Jan. 29, 2021) (quoting Fed. R. Civ. P. 33(b)(4)) (emphasis added). Rule 33 does not make waiver a consequence solely where a

---

[7] Indeed, accepting Defendants' argument would essentially erase the second sentence of Rule 33(b)(4) by permitting a refusing party to avoid waiver simply by including an untimely protective order request in a response brief.

party fails to respond altogether; it does so whenever they respond without "the requisite level of specificity." *Id.*

*Third*, Defendants briefly contend that the relevant factors weigh against a finding of waiver. *See* Opp. at 14 (citing *Nasreen*, 340 F.R.D. at 497–98). But good cause exists only in circumstances where a refusing party makes "good faith attempts at complying," or "non-flagrant discovery violations." *Nasreen*, 340 F.R.D. at 497. Here, Defendants failed to comply with Rule 33 even as Plaintiffs *repeatedly* pointed them to the Rule's specificity requirement. MTC Ex. B at 3–5; *see also* MTC at 24–25 (explaining why factors weigh in favor of finding waiver here). Defendants cannot claim good cause exists where they waited until two days before their deadline to raise boilerplate objections and then refused to confer on, or respond to, specific interrogatories.

*Fourth*, Defendants insist that their numerosity objection relieved them of providing any specific responses and objections. *See* Opp. at 15. Democratic Party Plaintiffs' opening brief explained that even when a numerosity objection is made, the responding party must answer what they understand to be the first 25 interrogatories. *See* MTC at 18–19. Defendants' only response is to claim they had no idea which interrogatories to respond to—a supposed obstacle they never mentioned before motion practice. *See* Opp. at 15. They could have sought clarification during the conferral process while still indicating that they intended to stand on their numerosity objection.[8] Instead, without citing any rule or authority, Defendants did not respond to any interrogatories. Such conduct fails to establish the "good cause" that would excuse compliance with Rule 33.

---

[8] Defendants could have simply answered the first 25 interrogatories based on the order they were attached in the service email, while objecting to the remainder on numerosity grounds and other specific objections. What matters for present purposes, however, is that they did not respond to any interrogatories.

## CONCLUSION

The Court should grant Plaintiffs' motion to compel and order Defendants to, by August 8, 2025, provide responses to the Democratic Party Plaintiffs' interrogatories. The Court should further find that Defendants have waived any specific objections they could have raised to Plaintiffs' interrogatories on July 11.

Dated: August 1, 2025                                    Respectfully submitted,

                                                        */s/ Aria C. Branch*
                                                        **ELIAS LAW GROUP LLP**
                                                        Marc E. Elias (DC 442007)
                                                        Aria C. Branch (DC 1014541)
                                                        Lalitha D. Madduri (DC 1659412)
                                                        Christopher D. Dodge (DC 90011587)
                                                        Jacob D. Shelly (DC 90010127)
                                                        James J. Pinchak (DC 90034756)*
                                                        250 Massachusetts Ave. NW, Suite 400
                                                        Washington, DC 20001
                                                        T: (202) 968-4652

                                                        Tyler L. Bishop (DC 90014111)
                                                        1700 Seventh Ave. Suite 2100
                                                        Seattle, WA 98101
                                                        T: (206) 656-0177

                                                        *Counsel for the Democratic Party Plaintiffs*

                                                        *Admitted pro hac vice*

16