# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>          Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>          Defendants,<br><br>*and*<br><br>REPUBLICAN NATIONAL COMMITTEE,<br><br>          Intervenor-Defendant. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>          Defendants. | Civil Action No. 25-0955 (CKK) |

**THE REPUBLICAN NATIONAL COMMITTEE'S
RESPONSE TO THE DEMOCRATIC PARTY PLAINTIFFS'
STATEMENT OF MATERIAL FACTS**

1

In accordance with Local Civil Rule 7(h), Intervenor-Defendant the Republican National Committee responds to Democratic Party Plaintiffs' Statement of Material Facts (Doc. 146-2) and submits this statement of genuine issues that preclude partial summary judgment in favor of Plaintiffs on their proof-of-citizenship claims. When the RNC responds to a statement made by Plaintiffs as "undisputed," it does not mean that the RNC is admitting the truth of the matter asserted. Rather, the RNC is acknowledging only that it does not currently dispute the statement for purposes of resolving Plaintiffs' summary judgment motion, as it is not a material fact that must be resolved before the Court rules on the motions. The RNC reserves the right to dispute any statement made by Plaintiffs at a later stage of this case. The RNC responds to each numbered paragraph of the Democratic Party Plaintiffs' Statement of Material Facts as follows:

1. On March 25, 2025, President Trump issued Executive Order No. 14248, Preserving and Protecting the Integrity of American Elections ("E.O." or "Executive Order").

    **RESPONSE: Undisputed.**

2. The full text of the Executive Order is published in the Federal Register, 90 Fed. Reg. 14005, and is also available on the public website of the White House, https://www.whitehouse.gov/presidential-actions/2025/03/preserving-and-protecting-the-integrity-of-american-elections/.

    **RESPONSE: Undisputed.**

3. The Executive Order directs various federal agencies and agency officials to take actions related to elections in the United States. *See generally* E.O.

    **RESPONSE: Undisputed.**

4. Section 2(a) of the Executive Order directs the U.S. Election Assistance Commission ("EAC") to prescribe a new National Mail Voter Registration Form ("Federal Form").

**RESPONSE: Disputed.** The Executive Order doesn't direct the Commission "to prescribe a new National Mail Voter Registration Form." It directs the Commission to "take appropriate action to require" documentary proof of citizenship "in its national mail voter registration form." Exec. Order No. 14248, §2(a), 2025 WL 929182, at *14005.

5. Section 2(a) states:

> (i) Within 30 days of the date of this order, the Election Assistance Commission shall take appropriate action to require, in its national mail voter registration form issued under 52 U.S.C. [§] 20508:
>
>> (A) documentary proof of United States citizenship, consistent with 52 U.S.C. [§] 20508(b)(3); and
>>
>> (B) a State or local official to record on the form the type of document that the applicant presented as documentary proof of United States citizenship, including the date of the document's issuance, the date of the document's expiration (if any), the office that issued the document, and any unique identification number associated with the document as required by the criteria in 52 U.S.C. [§] 21083(a)(5)(A), while taking appropriate measures to ensure information security.
>
> (ii) For purposes of subsection (a) of this section, "documentary proof of United States citizenship" shall include a copy of:
>
>> (A) a United States passport;
>>
>> (B) an identification document compliant with the requirements of the REAL ID Act of 2005 (Pub. L. [No.] 109-13, Div. B) that indicates the applicant is a citizen of the United States;
>>
>> (C) an official military identification card that indicates the applicant is a citizen of the United States; or
>>
>> (D) a valid Federal or State government-issued photo identification if such identification indicates that the applicant is a United States citizen or if such identification is otherwise accompanied by proof of United States citizenship.

3

**RESPONSE: Undisputed.**

6.     The Executive Order does not allow any of the following documents to be used to prove U.S. citizenship: birth certificates, adoption certificates, Consular Reports of Birth Abroad issued by the Secretary of State, naturalization documents issued by the U.S. Department of Homeland Security ("DHS"), or American Indian Cards issued by DHS. *See* E.O. § 2(a).

**RESPONSE: Disputed.** Section 2(a) states that the Commission's action establishing documentary proof of citizenship "shall include" certain documents, but it does limit the documents to be used to prove U.S. citizenship to that list. "[C]ourts have interpreted" the phrase "'shall include'—to be 'not exhaustive.'" *Ardelyx, Inc. v. Becerra*, 2024 WL 5186613, 5 n.1 (D.D.C. Dec. 20, 2024) (quoting *Cyrus v. Univ. of Toledo*, 2022 WL 985819, at *8 (6th Cir. 2022)). Until the Commission issues a final rule, the list of documents appropriate to prove citizenship remains indeterminate.

7.     Most REAL identifications do not indicate that the REAL identification holder is a U.S. citizen. *See* Pub. L. No. 109-13, § 202(c)(2)(B) (codified at 49 U.S.C. § 30301 (statutory notes)); Declaration of Aria C. Branch (July 11, 2025), Ex. 7; *see also id.* Exs. 8, 9, 10, 11, 12, 13, 25.

**RESPONSE: Undisputed.**

8.     Only five States, specifically Michigan, Minnesota, New York, Vermont, and Washington, offer "enhanced" identifications that indicate citizenship, which cost more money to obtain in those states than non-enhanced identifications. Exs. 8, 9, 10, 11, 12, 13, 25.

**RESPONSE: Undisputed.**

9. Many forms of military identification materials do not affirmatively indicate a person's U.S. citizenship. *See* Exs. 14, 15.

**RESPONSE: Undisputed.**

10. The existing Federal Form requires voters to attest that they are U.S. citizens on pain of perjury, fraud, and federal prosecution. Ex. 16 at 4 ("Federal Form") (requiring voters to "swear/affirm that: I am a United States citizen" and instructing voters "do not complete form" if "you are [not] a citizen of the United States").

**RESPONSE: Undisputed.**

11. The Executive Order states that "States fail adequately to vet voters' citizenship." E.O. § 1.

**RESPONSE: Undisputed.**

12. The Executive Order does not identify evidence or examples of noncitizen voting. E.O. § 1.

**RESPONSE: Undisputed.**

13. Congress is currently considering legislation that would require documentary proof of citizenship to register to vote, but it has never adopted such a requirement. *See* Safeguard American Voter Eligibility Act ("SAVE Act"), H.R. 22, 119th Cong. (2025).

**RESPONSE: Undisputed.**

14. The list of acceptable documentary proof of citizenship in the E.O. is narrower than the list under consideration by Congress in the SAVE Act. *Compare* SAVE Act § 2(b) *with* E.O. § 2(a)(i).

**RESPONSE: Disputed.** The full list of acceptable documents to prove citizenship has not yet been established because the Executive Order directs the Commission to take "appropriate

5

action" to require proof of citizenship. Exec. Order No. 14248, §2(a), 2025 WL 929182, at *14005. The Commission has not promulgated a final rule implementing Section 2(a) and establishing a full list of acceptable documents to prove citizenship.

15.   Prior to the Executive Order, President Trump issued a separate executive order providing that not all people born in the United States are U.S. citizens. E.O. No. 14160, *Protecting the Meaning and Value of American Citizenship* (Jan. 20, 2025).

**RESPONSE: Undisputed.**

16.   Each of the Democratic Party Organizations shares a core mission of, among other things, electing Democratic candidates to elected office. Ex. 3 ("Schneider Decl.") ¶ 3 ("The DNC is the Democratic Party's national committee and is dedicated to electing Democratic candidates at the national, state, and local levels."); Ex. 4 ("Edelman Decl.") ¶ 3 ("DGA is a political organization dedicated to supporting Democratic Governors and electing Democratic gubernatorial candidates across the United States."); Ex. 5 ("Boss Decl.") ¶ 3 ("DSCC . . . is the Democratic Party's national senatorial committee. Its mission is to elect candidates of the Democratic Party across the country to the U.S. Senate."); Ex. 6 ("Ruselowski Decl.") ¶ 4 ("DCCC . . . is the Democratic Party's national congressional committee. Its mission is to elect candidates of the Democratic Party from across the country to the U.S. House of Representatives."); *see also* Ex. 1 ("Jeffries Decl.") ¶ 4 ("I . . . work closely with DCCC to help develop strategies and marshal resources to elect Democratic House candidates," and "[t]his responsibility is critical to the success of the Caucus and to the mission of the Democratic Party as a whole."); Ex. 2 ("Schumer Decl.") ¶ 3 ("I work closely with DSCC throughout the entire election cycle to recruit new candidates, craft messaging, prioritize party investments and develop strategies to elect Democratic Senate candidates," and "[t]his responsibility is critical to the success of the Caucus and to the mission of the Democratic

6

Party as [a] whole, given that the Caucus's ability to influence the legislative agenda in the U.S. Senate depends on the size of its membership.").

**RESPONSE: Undisputed.**

17. To effectively pursue their mission of electing Democratic candidates at the federal, state, and local levels, the Party Organizations must encourage and assist Democratic Party members and constituents in registering to vote, casting ballots, and ensuring those ballots count. Schneider Decl. ¶ 3 ("In support of our mission, the DNC seeks to register new voters as Democratic Party members and supporters; to preserve the lawful registration status of Democratic Party members and other Democratic Party supporters; [and] to encourage and assist Democratic Party members and supporters in casting ballots and having those ballots count."); Edelman Decl. ¶ 4 ("DGA provides funding used to educate and assist Democratic voters on how to vote and ensure that those votes are counted."); Boss Decl. ¶ 3 (similar for DSSC); Ruselowski Decl. ¶ 4 (similar for DCCC).

**RESPONSE: Undisputed.**

18. The Party Organizations invest significant resources in funding and operating voter registration programs, directly and indirectly, as part of their core activities in every federal election cycle, including special and state elections in 2025, as well as the upcoming mid-term election cycle in 2026. Schneider Decl. ¶¶ 3, 6 (explaining that the DNC "seeks to register new voters as Democratic Party members and supporters" and "is actively planning, preparing, budgeting, and strategizing for upcoming gubernatorial elections in New Jersey and Virginia, along with the 2026 midterm elections"); Edelman Decl. ¶¶ 4, 6 (declaring that DGA funds "voter registration and turnout programs" and "is actively planning, preparing, budgeting, and strategizing for imminent

7

gubernatorial elections in New Jersey and Virginia in 2025," in addition to over 30 more races in 2026); Boss Decl. ¶¶ 3, 5 (similar for DSCC); Ruselowski Decl. ¶¶ 4, 6 (similar for DCCC).

**RESPONSE: Undisputed.**

19. The voter registration programs that the Party Organizations have invested in aim to ensure their members and other eligible supporters are registered to vote and able to maintain their registration status. Edelman Decl. ¶ 4 (describing "voter registration" programs funded by DGA as well as "programs aimed at protecting the registration statuses of Democratic Party voters"); Schneider Decl. ¶ 3 (explaining that the DNC "seeks to register new voters as Democratic Party members and supporters" and also "preserve the lawful registration status of Democratic Party members and other Democratic Party supporters"); Boss Decl. ¶ 3 (similar for DSCC); Ruselowski Decl. ¶ 4 (similar for DCCC).

**RESPONSE: Undisputed.**

20. The Democratic Party Plaintiffs collectively represent members who are voters throughout the entire United States. Ruselowski Decl. ¶ 4 ("DCCC's members and constituents are grassroots Democratic voters in all 50 states."); Schneider Decl. ¶ 4 (describing the DNC and Democratic Party's membership); Edelman Decl. ¶¶ 3 & n.1 (listing DGA's formal membership); Boss Decl. ¶¶ 3, 16 (describing DSCC's activities in support of Democratic party members and supporters, including its "nationwide voter registration program").

**RESPONSE: Undisputed.**

21. Accordingly, Democratic Party Plaintiffs carry out their core activities across the country and in every State. Schneider Decl. ¶¶ 4, 6 (describing how the DNC "provides support and resources to thousands of candidates at the local, state, and federal level in every state across the country"); Boss Decl. ¶ 16.

**RESPONSE: Undisputed.**

22. The DNC's members include registered Democratic voters in every State who guide the organization's activities and shape the DNC's strategy by electing Democratic leaders as candidates for public offices. *See* Schneider Decl. ¶¶ 3–4.

**RESPONSE: Undisputed.**

23. Many of these voters and candidates become organizational leaders within the Party Organizations. *See id*. ¶ 4 (explaining that the DNC "has approximately 450 formal members who are party officials, including State Party leaders, elected officials, and Democratic voters" and that it "considers any registered Democrat to be a member of the DNC and the Democratic Party, because Democratic voters influence and ultimately determine the DNC's strategic and political direction by electing certain DNC members and Democratic candidates to local, state, and federal offices"); *id*. ¶ 6 (describing how the DNC "provides support and resources to thousands of candidates at the local, state, and federal level in every state across the country").

**RESPONSE: Undisputed.**

24. DSCC and DCCC also have members in every state who guide the organizations' activities and shape their strategy by electing Democratic leaders as candidates for public office. Boss Decl. ¶¶ 3, 16 (describing DSCC's mission "to elect candidates of the Democratic Party across the country to the U.S. Senate" and its "nationwide voter registration program to encourage [its] members and constituents in states across the country to register to vote in the most accessible way"); Ruselowski Decl. ¶ 4 ("[DCCC's] mission is to elect candidates of the Democratic Party from across the country to the U.S. House of Representatives. . . . DCCC's members and constituents are grassroots Democratic voters in all 50 states.").

**RESPONSE: Undisputed.**

9

25. Some of the DGA's members are candidates for elected office. Edelman Decl. ¶ 6 ("Many of DGA's members will be or are likely to be candidates in 2026.").

**RESPONSE: Undisputed.**

26. Democratic leaders Hakeem Jeffries and Chuck Schumer are active candidates for federal elected office. Jeffries Decl. ¶ 3 (explaining that he is "a candidate, up for reelection in 2026"); Schumer Decl. ¶ 2 (stating that he is "a current candidate for U.S. Senate").

**RESPONSE: Undisputed.**

27. Each of the Democratic Party Plaintiffs, including the Party Organizations and Democratic leaders Hakeem Jeffries and Chuck Schumer, have a strong interest in fair and lawful competition for elected office. Schneider Decl. ¶¶ 3, 18–23, 26–28 (describing the DNC's efforts to support lawful competition and the harms the DNC and its members would suffer due to the Executive Order); Edelman Decl. ¶¶ 4, 13–17, 22 (similar for DGA); Boss Decl. ¶¶ 3, 16–21, 25–26 (similar for DSCC); Ruselowski Decl. ¶¶ 4, 18–24, 27–28 (similar for DCCC); Jeffries Decl. ¶¶ 3–4, 18–19 (describing the House Democratic Caucus's mission and the harms the Democratic House Caucus would suffer due to the Executive Order); Schumer Decl. ¶¶ 2–3, 16–19 (similar for Senate Democratic Caucus).

**RESPONSE: Undisputed.**

28. The Democratic Party's minority-status in the House of Representatives is the slimmest seat margin in nearly one hundred years. Ex. 17 ("The GOP majority for the 119th Congress is the smallest since the Great Depression era."); *see also* Ex. 18.

**RESPONSE: Undisputed.**

29. The best option for many of the Party Organizations' members and constituents to register to vote is completing the Federal Form because that form streamlines registration

processes. Schneider Decl. ¶ 18 ("For many of our members and constituents, the most accessible option for registering to vote is the National Mail Voter Registration Form."); Boss Decl. ¶ 16 (similar, explaining that the "form streamlines the voter registration process and does not require voters to gather or submit any additional documentation in order to be successfully registered to vote"); Ruselowski Decl. ¶ 18 (similar).

**RESPONSE: Undisputed.**

30. Members and constituents of the Democratic Party Plaintiffs are among the millions of Americans who lack documents that qualify as proof of citizenship under the Executive Order. Jeffries Decl. ¶ 14 ("Millions of U.S. citizens, including many in my own district, lack a passport or the ability to easily obtain one."); Schumer Decl. ¶ 13 ("[M]illions of U.S. citizens, including among my constituency in New York, lack documentary proof of citizenship."); Schneider Decl. ¶ 19 ("[M]any of the DNC's members and constituents[] lack qualifying proof of citizenship documents, and as a result, will be unable to register to vote using the Federal Form."); Edelman Decl. ¶ 13 (similar for DGA); Boss Decl. ¶ 18 (similar for DSCC); Ruselowski Decl. ¶ 20 (similar for DCCC).

**RESPONSE: Disputed.** It cannot be confirmed how many eligible voters will lack documentary proof of citizenship until the Commission adopts a final rule.

31. Lower-income voters are disproportionately likely to lack the resources or ability to obtain citizenship documents. See Ex. 19 (GAO Report) at 1–2, 13 (reporting that implementation of new requirement for recipients of Medicaid to provide "satisfactory documentation of citizenship" rather than "attest, under penalty of perjury, to their citizenship" resulted in barriers to access for "eligible citizens" and that a "decline in enrollment" was attributable to "losses of coverage for individuals who appeared to be eligible citizens"); Edelman Decl. ¶¶ 13, 10 ("DGA's

11

voters include lower-income voters who do not possess qualifying documents," and "[b]ecause of demographics, Democrats are . . . disproportionately likely to lack qualifying proof of citizenship"); see also Schneider Decl. ¶¶ 19, 28 (similar for DNC); Boss Decl. ¶¶ 18, 26 (similar for DSCC); Ruselowski Decl. ¶¶ 20, 28 (similar for DCCC).

**RESPONSE: Disputed.** It cannot be confirmed how many eligible voters will lack documentary proof of citizenship until the Commission adopts a final rule.

32. Women voters are disproportionately likely to possess an identification document that does not match their present legal name because a greater share of women change their legal name upon marriage. Ex. 20 (Pew Marriage Report) (reporting that "[m]ost women in opposite-sex marriages (79%) say they took their spouse's last name when they got married" and "[a]nother 5% hyphenated both their name and their spouse's name"); Edelman Decl. ¶ 13 ("[W]omen are disproportionately likely to be unable to satisfy the [documentary proof of citizenship] requirement because most women who get married change their last name upon marriage, meaning that their legal name often does not match their citizenship document."); Schneider Decl. ¶ 19 (explaining that because "many [women] have changed their last name upon marriage, such that their legal name does not match their citizenship documents," it will be "more difficult for married women to provide documentary proof of citizenship to register to vote"); Ruselowski Decl. ¶ 20 (similar); see also Boss Decl. ¶ 18 ("This issue is personal to me, as my passport currently lists my maiden name, even though I legally changed my last name when I got married and am registered to vote in my married name. I do not have any of the other documents listed in [the E.O.] to provide as proof of citizenship."); Jeffries Decl. ¶ 14 ("I understand that women have had difficulty proving their citizenship because their married name may not match their name on their citizenship documents."); Schumer Decl. ¶ 13 (similar).

**RESPONSE: Disputed.** It is impossible to know who possesses requisite proof of citizenship until the Commission establishes the full list of documents to prove citizenship through a final rule.

33. Low-income voters are more likely to support Democratic candidates than Republican candidates. Ex. 21 (Pew Party Affiliation by Income Report) ("About six-in-ten voters with lower family incomes (58%) associate with the Democratic Party, compared with 36% who affiliate with the Republican Party.").

**RESPONSE: Partially Disputed.** This statement overgeneralizes the data. Voting behavior is more complex than Plaintiffs' statement suggests. *See, e.g.*, Ex. M, Eva Xiao, Clara Murray, Jonathan Vincent, John Burn-Murdoch and Joel Suss, *Poorer voters flocked to Trump — and other data points from the election*, Financial Times (Nov. 9, 2024), perma.cc/85QN-EL5Z (noting that in the previous presidential election, "Democrats received more support from Americans in the top third of the income bracket than from poorer groups" and "the majority of lower-income households or those earning less than $50,000 a year voted for Trump").

34. Women voters are more likely to support Democratic candidates than Republican candidates. Ex. 22 (Pew Party Affiliation by Gender Report) (reporting that 51% of women align with the Democratic Party compared to 44% who align with the Republican Party); see also Schneider Decl. ¶ 19 ("[W]omen make up a majority part of the DNC's coalition."); Ruselowski Decl. ¶ 20 ("[A] majority of DCCC's constituents are women.").

**RESPONSE: Partially Disputed.** This statement overgeneralizes the data. Voting behavior is more complex than Plaintiffs' statement suggests. *See, e.g.*, Pew Party Affiliation by Gender Report, Doc. 146-3 at 194 (noting that married women align with the Republican Party); Ex. L, *The Historic Gender Gap That Wasn't*, Center for American Women and Politics (Nov. 19, 2024),

13

perma.cc/4T8D-KSK8 (noting that "[a] majority of white women continued to support Trump in all 2024 election surveys, consistent with the majorities of white women that have backed the Republican presidential nominee in every election since 2004").

35. If Section 2(a) is implemented by the EAC, voters will be unable to register to vote for any elections without presenting documentary proof of citizenship in those States that have enacted their own state-level documentary proof of citizenship requirement. Edelman Decl. ¶ 15 (noting that there are "thousands of citizens who are eligible citizens to vote in Arizona, but are not yet registered and now will be unable to register because they lack the required proof of citizenship"); Schneider Decl. ¶ 20 (similar); Ruselowski Decl. ¶ 22 (similar).

**RESPONSE: Undisputed.**

36. As of July 11, 2025, laws that require voters to present documentary proof of citizenship when using a state-prescribed voter registration form are in effect in at least Arizona and Louisiana. *See* Schneider Decl. ¶ 20 ("Arizona has imposed a documentary proof of citizenship requirement to vote in state elections, but until [the E.O.], allowed voters to register with the Federal Form and vote in federal elections without providing proof of citizenship."); Edelman Decl. ¶ 15 (similar); Ruselowski Decl. ¶ 22 (similar); *see also* 2024 La. Sess. Law, Act No. 500 (S.B. 436) (amending state voter registration application law to state "[e]ach applicant shall include with his application proof of United States citizenship").

**RESPONSE: Disputed.** Arizona's law is currently enjoined. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 710 (9th Cir. 2025).

37. Some eligible voters will be dissuaded from or unable to complete the registration process if documentary proof of citizenship is required as a condition of completing the Federal Form. Jeffries Decl. ¶ 14 (eligible voters who lack documentation "may be dissuaded from voting

14

because of the President's Order"); Schumer Decl. ¶ 13 (similar); Edelman Decl. ¶ 13 ("DGA's voters include lower-income voters who do not possess qualifying documents, such as a passport, and lack the money and resources or ability to obtain one"); id. ¶ 14 (the E.O. will thus "make it significantly harder for voters who support Democratic gubernatorial candidates—qualified U.S. citizens—to register and remain registered"); Schneider Decl. ¶ 19 (similar for DNC); Boss Decl. ¶¶ 17–18 (similar for DSCC); Ruselowski Decl. ¶¶ 20–21 (similar for DCCC).

**RESPONSE: Disputed.** This is a conjecture, not a statement of fact. Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

38. The new requirement is likely to cause voter confusion, which further disincentivizes participation in the electoral process. Jeffries Decl. ¶ 8 ("When there is chaos and confusion, voters are disenfranchised. And in my experience, when voters are unfairly disenfranchised, they lose faith in our election system."); *id*. ¶ 18 ("The unfairness, uncertainty, and confusion around the election rules imposed by the Order will make it harder for me to effectively recruit strong candidates to run for office."); Schumer Decl. ¶ 17 (similar); Schneider Decl. ¶ 25 (noting that if E.O. goes into effect, DNC will "have to staff its voter protection hotline much earlier this election cycle" due in part to the risk that voters will be "confused about how to re-register" with the new requirement in place); Edelman Decl. ¶ 15 (explaining DGA's concern that about the E.O. "spur[ring] some to question the registrations of voters who have registered to vote using the prior Federal From, causing confusion and mass chaos among voters").

**RESPONSE: Disputed.** This is a conjecture, not a statement of fact. Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

39. The discouragement of voter participation caused by Section 2(a) financially harms the Party Organizations because they must dedicate additional resources to registration efforts to ensure that their voters can cast ballots that are counted. Boss Decl. ¶ 20 (stating that if Section 2(a) goes into effect, "DSCC will have to work with coordinated campaigns to conduct a nationwide voter education campaign to ensure eligible voters are aware that all new registrants must provide qualifying proof of citizenship" and will "assist them in obtaining such documents if they do not already have them"); Ruselowski Decl. ¶ 24 (similar for DCCC); Schneider Decl. ¶ 21 (stating that if Section 2(a) goes into effect, "the DNC will be forced to divert resources away from other critical priorities to aid voters attempting to comply or complete a different means of registering"); Edelman Decl. ¶ 16 (similar for DGA); see also Jeffries Decl. ¶ 19 (the E.O. "mean[s] that I will have less time to focus on the other critical issues facing our country because I will have to spend more of my time and efforts pushing back against voter suppression efforts connected to the [E]xecutive [O]rder"); Schumer Decl. ¶ 16 ("DSCC and Democratic campaigns (including my own) will have to make monumental investments and changes to their programs all over the country to ensure that our voters are able to cast their ballots and have them counted.").

**RESPONSE: Partially disputed.** The RNC disputes that requiring proof of citizenship is connected with "voter suppression efforts" or will "discourag[e]" voter "participation." Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

40. The Party Organizations are actively in the process of making mission-critical budget decisions for the upcoming election cycles, which will impact their ability to inform voters about candidates and persuade them to vote for Democrats. Schneider Decl. ¶¶ 26–27; Edelman Decl. ¶ 20; Boss Decl. ¶¶ 20, 25; Ruselowski Decl. ¶ 27.

16

**RESPONSE: Undisputed.**

41.     Because implementation of Section 2(a) threatens the core voter registration programs that the DNC, DGA, DSCC and DCCC have invested in and their ability to compete effectively in federal and state elections, implementation of Section 2(a) would require the Party Organizations to divert their mission-critical resources toward new efforts to counteract the harmful effects of the new requirement. Schneider Decl. ¶¶ 21–22, 26; Edelman Decl. ¶¶ 16, 20, 22; Boss Decl. ¶¶ 17–20; Ruselowski Decl. ¶¶ 20–23.

**RESPONSE: Partially disputed.** The RNC disputes that requiring proof of citizenship will produce "harmful effects."  Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

42.     The Party Organizations' expenditure of resources to counteract the effects of Section 2(a)'s implementation would require them to alter their investments in other time-sensitive, election-related activities that the organizations would otherwise undertake. Schneider Decl. ¶¶ 21–23, 27; Edelman Decl. ¶¶ 16–17, 20, 22; Boss Decl. ¶¶ 21, 25; Ruselowski Decl. ¶¶ 13–17, 23–27; *see also* Jeffries Decl. ¶¶ 16, 19; Schumer Decl. ¶¶ 16, 19.

**RESPONSE: Undisputed.**

43.     In the context of elections, an opportunity to recruit candidates, persuade voters, and galvanize supporters cannot be restored once lost. *See* Schneider Decl. ¶¶ 27 ("In elections, the resources a political party committee has are limited as the committee works to expend its resources to elect its candidates in any given election cycle. . . . And once those resources are diverted toward unplanned programming, they cannot be used to persuade voters to elect

Democratic candidates, directly undermining the DNC's mission."); Edelman Decl. ¶¶ 16–17; Boss Decl. ¶¶ 20–21; Ruselowski Decl. ¶¶ 23–24 (similar for DCCC); Jeffries Decl. ¶¶ 13–14, 16–19.

**RESPONSE: Undisputed.**

44. The implementation of a documentary-proof-of-citizenship requirement in response to Section 2(a) would irreparably harm the Democratic Party Plaintiffs' interests throughout the country because its lost registration and persuasion opportunities cannot be replaced or compensated with monetary damages. Schneider Decl. ¶¶ 18–23, 26-27; Edelman Decl. ¶¶ 13–17; Boss Decl. ¶¶ 16–21; Ruselowski Decl. ¶¶ 18–24; see also Jeffries Decl. ¶¶ 14, 18–19 (stating that the requirement "will make it extremely difficult for qualified U.S. citizens to vote, and furthers [sic] harms Democratic House candidates" and explaining that the requirement and other provisions in the Executive Order "will make it harder . . . to effectively recruit strong candidates to run for office" and means House Minority Leader Jeffries "will have less time to focus on the other critical issues facing our country"); *id*. ¶¶ 13, 16–17; Schumer Decl. ¶¶ 12–13, 16–19 (similar).

**RESPONSE: Partially disputed.** The RNC disputes that requiring proof of citizenship "will make it extremely difficult for qualified U.S. citizens to vote." Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

45. On April 11, 2025, the EAC's Executive Director, Brianna Schletz, sent a letter on EAC letterhead to the chief election officials of the States "seeking consultation on development of" the Federal Form. Ex. 23 ("Schletz Letter") at 1; Decl. of Jennette Sawyer (Apr. 16, 2025), ECF No. 95-1.

**RESPONSE: Undisputed.**

18

46. The letter reads, in relevant part:

> Executive Order 14248 . . . provides instruction to the EAC. Section 2 of EO 14248 instructs the following be required in the national mail voter registration form:
>
> *[Text of Sections 2(a)(i)(A)–(B) requiring documentary proof of citizenship and imposing recordkeeping requirements on States]*
>
> Section 2 of EO 14248 also instructs that "documentary proof United States citizenship" shall include a copy of:
>
> *[Text of Sections 2(a)(ii)(A)–(D) prescribing acceptable forms of ID]*

**RESPONSE: Undisputed.**

47. The letter goes on to state: "[t]he EAC is seeking consultation on how states would propose to implement Section 2 of EO 14248, if required. The EAC is also seeking feedback on the impact of implementation on voter registration in your state." Schletz Letter at 1.

**RESPONSE: Undisputed.**

48. Counsel for Defendants stated to the Court at the April 17, 2025 hearing on the preliminary injunction motion that "documentary proof [of citizenship] is required" on the Federal Form under Section 2(a) because that is what "the President has ordered," regardless of whether the EAC concludes that it is not necessary, regardless of how the EAC Commissioners choose to vote on the subject, and regardless of the feedback the EAC receives from States or other participants in the promulgation process. Ex. 24 (PI Hearing Tr.) at 71:25–72:1, 72:17–73:9, 74:14–15.

**RESPONSE: Undisputed.**

49. On April 24, 2025, this Court issued a preliminary injunction enjoining, among other things, the EAC's implementation of Section 2(a) of the Executive Order. *LULAC v. Exec. Off. of the President*, No.1:25-cv-0946-CKK, 2025 WL 1187730, at *63 (D.D.C. Apr. 24, 2025).

**RESPONSE: Undisputed.**

50. Nearly two months later, a coalition of States obtained a similar preliminary injunction blocking enforcement of Section 2(a) of the Executive Order, among other provisions. *California v. Trump*, No. 1:25-cv-10810-DJC, 2025 WL 1667949, at *22 (D. Mass. June 13, 2025).

**RESPONSE: Undisputed.**

| | |
|---|---|
| Dated: August 8, 2025 | Respectfully submitted, |
| | */s/ Thomas R. McCarthy* |
| Lee E. Goodman (D.C. Bar 435493) | Thomas R. McCarthy (D.C. Bar 489651) |
| Michael Columbo (D.C. Bar 476738) | Gilbert C. Dickey (D.C. Bar 1645164) |
| DHILLON LAW GROUP | Conor D. Woodfin (D.C. Bar 1780807) |
| 2121 Eisenhower Ave., Ste. 608 | William Bock IV* (Ohio Bar 0105262) |
| Alexandria, VA 22314 | CONSOVOY MCCARTHY PLLC |
| (415) 433-1700 | 1600 Wilson Blvd., Ste. 700 |
| lgoodman@dhillonlaw.com | Arlington, Virginia 22209 |
| mcolumbo@dhillonlaw.com | (703) 243-9423 |
| | tom@consovoymccarthy.com |
| | gilbert@consovoymccarthy.com |
| | conor@consovoymccarthy.com |
| *Admitted *pro hac vice* | wbock@consovoymccarthy.com |

*Counsel for Intervenor-Defendant
The Republican National Committee*