**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 25-0946 (CKK) |
| EXECUTIVE OFFICE OF THE PRESI-DENT, *et al.*, | |
| Defendants. | |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, | |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Civil Action No. 25-0952 (CKK) |
| Defendants, | |
| *and* | |
| REPUBLICAN NATIONAL COMMITTEE, | |
| Intervenor-Defendant. | |
| LEAGUE OF WOMEN VOTERS EDUCA-TION FUND, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 25-0955 (CKK) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |

**THE REPUBLICAN NATIONAL COMMITTEE'S RESPONSE
TO THE LEAGUE AND LULAC PLAINTIFFS'
STATEMENT OF MATERIAL FACTS**

In accordance with Local Civil Rule 7(h), Intervenor-Defendant the Republican National Committee responds to the League and LULAC Plaintiffs' Statement of Material Facts (Doc. 145-2) and submits this "concise statement of genuine issues" that preclude partial summary judgment in favor of Plaintiffs on their proof-of-citizenship claims. When the RNC responds to a statement made by Plaintiffs as "undisputed," it does not mean that the RNC is admitting the truth of the matter asserted. Rather, the RNC is acknowledging only that it does not currently dispute the statement for purposes of resolving Plaintiffs' summary judgment motion, as it is not a material fact that must be resolved before the Court rules on the motions. The RNC reserves the right to dispute any statement made by Plaintiffs at a later stage of this case. The RNC responds to each numbered paragraph of the League and LULAC Plaintiffs' Statement of Material Facts as follows:

1.      On March 25, 2025, President Trump issued Executive Order 14,248 ("Executive Order"). Ex. 1, 90 Fed. Reg. 14,005 (Mar. 25, 2025), https://perma.cc/F55X-RYFN.

**RESPONSE: Undisputed.**

2.      Among other things, the Executive Order states that the U.S. Election Assistance Commission ("EAC"), within 30 days, "shall take appropriate action to require . . . documentary proof of United States citizenship" with the national mail voter registration form ("Federal Form"). *Id*. § 2(a)(i).

**RESPONSE: Undisputed.**

3.      The Executive Order defines "documentary proof of citizenship" to include a copy of one the following documents: "(A) a United States passport; (B) an identification document compliant with the requirements of the REAL ID Act of 2005 (Public Law 109-13, Div. B) that indicates the applicant is a citizen of the United States; (C) an official military identification card that indicates the applicant is a citizen of the United States; or (D) a valid Federal or State

government-issued photo identification if such identification indicates that the applicant is a United States citizen or if such identification is otherwise accompanied by proof of United States citizenship." *Id*. § 2(a)(ii).

**RESPONSE: Undisputed.**

4.    The Executive Order does not specify what "proof of United States citizenship" would be sufficient to accompany other valid Federal or State government-issued photo identification under Section 2(a)(ii)(D). *Id*. § 2.

**RESPONSE: Undisputed.**

5.    The Executive Order states that the EAC "shall take appropriate action to require":

a State or local official to record on the form the type of document that the applicant presented as documentary proof of United States citizenship, including the date of the document's issuance, the date of the document's expiration (if any), the office that issued the document, and any unique identification number associated with the document as required by the criteria in 52 U.S.C. 21083(a)(5)(A), while taking appropriate measures to ensure information security. *Id*. § 2(a)(i)(B).

**RESPONSE: Undisputed.**

6.    On April 11, 2025, EAC Executive Director Brianna Schletz sent a letter on EAC letterhead to the chief election officials of states "seeking consultation on development of" the Federal Form. Ex. 2, Decl. of Jennette Sawyer ("Sawyer Decl."), ECF No. 95-1 at 5.

**RESPONSE: Undisputed.**

7.    The letter describes Section 2(a) as an "instruction" that the documentary proof-of-citizenship outlined in the Executive Order be "required" on the Federal Form. *Id*.

**RESPONSE: Undisputed.**

8.    Section 2(a) requires the EAC to add a documentary proof-of-citizenship requirement on the Federal Form. Ex. 3, Tr. of Oral Arg. on Pls.' Mot. for Prelim. Inj. ("PI Tr.") 71:25–72:2, 74:14–15, *LULAC v. Exec. Off. of the President*, No. 1:25-cv-946 (D.D.C. Apr. 17, 2025);

see id. 71:13–15 ("[I]t's going to be that there's going to be documentary proof [of citizenship] because it's contemplated by the executive order"); *id*. 70:05–10 ("[T]he documentary proof is binary. You're either going to be required to provide it or not, and it has been decided by the executive order to provide the documentary . . . proof of citizenship, which is binary."); *id*. 72:22–73:9 (agreeing that documentary proof of citizenship will be required "because the president has ordered it"); *id*. 74:14–15 ("documentary proof is required"); *id*. 74:23–75:1 ("THE COURT: [T]he bottom line is 2(a) is going to be adopted by the EAC. Am I correct? Yes or no. MR. GATES: "Yes.").

**RESPONSE: Undisputed.**

9.      Defendants acknowledge that the EAC must comply with the Administrative Procedure Act's notice-and-comment procedures to modify the Federal Form. Decl. of Brianna Schletz ("Schletz Decl."), ECF No. 85-1 ¶ 4.

**RESPONSE: Undisputed.**

10.      Defendants acknowledge that the EAC must comply with the Paperwork Reduction Act's procedures to modify the Federal Form. *Id*. ¶ 7.

**RESPONSE: Undisputed.**

11.      Section 2(a) requires the EAC to add a documentary proof-of-citizenship requirement to the Federal Form "even if EAC decides, after they go through all of their process, that they do not think it's needed." PI Tr. 73:19–74:4.

**RESPONSE: Undisputed.**

12.      Plaintiffs are nonpartisan, nonprofit organizations. Ex. 4, Suppl. Decl. of Celina Stewart ("Stewart Decl.") ¶ 2; Ex. 5, Suppl. Decl. of Pinny Sheoran ("Sheoran Decl.") ¶ 5; Ex. 6, Suppl. Decl. of Christine Chen ("Chen Decl.") ¶ 3; Ex. 7, Suppl. Decl. of Thu Nguyen ("Nguyen

Decl.") ¶ 3; Ex. 8, Suppl. Decl. of Tyler Sterling ("Sterling Decl.") ¶ 8; Ex. 9, Decl. of Jessica Guttlein ("Guttlein Decl.") ¶ 34; Ex. 10, Suppl. Decl. of Juan Proaño ("Proaño Decl.") ¶ 2; Ex. 11, Suppl. Decl. of Sarah Streyder ("Streyder Decl.") ¶ 3; Ex. 12, Suppl. Decl. of Kyle Nitschke ("Nitschke Decl.") ¶ 2.

**RESPONSE: Undisputed.**

13.    Plaintiffs' core activities include voter registration, voter education, and public out-reach to potential voters. Sterling Decl. ¶¶ 13, 17, 21, 25–28; Guttlein Decl. ¶¶ 5–6; Sheoran Decl. ¶ 8; Proaño Decl. ¶¶ 9–10; Streyder Decl. ¶¶ 5, 19; Nitschke Decl. ¶¶ 3; Stewart Decl. ¶¶ 3–4, 6–7; Nguyen Decl. ¶¶ 7, 9; Chen Decl. ¶¶ 5–7.

**RESPONSE: Undisputed.**

14.    Plaintiffs regularly register voters through in-person events and online tools—in-cluding using the Federal Form. Stewart Decl. ¶¶ 4, 7; Sheoran Decl. ¶¶ 8–10, 12–14, 24; Guttlein Decl. ¶¶ 5–7; Sterling Decl. ¶¶ 14–17, 21–23, 27; Nguyen Decl. ¶¶ 9–12; Chen Decl. ¶¶ 6–10; Proaño Decl. ¶¶ 9, 15; Nitschke Decl. ¶¶ 3–5; Streyder Decl. ¶¶ 9, 19, 21.

**RESPONSE: Undisputed.**

15.    Plaintiffs educate the public about the importance of civic engagement and voter registration. Stewart Decl. ¶¶ 6–7; Sheoran Decl. ¶¶ 8–9, 12; Sterling Decl. ¶¶ 14–15, 25–26; Gut-tlein Decl. ¶ 4; Nguyen Decl. ¶¶ 9–10; Chen Decl. ¶¶ 6–7; Proaño Decl. ¶ 7; Nitschke Decl. ¶¶ 3, 6; Streyder Decl. ¶¶ 5, 19, 21.

**RESPONSE: Undisputed.**

16.    Plaintiffs also educate and assist their respective members and the communities they respectively serve in navigating the voter registration process. Streyder Decl. ¶¶ 19, 21; Stew-art Decl. ¶¶ 6–7; Sterling Decl. ¶¶ 15, 26, 28; Proaño Decl. ¶ 9; Nitschke Decl. ¶ 12.

**RESPONSE: Undisputed.**

17.     Plaintiffs' robust nonpartisan voter registration and education efforts include in-person events that occur nationwide and are consistent with applicable state law. Sterling Decl. ¶¶ 13–14; Proaño Decl. 9; Guttlein Decl. ¶¶ 7, 12; Nitschke Decl. ¶¶ 3–4, 20; Sheoran Decl. ¶¶ 13–14.

**RESPONSE: Undisputed.**

18.     Each year, Plaintiffs collectively help tens of thousands of citizens register to vote. Stewart Decl. ¶ 7; Sheoran Decl. ¶ 13; Guttlein Decl. ¶ 15; Nitschke Decl. ¶ 4.

**RESPONSE: Undisputed.**

19.     For engagement purposes, Plaintiffs' voter registration activities and events take place at, but are not limited to, public places like churches, grocery stores, parks, libraries, sports events, and college campuses that increase contact with members of the public during their daily lives. Sterling Decl. ¶ 23; Proaño Decl. ¶¶ 9, 42; Guttlein Decl. ¶ 11; Nitschke Decl. ¶¶ 3–4; Sheoran Decl. ¶¶ 12, 14.

**RESPONSE: Undisputed.**

20.     For example, League volunteers in Arizona have recently registered voters at public demonstrations, farmers markets, college campuses, and a music festival. Sheoran Decl. ¶ 14.

**RESPONSE: Undisputed.**

21.     The Federal Form enables Plaintiffs to register voters with one consistent form in almost all states. Stewart Decl. ¶ 18; Sterling Decl. ¶¶ 17–20; Chen Decl. ¶ 11; Guttlein Decl. ¶ 11; Proaño Decl. ¶ 31.

**RESPONSE: Undisputed.**

22.    As a result, the Federal Form is a singularly essential resource to Plaintiffs. Stewart Decl. ¶ 18; Sterling Decl. ¶¶ 17–19, 33; Chen Decl. ¶ 11; Proaño Decl. ¶¶ 15, 31.

**RESPONSE: Undisputed.**

23.    Plaintiff Hispanic Federation uses the Federal Form to register voters at "in-person events with out-of-state attendees because people from various states attend those events." Guttlein Decl. ¶ 11.

**RESPONSE: Undisputed.**

24.    The fact that the Federal Form is uniform across the country "allows [Hispanic Federation's volunteers] to give the same voter registration form to every attendee, without attempting to distinguish between residents of different states." Guttlein Decl. ¶ 11.

**RESPONSE: Undisputed.**

25.    In Hispanic Federation's experience, it "would be impracticable" to conduct voter registration drives that register voters from different states without the uniform Federal Form. Guttlein Decl. ¶ 11.

**RESPONSE: Undisputed.**

26.    If the EAC implements Section 2(a) of the Executive Order, Plaintiffs would be unable to use the Federal Form to register eligible citizens who lack documentary proof of citizenship. Stewart Decl. ¶¶ 10, 14, 26–27; Sheoran Decl. ¶¶ 18, 27–29, 34–35; Guttlein Decl. ¶¶ 17, 20, 22; Sterling Decl. ¶¶ 49–51; Chen Decl. ¶ 12–14; Nitschke Decl. ¶¶ 8–11, 22.

**RESPONSE: Undisputed**.

27.    For example, when the Executive Order was issued, ASA "ceased voter registration activities." Nitschke Decl. ¶ 22.

**RESPONSE: Undisputed.**

28.    "[W]hen the [Court's preliminary] injunction issued on April 24, [ASA] resumed voter registration activities." *Id*.

**RESPONSE: Undisputed.**

29.    "If the [Court's preliminary] injunction were to end, and the [Executive Order] was implemented, [ASA] would have to stop or dramatically reassess [its] voter registration activities, causing direct and significant harm to ASA's goals and mission." *Id*.

**RESPONSE: Disputed.** This is conjecture, not a statement of fact. Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

30.    The core missions of Hispanic Federation and LULAC include serving voters in Latino communities. Guttlein Decl. ¶¶ 4–5; Proaño Decl. ¶¶ 3–4, 9–10.

**RESPONSE: Undisputed.**

31.    Part of the NAACP's core mission is to conduct potential voter outreach to predominantly, but not exclusively, Black individuals, and register them. Sterling Decl. ¶¶ 8, 10, 49.

**RESPONSE: Undisputed.**

32.    Eligible voters in the Latino and Black communities that Hispanic Federation, LULAC, and the NAACP serve disproportionately lack access to documentary proof of citizenship. Guttlein Decl. ¶¶ 16; Proaño Decl. ¶¶ 19, 34; Sterling Decl. ¶¶ 8, 11, 49.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

33.     If Section 2(a) is implemented, it would be harder for Hispanic Federation, LU-LAC, and the NAACP to achieve their goal of registering voters in the communities that they serve. Guttlein Decl. ¶¶ 16–19, 21–22; Proaño Decl. ¶¶ 19–20, 34; Sterling Decl. ¶¶ 31–52.

**RESPONSE: Disputed.** This is conjecture, not a statement of fact. Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

34.     Plaintiff SFI's mission is "to mobilize diverse military partners, parents, children, and veterans to vote and advocate for their communities." Streyder Decl. ¶ 5.

**RESPONSE: Undisputed.**

35.     SFI believes that the "most effective way" to "ensure its members have a seat at the table over decisions that affect their own lives" is to "mobiliz[e] its community to vote and advocate." *Id*.

**RESPONSE: Undisputed.**

36.     SFI's members use the Federal Form to register to vote. *Id*. ¶ 9.

**RESPONSE: Undisputed.**

37.     Many SFI members do not possess or have regular, easy access to qualifying forms of proof of citizenship. *Id*. ¶¶ 11–12, 15.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

38.     "[M]any SFI members [are] based in locations that do not have reliable access to the internet, copiers, or printers." *Id*. ¶ 16.

**RESPONSE: Undisputed.**

39.    They are also "concerned about sending copies of sensitive documents through the mail where they may be accessible by third parties." *Id*. ¶ 17.

**RESPONSE: Undisputed.**

40.    If Section 2(a) is implemented, SFI members would "thus would face significant hurdles providing a copy of sensitive documents when registering to vote." *Id*. ¶ 16.

**RESPONSE: Disputed.** This is conjecture, not a statement of fact. Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

41.    If Section 2(a) is implemented, SFI's mission would be frustrated because fewer of its members and fewer military family members overall will be able to register to vote. *Id*. ¶ 27–28.

**RESPONSE: Disputed.** This is conjecture, not a statement of fact. Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

42.    Plaintiffs use the Federal Form to facilitate online voter registration. Stewart Decl. ¶¶ 7, 11; Sterling Decl. ¶¶ 15, 17–18; Chen Decl. ¶ 9; Nguyen Decl. ¶ 10; Sheoran Decl. ¶ 10; Proaño Decl. ¶¶ 13, 15; Guttlein Decl. ¶¶ 18, 21.

**RESPONSE: Undisputed.**

43.    Rock the Vote maintains a voter registration portal that relies on the Federal Form. Stewart Decl. ¶¶ 13–14; Sheoran Decl. ¶ 10.

**RESPONSE: Undisputed.**

44.    Plaintiff APIAVote, in partnership with Rock the Vote, has created a national, multilingual voter registration portal based on the Federal Form. Chen Decl. ¶¶ 8–9.

**RESPONSE: Undisputed.**

45.    That portal enables eligible citizens who speak Bengali, Chinese, Hindi, Ilocano, Japanese, Korean, Tagalog, Thai, Urdu, and Vietnamese to register to vote in compliance with the Federal Form in their primary language. *Id*. ¶ 9.

**RESPONSE: Undisputed.**

46.    APIAVote's portal includes the Federal Form in languages not available from the EAC, such as Ilocano, Thai, and Urdu. *Id.*

**RESPONSE: Undisputed.**

47.    APIAVote can provide an Asian language voter registration portal because the Federal Form "is a streamlined, uniform mail voter registration form that citizens can use across the country to register to vote in-language." *Id*. ¶ 11.

**RESPONSE: Undisputed.**

48.    Plaintiff OCA and other organizations rely on APIAVote's platform to offer voter registration services in multiple languages by embedding the portal on their websites. Chen Decl. ¶ 13; Nguyen Decl. ¶ 10.

**RESPONSE: Undisputed.**

49.    The League maintains the voter education and registration website VOTE411.org, which relies on Rock the Vote's registration portal. Stewart Decl. ¶ 11, 14.

**RESPONSE: Undisputed.**

50.    VOTE411.org is a resource that thousands of voters rely on for trusted bilingual information about registration requirements, registration status checks, and to register to vote in local, state, and federal elections across the country. *Id*. ¶ 7; Sheoran Decl. ¶ 13.

**RESPONSE: Undisputed.**

51.    LULAC's website "links to the Rock the Vote Registration portal that allows prospective voters to check their registration status and access the Federal Form." Proaño Decl. ¶ 13.

**RESPONSE: Undisputed.**

52.    Hispanic Federation uses the TurboVote portal as part of its voter registration efforts. Guttlein Decl. ¶¶ 17–18, 20.

**RESPONSE: Undisputed.**

53.    The TurboVote portal is a user-friendly interface allowing individuals to access the Federal Form. Id. ¶¶ 18, 21.

**RESPONSE: Undisputed.**

54.    The NAACP uses Vote.org as part of its voter registration efforts. Sterling Decl. ¶¶ 16, 35, 37.

**RESPONSE: Undisputed.**

55.    Vote.org is an online portal with a user-friendly interface with the Federal Form. *Id*. ¶¶ 16–20, 34.

**RESPONSE: Undisputed.**

56.    The NAACP also provides physical copies of the Federal Form for in-person voter registration. *Id*. ¶ 27.

**RESPONSE: Undisputed.**

57.    None of the portals that Plaintiffs use is designed to collect copies of documents showing proof of citizenship. Chen Decl. ¶ 12; Guttlein Decl. ¶ 21; Stewart Decl. ¶ 14; Sterling Decl. ¶ 33–34.

**RESPONSE: Undisputed.**

58.    If Section 2(a) is implemented, "APIAVote's Asian language voter registration portal will be immediately defunct." Chen Decl. ¶ 14.

**RESPONSE: Undisputed.**

59.    If Section 2(a) is implemented, Rock the Vote would likely have to take its portal offline. Stewart Decl. ¶ 15.

**RESPONSE: Undisputed.**

60.    If Section 2(a) is implemented, the NAACP would likely have to reevaluate its partnership with Vote.org. Sterling Decl. ¶ 37.

**RESPONSE: Undisputed.**

61.    If Section 2(a) is implemented, Plaintiffs would even struggle to register potential voters who do possess documentary proof of citizenship. Sheoran Decl. ¶¶ 33–35; Proaño Decl. ¶ 48; Stewart Decl. ¶¶ 16, 26–27, 30; Streyder Decl. ¶¶ 14–17, 21; Sterling Decl. ¶¶ 35, 38, 49; Nitschke Decl. ¶¶ 9–10, 13.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

62.    If Section 2(a) is implemented, Plaintiffs' members and volunteers would need to collect copies of voters' sensitive personal documents such as passports to help them register to vote. Sheoran Decl. ¶ 30; Proaño Decl. ¶ 47; Sterling Decl. ¶¶ 44–45.

**RESPONSE: Disputed.**  Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

63.     Plaintiffs would also have to purchase copiers or scanners to collect documentary proof of citizenship during in-person voter registration events. Nitschke Decl. ¶ 17; Proaño Decl. ¶ 48; Sterling Decl. ¶ 44.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a), what documents the Commission will require to prove citizenship, or whether those documents can be successfully collected without having to purchase additional copiers or scanners.

64.     Explaining the documentary proof-of-citizenship requirement and copying that documentation would make the process of registering each individual take longer. Nitschke Decl. ¶ 17.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

65.     To avoid long lines at campus voter registration events that may discourage individuals from registering, ASA would have to hire additional staff if Section 2(a) is implemented. *Id*. ¶ 17.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

66.     LWVAZ, LULAC, Hispanic Federation, and the NAACP do not have the resources or expertise to scan and securely store copies of proof of citizenship and transmit them to election authorities. Sheoran Decl. ¶ 34; Proaño Decl. ¶¶ 47–48; Guttlein Decl. ¶ 13; Sterling Decl. ¶ 44.

**RESPONSE: Undisputed.**

67.     Plaintiffs routinely register voters at churches, college campuses, grocery stores, farmers markets, and other public places. Sterling Decl. ¶ 23; Sheoran Decl. ¶¶ 12, 14; Proaño Decl. ¶¶ 9, 42; Guttlein Decl. ¶ 11.

**RESPONSE: Undisputed.**

68.     The U.S. State Department advises all passport holders to "store [your passport] in a secure location to prevent pets or children from damaging your passport." Ex. 13, U.S. Dep't of State, After You Get Your New Passport: Protect your new passport (last updated June 24, 2025), https://travel.state.gov/content/travel/en/passports/passport-help/after-getting-passport.html.

**RESPONSE: Undisputed.**

69.     In Plaintiffs' experiences, many people who are eligible to vote do not carry their passport or other citizenship documents on their person in their daily lives. Sterling Decl. ¶ 24; Sheoran Decl. ¶ 28; Nitschke Decl. ¶ 8.

**RESPONSE: Undisputed.**

70.     Because many eligible voters do not carry documents proving citizenship in their daily lives, implementation of Section 2(a) would hinder Plaintiffs' voter registration drives. Sheoran Decl. ¶ 28; Nitschke Decl. ¶ 8.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

71.     In the experience of LWVAZ, LULAC, and NAACP volunteers, voters are often concerned about giving sensitive personal documents to third parties, including trusted voter registration organizations. Sheoran Decl. ¶¶ 30–31; Proaño Decl. ¶ 47; Sterling Decl. ¶ 46.

**RESPONSE: Undisputed.**

72.     Asking voters to provide copies of such documents would jeopardize LWVAZ's, LULAC's, and the NAACP's longstanding reputations as trusted organizations. Sheoran Decl. ¶ 31; Proaño Decl. ¶ 47; Sterling Decl. ¶ 46.

**RESPONSE: Undisputed.**

73.     Asking voters to provide copies of such documents would likely make voters less willing to participate in Plaintiffs' registration events. Sheoran Decl. ¶ 31; Proaño Decl. ¶¶ 47–51.

**RESPONSE: Undisputed.**

74.     For example, LWVAZ does not collect or retain applicants' information from an applicant's voter registration form. Sheoran Decl. ¶¶ 31–32.

**RESPONSE: Undisputed.**

75.     Plaintiffs' volunteers will have difficulty advising prospective voters about what types of documentation satisfy Section 2(a) because of confusion regarding what satisfies its documentary proof-of-citizenship requirements. Sheoran Decl. ¶ 33; Sterling Decl. ¶ 43; Proaño Decl. ¶¶ 17–18, 20; Guttlein Decl. ¶ 10.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship. .

76.     For example, "many of the states where LULAC councils are located issue REAL ID cards to both citizens and individuals with lawful status who are not citizens, and these identifications would not necessarily indicate on their face that the holder is a U.S. citizen." Proaño Decl. ¶ 18.

**RESPONSE: Undisputed.**

77.    The U.S. Department of State recommends obtaining a passport if "[y]ou have family living or traveling abroad, [y]ou are thinking about a vacation abroad, or [y]ou have a job that could require international travel." Ex. 14, U.S. Dep't of State, Frequently Asked Questions: Who should have a valid U.S. Passport? (last updated June 28, 2025), https://perma.cc/AC7Z-S69V.

**RESPONSE: Undisputed.**

78.    Less than half of eligible citizens had a valid passport in 2023. See Ex. 15, U.S. Dep't of State, Reports and Statistics: Valid Passports in Circulation by Fiscal Year (1989-2024) (last updated October 9, 2024), https://perma.cc/EXZ2-TVS8 (160,668,889 valid passports in circulation in 2023); Ex. 16, U.S. Census Bureau, Citizen Voting Age Population by Race and Ethnicity (January 30, 2025), https://perma.cc/472R-AY7T (total estimated citizen voting age population of 332,387,540 in 2023).

**RESPONSE: Undisputed.**

79.    Black people in the United States disproportionately lack passports. Sterling Decl. ¶ 49.

**RESPONSE: Undisputed.**

80.    A passport can cost as much as $160. Ex. 30, Bur. of Consular Affairs, Passport Fees, U.S. Dep't of State, https://perma.cc/L9ZJ-9CXE (last visited July 11, 2025).

**RESPONSE: Undisputed.**

81.    A passport can take up to two months to arrive. Ex. 31, Bur. of Consular Affairs, Get Your Processing Time, U.S. Dep't of State, https://perma.cc/L988-P8Y5 (last visited July 10, 2025).

**RESPONSE: Undisputed.**

82.     Most REAL IDs do not denote citizenship. Ex. 17, Transp. Sec. Admin., REAL ID Frequently Asked Questions, https://perma.cc/J728-UMV2 (last visited July 3, 2025).

**RESPONSE: Undisputed.**

83.     Only five states offer Enhanced Driver's Licenses that show citizenship. Ex. 18, U.S. Dep't of Homeland Sec., *Enhanced Drivers Licenses: What Are They?* (Apr. 27, 2023), https://perma.cc/AJ9Z-Y73N.

**RESPONSE: Undisputed.**

84.     Enhanced Driver's Licenses are more expensive than REAL IDs. Ex. 19, Vt. Dep't of Motor Vehicles, Driver's License Fees (Sep. 5, 2024), https://perma.cc/6Q5N-GS9P (in Vermont, a REAL ID costs $39, while an Enhanced Driver's License costs $75).

**RESPONSE: Undisputed.**

85.     Military identification cards do not always indicate citizenship. Ex. 20, U.S. Dep't of Defense, Next Generation Uniformed Services ID Card, https://www.cac.mil/Next-Generation-Uniformed-Services-ID-Card/ (last visited July 10, 2025) (reflecting that legacy Uniformed Services ID cards do not indicate citizenship status, that those cards will "remain valid through their expiration date," and that some legacy Uniformed Services ID have an indefinite expiration date); *see also* Streyder Decl. ¶ 13.

**RESPONSE: Undisputed.**

86.     Defendants admit that military identification cards do not always indicate citizenship. Answer to The League Pls.' Compl. ¶ 67, ECF No 131.

**RESPONSE: Undisputed.**

87.     Plaintiffs have expended both personal time and financial resources evaluating their voter registration and education materials in response to the Executive Order and planning for its implementation. Stewart Decl. ¶¶ 20, 22; Guttlein Decl. ¶¶ 9–10.

**RESPONSE: Undisputed.**

88.     If Section 2(a) is implemented, Plaintiffs would need to divert resources from existing projects to educate their members and the public on how to comply with a documentary proof-of-citizenship requirement (when possible) and help individuals register with the changes to the Federal Form. Sterling Decl. ¶¶ 32–33, 40–42, 44–45; Stewart Decl. ¶ 12, 17–24; Sheoran Decl. ¶¶ 36–38, 40; Nguyen Decl. ¶¶ 18–19; Chen Decl. ¶¶ 15–16, 21; Guttlein Decl. ¶¶ 10–11, 20–22; Proaño Decl. ¶¶ 13–17, 29; Streyder Decl. ¶¶ 20–27; Nitschke Decl. ¶¶ 16–19.

**RESPONSE: Undisputed.**

89.     If Section 2(a) is implemented, the League would have to overhaul educational materials that it hosts on VOTE411.org. Stewart Decl. ¶¶ 12, 19.

**RESPONSE: Undisputed.**

90.     To return functionality to its Asian language voter registration portal after implementation of Section 2(a), APIAVote would be forced to commit resources to substantially change that portal, both "to instruct registrants to provide documentary proof of citizenship" and "create guides in multiple Asian languages about how to register to vote using state voter registration processes so that it can provide information useful to all AAPI voters, even those without documentary proof of citizenship." Chen Decl. ¶¶ 15, 19.

**RESPONSE: Undisputed.**

91.    Changing its voter registration processes "will be a burdensome task that will divert resources away from the APIAVote's other core activities," including its advocacy efforts to provide "in-language materials to local election officials." *Id*. ¶ 21.

**RESPONSE: Undisputed.**

92.    Until APIAVote's portal is restored, OCA and other organizations that rely on that portal to register voters will have to divert resources from their regular, core activities including conducting voter registration drives at college campuses, stores, naturalization ceremonies, churches, and community centers, toward developing a new method of registration to replace or supplement APIAVote's portal. Nguyen Decl. ¶¶ 10–11, 19; Chen Decl. ¶ 13–14.

**RESPONSE: Undisputed.**

93.    If Section 2(a) is implemented, the League and LULAC would have to overhaul their online voter registration resources, which currently rely on Rock the Vote and its use of the Federal Form. Stewart Decl. ¶ 14–16; Proaño Decl. ¶¶ 13–16.

**RESPONSE: Undisputed.**

94.    If Section 2(a) is implemented, Hispanic Federation and the NAACP would have to reconsider and evaluate alternative tools to replace their use of voter registration portals that rely on the Federal Form. Guttlein Decl. ¶¶ 17–21; Sterling Decl. ¶ 35, 37.

**RESPONSE: Undisputed.**

95.    SFI has already been forced to overhaul its training and educational resources in response to Section 2(a)'s documentary proof-of-citizenship requirement, including its Voting Ambassador program toolkit. *Id*. ¶¶ 20–22.

**RESPONSE: Undisputed.**

96.     If Section 2(a) is implemented, SFI would be forced to further overhaul its training and educational resources. Streyder Decl. ¶¶ 21–22.

**RESPONSE: Undisputed.**

97.     SFI has not traditionally focused on the distinction between state voter registration forms and the Federal Form in assisting its members who register to vote outside of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") process. *Id.* ¶ 22.

**RESPONSE: Undisputed.**

98.     If Section 2(a) is implemented, SFI will be forced to develop specific expertise in advising its members on registration using state voter registration options and develop more detailed training and educational materials for its members registering outside of UOCAVA. *Id.* ¶¶ 21–24.

**RESPONSE: Undisputed.**

99.     LWVAZ is a member- and volunteer-run organization with a small number of interns and consultants who are paid hourly. Sheoran Decl. ¶ 11.

**RESPONSE: Undisputed.**

100.     LWVAZ has financial resources to pay its interns and consultants for a limited number of hours. *Id.*

**RESPONSE: Undisputed.**

101.     Time spent by volunteers and paid staff updating training and public information materials is time diverted from LWVAZ's other core work, such as registering voters, preparing information about candidates in upcoming elections, and helping with candidate forums. *Id.* ¶¶ 36–38.

**RESPONSE: Undisputed.**

102.    LULAC's Arizona Council is comprised of unpaid volunteers. Proaño Decl. ¶ 54.

**RESPONSE: Undisputed.**

103.    If Section 2(a) is implemented, LULAC's Arizona Council must redirect its limited volunteer resources away from "helping community members tackle immigration related challenges, a pressing issue in Arizona given the state's demographics and proximity to the U.S.-Mexico border." Id. ¶ 54.

**RESPONSE: Undisputed.**

104.    Some Plaintiffs, including Hispanic Federation, the League, LWVAZ, APIAVote, LULAC, SFI, and ASA have already begun to "expend[] significant staff time and resources" to counteract the Executive Order's impact on their core activities. Guttlein Decl. ¶ 9; see Stewart Decl. ¶¶ 20, 22, 31–32; Chen Decl. ¶¶ 18; Proaño Decl. ¶¶ 24–27, 54; Streyder Decl. ¶¶ 20–26; Nitschke Decl. ¶ 19.

**RESPONSE: Undisputed.**

105.    This includes providing ongoing guidance to staff, canvassers, community partners, members, volunteers, and the public on how Section 2(a) will affect voter registration efforts throughout the country. Guttlein Decl. ¶¶ 9–10; Stewart Decl. ¶¶ 20, 22, 31–32; Chen Decl. ¶¶ 18; Proaño Decl. ¶¶ 17, 28–29; Streyder Decl. ¶¶ 20–26.

**RESPONSE: Undisputed.**

106.    To take on these counteractive measures, Hispanic Federation, the League, LWVAZ, LULAC, SFI, and ASA have diverted resources away from their primary voter registration, voter education, and voter outreach activities. Guttlein Decl. ¶¶ 9–10; Stewart Decl. ¶¶ 20, 24, 28–29, 31–32; Proaño Decl. ¶¶ 24, 54; Streyder Decl. ¶¶ 20–26.

**RESPONSE: Undisputed.**

107.    Many of LWVAZ's member volunteers were recently trained to conduct voter registration events, including in several trainings in the fall of 2024 after the U.S. Supreme Court issued a stay changing some of the voter registration practices in Arizona. Sheoran Decl. ¶¶ 16, 22, 37.

**RESPONSE: Undisputed.**

108.    If Section 2(a) is implemented, LWVAZ members and volunteers would need to be retrained before conducting voter registration events. *Id*. ¶¶ 36–37.

**RESPONSE: Undisputed.**

109.    If Section 2(a) is implemented, LWVAZ would not be able to conduct as many voter registration events because it will have to divert resources away from actual time registering voters to conduct additional training. *Id*. ¶¶ 18, 36–38, 40.

**RESPONSE: Undisputed.**

110.    ASA has diverted and will continue to need to divert time and resources away from its voter registration activities and from planning its annual Grassroots Organizing Weekend and Student Voting Summit to focus on retraining staff and volunteers for fall voter registration and "determining how to change [its] operations in response" to the Executive Order. Nitschke Decl. ¶ 18.

**RESPONSE: Undisputed.**

111.    Uncertainty regarding Section 2(a)'s implementation has sown misunderstanding and trepidation among volunteers and members of Plaintiff organizations. Stewart Decl. ¶¶ 28–29; Sheoran Decl. ¶ 40; Nitschke Decl. ¶¶ 10–11, 19–20; Guttlein Decl. ¶ 9.

**RESPONSE: Undisputed.**

112.    Volunteers of Plaintiff organizations are concerned about the specter of collecting copies of sensitive documents that prove voters' citizenship, and some volunteers are unlikely to do so. Stewart Decl. ¶ 29; Sheoran Decl. ¶ 33; Guttlein Decl. ¶ 14; Proaño Decl. ¶ 21; Sterling Decl. ¶ 47.

**RESPONSE: Undisputed.**

113.    Plaintiffs have seen how the fear and uncertainty regarding the Executive Order also harms their recruitment and retention of volunteers, and in turn, their core mission of registering voters. Stewart Decl. ¶ 29; Sheoran Decl. ¶ 40; Proaño Decl. ¶¶ 22–24.

**RESPONSE: Undisputed.**

114.    In the experience of Plaintiffs, confusion about the requirements for satisfying Section 2(a) of the Executive Order will hamper Plaintiffs' ability to register voters. Stewart Decl. ¶¶ 27, 30; Sheoran Decl. ¶ 39–40; Nguyen Decl. ¶ 18; Proaño Decl. ¶¶ 17–19, 22; Nitschke Decl. ¶¶ 10–11; Sterling Decl. ¶ 43.

**RESPONSE: Undisputed.**

115.    To address the chilling effect of Section 2(a) on voter registration, Plaintiffs will be forced to expend additional resources encouraging voter registration. Stewart Decl. ¶¶ 17, 28–29; Sheoran Decl. ¶¶ 38, 40; Nguyen Decl. ¶¶ 18–19; Sterling Decl. ¶¶ 41–42, 44; Nitschke Decl. ¶¶ 17–20.

**RESPONSE: Disputed.** Whether Section 2(a) will have a "chilling effect" on "voter registration" is conjecture, not a statement of fact.

116.    Staff and volunteers at Plaintiff organizations have already devoted time to educating leaders of local organizations and advocates for impacted communities about the likely effect

of the Executive Order. Stewart Decl. ¶¶ 28, 31–32; Guttlein Decl. ¶ 9; Nitschke Decl. ¶ 19; Strey-

der Decl. ¶¶ 20–22, 25–26.

**RESPONSE: Undisputed.**

117.    Arizona prohibits voters from registering to vote in state and local elections absent

documentary proof of citizenship (as defined under state law). Ariz. Rev. Stat. § 16-166; Sheoran

Decl. ¶ 21.

**RESPONSE: Undisputed.**

118.    Consistent with federal law, Arizona permits voters to register as "federal-only"

voters—i.e., voters who can vote only for federal offices—if they fill out the Federal Form. See

Ariz. Sec'y of State, Registration Requirements, *supra*.

**RESPONSE: Undisputed.**

119.    Plaintiffs operating in Arizona have a core mission of helping to ensure that every

eligible U.S. citizen in Arizona is registered to vote and can participate in elections. Sheoran Decl.

¶¶ 5, 18, 28, 39–40; Proaño Decl. ¶¶ 41–43, 51–52; Nitschke Decl. ¶ 3.

**RESPONSE: Undisputed.**

120.    ASA uses the Federal Form when registering student voters in Arizona who lack

documentary proof of citizenship. Nitschke Decl. ¶ 5.

**RESPONSE: Undisputed.**

121.    Of the 3,500 students registered in a recent ASA voter registration drive, "about

half" used the Federal Form. *Id*. ¶ 4.

**RESPONSE: Undisputed.**

122.    If implemented, Section 2(a) will prevent Plaintiffs from using the Federal Form to register eligible Arizona residents who lack documentary proof of citizenship. Sheoran Decl. ¶¶ 27–28; Proaño Decl. ¶¶ 19, 39; Nitschke Decl. ¶¶ 7, 15, 20, 22.

**RESPONSE: Undisputed.**

123.    If implemented, Section 2(a) will prevent Arizonans who lack documentary proof of citizenship from registering as federal-only voters and, as a result, from voting in federal elections. Ex. 21, Ariz. Sec'y of State, Registration Requirements, https://azsos.gov/elections/voters/registration-requirements (last visited July 10, 2025).

**RESPONSE: Undisputed.**

124.    If Section 2(a) is implemented, citizens who are eligible to vote in Arizona and do not have access to documentary proof of citizenship will have no method to register to vote or update their registration to reflect a change in address between counties. Sheoran Decl. ¶ 27; Nitschke Decl. ¶ 8; see Ex. 26, Decl. of J. Doe 1 ("Doe 1 Decl.") ¶¶ 2–9; Ex. 27, Decl. of J. Doe 2 ("Doe 2 Decl.") ¶¶ 3, 7–9.

**RESPONSE: Undisputed**.

125.    Plaintiffs encourage Arizona voters who have access to proof of citizenship to provide it when registering, so that they can vote in local and state elections, as well as federal elections (a "full ballot"). Sheoran Decl. ¶ 25, 29; Proaño Decl. ¶ 44.

**RESPONSE: Undisputed.**

126.    In the experience of Plaintiffs, voters who can do so typically provide citizenship documentation when they have access to it, so they can vote in all elections. Sheoran Decl. ¶ 26; Proaño Decl. ¶ 44.

**RESPONSE: Undisputed.**

127.    Arizona law also allows potential voters to provide identification numbers from any of the following documents on their State form: Arizona driver's license or nonoperating license issued after October 1, 1996, Alien Registration Number, Naturalization Certificate Number, Citizenship Certificate Number, Indian Census Number, Bureau of Indian Affairs Number, Tribal Treaty Card Number, or Tribal Enrollment Number. Ex. 21, Ariz. Sec'y of State, *Arizona Voter Registration Instructions* (May 2024), https://perma.cc/ULM9-HWQQ.

**RESPONSE: Undisputed.**

128.    Arizona election officials use the voter's identification number to verify citizenship status. *Id*.

**RESPONSE: Undisputed.**

129.    The majority of Arizonans that meet the documentary proof-of-citizenship requirement do so by providing an identification number. Ex. 41, *Mi Familia Vota v. Fontes*, No. 22-cv-509 (D. Az. Nov. 7, 2023), ECF No. 646 at 53 (Trial Tr. Day 1).

**RESPONSE: Undisputed.**

130.    Often, Arizona voters will provide an identification number rather than documentation itself. Sheoran Decl. ¶ 29; Proaño Decl. ¶ 45.

**RESPONSE: Undisputed.**

131.    As of January 2, 2025, there were more than 48,000 federal-only voters in Arizona, at least 40,000 of whom did not provide documentary proof of citizenship when they registered. Ex. 22, Ariz. Sec'y of State, *Federal Only Registrants as of January 2nd, 2025* https://perma.cc/8U2R-VFPG (last visited July 10, 2025).

**RESPONSE: Undisputed.**

132.    As of April 1, 2025, Arizona reported that more than 200,000 additional voters did not provide documentary proof of citizenship at registration but were misidentified as full ballot voters. Ex. 42, Ariz. Motor Vehicle Div., *Report on Audit of MVD's Authorized Presence Policy and Data for Voter Registration Purposes* at 3 (Jan. 31, 2025), https://perma.cc/SM67-LYRT; *see also* Ex. 23, Jen Fifield, *Longtime Arizona Voters Receive Letters Asking for Proof of Citizenship*, VOTEBEAT (Mar. 31, 2025), https://perma.cc/Q99W-W6WF; Ex. 24, Wayne Schutsky, *Arizona Counties Are Contacting 200,000 Voters Who Haven't Provided Proof of Citizenship*, KJZZ (Apr. 2, 2025), https://perma.cc/F3E5-SP29.

**RESPONSE: Undisputed.**

133.    These individuals are at risk of being re-classified as "federal-only" voters. Fifield, *Longtime Arizona Voters Receive Letters Asking for Proof of Citizenship, supra*.

**RESPONSE: Undisputed.**

134.    Arizona county officials are currently sending letters to these individuals informing them of the potential change. Ex. 25, Maricopa County Elections Dep't, *Important Information for Maricopa County Voters: Updates on Recent Mailings*, https://elections.maricopa.gov/elections/voter-registration/register-to-vote/Important-Information-for-Maricopa-County-Voters--Updates-on-Recent-Mailings (last visited July 10, 2025).

**RESPONSE: Undisputed.**

135.    The voters who received this letter have or will soon receive a letter that "explain[s] that the Arizona Secretary of State has identified them as individuals impacted by a Motor Vehicle Division (MVD) data issue affecting their citizenship verification." *Id*.

**RESPONSE: Undisputed.**

136.    ASA has members in Arizona who are eligible to vote but would have difficulty complying with Section 2(a)'s documentary proof-of-citizenship requirement because they do not have a passport, their birth certificate is inaccessible or unavailable, and they lack other qualifying documentation. Nitschke Decl. ¶¶ 8–10, 13–14; Doe 1 Decl. ¶¶ 5–7; Doe 2 Decl. ¶¶ 7–9.

**RESPONSE: Disputed.** Because the Commission has not issued a final rule, Plaintiffs do not know how the Commission will implement Section 2(a) or what documents the Commission will require to prove citizenship.

Dated: August 8, 2025

Respectfully submitted,

*/s/ Thomas R. McCarthy*

| | |
|---|---|
| Lee E. Goodman (D.C. Bar 435493) | Thomas R. McCarthy (D.C. Bar 489651) |
| Michael Columbo (D.C. Bar 476738) | Gilbert C. Dickey (D.C. Bar 1645164) |
| DHILLON LAW GROUP | Conor D. Woodfin (D.C. Bar 1780807) |
| 2121 Eisenhower Ave., Ste. 608 | William Bock IV* (Ohio Bar 0105262) |
| Alexandria, VA 22314 | CONSOVOY MCCARTHY PLLC |
| (415) 433-1700 | 1600 Wilson Blvd., Ste. 700 |
| lgoodman@dhillonlaw.com | Arlington, Virginia 22209 |
| mcolumbo@dhillonlaw.com | (703) 243-9423 |
| | tom@consovoymccarthy.com |
| | gilbert@consovoymccarthy.com |
| | conor@consovoymccarthy.com |
| *Admitted *pro hac vice* | wbock@consovoymccarthy.com |

*Counsel for Intervenor-Defendant*
*The Republican National Committee*

29