## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br><br> Defendants. | Civil No. 25-cv-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br><br> Defendants. | Civil No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil No. 25-cv-0955 (CKK) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT AND PARTIAL OPPOSITION TO
<u>PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>**

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Director
Civil Division, Federal Programs Branch

BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-8679
Bridget.K.O'Hickey@usdoj.gov

MARIANNE F. KIES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. ii

**INTRODUCTION** ........................................................................................................... 1

**BACKGROUND** ............................................................................................................. 1

**LEGAL STANDARD** ...................................................................................................... 4

**ARGUMENT** ................................................................................................................. 4

I.   Section 2(a) merely directs the EAC to begin a process—it does not violate the separation of powers, the Elections Clause, or HAVA. .................................................. 5

II.   Plaintiffs' claims challenging section 2(a) suffer from threshold defects on the merits. 10

a.   Plaintiffs lack a cause of action to bring their nonstatutory claims because the APA is available. ....................................................................................................... 10

b.   Plaintiffs' APA claims fail because there is no final agency action. .............................. 12

c.   Plaintiffs' claims are also prudentially unripe. ......................................................... 13

III.   Plaintiffs lack standing to challenge section 2(a) ....................................................... 14

a.   Plaintiffs' injury is speculative. .............................................................................. 15

b.   Plaintiffs lack organizational and associational standing. ........................................... 16

c.   Plaintiffs are not entitled to a declaratory judgment against the President. .................... 18

IV.   Section 2(a) does not violate the NVRA .................................................................. 18

V.   Section 2(a) does not excessively burden Plaintiffs' federal constitutional right to vote. 20

VI.   Plaintiffs are not entitled to a permanent injunction. .................................................. 23

**CONCLUSION** ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner,*
  387 U.S. 136 (1967) ................................................................................................ 13

*Am. Foreign Serv. Ass'n v. Trump,*
  2025 WL 1742853 (D.C. Cir. June 20, 2025) ........................................................ 10

*Am. Petrol. Inst. v. EPA,*
  683 F.3d 382 (D.C. Cir. 2012) ................................................................................ 13

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983) ................................................................................................ 21

*\*Arizona v. Inter Tribal Council of Ariz., Inc.,*
  570 U.S. 1 (2013) ............................................................................................. 6, 19

*Ass'n of Flight Attendants-CWA v. U.S. Departmentt of Transportation,*
  564 F.3d 462 (D.C. Cir. 2009) .................................................................................. 9

*Atl. States Legal Found. v. EPA,*
  325 F.3d 281 (D.C. Cir. 2003) ................................................................................ 13

*Bennett v. Spear,*
  520 U.S. 154 (1997) ................................................................................................ 12

*\*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh,*
  295 F.3d 28 (D.C. Cir. 2002) ............................................................................. 5, 24

*Brnovich v. DNC,*
  594 U.S. 657 (2021) .......................................................................................... 22, 23

*Burdick v. Takushi,*
  504 U.S. 428 (1992) .......................................................................................... 21, 22

*Chamber of Commerce of U.S. v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ............................................................................ 11, 12

*City of Arlington v. FCC,*
  569 U.S. 290 (2013) .................................................................................................. 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................ 15

*Common Cause v. Trump*,
  506 F. Supp. 3d 39 (D.D.C. 2020) .................................................................... 13

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008) .................................................................................... 22, 23

*Dalton v. Specter*,
  511 U.S. 462 (1994) ........................................................................................ 11

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ........................................................................................ 17

*Foster v. Love*,
  522 U.S. 67 (1997) ............................................................................................ 6

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) .................................................................................... 11, 18

*FTC v. Standard Oil*,
  449 U.S. 232 (1980) ........................................................................................ 12

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................................ 17

*Heckler v. Cmty. Health Servs.*,
  467 U.S. 51 (1984) ............................................................................................ 9

*Kobach v. U.S. EAC*,
  772 F.3d 1183 (10th Cir. 2014) ..................................................................... 7, 19

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
  66 F.4th 905 (11th Cir. 2023) ........................................................................ 22

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .................................................................... *passim*

*Libertarian Party v. D.C. Bd. of Elections & Ethics*,
  682 F.3d 72 (D.C. Cir. 2012) .......................................................................... 22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................... 15, 16

*McCray v. Biden*,
  574 F. Supp. 3d 1 (D.D.C. 2021)............................................................................11, 18

*McDevitt v. Wells Fargo Bank, N.A.*,
  946 F. Supp. 2d 160 (D.D.C. 2013)....................................................................... 4

*Merck Sharp & Dohme Corp. v. Lee*,
  75 F. Supp. 3d 16 (D.D.C. 2014)........................................................................... 9

*Mi Familia Vota v. Fontes*,
  719 F. Supp. 3d 929 (D. Ariz. 2024) .................................................................... 22

*Munro v. Socialist Workers Party*,
  479 U.S. 189 (1986) ................................................................................................ 23

*Myers v. United States*,
  272 U.S. 52 (1926) .................................................................................................. 5

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ................................................................................................ 9

*Norman v. Reed*,
  502 U.S. 279 (1992) ................................................................................................ 21

*\*Nuclear Regul. Comm'n v. Texas*,
  606 U.S. 665 (2025) ..............................................................................................10, 11

*Ohio Democratic Party v. Husted*,
  834 F.3d 620 (6th Cir. 2016) ................................................................................. 23

*POET Biorefining, LLC v. EPA*,
  970 F.3d 392 (D.C. Cir. 2020)............................................................................... 15

*Pub. Citizen Health Rsch Grp. v. Comm'r, FDA*,
  740 F.2d 21 (D.C. Cir. 1984).................................................................................. 13

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) .................................................................................................... 24

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726 (D.C. Cir. 2003)............................................................................... 12

*Rubin v. City of Santa Monica*,
  308 F.3d 1008 (9th Cir. 2002) ............................................................................... 21

*Seila L. LLC v. CFPB,
    591 U.S. 197 (2020) ................................................................................................ 8

Spokeo, Inc. v. Robins,
    578 U.S. 330 (2016) .............................................................................................. 15

Stromberg Metal Works, Inc. v. Press Mech., Inc.,
    77 F.3d 928 (7th Cir. 1996) .................................................................................. 19

*Susan B. Anthony List v. Dreihaus,
    573 U.S. 149 (2014) .............................................................................................. 15

Temple Univ. Hosp., Inc. v. Nat'l Lab. Rels. Bd.,
    929 F.3d 729 (D.C. Cir. 2019) ................................................................................ 8

Touby v. United States,
    500 U.S. 160 (1991) ................................................................................................ 1

*TransUnion LLC v. Ramirez,
    594 U.S. 413 (2021) ................................................................................................ 1

Trump v. Wilcox,
    145 S. Ct. 1415 (2025) ............................................................................................ 7

Waetzig v. Halliburton Energy Servs., Inc.,
    145 S. Ct. 690 (2025) ............................................................................................ 20

Wyo. Outdoor Council v. U.S. Forest Serv.,
    165 F.3d 43 (D.C. Cir. 1999) ................................................................................ 13

Youngstown Sheet & Tube Co. v. Sawyer,
    343 U.S. 579 (1952) ................................................................................................ 5

## Statutes

5 U.S.C. § 704 ............................................................................................................ 12

52 U.S.C. § 20505 ........................................................................................................ 1

52 U.S.C. § 20508 ................................................................................................ passim

## Rules

Fed. R. Civ. P. 56 ........................................................................................................ 4

Fed. R. Evid. 401 ................................................................................................................... 20

Fed. R. Evid. 901 ................................................................................................................... 20

**Other Authorities**

Exec. Order No. 13,693 ............................................................................................................. 5

Exec. Order No. 13,338 ............................................................................................................. 6

Exec. Order No. 14,248 .................................................................................................... *passim*

## INTRODUCTION

A federal court's jurisdiction extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2. "[H]ypothetical or abstract disputes" and claims requesting "general legal oversight of the Legislative and Executive Branches" do not qualify. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Plaintiffs in these consolidated cases challenge section 2(a) of Executive Order 14,248, which directs the Election Assistance Commission ("EAC") to "take appropriate action to require" documentary proof of citizenship "in its national mail voter registration form." Exec. Order No. 14,248, § 2(a), 90 Fed. Reg. 14005 (Mar. 25, 2025) ("EO"). The EAC has done nothing yet, and what it will eventually do remains inchoate. In other words, Plaintiffs' claims challenging section 2(a) are based on hypothetical future actions that have not yet taken place and speculation that Plaintiffs will be injured by those hypothetical future actions. Because "federal courts do not issue advisory opinions," *TransUnion*, 594 U.S. at 424, this Court should dismiss Plaintiffs' claims for lack of subject-matter jurisdiction without reaching the merits.

If the Court does reach the merits, Plaintiffs' claims challenging section 2(a) fail because "[t]he Constitution vests all executive power in the President." *Touby v. United States*, 500 U.S. 160, 168 (1991) (citing U.S. Const. art. II, § 1). Here, the President lawfully directed the EAC to take all appropriate action, consistent with the National Voter Registration Act of 1993 ("NVRA"), to begin the process for adding a documentary-proof-of-citizenship requirement to the national voter registration form. Therefore, Defendants are entitled to summary judgment on Plaintiffs' claims challenging section 2(a).

## BACKGROUND

The NVRA requires States to "accept and use" a uniform federal form ("federal form") to register voters for federal elections. 52 U.S.C. § 20505(a)(1). Congress charged the EAC, *id*.

§ 20921, which was created under the Help America Vote Act of 2002 ("HAVA"), *id.* §§ 20901 *et seq.*, "in consultation with the chief election officers of the States," with "develop[ing] a mail voter registration application form for elections for federal office" and "promulgat[ing] regulations needed to carry out that task," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 5, 10 (D.C. Cir. 2016); 52 U.S.C. § 20508(a)(2).

On March 25, 2025, President Trump issued Executive Order No. 14,248, entitled "Preserving and Protecting the Integrity of American Elections," 90 Fed. Reg. 14005 (Mar. 25, 2025) ("Executive Order" or "EO"; sections cited as "EO § n"). The Executive Order explains that "[f]ree, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." *Id.* § 1. It declares that President Trump's Administration will "enforce Federal law and . . . protect the integrity of our election process." *Id.* To achieve that end, the Executive Order "enforce[s] the Federal prohibition on foreign nationals voting in Federal elections," *id.* § 2, by instructing the EAC to take action to require documentary proof of citizenship on the federal form.

On March 31 and April 1, 2025, Plaintiffs League of United Latin American Citizens, Secure Families Initiative, and Arizona Students' Association ("LULAC Plaintiffs"); Democratic National Committee, Democratic Governors Association, DSCC, DCCC, U.S. Senate Minority Leader Charles E. Schumer, and U.S. House of Representatives Minority Leader Hakeem S. Jeffries ("Democratic Party Plaintiffs"); and League of Women Voters Education Fund, League of Women Voters of the United States, League of Women Voters of Arizona, Hispanic Federation, National Association for the Advancement of Colored People, OCA – Asian Pacific American Advocates, and Asian and Pacific Islander American Vote ("League Plaintiffs") filed complaints challenging several sections of the Executive Order, including section 2(a). *See* No. 1:25-cv-946,

Compl. (LULAC Plaintiffs); No. 1:25-cv-952, Compl. (Democratic Party Plaintiffs); No. 1:25-cv-955, Compl. (League Plaintiffs). The Court entered a scheduling order on June 20, 2025, setting a multi-phased summary-judgment schedule. Scheduling Order, ECF No. 141.[1] Because "[a]ll parties agree[d] that Plaintiffs' challenges to Section 2(a) of the Executive Order . . . can be resolved without discovery," the Court ordered the parties to move for summary judgment on Plaintiffs' section 2(a) claims separately, and earlier, than the rest of Plaintiffs' claims. *Id*. at 2 (¶ 3).

All three groups of Plaintiffs filed motions for partial summary judgment on July 11, 2025. *See* ECF Nos. 145 (League and LULAC Plaintiffs), 146 (Democratic Party Plaintiffs). Despite the Court's order requiring the parties to move for partial summary judgment on all Plaintiffs' claims challenging section 2(a) in phase one of the schedule, *see* ECF No. 141, Plaintiffs' motions stated that they "do not seek summary judgment on [Plaintiffs'] separate APA claims" challenging section 2(a), ECF No. 145-1 at 21 n.15; ECF No. 146-1 at 9 n.3. Moreover, contrary to the parties' agreement and the Court's order, plaintiffs' motions purport to introduce voluminous evidence, including declarations, which have not been subject to discovery. *See* Defs.' Rule 56(d) Mot., ECF 160.

In accordance with the scheduling order, Defendants now move for partial summary judgment on all of Plaintiffs' claims challenging EO section 2(a). Defendants also oppose, on legal grounds, Plaintiffs' motions for partial summary judgment.

---

[1] All three cases—1:25-cv-946, 1:25-cv-952, 1:25-cv-955—have been consolidated with the lead case, 1:25-cv-946, and the ECF citations refer to that case.

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail on [a summary judgment] motion, the moving party must demonstrate either that there is no 'genuine' factual dispute, or that any such dispute is not 'material' to the case." *McDevitt v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 160, 166 (D.D.C. 2013). "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* "In deciding a motion for summary judgment, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Id.* at 166–67.

## ARGUMENT

This Court should deny Plaintiffs' motions for partial summary judgment and grant Defendants' motion for partial summary judgment because Plaintiffs lack standing to bring their section 2(a) claims. But even if this Court determines it has jurisdiction, Plaintiffs' claims fail because they lack a cause of action to bring their nonstatutory claims; their APA claims lack final agency action; and both their APA and nonstatutory claims are prudentially unripe. Moreover, section 2(a) does not violate the separation of powers, the Elections Clause, the NVRA, HAVA, or the First or Fifth Amendments. Because Plaintiffs' claims fail on the merits, and because Plaintiffs are not irreparably harmed by section 2(a), Plaintiffs are also not entitled to a permanent injunction.

I.    **Section 2(a) merely directs the EAC to begin a process—it does not violate the separation of powers, the Elections Clause, or HAVA.**

Plaintiffs argue that the President has no power to "command changes to the [f]ederal [f]orm" because the "Elections Clause vests Congress and the States—not the President—with authority to set rules for congressional elections." ECF No. 145-1 at 21; ECF No. 146-1 at 12.[2] But that argument responds to the wrong question. The relevant question is not whether the President can command changes to the federal form—it is whether the President can direct Executive agencies, like the EAC, to take certain actions consistent with their statutory duties. That is what section 2(a) does—it simply directs the EAC to commence its rulemaking process.

Article II, section 1 of the Constitution provides that "[t]he executive power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. "[T]he President's power necessarily encompasses 'general administrative control of those executing the laws,' . . . throughout the Executive Branch of government, of which he is the head." *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (internal citation omitted); *see Myers v. United States*, 272 U.S. 52, 135 (1926) (explaining that the President "may properly supervise and guide [agency officials'] construction of the statutes under which they act in order to secure that unitary and uniform execution of the laws which [Article II] of the Constitution evidently contemplated in vesting general executive power in the President alone"). While the President is not a "lawmaker," he may "direct that a congressional policy be executed in a manner prescribed by Congress." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587–88 (1952). This is why Presidents of both parties have long directed agencies to exercise their authority to take regulatory actions without any suggestion of constitutional impropriety. *See, e.g.*, Exec. Order

---

[2] Unless expressly stated otherwise, record citations herein refer to internal pagination.

No. 13,693, 80 Fed. Reg. 15,871 (Mar. 19, 2015); Exec. Order No. 13,338, 69 Fed. Reg. 26,751 (May 11, 2004).

The Elections Clause provides that States may choose "[t]he Times, Places and Manner of holding" federal elections, unless "Congress . . . make[s] or alter[s] such Regulations." U.S. Const. art. I, § 4, cl. 1. The Clause "invests the States with responsibility for the mechanics of congressional elections, . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (internal citation omitted). Pursuant to its authority under the Elections Clause, Congress empowered the EAC to "prescribe such regulations as are necessary to . . . develop a mail voter registration application form for elections for Federal office" "in consultation with the chief election officers of the States." 52 U.S.C. § 20508(a)(1)– (2). The EAC exercises Executive power when it carries out its statutory duties and is therefore subject to the administrative control of the President. It is undisputed that the EAC has the authority to update the federal form.

Section 2(a) of the Executive Order directs the EAC to "take appropriate action to require" documentary proof of citizenship on the federal form. This directive makes sense in view of the nature of the NVRA's requirement that the EAC prescribe regulations to include information that is "necessary" to assess voter eligibility on the federal form. The NVRA empowers the EAC to "prescribe such regulations as are necessary to . . . develop a mail voter registration application form for elections for Federal Office" "in consultation with the chief election officers of the States." 52 U.S.C. § 20508(a). The form "may require only such . . . information . . . as is necessary to enable the appropriate state election official to assess the eligibility of the applicant." *Id*. § 20508(b)(1). "[T]he phrase 'may require only' in [§ 20508(b)(1)] means that the EAC 'shall require information that's necessary, but may only require that information.'" *Arizona v. Inter*

6

*Tribal Council of Ariz., Inc*., 570 U.S. 1, 18 (2013) ("*ITCA*") (citation omitted).[3] In other words, if the EAC determines that something is "necessary" for a state official to assess a voter registration applicant's eligibility to vote, then it must require it on the form. *See id*. Section 2(a) therefore simply directs the EAC to begin the process for adding a documentary-proof-of-citizenship requirement to the federal form and instructs that if it determines such a requirement is necessary, then it is statutorily required to add it to the form. The process's result therefore is dictated not by section 2(a) but by the EAC's necessity determination. The Executive Order's savings clause, mandating that the order "be implemented consistent with applicable law," EO § 11(b), further reinforces this view. Section 2(a) therefore does not violate the separation of powers, the Elections Clause, or HAVA.[4] *See* ECF No. 145-1 at 25 ("To be sure, the President can . . . recommend that the EAC consider taking certain measures . . . .").

Plaintiffs contend that *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), "has no bearing on the analysis" of whether the President may "control the EAC's regulation of the Federal Form" because "the EAC does not wield considerable executive power." ECF No. 145-1 at 28–29. But setting aside whether the President can control the contents of the federal form—which section 2(a) does not attempt to do—Plaintiffs are wrong that the EAC does not wield Executive power and that *Trump v. Wilcox* says nothing about whether the President can direct it in accordance with its statutory duties. If an agency like the EAC "exercise[s] any executive power," it is subject to

---

[3] *Kobach v. U.S. EAC*, 772 F.3d 1183, 1194-96 (10th Cir. 2014), held that the EAC has discretion to determine whether adding a documentary proof-of-citizenship requirement to the Federal Form is "necessary," not whether the EAC has discretion to decline to add that requirement even if it determines it is "necessary" for a State to enforce its own eligibility requirements.

[4] The Democratic Party Plaintiffs bring an APA claim that section 2(a) violates HAVA because it "commands the EAC to: Reach a pre-determined conclusion about how to amend the Federal Form, namely by adding the President's preferred DPOC requirement." No. 1:25-cv-952, Compl. ¶ 218. For the reasons explained in section I, this claim fails. *Supra* I.

the President's supervisory authority because "[t]he entire 'executive Power' belongs to the President alone." *Seila L. LLC v. CFPB*, 591 U.S. 197, 213, 216–17 (2020); *see also id.* at 216 & n.2 ("[i]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree"); *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (even though the activities of administrative agencies "take 'legislative' and 'judicial' forms," "they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power'" (quoting U.S. Const. art. II, § 1, cl. 1)).

Next, Plaintiffs assert that defendants are "judicially estopped" from suggesting that the EAC may determine, at the end of its rulemaking process, not to adopt a documentary-proof-of-citizenship requirement because of certain attorney statements made at the April 17, 2025, preliminary-injunction hearing. ECF No. 145-1 at 31 & n.16; ECF No. 146-1 at 19. They are mistaken. "[T]hree key factors" inform whether judicial estoppel applies in a particular case:

> (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Temple Univ. Hosp., Inc. v. Nat'l Lab. Rels. Bd.*, 929 F.3d 729, 733 (D.C. Cir. 2019). Plaintiffs identify no favorable decision secured through the attorney statements made during a hearing held on a motion for emergency relief. And those prior attorney statements cannot supersede the text of the Executive Order, which as explained, contains a qualified direction to "take appropriate action." EO § 2(a). Thus, there is no "perception" that this Court has been "misled," nor will Defendants derive an "unfair advantage" or impose an "unfair detriment" on Plaintiffs if not

estopped. Therefore, factors 2 and 3 are not met. Moreover, judicial estoppel should not apply where it "would compromise a governmental interest in enforcing the law." *New Hampshire v. Maine*, 532 U.S. 742, 755 (2001). "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60 (1984). "When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Id*. Judicially estopping Defendants from arguing that the outcome of the EAC's rulemaking process is not preordained would prevent the Government from lawfully enforcing section 2(a).

Plaintiffs cite *Ass'n of Flight Attendants-CWA v. U.S. Department of Transportation*, 564 F.3d 462, 466 (D.C. Cir. 2009), and *Merck Sharp & Dohme Corp. v. Lee*, 75 F. Supp. 3d 16, 28–29 (D.D.C. 2014), to support their argument that Defendants should be judicially estopped. But the court in *Ass'n of Flight Attendants-CWA* determined that AFA failed to establish standing and dismissed the case for lack of subject-matter jurisdiction—it made no mention of judicial estoppel. 564 F.3d at 469. And *Merck Sharp & Dohme Corp*. instructs that, because "factual stipulations are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact," counsel may be held to those concessions when they are "knowing and intentional decision[s] and not . . . mere oversight." 75 F. Supp. 3d at 28. But the in-court attorney statements to which Plaintiffs attempt to bind Defendants were not factual concessions. They concerned the legal interpretation of section 2(a). Accordingly, those cases have no bearing on this question.

## II.    Plaintiffs' claims challenging section 2(a) suffer from threshold defects on the merits.

Plaintiffs bring nonstatutory claims challenging section 2(a) on the grounds that it is ultra vires and violates the separation of powers and NVRA. No. 1:25-cv-946, Compl. ¶¶ 184–93; No. 1:25-cv-952, Compl. ¶¶ 126–41; No. 1:25-cv-955, Compl. ¶¶ 107–23. Plaintiffs also challenge section 2(a) under the APA on the basis that it is unlawful agency action in violation of the NVRA, HAVA, and the First and Fifth Amendments. No. 1:25-cv-946, Compl. ¶¶ 213–21; No. 1:25-cv-952, Compl. ¶¶ 171–78, 205–19. Plaintiffs' nonstatutory claims fail because Plaintiffs lack a cause of action to bring them. Plaintiffs' APA claims fail because there is no final agency action. And both sets of claims should also be dismissed because they are not prudentially ripe.

### a.    Plaintiffs lack a cause of action to bring their nonstatutory claims because the APA is available.

Plaintiffs lack a cause of action to bring their nonstatutory claims challenging section 2(a). The Supreme Court recently reiterated that ultra vires review is unavailable "if, as is usually the case, a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review." *Nuclear Regul. Comm'n v. Texas*, 606 U.S. 665, 681 (2025) (quotation omitted); *see also Am. Foreign Serv. Ass'n v. Trump*, 2025 WL 1742853, at *2 (D.C. Cir. June 20, 2025) ("[U]ltra vires review—which is a suit in equity, not a statutory cause of action—is 'strictly limited' when 'other judicial-review statutes' are present."). Here, the APA provides Plaintiffs with "a meaningful and adequate opportunity" to challenge section 2(a) of the Executive Order, which tasks the EAC with specific responsibilities under the Executive Order. *Nuclear Regul. Comm'n*, 606 U.S. at 681. Recognizing that fact, Plaintiffs have also brought claims under the APA.

The APA provides Plaintiffs with a meaningful opportunity for judicial review against agencies implementing final agency action in response to presidential directives even though

Plaintiffs could not bring APA claims against the President directly, *Dalton v. Specter*, 511 U.S. 462, 469 (1994) ("[T]he President's actions were not reviewable under the APA, because the President is not an 'agency' within the meaning of the APA."), because they are not entitled to an injunction or declaratory judgment against the President anyway, *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality) (noting that, "in general," courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties" (citation omitted)); *McCray v. Biden*, 574 F. Supp. 3d 1, 10–11 (D.D.C. 2021) ("[I]t is clear that a declaratory judgment is not available to Plaintiff, both because the conduct at issue does not involve a ministerial duty of the President, and because relief is available against other executive officials and so the President has not been sued as a last resort.").

This Court should not allow Plaintiffs' request for "ultra vires review" to make "an easy end-run around the limitations of . . . judicial-review statutes," like the APA, simply because Plaintiffs filed their complaint too early to use the "statutory avenue" that Congress provided. *Nuclear Regul. Comm'n*, 606 U.S. at 681–82 (an ultra vires challenge is "essentially a Hail Mary pass" that "rarely succeeds").

*Chamber of Commerce of U.S. v. Reich* is not to the contrary. There, the D.C. Circuit determined that non-statutory review was available in the absence of a cause of action under the APA. 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("recognizing the anomalous situation in which we find ourselves—not able to base judicial review on what appears to us to be an available statutory cause of action—we go on to the issue of whether appellants are entitled to bring a non-statutory cause of action questioning the legality of the Executive Order"). The D.C. Circuit reasoned that although "the 'executive's' action . . . [was] essentially that of the President," that did "not insulate the entire executive branch from judicial review." *Id*. at 1328. And because the appellants had not amended

their complaint to rely on the APA, the court determined they were entitled to nonstatutory review. *Id*. at 1326, 1328. But here, the EAC must take independent, reviewable action before any legal consequences inure. The challenged action, then, cannot be said to just be that of the President; rather the President directed the beginning of an EAC process. In addition to the Supreme Court's recent reminder, ultra vires review is available only in narrow circumstances. In sum, the postural quirks animating the court's decision in *Reich* are not present in this case.

### b. Plaintiffs' APA claims fail because there is no final agency action.

Plaintiffs' APA claims challenging section 2(a) as unlawful agency action in violation of the NVRA, HAVA, and the First and Fifth Amendments fail because there is no final agency action. No. 1:25-cv-946, Compl. ¶¶ 213–21; No. 1:25-cv-952, Compl. ¶¶ 171–78, 205–19. Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704; *see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (affirming dismissal under Rule 12(b)(6) because "[i]f there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA"). "An agency action is deemed final if it is 'definitive' and has a 'direct and immediate . . . effect on the day-to-day business' of the party challenging the agency action." 324 F.3d at 731 (quoting *FTC v. Standard Oil*, 449 U.S. 232, 239 (1980)). "Final agency action 'mark[s] the consummation of the agency's decisionmaking process' and is 'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id*. (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). "Agency action is considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship." *Id*.

Here, no final agency action exists. The EAC has not completed the process for considering

12

whether to add a documentary-proof-of-citizenship requirement to the federal form pursuant to

section 2(a). As a result, there is no direct and immediate effect on Plaintiffs; no consummation of

the EAC's decision-making process; and no obligation has been imposed, right denied, or legal

relationship fixed. That the EAC began the first step in its process by sending a letter to the chief

election officers of the States does not change the conclusion. *See* ECF No. 145-1 at 9; ECF No.

146-1 at 8–9. The Court should dismiss Plaintiffs' APA claims on that basis.

### c. Plaintiffs' claims are also prudentially unripe.

Plaintiffs' APA and nonstatutory claims are prudentially unripe. *See Common Cause v.

Trump*, 506 F. Supp. 3d 39, 45–53 (D.D.C. 2020) (applying prudential ripeness to non-APA

challenge to executive action). To "assess[] the prudential ripeness of a case," courts consider "the

'fitness of the issues for judicial decision' and the extent to which withholding a decision will

cause 'hardship to the parties.'" *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012)

(quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). The fitness requirement protects

"the agency's interest in crystallizing its policy before that policy is subjected to judicial review

and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete

setting." *Id.* (quoting *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999)).

Fitness "depends on whether it is purely legal, whether consideration of the issue would benefit

from a more concrete setting, and whether the agency's action is sufficiently final." *Id.* (quoting

*Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)). Hardship caused by deferring

review must be "immediate and significant," *id.* at 389, but "will rarely overcome the finality and

fitness problems inherent in attempts to review tentative positions," *id.* (quoting *Pub. Citizen

Health Rsch Grp. v. Comm'r, FDA*, 740 F.2d 21, 31 (D.C. Cir. 1984)).

Because the EAC has not completed the process for considering whether to add a documentary-proof-of-citizenship requirement to the federal form pursuant to section 2(a), in addition to there not being any final agency action, Plaintiffs' claims are not fit for adjudication. Any harm Plaintiffs allege that they will suffer cannot "overcome the finality and fitness problem" that plagues their claims. Here, the validity of the EAC's eventual action—whatever that action will be—will depend on an administrative record and the reasoning underlying whatever necessity determination the agency ultimately makes. Right now, the EAC's potential future action is not concrete, is not final, and—to the extent it depends on factual predicates—is not purely legal.

## III.    Plaintiffs lack standing to challenge section 2(a).

Defendants are entitled to judgment because, as a matter of law, the Court lacks subject-matter jurisdiction to reach the merits of Plaintiff's section 2(a) challenges since their future hypothetical injury is speculative. Still, Plaintiffs' motions for partial summary judgment attempt to establish standing and ripeness through reliance on dozens of exhibits, including 18 declarations, which they memorialize in 186 statements of putatively "undisputed" "material" facts. *See* ECF No. 145-3 (list of League and LULAC Plaintiffs' exhibits); ECF No. 146-3 (list of Democratic Party Plaintiffs' exhibits); ECF No. 145-2 (League and LULAC Plaintiffs' SoF); ECF No. 146-2 (Democratic Party Plaintiffs' SoF). But Plaintiffs' extrinsic evidence is not properly before the Court. *See* Defs.' Rule 56(d) Mot., ECF 160.[5] If this Court rejects Defendants' argument that Plaintiffs lack standing as a matter of law, then it should still deny Plaintiffs' motions because Plaintiffs cannot establish the factual predicates for jurisdiction based on untested evidence that Defendants cannot meaningfully oppose.

---

[5] In an abundance of caution, Defendants attach responses to Plaintiffs' "Statements of Undisputed Material Facts" to this motion. However, Defendants reserve the right to revise and supplement their responses in the event Plaintiffs' motions are deferred for discovery.

### a. **Plaintiffs' injury is speculative.**

Article III restricts federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limitation on "[t]he judicial Power of the United States" is fundamental to the judiciary's role within the constitutional separation of powers. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 1). Standing "is a doctrine rooted in the traditional understanding of a case or controversy," which developed "to ensure that federal courts do not exceed their authority." *Id.* at 338. To establish Article III standing, a plaintiff must demonstrate that it (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Id.* (citation omitted). "An allegation of future injury may suffice [only] if the threatened injury is 'certainly impending,' or [if] there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Dreihaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n. 5 (2013)). Because Plaintiffs bring a pre-enforcement challenge, "[c]onstitutional ripeness is subsumed into the Article III requirement of standing," requiring a plaintiff to show "an injury-in-fact that is imminent or certainly impending." *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020).

As a matter of law, Plaintiffs' purported injury is not justiciable because it is based on a hypothetical outcome of a separate rulemaking process that has yet to occur. Just like plaintiffs in APA cases cannot challenge—and are not injured by—notices of proposed rulemakings for rules that do not yet exist, Plaintiffs here cannot challenge the initiation of a rulemaking process for fears of what the outcome of that process may eventually be. Section 2(a) of the EO inflicts no

imminent harm on Plaintiffs. As explained above, it simply directs the EAC to "take appropriate action"—i.e., to commence the rulemaking process—"to require . . . documentary proof of United States citizenship" on the federal form and instructs that if it determines such a requirement is necessary, then it is statutorily required to add it to the form. EO § 2(a); *supra* I. The EAC has not completed its rulemaking process or made any necessity determination, which, as explained, are still required before the EAC may add a documentary proof-of-citizenship requirement to the federal form. Because that statutorily required process must still be followed, and because the outcome of that process is distant in time and uncertain, section 2(a) inflicts no "certainly impending" future injury on Plaintiffs.

Nor does it matter that the EAC has sent a letter to the chief election officers of the States regarding how to implement section 2(a). *See* ECF No. 145-1 at 9; ECF No. 146-1 at 8–9. That letter is only the first step in the consultation process and does make the outcome of that process any more certain. Plaintiffs respond that their alleged injury concerning section 2(a) is not speculative because it "dictates a particular outcome and leaves no uncertainty by prescribing the substance of the documentary-proof-of-citizenship requirement it purports to mandate." ECF No. 146-1 at 18–19; *see also* ECF No. 145-1 at 30–31. But the EO requires the commencement of a process; it does not require the outcome of that process. *See supra* I.

### b.  Plaintiffs lack organizational and associational standing.

Plaintiffs must—but cannot—affirmatively demonstrate their standing. *See Lujan*, 504 U.S. at 561. Plaintiffs contend that they have organizational standing because "Section 2(a)'s mandate that the EAC require documentary proof of citizenship imminently threatens Plaintiffs' core activities—voter registration and education programming—by making it impossible for them to register some voters using the Federal Form." ECF No. 145-1 at 33; *see also* ECF No. 146-1 at

24. But again, to support that contention, Plaintiffs cite extrinsic evidence upon which they are not entitled to rely. ECF 160. They also claim that they have demonstrated an Article III injury because section 2(a) will require them to "divert resources toward providing new and additional services to eligible registered voters." ECF No. 145-1 at 33. But the Supreme Court has said that "standing" does not routinely "exist[ ] when an organization diverts its resources in response to a defendant's actions." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 370 (2024). Plaintiffs argue that their case is like *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), because the "burden that a documentary proof-of-citizenship requirement would impose on Plaintiffs would be 'far more than simply a setback to [their] abstract social interests,'" ECF No. 145-1 at 32–34, but the Supreme Court has stated that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *FDA*, 602 U.S. at 396. Holding that Plaintiffs' have organizational standing based on a diversion of resources in this case would do just that. Regardless, for the reasons explained above, any burden that could result from section 2(a) is speculative.

Similarly, Plaintiffs argue that they have associational standing because "[t]here are members of ASA who are eligible to vote but would have difficulty complying with a documentary proof-of-citizenship requirement." ECF No. 145-1 at 35; *see also* ECF No. 146-1 at 22–24. And the Democratic Party Plaintiffs claim they have standing "based on direct harm to their electoral prospects" because the "burdens imposed by the documentary proof of citizenship requirement would fall disproportionately on citizens across the country who are most likely to support Democrats." ECF No. 146-1 at 20–21. Plaintiffs cite extrinsic evidence to support those assertions. But, as explained, that evidence is not properly before the Court, and the Court should disregard it. ECF No. 160.

### c. Plaintiffs are not entitled to a declaratory judgment against the President.

Plaintiffs' claims are not redressable by an injunction or a declaratory judgment against the President and his Executive Office. Plaintiffs do not seek an injunction against the President, which they are not entitled to. *See* ECF No. 145-1 at 36; ECF No. 146-1 at 27 n.7; *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality). But they also lack standing to seek a declaratory judgment against the President. *McCray v. Biden*, 574 F. Supp. 3d 1, 10–11 (D.D.C. 2021) ("[I]t is clear that a declaratory judgment is not available to Plaintiff, both because the conduct at issue does not involve a ministerial duty of the President, and because relief is available against other executive officials and so the President has not been sued as a last resort."). This Court should therefore dismiss Plaintiffs' claims seeking a declaratory judgment against the President.

## IV.  Section 2(a) does not violate the NVRA.

Plaintiffs further contend that section 2(a) "directly conflicts with the NVRA's substantive provisions." ECF No. 146-1 at 15; *see also* ECF No. 145-1 at 24. Specifically, they argue that because the NVRA instructs that the federal form "may require only" the information "*necessary* to enable the appropriate State election official to assess" the applicant's eligibility, and because the form already requires the applicant to attest under penalty of perjury that he or she meets each requirement, that is all that is necessary to establish citizenship. ECF No. 146-1 at 15 (quoting 52 U.S.C. § 20508(b)(1)). Plaintiffs claim that this argument is further buttressed by Congress's instruction that the federal form "may not include any requirement for notarization *or other formal authentication*." *Id*. (quoting 52 U.S.C. § 20508(b)(3)). But section 2(a) does not conflict with those provisions of the NVRA or any provision.

First, as the form's developer, the EAC determines what identifying information "is

necessary" to assess an applicant's eligibility to vote. *Newby*, 838 F.3d at 10 ("It would be illogical for Congress to provide in section 20508(b)(1) that the consultant, rather than the developer, would determine 'necessity.'"); *see also ITCA*, 570 U.S. at 19. Congress's determination that the form must contain an attestation that the applicant meets the requirements to register to vote does not preclude the EAC from later determining that documentary proof of citizenship is necessary for state election officials to determine voter eligibility. If the EAC made such a determination through notice-and-comment rulemaking in a manner supported by a future administrative record, it could prescribe regulations to alter the form—because as discussed above, by statute the EAC makes the determination of what information is necessary to enable election officials to assess an applicant's eligibility to register to vote and therefore what information must be included on the federal form. 52 U.S.C. § 20508(b)(1), (b)(2)(B). That Congress may have considered such a requirement and decided against including it at the time of the NVRA's passage has no bearing on whether the EAC may later add such a requirement. *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 931 (7th Cir. 1996) ("When text and legislative history disagree, the text controls."); ECF No. 145-1 at 24.

Plaintiffs cite *Kobach*, 772 F.3d at 1189, to support their argument that documentary proof of citizenship is not "necessary" to determine voter eligibility. ECF No. 146-1 at 16 ("That is why when Arizona and Kansas separately requested that the EAC add documentary proof of citizenship to the Federal Form's state-specific instructions, their efforts were rejected."). But *Kobach*, 772 F.3d at 1194–96, held only that the EAC has discretion to determine whether adding a documentary proof-of-citizenship requirement to the federal form is "necessary," and that the district court erred by holding otherwise. Whether such proof is necessary as a matter of law will depend on the outcome of a future administrative process.

Nor does 52 U.S.C. § 20508(b)(3)'s prohibition on "any requirement for notarization or other formal authentication" foreclose adding a documentary-proof-of-citizenship requirement to the form. "Formal authentication" must be read in light of "notarization" and is best understood as a mechanism to verify the applicant's identity rather than substantiate his citizenship. *See Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 699 (2025) ("[S]tatutory terms must be read in the context of their neighbors . . . ."). Notarization, after all, is when a notary public "verif[ies] the identity of the signer[ ], [his or her] willingness to sign the documents, and [his or her] awareness of the contents of the document." Pat Kinsel, *What Does a Notary Public Do?*, Notarize with Proof, (June 11, 2024), https://www.notarize.com/blog/what-is-a-notary-public. Moreover, authentication is not synonymous with proof. Authentication means "finding that" something "is what the proponent claims it is." Fed. R. Evid. 901(a). But whether something is authentic says nothing about whether it "has any tendency to make a fact more or less probable." Fed. R. Evid. 401(a). Here, the NVRA prohibits any formal requirement that the applicant demonstrate that something is genuine—like a genuine signature. But that does not prohibit the EAC from determining what level of proof is necessary to enable state election officials to assess an applicant's citizenship, which is a separate issue from authentication.

## V. Section 2(a) does not excessively burden Plaintiffs' federal constitutional right to vote.

The Democratic Party Plaintiffs challenge section 2(a) on the grounds that it constitutes agency action in violation of the First and Fifth Amendments by excessively burdening Plaintiffs' federal constitutional right to vote. No. 1:25-cv-952, Compl. ¶¶ 205–12. In particular, Plaintiffs argue that section 2(a) burdens voters because "nearly 9 percent of American citizens of voting age . . . lack access to documentation necessary to prove citizenship." *Id.* ¶ 208. And they claim that section 2(a)'s instruction to consider adding a documentary-proof-of-citizenship requirement

to the form is not "narrowly tailored to advance a compelling government interest" because the "NVRA already establishes how a voter affirms their [sic] citizenship for purposes of establishing their qualification to vote." *Id.* ¶ 210.

"Election laws will invariably impose some burden upon individual voters," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992), and affect "the individual's right to vote and his right to associate with others for political ends," *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). "A court considering a challenge to a [government] election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and [Fifth] Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). When an individual's First and Fifth Amendment rights are severely burdened, the law must be "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But when an election law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and [Fifth] Amendment rights of voters," the government's "important regulatory interests are generally sufficient to justify the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788).

As a preliminary matter, section 2(a) does not burden Plaintiffs' First or Fifth Amendment rights because it is not prudentially ripe and any injury flowing from it is speculative. *See supra* I.a., II.c. But assuming the EAC concluded that documentary proof of citizenship was necessary and must be included on the federal form, such a requirement would not severely burden individual voters' First and Fifth Amendment rights because it is "generally applicable, even-handed, politically neutral, and . . . protect[s] the reliability and integrity of the election process." *Rubin v.*

*City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002). Because section 2(a) does not severely burden Plaintiffs' First and Fifth Amendment rights, Defendants' "important regulatory interests" sufficiently justify any burden. *Libertarian Party v. D.C. Bd. of Elections & Ethics*, 682 F.3d 72, 76 (D.C. Cir. 2012) (quoting *Burdick*, 504 U.S. at 434).

The Executive Order identifies several important interests that section 2(a) furthers, including: ensuring that American elections comply with federal laws that protect Americans' voting rights, guarding against dilution by illegal voting, promoting public trust in elections. EO § 1. But plainly, section 2(a) promotes compliance with "the Federal prohibition on foreign nationals voting in Federal elections." *Id*. § 2. And "[t]here is no question about the legitimacy or importance of the [Government's] interest in counting only the votes of eligible voters." *Crawford v. Marion Cnty. Election Bd*., 553 U.S. 181, 196 (2008) ("*Crawford II*"). "[T]he [Government] is entitled to enact prophylactic legislation to prevent the occurrence of non-citizen voting." *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 1010 (D. Ariz. 2024) (quoting *Crawford II*, 553 U.S. at 196; Brnovich v. *DNC*, 594 U.S. 657, 685–86 (2021); *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 925 (11th Cir. 2023) (rejecting plaintiffs' argument that a voting law designed to prevent voter fraud was a "proverbial solution in search of a problem" and a pretext for discrimination because "[t]he Supreme Court has already held that deterring voter fraud is a legitimate policy on which to enact an election law, even in the absence of any record evidence of voter fraud.")), *aff'd in part, vacated in part, remanded*, 129 F.4th 691 (9th Cir. 2025). "[V]oter fraud in Arizona," and elsewhere, "does exist," and Defendants' "interests in preventing voter fraud and unintentional non-citizen voting are both legitimate, as both forms of non-citizen voting can undermine the integrity of [federal] elections." *Id*. at 1010–11.

22

Additionally, Defendants have an important interest in "safeguarding public confidence by eliminating [fraud and] even appearances of fraud." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 633 (6th Cir. 2016) (internal quotation marks omitted). "[P]ublic confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process." *Crawford II*, 553 U.S. at 197. And the "electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters." *Id*. (citation omitted). Defendants are "permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195–96 (1986); *DNC*, 594 U.S. at 685–86. Defendants' important interests therefore sufficiently justify any minimal restriction on Plaintiffs' First and Fifth Amendment rights, and Plaintiffs' claim fails.

## VI.    Plaintiffs are not entitled to a permanent injunction.

Plaintiffs request that this Court "declare that Section 2(a) . . . is unlawful and grant a permanent injunction barring its implementation because it was issued *ultra vires* in violation of the Elections Clause and constitutional separation of powers." ECF No. 145-1 at 37; *see also* ECF No. 146-1 at 26. But for the reasons explained above, Plaintiffs' claims fail because section 2(a) was not issued ultra vires. Nor can Plaintiffs demonstrate irreparable harm because no final agency action has occurred; Plaintiffs' claims are not prudentially ripe; and any future injury is speculative. *See supra* II., III. In fact, were this Court to permanently enjoin section 2(a), it would block the EAC from undergoing its rulemaking process and constitute an improper constraint on agency decision-making.

Still, Plaintiffs claim that they are irreparably harmed because requiring documentary proof of citizenship on the federal form "unquestionably make[s] it more difficult for the League[] to

accomplish [its] primary mission of registering voters." ECF No. 145-1 at 37–38 (quoting *Newby*, 838 F.3d at 9). Plaintiffs argue that they have established that harm "[o]n the record here and under the law as established in *Newby*." *Id*. at 38. But, as discussed above, Plaintiffs cannot rely on extrinsic "record" evidence to support their claim of irreparable harm. ECF 160. And in *Newby*, the EAC never made the necessity finding required by the NVRA to determine whether the Alabama, Georgia, and Kansas's requests to add proof-of-citizenship requirements to the federal form should be approved. 838 F.3d at 12. That is far from the present posture of this case in which the EAC had only begun the process for considering whether to add a documentary-proof-of-citizenship requirement to the federal form.

The balance of the equities and public interest favor Defendants, rather, because the public has a "fundamental" interest in "maintaining our constitutional Republic" by ensuring that federal elections are "[f]ree, fair, and honest," and "unmarred by fraud, errors, or suspicion." EO § 1. "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). And section 2(a) seeks to increase public confidence in federal elections by ensuring that only citizens vote.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motions for Partial Summary Judgment and grant Defendants' Motion for Partial Summary Judgment.

Dated: August 8, 2025                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         ERIC J. HAMILTON
                                         Deputy Assistant Attorney General
                                         Civil Division, Federal Programs Branch

                                         JOSEPH E. BORSON
                                         Assistant Director
                                         Civil Division, Federal Programs Branch

                                         /s/ Bridget K. O'Hickey
                                         BRIDGET K. O'HICKEY
                                         Counsel to the Assistant Attorney General
                                         U.S. Department of Justice, Civil Division
                                         950 Pennsylvania Avenue,
                                         NW Washington, DC 20530
                                         (202) 353-8679
                                         Bridget.K.O'Hickey@usdoj.gov

                                         MARIANNE F. KIES
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         (202) 353-1819
                                         Marianne.F.Kies@usdoj.gov

                                         *Attorneys for Defendants*