**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br>  Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>  Defendants. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>  Defendants. | Civil Action No. 25-0955 (CKK) |

**MEMORANDUM OPINION & ORDER**
(August 28, 2025)

The Federal Defendants[1] have filed a [160] Motion to Strike, Deny, or Defer Consideration of the Motions for Partial Summary Judgment filed by the Nonpartisan Plaintiffs[2]

---

[1] The Federal Defendants include Donald J. Trump, in his official capacity as President of the United States, and various federal agencies and federal officers in their official capacities.

[2] The Nonpartisan Plaintiffs are Plaintiffs in Case No. 25-cv-946 (the League of United Latin American Citizens, the Secure Families Initiative, and the Arizona Students' Association; collectively, the "LULAC Plaintiffs") and Case

1

and the Democratic Party Plaintiffs[3] ("Defs.' Mot."), arguing that Plaintiffs violated this Court's [141] Scheduling Order by attaching declarations and other exhibits to their recent motions for partial summary judgment on their claims regarding Section 2(a) of Executive Order 14,248. The Federal Defendants also request an additional opportunity to take discovery from Plaintiffs' declarants. *See* Fed. R. Civ. P. 56(d). All Plaintiffs oppose the Federal Defendants' Motion. Nonpartisan Pls.' Opp'n, Dkt. No. 170; Dem. Pls.' Opp'n, Dkt. No. 172. Upon consideration of the parties' submissions, the relevant legal authority, and the entire record, the Court shall **DENY** the Federal Defendant's [160] Motion to Strike, Deny, or Defer Consideration.

## I. BACKGROUND

Plaintiffs in these consolidated cases challenge various provisions of a March 2025 Executive Order entitled "Preserving and Protecting the Integrity of American Elections." *See* Exec. Order 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025).

Soon after filing their cases, Plaintiffs moved for preliminary injunctions against the implementation of several of the Executive Order's provisions. *See* Nonpartisan Pls.' Mot., Dkt. No. 32; Dem. Pls.' Mot., Dkt. No. 53. Each of these motions for preliminary injunctions was accompanied by several declarations setting out the factual bases for Plaintiffs' Article III standing and their arguments about why the implementation of the challenged provisions would cause irreparable harm to them and their members. *See* Dkt Nos. 32-6, 32-13, 32-20, 32-23 to 32-25, 32-29 to 32-31, 53-2 to 53-7. Plaintiffs also attached several other exhibits to their

---

No. 25-cv-955 (the League of Women Voters Education Fund, the League of Women Voters of the United States, the League of Women Voters of Arizona, the Hispanic Federation, the National Association for the Advancement of Colored People, OCA – Asian Pacific American Advocates, and Asian and Pacific Islander American Vote; collectively, the "League Plaintiffs").

[3] The Democratic Party Plaintiffs are Plaintiffs in Case No. 25-cv-552: the Democratic National Committee, Democratic Governors Association, DSCC, DCCC, U.S. Senate Minority Leader Charles E. Schumer, and U.S. House of Representatives Minority Leader Hakeem S. Jeffries.

motions for preliminary injunctions. *See* Dkt. Nos. 32-2 to 32-5, 32-7 to 32-12, 32-14 to 32-19, 32-21 to 32-22, 32-26 to 32-28, 32-32, 53-8 to 53-14.

This Court granted Plaintiffs' motions in part and preliminarily enjoined the implementation of two provisions of the Executive Order, including Section 2(a), which directs the Election Assistance Commission ("EAC") to modify an important federal voter registration application form to require applicants to provide documentary proof of U.S. citizenship. *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 226 (D.D.C. 2025) (CKK). Some Plaintiffs also moved for injunctions against three other provisions of the Executive Order, but the Court denied those requests. *See id.* (denying the Democratic Party Plaintiffs' motion as to Sections 2(b), 7(a), and 7(b)).

After the Court resolved the parties' motions for preliminary relief, it directed the parties to propose a schedule for further proceedings. *See* Minute Order (Apr. 28, 2025). In their joint response, the parties informed the Court that the Federal Defendants did not intend to move to dismiss Plaintiffs' claims. Joint Scheduling Proposal, Dkt. No. 119, at 4. The Federal Defendants then argued that Plaintiffs' claims "present pure legal issues, which can be decided without discovery" and contended that discovery was therefore "an unnecessary precondition to filing summary-judgment motions in this case." *Id.* at 5–6. Based on the parties' representations, the Court ordered the parties to file a joint scheduling proposal for summary judgment briefing and to appear for a scheduling conference. *See* Order, Dkt. No. 122.

In the parties' written proposal for summary judgment briefing, the Federal Defendants reiterated their position that Plaintiffs' claims "present pure legal issues" that "can and should be decided without discovery." Joint Civil Rule 16.3 Report ("LCvR 16.3 Report"), Dkt. No. 137, at 11; *see also id.* at 16 (arguing that "discovery is not appropriate"). Consistent with their

3

position that "discovery is not necessary on these purely legal claims," the Federal Defendants requested "that the deadline for initial disclosures be deferred" and proposed "one round of motions for summary judgment" with no opportunity for discovery from any party. *Id.* at 15, 19.

Meanwhile, the Democratic Party Plaintiffs argued that the Court should allow discovery on their claims regarding several provisions of Executive Order 14,248, including Sections 2(b), 2(d), 3(a), 3(d), 4(a), 4(b), 4(c), 4(d), 5(b), 7(a), and 7(b). LCvR 16.3 Report at 2–10. The LULAC Plaintiffs joined in the Democratic Party Plaintiffs' requests for discovery as to Sections 3(d), 4(a), 7(a), and 7(b). *Id.* at 11. However, the Democratic Party Plaintiffs and the LULAC Plaintiffs agreed that there was "[n]o discovery needed" to resolve Plaintiffs' claims as to Section 2(a) of the Executive Order. *Id.* at 5. The League Plaintiffs likewise agreed that "no discovery is needed with respect to claims challenging Section 2(a)." *Id.* at 15.

Despite the parties' divergent positions on discovery regarding most of Plaintiffs' claims, the parties' scheduling proposal emphasized one clear area of agreement: as to Section 2(a), the parties advised the Court, "no party is seeking discovery." LCvR 16.3 Report at 16.

At the scheduling conference, the Court confirmed with counsel that no party intended to seek discovery in connection with Plaintiffs' claims regarding Section 2(a) of the Executive Order. *See* Tr. of June 18, 2025 Hr'g ("June 18 Tr."), Dkt. No. 151-1, at 9:4–7 ("[T]he parties agree that the Plaintiffs' claims regarding Section 2(a) . . . can be resolved through motions for summary judgment without further discovery.").

The Court also confirmed directly with counsel for the Federal Defendants that they did not intend to seek any discovery and would instead be relying entirely on legal arguments for judgment in their favor. *Id.* at 21:4–15 ("I understand your position. You think no discovery on any of it. . . . I'm assuming that . . . you'll raise whatever issues . . . . that don't need discovery,

4

legally . . . .  Am I correct that's what you're doing?" "Yes, Your Honor."); *see also id.* at 11:21–22 (noting that the Federal Defendants' "position seems to be that none of [Plaintiffs' claims] need discovery").

At another point during the hearing, while discussing the prospect of limited discovery in connection with other sections of the Executive Order, the Court cautioned counsel that the issue of whether and to what extent discovery was required would affect the schedule for further proceedings, including motions for summary judgment.  *See id.* at 16:12 ("[I]f there is discovery besides what I've talked about, obviously that impacts how the schedule gets done.").

Meanwhile, counsel for the LULAC Plaintiffs requested that the Court not set an initial briefing deadline before July for motions for summary judgment, explaining, "we will want to *update our declarations*" in support of claims regarding Section 2(a).  June 18 Tr. at 18:11–14 (emphasis added).  Neither the Federal Defendants nor any other party raised any objection regarding Plaintiffs' stated intention to file declarations in support of their motions; instead, this brief statement from counsel for the LULAC Plaintiffs was the parties' sole mention of declarations, exhibits, or attachments to motions during the entire scheduling conference.  *See generally id.*  There was no discussion whatsoever from the parties of any limitations on declarations or other exhibits that might be filed in support of any party's forthcoming motions or oppositions.  *See id.*  Similarly, no party raised the prospect of taking discovery from any party's proposed declarants.  *See id.*

At the close of the scheduling conference, the Court advised counsel that it would issue a written scheduling order and that the parties should alert the Court promptly "if, for some reason, we need to make some adjustment to it."  June 18 Tr. at 23:19–25.

5

The Court then issued a detailed scheduling order setting out a three-phase procedure for motions for summary judgment. Scheduling Order, Dkt. No. 141. As relevant here, the first phase of the ordered schedule called for cross-motions for summary judgment regarding Plaintiffs' challenges to Section 2(a) of Executive Order 14,248, which would proceed without discovery from any party, with initial motions due on July 11, 2025. *Id.* at 2. Based on the parties' consistent representations, the Court's order reiterated that "[a]ll parties agree that Plaintiffs' challenges to" this provision "can be resolved without discovery on cross-motions for summary judgment." *Id.* The Court's order did not discuss or impose any limitations on the filing of declarations or other attachments to the parties' motions. *See id.*

In accordance with this order, Plaintiffs filed motions for partial summary judgment on their claims regarding Section 2(a) on July 11. *See* Nonpartisan Pls.' Mot., Dkt. No. 145; Dem. Pls.' Mot., Dkt. No. 146.

As they had done when moving for preliminary injunctions, Plaintiffs filed declarations in support of their motions for partial summary judgment to set out the factual basis for their Article III standing and their arguments regarding irreparable harm. *See* Nonpartisan Pls.' Exs. 2, 4–12, 26–27, Dkt. Nos. 145-5, 145-6 to 145-15, 145-29 to 145-30; Dem. Pls.' Exs. 1–6, Dkt. No. 146-3 at 1–68. Each of these declarations is either identical to a declaration filed in support of Plaintiffs' motions for preliminary injunctions or substantively similar to such a declaration. *See* Nonpartisan Pls.' Opp'n, Dkt. No. 170, at 10–11 & n.3 (explaining how the Nonpartisan Plaintiffs' declarations filed in support of their motion for a preliminary injunction correspond to the declarations filed in support of their motion for partial summary judgment); Decl. of Aria C. Branch, Dkt. No. 146-3, ¶¶ 4–9 (representing that the Democratic Party Plaintiffs' declarations in

6

support of their motion for partial summary judgment are "identical" to declarations filed in support of their motion for a preliminary injunction).

Plaintiffs also filed exhibits in support of their motions, relying primarily on publicly available documents. *See* Nonpartisan Pls.' Exs. 1, 3, 13–25, 28–42, Dkt. Nos. 145-4, 145-6, 145-16 to 145-28, 145-31 to 145-45; Dem. Pls.' Exs. 7–25, Dkt. No. 146-3 at 69–317. For example, Plaintiffs' exhibits include reproductions of information about passports from a public State Department website, Nonpartisan Pls.' Ex. 13, Dkt. No. 145-16, a publicly available report published by the U.S. Census Bureau, Nonpartisan Pls.' Ex. 32, Dkt. No. 145-35, information about enhanced driver's licenses from a public Department of Homeland Security website, Dem. Pls.' Ex. 8, Dkt. No. 146-3 at 72–74, and information about driver's license and identification fees from a public Minnesota Department of Public Safety website, Dem. Pls.' Ex. 11, Dkt. No. 146-3 at 85–88.

Finally, in compliance with Local Rule of Civil Procedure 7(h), Plaintiffs filed statements of material facts in support of their motions for partial summary judgment as to which Plaintiffs contend there is no material dispute. *See* LCvR 7(h) (requiring that motions for summary judgment be accompanied by such a statement unless "judicial review is based solely on the administrative record"); Nonpartisan Pls.' Statement of Material Facts, Dkt. No. 145-2; Dem. Pls.' Statement of Material Facts, Dkt. No. 146-2.

Four weeks later, on the day that Defendants' opposition and cross-motion for summary judgment regarding Plaintiffs' Section 2(a) claims was due, the Federal Defendants' counsel notified Plaintiffs' counsel for the first time that the Federal Defendants believed that Plaintiffs had violated the Court's scheduling order by filing declarations, other exhibits, and statements of facts in support of their motion for partial summary judgment. *See* Dem. Pls.' Opp'n, Dkt. No.

172, at 7–8; Dem. Pls.' Ex. A, Dkt. No. 172-1. The Federal Defendants' counsel also informed Plaintiffs' counsel that the Federal Defendants would move under Federal Rule of Civil Procedure 56(d) to strike, deny, or defer consideration of Plaintiffs' motions for partial summary judgment on that basis. Dem. Pls.' Ex. A, Dkt. No. 172-1. The Federal Defendants filed such a motion later the same day. Def.'s Mot., Dkt. No. 160. Both the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs opposed the motion. Nonpartisan Pls.' Opp'n, Dkt. No. 170; Dem. Pls.' Opp'n, Dkt. No. 172.

Meanwhile, Defendant-Intervenor the Republican National Committee ("RNC") filed a cross-motion for partial summary judgment in which it timely responded to each of Plaintiffs' proffered statements of material facts, agreeing that many of the proffered facts were undisputed and responding to others with brief legal arguments, citations to publicly available sources, or both. *See* Def.-Intervenor's Cross-Mot. for Summary Judgment, Dkt. No. 161.

The Federal Defendants' [160] Motion to Strike, Deny, or Defer Consideration of Plaintiffs' Motions for Partial Summary Judgment is now ripe for decision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(d) provides that if the party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a reviewing court "may" defer consideration of the motion, deny the motion, allow additional time for discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d).

To obtain relief under this Rule, the party opposing summary judgment must produce an affidavit that "satisf[ies] three criteria." *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) (discussing former Rule 56(f)); *id.* at 95 n.1 (explaining that former Rule 56(f) became Rule 56(d) in 2010). First, the affidavit "must outline the particular facts [the party]

8

intends to discover and describe why those facts are necessary to the litigation." *Id.* at 99. Second, "it must explain 'why [the party] could not produce [the facts] in opposition to the motion [for summary judgment].'" *Id.* at 99–100 (second and third alterations in original) (quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999)). Third, the affidavit "must show" that the information sought "is in fact discoverable." *Id.* at 100. The affidavit must satisfy each of these requirements with specificity; "[b]oilerplate language or vague assertions" are not sufficient. *FERC v. City Power Mktg., LLC*, 235 F. Supp. 3d 152, 155 (D.D.C. 2017) (JDB).

Because "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery,'" courts readily grant Rule 56(d) motions when the party seeking further discovery has acted diligently to pursue discovery but the discovery process is not yet complete. *Convertino*, 684 F.3d at 99 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). When "the facts giving rise to the cause of action are in the sole possession of" the party seeking summary judgment, such motions are granted "almost as a matter of course." *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 27 (D.C. Cir. 2014).

However, although courts ordinarily take a "generous approach" to Rule 56(d) motions, "the rule is not properly invoked to relieve counsel's lack of diligence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995). Rule 56(d) "is designed to minister to the vigilant, not to those who slumber upon perceptible rights." *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers, LLC*, 312 F.R.D. 678, 684 (D.D.C. 2015) (APM) (quoting *Resol. Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)); *Grimes v. District of Columbia*, 308 F. Supp. 3d 93, 105 n.14 (D.D.C. 2018) (RJL) (same).

Finally, "motions to strike, as a general rule, are disfavored." *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (discussing motions to strike under Fed. R. Civ. P. 12(f)). Although courts have discretion to strike improper affidavits filed in support of a motion for summary judgment, "[t]he decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005) (RMD), *aff'd,* 182 F. App'x 988 (Fed. Cir. 2006) (per curiam).

### III. ANALYSIS

The Federal Defendants' Rule 56(d) motion arises in an unusual posture. Unlike the typical Rule 56(d) movant requesting additional time for discovery, the Federal Defendants have repeatedly argued that discovery is neither necessary nor appropriate in these consolidated cases. *See, e.g.*, Joint Scheduling Proposal, Dkt. No. 119, at 5–6; LCvR 16.3 Report, Dkt. No. 137, at 11, 16; June 18 Tr. at 21:4–15. Instead, the Federal Defendants' consistent position has been that these cases present "pure legal issues" that can and should be resolved on cross-motions for summary judgment. *See* Joint Scheduling Proposal at 5; LCvR 16.3 Report at 11.

Now, the Federal Defendants reverse course and argue that they "cannot present facts essential to justify [their] opposition" to Plaintiffs' motions for partial summary judgment unless the Court first allows discovery into the factual basis for Plaintiffs' arguments regarding Article III standing and irreparable harm. *See* Def.'s Mot., Dkt. No. 170; Decl. of Bridget K. O'Hickey ("O'Hickey Decl."), Dkt. No. 160-1, ¶ 2; Fed. R. Civ. P. 56(d). They also argue that Plaintiffs violated this Court's scheduling order by attaching declarations and other exhibits to their motions for partial summary judgment. Def.'s Mot. at 4–5. They therefore urge the Court to strike, deny, or defer consideration of Plaintiffs' motions for partial summary judgment until the they have had an opportunity to take discovery from Plaintiffs. *See* Def.'s Mot. at 6.

Because Plaintiffs' submissions complied with this Court's scheduling order and the Federal Defendants have not made the necessary showings to obtain relief under Rule 56(d), the Court shall **DENY** the Federal Defendants' motion.

### A. Plaintiffs' motions for partial summary judgment complied with this Court's scheduling order.

The Federal Defendants first argue that they are entitled to this additional discovery without satisfying the criteria for relief under Rule 56(d) because Plaintiffs "violated" this Court's scheduling order by "attaching extrinsic evidence" to their motions for partial summary judgment, but this argument is unpersuasive. *See* Def.'s Mot. at 4–5. The Federal Defendants appear to misunderstand this Court's prior order and falsely conflate two distinct issues: first, whether parties may take discovery from one another, and second, whether parties may attach evidence in support of their filings. Consistent with the parties' proposals, the Court's order resolved the first issue, but it said nothing about the second.

Contrary to the Federal Defendant's arguments, the Court's scheduling order did not place any limits on the presentation of "extrinsic evidence" or attachments by any party. *Cf.* Def.'s Mot. at 4. Such a limitation would have been inconsistent with the basic demands of summary judgment procedure. Rule 56(c) provides that parties litigating summary judgment motions "must support the assertion" that a fact "cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including . . . affidavits or declarations," by "showing that the materials cited do not establish the absence or presence of a genuine dispute," or by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). Critically, "at the summary-judgment stage, the plaintiff must demonstrate standing by 'affidavit or other evidence.'" *Frank v. Autovest, LLC*, 961 F.3d 1185, 1187 (D.C. Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). If the Court's order

11

had barred Plaintiffs from filing affidavits setting out, at a minimum, the facts that support their claim to Article III standing, the Court would have been ordering Plaintiffs to file motions for summary judgment that were entirely futile. The Court's order did no such thing.

Instead, based on the parties' representations and the Federal Defendants' consistent arguments that discovery was not necessary to resolve Plaintiffs' claims regarding Section 2(a), this Court set an accelerated schedule for summary judgment briefing on those claims that did not provide for *discovery* from any party. *See* Scheduling Order, Dkt. No. 141, at 2. Under that procedure, the Court anticipated that each party would supply any necessary factual information through declarations and exhibits drawn from sources within its own control, relinquishing the opportunity to test opposing evidence through cross-examination or other discovery. Counsel for the LULAC Plaintiffs corroborated this understanding at the scheduling conference by affirmatively stating that Plaintiffs intended to "update [their] declarations" to support their forthcoming motions for summary judgment. June 18 Tr. at 18:11–14. No party contradicted this view by objecting or presented any argument against the use of declarations or other evidence in support of the parties' motions for summary judgment. *See id.* The Court also confirmed this understanding with the Federal Defendants' counsel at the scheduling conference, clarifying with counsel that those Defendants proposed "no discovery" and would rely solely on legal arguments "that don't need discovery." *Id.* at 21:4–15.

Although bypassing discovery and proceeding directly to summary judgment on a record consisting of declarations and exhibits that have not been tested through cross-examination or other discovery is an unusual procedure, this Court recognized that both Plaintiffs and the Federal Defendants could have sound strategic reasons for proposing it: the parties' dispute about Section 2(a) turns primarily on weighty legal questions about constitutional separation-of-

powers principles, not factual disputes, and all parties have strong interests in resolving those questions quickly. *See Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019) ("[A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" (alterations in original) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))).

Accordingly, after considering the parties' written scheduling proposals and thoroughly discussing the matter with counsel at a scheduling conference, the Court adopted the parties' accelerated proposal and set a schedule for summary judgment briefing on Plaintiffs' claims regarding Section 2(a) that did not include an opportunity for discovery from any party. *See* Scheduling Order, Dkt. No. 141. Despite all parties being on notice of the proposed procedure and having ample opportunities to raise arguments and objections, no party raised any such objection until the Federal Defendants filed the instant motion.

Plaintiffs' decisions to file declarations and other exhibits in support of their motions for partial summary judgment were entirely consistent with the procedure the Court adopted and did not cause any unfair prejudice to the Federal Defendants. These submissions surely came as no surprise to the Federal Defendants, who received and responded to very similar evidence—including several identical declarations—that Plaintiffs produced to support their arguments regarding Article III standing and irreparable harm at the preliminary injunction stage. *See* Dkt Nos. 32-2 to 32-32, 53-2 to 53-14. Given the procedural requirements at the summary judgment stage, the Federal Defendants should reasonably have expected similar evidence in support of Plaintiffs' motions for partial summary judgment. Moreover, like many exhibits filed at the preliminary injunction stage, many of the Plaintiffs' summary-judgment exhibits draw upon

13

public sources, meaning that the Federal Defendants could access the evidence on the same terms as Plaintiffs and face no prejudice from being unable to take discovery directly from Plaintiffs. Finally, as the cross-motion for partial summary judgment filed by the RNC as Defendant-Intervenor illustrates, a party opposing Plaintiffs' motions for partial summary judgment remained entirely free to oppose Plaintiffs' motions by filing its own legal arguments, declarations, and exhibits, without needing to take any discovery. *See generally* RNC's Cross-Mot., Dkt. No. 161.

In sum, Plaintiffs' motions, declarations, and other exhibits were consistent with this Court's scheduling order. Although the Federal Defendants may now prefer a different procedure that would allow them an opportunity to take discovery from Plaintiffs' declarants, they failed to propose such a procedure at the scheduling conference or in a timely objection to the Court's scheduling order. The Court shall therefore **DENY** the Federal Defendants' request to strike, deny, or defer consideration of them based on any purported violation of that order.

### B. The Federal Defendants are not entitled to relief under Rule 56(d).

The Federal Defendants next request relief under Rule 56(d), but they have not made the required showings to entitle them to additional time to take discovery or other relief under this rule. The Federal Defendants' proffered Rule 56(d) affidavit falls short on all three of the criteria that are required of such a submission. *See Convertino*, 684 F.3d at 99–100.

*First*, the Federal Defendants have failed to "outline the particular facts" that they "intend[] to discover and describe why those facts are necessary to the litigation." *Convertino*, 684 F.3d at 99. The Federal Defendants' Rule 56(d) affidavit identifies some of the *legal issues* that they are interested in probing through further discovery, "including but not limited to the issues of ripeness, standing (individual, organizational, and associational), and irreparable harm." O'Hickey Decl. ¶ 8. It also identifies the *form* of the proposed discovery: "interrogatories,

14

requests for production, and depositions of some or all of Plaintiffs' fact declarants." *Id.* However, nowhere does the affidavit identify the *facts* that Defendants believe are discoverable and "necessary to the litigation." *Cf. Convertino*, 684 F.3d at 99.  The Federal Defendants have neither identified any evidence that would contradict the information in Plaintiffs' declarations or exhibits nor proffered any factual propositions that, if substantiated through discovery, would create a genuine issue of material fact that precludes summary judgment.  Instead, the Federal Defendants propose to delay the resolution of these consolidated cases to "test" Plaintiffs' proffered evidence in unspecified ways.  *See* O'Hickey Decl. ¶ 9.  This "[b]oilerplate" and "vague" proposal is not sufficient to satisfy the first requirement for relief under Rule 56(d): a statement of the "particular facts" sought and an explanation of why those facts are "necessary to the litigation."  *See FERC*, 235 F. Supp. 3d at 155; *Convertino*, 684 F.3d at 99.

*Second*, given that the Federal Defendants voluntarily elected not to seek discovery from Plaintiffs before proceeding to summary judgment briefing, the statements in their Rule 56(d) affidavit fall well short of adequately explaining why they "could not produce" purportedly essential facts.  *See Convertino*, 684 F.3d at 99–100.  "It cannot possibly be the law that a party can forego seeking information by discovery and, when confronted by a motion for summary judgment, seek discovery it never sought in the first place to defeat the motion." *Rowland v. Walker*, 245 F. Supp. 2d 136, 139 (D.D.C. 2003) (JMF), *aff'd,* No. 03-5082, 2003 WL 21803321 (D.C. Cir. July 31, 2003).  When, as in this case, a defendant has "made no effort to take discovery" despite an ample opportunity to request it, this "second and most significant" requirement for relief under Rule 56(d) is not satisfied.  *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund*, 312 F.R.D. at 684.

15

*Third*, because the Federal Defendants have failed to identify the specific facts or information they would seek through further discovery, they cannot show that the information sought "is in fact discoverable." *See Convertino*, 684 F.3d at 100. The Federal Defendants assert that the information they seek is discoverable "through written discovery and depositions of Plaintiffs' declarants," but their proffered Rule 56(d) affidavit fails to substantiate this assertion. *See* Def.'s Mot. at 5–6; O'Hickey Decl. ¶ 9. Instead, the affidavit merely asserts that the information they seek is discoverable because "Plaintiffs rely upon it in their Motions, and Defendants merely wish to test the assertions therein"—without specifying either the "it" at issue or the "assertions" the Federal Defendants propose to test. *See* O'Hickey Decl. ¶ 9. As with the first Rule 56(d) criterion, the Federal Defendants' "vague" submission is not sufficient to satisfy the requirement of showing that the information sought through discovery under Rule 56(d) "is in fact discoverable." *See FERC*, 235 F. Supp. 3d at 155; *Convertino*, 684 F.3d at 100.

In sum, the Federal Defendants have failed to satisfy any of the three necessary conditions for relief under Rule 56(d). *See Convertino*, 684 F.3d at 99–100. Meanwhile, allowing additional time for discovery would risk substantially delaying the resolution of important legal questions about whether Section 2(a) of Executive Order 14,248 may lawfully be implemented. Therefore, the Court shall **DENY** the Federal Defendants' request to strike, deny, or defer consideration of Plaintiffs' motions for partial summary judgment based on Rule 56(d).

\*   \*   \*

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Federal Defendants' [160] Motion to Strike, Deny, or Defer Consideration is **DENIED**.  The briefing schedule for the parties' motions for partial summary judgment regarding Section 2(a) of Executive Order 14,248 remains as previously ordered.

**SO ORDERED.**

**Dated:**  August 28, 2025

                                                  COLLEEN KOLLAR-KOTELLY
                                                  United States District Judge