**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>    *Plaintiffs*,<br> v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>    *Defendants*. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>    *Plaintiffs*,<br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    *Defendants*. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>    *Plaintiffs*,<br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    *Defendants*. | Civil Action No. 25-0955 (CKK) |

**LEAGUE AND LULAC PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' AND INTERVENOR-DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.    Section 2(a) Violates the Elections Clause and the Constitutional Separation of
        Powers. .......................................................................................................................... 3

        A.   Defendants' and the RNC's Threshold Arguments Are Meritless. ................................. 3

        B.   The President Has No Power to Command Changes to the Federal Form. .................... 5

        C.   This Court has Inherent Equitable Power to Enjoin Defendants from Implementing
            Section 2(a). .................................................................................................................. 9

    II.   Plaintiffs Have Standing to Challenge Section 2(a). ....................................................... 14

        A.   Plaintiffs Properly Rely on Declarations to Establish Their Standing. ......................... 14

        B.   Plaintiffs' Challenge to Section 2(a) Is Timely. ........................................................... 14

        C.   Plaintiffs Have Suffered a Concrete Injury-in-Fact Both to Their Organizations and
            Their Members. ............................................................................................................. 16

    III.  Plaintiffs are Entitled to a Permanent Injunction .......................................................... 20

        A.   The Injunction Factors Weigh in Plaintiffs' Favor ....................................................... 20

        B.   Defendants Take No Issue with the Scope of Relief. .................................................... 21

CONCLUSION ........................................................................................................................... 22

## TABLE OF AUTHORITIES

*\* Authorities upon which this brief chiefly relies are marked with an asterisk.*

**Cases**

*American Federation of Government Employees, AFL-CIO v. Carmen*,
　　669 F.2d 815 (D.C. Cir. 1981) ................................................................................ 6

*American School of Magnetic Healing v. McAnnulty*,
　　187 U.S. 94 (1902) ................................................................................................ 13

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*,
　　64 F.4th 1354 (D.C. Cir. 2023) ............................................................................ 20

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
　　570 U.S. 1 (2013) .............................................................................................. 5, 21

*Armstrong v. Exceptional Child Center, Inc.*,
　　575 U.S. 320 (2015) .......................................................................................... 9, 13

*Bahlul v. United States*,
　　840 F.3d 757 (D.C. Cir. 2016) .............................................................................. 7

*Building & Construction Trades Department, AFL-CIO v. Allbaugh*,
　　295 F.3d 28 (D.C. Cir. 2002) ............................................................................... 15

*Burke v. Gould*,
　　286 F.3d 513 (D.C. Cir. 2002) ............................................................................. 18

*California v. Trump*,
　　No. 25-cv-10810, 2025 WL 1667949 (D. Mass. Jun. 13, 2025) ........................... 15

*Chamber of Commerce of U.S. v. Reich*,
　　74 F.3d 1322 (D.C. Cir. 1996) .................................................................. 9, 10, 12

*Changji Esquel Textile Co. v. Raimondo*,
　　40 F.4th 716 (D.C. Cir. 2022) ............................................................................. 13

*City & County of San Francisco v. Trump*,
　　897 F.3d 1225 (9th Cir. 2018) ............................................................................. 15

*Clinton v. City of New York*,
　　524 U.S. 417 (1998) .......................................................................................... 8, 20

*Collins v. Yellen*,
　　594 U.S. 220 (2021) ............................................................................................... 6

*Consolidation Coal Co. v. Federal Mine Safety & Health Review Commission*,
　　824 F. 2d 1071 (D.C. Cir. 1987) .......................................................................... 16

*Crown Castle Fiber, L.L.C. v. City of Pasadena,*
  76 F.4th 425 (5th Cir. 2023) ................................................................. 13

*Dalton v. Spector,*
  511 U.S. 462 (1994) .................................................................... 11, 12

*Dart v. United States,*
  848 F.2d 217 (D.C. Cir. 1988) ................................................................ 10

*English v. Trump,*
  279 F. Supp. 3d 307 (D.D.C. 2018) ........................................................... 6

*Federal Express Corp. v. U.S. Department of Commerce,*
  39 F.4th 756 (D.C. Cir. 2022) ........................................................ 2, 10, 13

*Food & Drug Administration v. Alliance for Hippocratic Medicine,*
  602 U.S. 367 (2024) ................................................................ 2, 16, 18

*Frank v. Autovest, LLC,*
  961 F.3d 1185 (D.C. Cir. 2020) .............................................................. 14

*Global Health Council v. Trump,*
  No. 25-5097 (D.C. Cir. Aug. 28, 2025) ............................................... 11, 12, 13

*Gonzalez v. Arizona,*
  485 F.3d 1041 (9th Cir. 2007) ............................................................. 4, 5

*Gonzalez v. Arizona,*
  677 F.3d 383 (9th Cir. 2012) ................................................................ 5

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ....................................................................... 18

*Kendall v. U.S. ex rel. Stokes,*
  37 U.S. (12 Pet.) 524 (1838) ............................................................... 6

*King v. Youngkin,*
  122 F.4th 539 (4th Cir. 2024) .............................................................. 13

* *League of United Latin American Citizens v. Executive Office of the President,*
  780 F. Supp. 3d 135 (D.D.C. 2025) ................................................... passim

* *League of Women Voters of the U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) .......................................................... 16, 17, 21

*Main Street Legal Services, Inc. v. National Security Council,*
  811 F.3d 542 (2d Cir. 2016) ................................................................. 6

iv

*Massachusetts v. Environmental Protection Agency*,
    549 U.S. 497 (2007)...................................................................................... 7

*Mathis v. U.S. Parole Commission*,
    749 F. Supp. 3d 8 (D.D.C. 2024) ........................................................... 2, 13

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025) ..................................................................... 5

*Morrison v. Olson*,
    487 U.S. 654 (1988)................................................................................. 5, 6

*National Air Traffic Controllers Association AFL-CIO v. Federal Services Impasses Panel*,
    437 F.3d 1256 (D.C. Cir. 2006) ............................................................... 13

*National Labor Relations Board v. Noel Canning*,
    573 U.S. 513 (2014)...................................................................................... 7

*National Treasury Employees Union v. Nixon*,
    492 F.2d 587 (D.C. Cir. 1974) ................................................................. 20

*National Treasury Employees Union v. Vought*,
    No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025)................. 2, 10, 11, 12

*National Urban League v. Trump*,
    No. 25-cv-471, 2025 WL 1275613 (D.D.C. May 2, 2025).................... 15

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................. 20

*Nuclear Regulatory Commission v. Texas*,
    605 U.S. 665 (2025)................................................................................. 11

*PFLAG, Inc. v. Trump*,
    766 F. Supp. 3d. 535 (D. Md. 2025)........................................................ 10

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946)................................................................................. 13

*Soucie v. David*,
    448 F.2d 1067 (D.C. Cir. 1971) ................................................................. 9

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)................................................................................. 16

*Susman Godfrey LLP v. Executive Office of the President*,
    No. 25-cv-1107, 2025 WL 1779830 (D.D.C. June 27, 2025)................. 10

*Trump v. Wilcox,*
    145 S. Ct. 1415 (2025)...................................................................................... 6

*Wilmer Cutler Pickering Hale & Dorr LLP v. Executive Office of the President,*
    No. 25-cv-917, 2025 WL 1502329 (D.D.C. May 27, 2025)................................... 11

* *Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)..................................................................................... 3, 11

**Constitutional Provisions**

* U.S. Const. art. I, § 4............................................................................... passim

U.S. Const. art. II, § 3 ...................................................................................... 6

U.S. Const. art. II ..................................................................................... passim

**Statutes**

1 U.S.C. § 112 ................................................................................................. 7

5 U.S.C. § 553 ............................................................................................. 8, 9

7 U.S.C. § 610 ................................................................................................. 7

42 U.S.C. § 15852 ........................................................................................... 8

42 U.S.C. § 4331 ............................................................................................. 8

50 U.S.C. § 1701 ............................................................................................. 8

50 U.S.C. § 1702 ............................................................................................. 8

* 52 U.S.C. § 20508 ................................................................................. 3, 4, 5, 7

52 U.S.C. § 20921 ..................................................................................... 3, 7, 13

52 U.S.C. § 20923 .......................................................................................... 13

* 52 U.S.C. § 20928 ................................................................................... 3, 7, 13

**Rules**

Federal Rule of Civil Procedure 56(d)......................................................... 16, 18

Local Civil Rule 7(h)(1).............................................................................. 18

**Other Authorities**

Elena Kagan, *Presidential Administration*,
   114 Harvard Law Review 2245 (2001) ................................................................ 6, 8

Executive Order No. 13,338,
   69 Fed. Reg. 26,751 (May 11, 2004) ......................................................................... 8

Executive Order No. 13,693,
   80 Fed. Reg. 15,871 (Mar. 19, 2015) ....................................................................... 8

Extending Regulatory Review Under Executive Order 12866 to Independent Regulatory
   Agencies,
   43 Op. O.L.C. 232 (2019) .......................................................................................... 7

The President and Accounting Officers,
   1 Op. Att'y Gen. 624 (1823) ..................................................................................... 7

**INTRODUCTION**

Section 2(a) of Executive Order 14,248 commands the U.S. Election Assistance Commission ("EAC") to change the national mail voter registration form ("Federal Form") to bar voter registration without documentary proof of citizenship. But the President has no constitutional authority to regulate elections; that power belongs to the States and Congress. *See* U.S. Const. art. I, § 4. Nor has Congress delegated any such power to the President; it vested limited authority to change the Federal Form in an independent commission that may exercise it only after a bipartisan majority of its commissioners finds that the change is necessary to assess voter eligibility in accordance with Congress's specific guidance. Because the President lacks any authority to dictate changes to the Federal Form, Section 2(a) is unconstitutional. For these reasons, this Court preliminarily enjoined Section 2(a). *See League of United Latin Am. Citizens v. Exec. Off. of the President* ("*LULAC*"), 780 F. Supp. 3d 135 (D.D.C. 2025). It should now grant Plaintiffs' motion for partial summary judgment—and deny the cross motions brought by Defendants and Intervenor-Defendant Republican National Committee ("RNC")—on that same basis.

None of Defendants' or RNC's grab bag of counterarguments withstands scrutiny.

Defendants principally recycle the same threshold arguments that were unsuccessful at the preliminary-injunction stage: that Plaintiffs lack standing, a ripe claim, and a cause of action because their claim is premature. Mem. in Supp. of Defs.' Cross-Mot. for Partial Summ. J. & Partial Opp. to Pls.' Mots. For Partial Summ. J. ("Defs.' Br."), ECF No. 163, at 10–16.[1] According to Defendants, "Section 2(a) merely directs the EAC to begin a process" without dictating its outcome. Defs.' Br. 5. But as this Court previously determined, that "cannot be squared with the plain text of the Executive Order," which commands—"in no uncertain terms"—that the EAC require documentary proof of citizenship on the Federal Form. *LULAC*, 780 F. Supp. 3d at 184.

---

[1]    Citations to "ECF" herein refer to filings in the consolidated action, *LULAC*, No. 1:25-00946, unless otherwise noted.

And no doctrine forces Plaintiffs to wait until irreparable harm occurs; they may seek to stop the President's unlawful command before it is carried out.

Defendants also contend that Plaintiffs lack standing because they relied on evidence to establish it. Defs.' Br. 16–17. But this Court has already rejected that argument. *See* Mem. Op. & Order, ECF. No. 180. Beyond those objections, Defendants do not dispute the material facts that establish Plaintiffs' standing. Their only other claim—that Plaintiffs lack organizational standing under *Food & Drug Administration v. Alliance for Hippocratic Medicine* (*"AHM"*), 602 U.S. 367 (2024)—fares no better. This Court has already rejected it. *LULAC*, 780 F. Supp. 3d at 188–90. And, in any event, it does not bear on Plaintiffs' independent showing of associational standing.

The RNC does not dispute that Plaintiffs have standing and that their claim is ripe. Instead, it argues for a heightened standard of review—one reserved for certain statutory *ultra vires* claims. Republican Nat'l Comm. Cross-Summ. J. Br. on Section 2(a) Claims ("RNC Br."), ECF No. 161-1, at 8 (quoting *Fed. Express Corp. v. U.S. Dep't of Com.* (*"FedEx"*), 39 F.4th 756, 765 (D.C. Cir. 2022)). That argument fails for multiple reasons.

First, Plaintiffs bring a constitutional claim, not a statutory one, so the statutory *ultra vires* framework does not apply. *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *18 (D.C. Cir. Aug. 15, 2025). Second, even if Plaintiffs' claim were inaccurately cast as a statutory *ultra vires* claim, no heightened standard would apply because neither the National Voter Registration Act ("NVRA") nor the Help America Vote Act ("HAVA") precludes judicial review. *See, e.g.*, *Mathis v. U.S. Parole Comm'n*, 749 F. Supp. 3d 8, 24 (D.D.C. 2024). And even if the heightened standard indeed applied, Plaintiffs satisfy it.

On the merits, Defendants and the RNC propose a sweeping expansion of executive power that contradicts our bedrock constitutional principle of separation of powers. They insist that, even though Congress deliberately entrusted the Federal Form to an independent, bipartisan commission under narrow parameters, the President may nonetheless seize control of the Federal Form under Article II. Defs.' Br. 5–8; RNC Br. 19–20. But they cite no case endorsing that view. And for good reason: for centuries, both the courts and the U.S. Department of Justice ("Justice Department")

have rejected the sort of reasoning Defendants and the RNC advance here. This Court has already recognized as much, and it should do so again now. *LULAC*, 780 F. Supp. 3d at 199–200.

## ARGUMENT

The Court should grant Plaintiffs' motion for partial summary judgment—and deny Defendants' and the RNC's—because there is no genuine dispute as to any material fact and Plaintiffs are entitled to judgment as a matter of law. Section 2(a) violates the Elections Clause and the constitutional separation of powers. Plaintiffs have an equitable cause of action, standing, and a ripe claim against Section 2(a). Because Section 2(a) threatens Plaintiffs with irreparable harm, and the balance of equities tips decidedly in their favor, the Court should permanently enjoin its implementation.

## I.    Section 2(a) Violates the Elections Clause and the Constitutional Separation of Powers.

The President has no power to command changes to the Federal Form. Any such power must come from either the Constitution or Congress. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). As this Court has held, the Constitution gives the President no power to regulate federal elections; to the contrary, the Elections Clause vests that power exclusively in Congress and the States. *LULAC*, 780 F. Supp. 3d at 194. Nor did Congress empower the President to make unilateral changes to the Federal Form. *Id.* at 195. Congress delegated that authority to an independent entity—the EAC—while instructing that it may exercise that power only after a bipartisan majority of its commissioners determines that such a change is necessary to assess voter eligibility. 52 U.S.C. §§ 20921, 20928, 20508. Because the President lacks power to force the EAC to change the Federal Form, Section 2(a) violates the Elections Clause and the constitutional separation of powers.

### A.    Defendants' and the RNC's Threshold Arguments Are Meritless.

Rather than defend Section 2(a) on the merits, Defendants' primary tactic is to read it out of existence, claiming that "Section 2(a) merely directs the EAC to begin a process" without dictating its outcome. Defs.' Br. 5. But, as this Court has already made clear, that "cannot be

squared with the plain text of the Executive Order." *LULAC*, 780 F. Supp. 3d at 184. Section 2(a) commands the EAC to "take appropriate action" within a set timeframe "to require . . . documentary proof of United States citizenship" "in its national mail voter registration form issued under 52 U.S.C. 20508." Exec. Order No. 14,248 § 2(a)(i), 90 Fed. Reg. 14,005 (Mar. 25, 2025), https://perma.cc/F55X-RYFN. "[T]here is no mystery about what Section 2(a) purports to require or whether Section 2(a) purports to require it." *LULAC*, 780 F. Supp. 3d at 184; *see also infra* Section II.B. And that command is clearly unconstitutional.

For its part, the RNC offers a red herring. It spends much of its brief arguing that the EAC may add a documentary proof-of-citizenship requirement to the Federal Form regardless of the Executive Order. RNC Br. 7–17. Although Plaintiffs dispute that such a requirement would comply with federal law, these motions "do not call upon the Court to decide whether . . . the policies [the Executive Order] describes would be legal if implemented" independent of the Executive Order. *LULAC*, 780 F. Supp. 3d at 154. Rather, the question is whether the President may unilaterally command the EAC to change the Federal Form, regardless of whether a majority of the commissioners independently determines that such a change is necessary to assess voter eligibility. *See* 52 U.S.C. § 20508(b)(1). The Court has already correctly concluded that the answer to this narrow question is "no." *See LULAC*, 780 F. Supp. 3d at 195. It should reaffirm that answer without opining on whether the EAC's addition of a documentary proof-of-citizenship requirement, following Congress's dictated procedures, would violate the NVRA or the constitutional right to vote.[2]

---

[2]    The Court should be especially reluctant to issue an advisory opinion on these issues. No plaintiff moves for summary judgment on a constitutional right-to-vote claim, and the RNC cannot manufacture that motion by citing passages in the Democratic Party Plaintiffs' complaint and statement of facts. *See* RNC Br. 22–27. As for the Democratic Party Plaintiffs' NVRA claim, as discussed, the Court need not answer this question—especially given the RNC's failure to grapple with relevant precedent. For example, the RNC relies on *Gonzalez v. Arizona*, 485 F.3d 1041 (9th Cir. 2007) ("*Gonzalez I*"), to suggest that a documentary proof-of-citizenship requirement does not violate the NVRA's ban on "notarization or other formal authentication," 52 U.S.C. § 20508(b)(3). But that ignores that *Gonzalez I* was initially decided at the preliminary-injunction stage, and a different Ninth Circuit panel—on appeal from final judgment—repudiated that

**B. The President Has No Power to Command Changes to the Federal Form.**

When pressed to defend Section 2(a) on its own terms, Defendants' and the RNC's arguments crumble. They claim that the President may command the EAC to add a documentary proof-of-citizenship requirement to the Federal Form—regardless of whether Congress intended to delegate such powers to the President—because the President holds "supervisory authority" over the Executive Branch. Defs.' Br. 7–8; *see* RNC Br. 19–22. The RNC's claim goes further: it argues that, rather than direct the EAC to change the Federal Form, the President could make the requisite necessity finding himself. RNC Br. 17. But this Court was right to reject these arguments as "untethered from precedent and unsupported by even a maximalist view of 'the executive Power.'" *LULAC*, 780 F. Supp. 3d at 198 (quoting U.S. Const. art. II).

Of course, the President has "some supervisory authority over subordinate executive officers." *LULAC*, 780 F. Supp. 3d at 198. But that "authority has limits." *Id.* In particular, courts will uphold restrictions on the President's supervisory authority when they do not "impede the President's ability to perform his constitutional duty." *Id.* (quoting *Morrison v. Olson*, 487 U.S. 654, 691 (1988)). Here, the NVRA's grant of authority to the EAC over the Federal Form does not hinder the President's constitutional duties for at least three reasons.

First, "the President has no constitutional duty to prescribe the content of election regulations." *Id.* The Elections Clause vests that power in the States and Congress. Therefore, "[h]olding that the President lacks the authority to direct the EAC to make specific, predetermined changes to the Federal Form is consistent with the proper limits on his supervisory authority and

---

decision as "rooted in a fundamental misreading of the statute." *Gonzalez v. Arizona*, 624 F.3d 1162, 1187 (9th Cir. 2010). Both the en banc Ninth Circuit and the Supreme Court endorsed the second panel's view. *See Arizona v. Inter Tribal Council of Ariz., Inc.* ("*ITCA*"), 570 U.S. 1, 20 (2013); *Gonzalez v. Arizona*, 677 F.3d 383, 403 (9th Cir. 2012) (en banc). Indeed, the Ninth Circuit recently clarified that *Gonzalez I* did not resolve whether states may impose such requirements. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 719 (9th Cir. 2025). Similarly, the RNC defines what is "necessary" to assess voter eligibility under § 20508(b)(1) without acknowledging the Ninth Circuit's explicit interpretation that "necessary" means "essential," and its holding that documentary proof of citizenship for voter registration is "not 'essential.'" *Id.*

presents no impediment to 'the President's ability to perform his constitutional duty.'" *Id.* (quoting *Morrison*, 487 U.S. at 691).

Second, the President's inability to command the EAC to change the Federal Form "does not impair his ability to 'take Care that the Laws be faithfully executed.'" *Id.* (quoting U.S. Const. art. II, § 3). For example, the President has the power "to take enforcement action against non-citizens who vote or register to vote in federal elections in violation of State voter-qualifications laws." *Id.*

Third, to the extent that the EAC exercises "considerable executive power," the President may have the authority to remove commissioners and, with the advice and consent of the Senate, appoint new ones. *See Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *see also LULAC*, 780 F. Supp. 3d at 198. But regardless of whether and how the President may remove EAC commissioners, courts have long recognized that Congress may impose specific duties on executive officials that "grow out of and are subject to the control of the law, and not to the direction of the President." *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 610 (1838); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Carmen*, 669 F.2d 815, 823 (D.C. Cir. 1981) (R.B. Ginsburg, J.); *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 558 (2d Cir. 2016). Thus, the President "lacks the authority to direct the outcome of the rulemaking process that Congress has assigned to the EAC." *LULAC*, 780 F. Supp. 3d at 200.[3] Indeed, "[t]he conventional view in administrative law, in apparent accord with these cases, holds that the President lacks the power to direct an agency official to take designated actions within the sphere of that official's delegated discretion." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2323 (2001).

---

[3]    For this reason, the Court need not and should not resolve the question of whether and how the President may remove EAC commissioners. *Contra* Defs.' Br. 7; RNC Br. 19. The RNC's various citations on this point—including *Collins v. Yellen*, 594 U.S. 220 (2021), and *English v. Trump*, 279 F. Supp. 3d 307 (D.D.C. 2018)—are inapposite because they concern the President's power to remove members of independent agencies, a question not at issue here. *Id.* at 327. They say nothing about the President's power to direct a predetermined outcome for a rulemaking that Congress placed in agency hands.

For over 200 years, the Justice Department has acknowledged as much. Since not long after the Founding, the Department has been clear that "were the President to perform [a statutory duty assigned to another], he would not only be not taking care that the laws were faithfully executed, but he would be violating them himself." The President and Accounting Officers, 1 Op. Att'y Gen. 624, 625 (1823). This understanding has held true well into the modern era. *See, e.g.*, Extending Regulatory Review Under Executive Order 12866 to Independent Regulatory Agencies, 43 Op. O.L.C. 232, 243 (2019) (concluding that an executive order directing certain agency review procedures was lawful because "the authority to make the ultimate decision rests where Congress has placed it—in the relevant agency"). And that understanding is no idle point: when courts consider questions of constitutional implications, "especially" those "related to the separation of powers, the historical practice of the [political] Branches matters." *Bahlul v. United States*, 840 F.3d 757, 764 (D.C. Cir. 2016) (Kavanaugh, J., concurring). Indeed, "longstanding practice of the government" merits "significant weight." *NLRB v. Noel Canning*, 573 U.S. 513, 514 (2014).

Section 2(a) runs afoul of these bedrock principles. If Congress wanted the President to control the EAC's regulation of the Federal Form, it knew how to say so. *See, e.g.*, 7 U.S.C. § 610(c) (statutory delegation to the Secretary of Agriculture to act "with the approval of the President"); 1 U.S.C. § 112b(i) (statutory delegation to the President to act "through the Secretary [of State]"). Here, however, Congress intentionally insulated the Federal Form from partisan control by assigning responsibility for its maintenance to an independent, bipartisan, multimember commission in accordance with specific statutory guidance. 52 U.S.C. §§ 20921, 20928, 20508. "To the extent that this constrains [the EAC's] discretion to pursue other priorities of the . . . President, this is the congressional design." *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007). Simply put, Article II does not empower the President to erase these congressionally mandated, statutory limitations on the EAC's delegated power.

The RNC seeks to avoid this clear result by turning a blind eye to the text and structure of the NVRA and HAVA. It claims that Congress did not intend to "preclude the President from exercising his executive authority in relation to the federal form." RNC Br. 19. But even the RNC's

own cited authority acknowledges that whether Congress intends to preclude the President "is a matter of statutory construction." Kagan, *Presidential Administration*, 114 Harv. L. Rev. at 2326. And, as this Court observed, the NVRA and HAVA "reflect[] a careful allocation of regulatory power to a bipartisan panel of experts, accompanied by a requirement for consultation with the States." *LULAC*, 780 F. Supp. 3d at 196. Their "design implicitly forbids any individual member of the Executive Branch from unilaterally exercising the delegated power to regulate State voter registration programs." *Id.*

Defendants are likewise wrong to assert that Section 2(a) falls within some "long" tradition of presidential action. Defs.' Br. 5. They point to only two examples, each issued in the past 25 years, and neither of which asserted anything like the power claimed here—the authority to command a commission to deliver a predetermined result on a matter Congress has entrusted solely to the commission's judgment within narrow statutory bounds.

Defendants' first example directed federal agencies to cut their use of gas emissions. Exec. Order No. 13,693, 80 Fed. Reg. 15,871 (Mar. 19, 2015). That order required no rulemaking; it simply governed agencies' internal operations—the very type of "matter[s] relating to agency management" Congress exempted from notice-and-comment altogether. 5 U.S.C. § 553(a)(2). And critically, the order was tethered to clear congressional commands to the President himself. *See, e.g.*, 42 U.S.C. § 15852 (authorizing "[t]he President, acting through the Secretary" to ensure federal consumption of renewable energy); *see also* 42 U.S.C. § 4331 (directing the federal government "to use all practicable means" to protect the environment).

The second order Defendants cite also cuts against them. It imposed sanctions on a foreign power during an international crisis. Exec. Order No. 13,338, 69 Fed. Reg. 26,751 (May 11, 2004). That order expressly invoked the International Emergency Economic Powers Act, which authorizes the President to impose such sanctions. 50 U.S.C. §§ 1701–02. Of course, even apart from statutory authorization, the foreign-affairs context is one in which the President may wield inherent constitutional authority. *See Clinton v. City of New York*, 524 U.S. 417, 445 (1998).

The consequences of recognizing such novel executive powers could extend beyond this case. Taken to its extreme, Defendants' position would call into question Congress's power to regulate agency rulemaking altogether—even in statutes as foundational as the Administrative Procedure Act ("APA"). Like the NVRA, the APA lays out clear rules for how agencies must act, including the notice-and-comment process. *See* 5 U.S.C. § 553. Just like Article II does not authorize the President to override the APA, it does not allow him to disregard the NVRA. The President cannot compel the EAC to add a documentary proof-of-citizenship requirement to the Federal Form any more than he can direct the commission to end-run notice-and-comment rulemaking.

For these reasons, Section 2(a) violates the Elections Clause and the constitutional separation of powers.

### C.  This Court has Inherent Equitable Power to Enjoin Defendants from Implementing Section 2(a).

Because Section 2(a) is unconstitutional, this Court has inherent equitable power to enjoin its implementation. *See LULAC*, 780 F. Supp. 3d at 172. As this Court observed, "plaintiffs 'are entitled to bring a non-statutory cause of action questioning the legality of [an] Executive Order.'" *Id.* (quoting *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996)); *see also Soucie v. David*, 448 F.2d 1067, 1072 n.12 (D.C. Cir. 1971) ("[C]ourts have power to compel subordinate executive officials to disobey illegal Presidential commands."). Indeed, "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *see also LULAC*, 780 F. Supp. 3d at 172 (tracing history of judicial review of the constitutionality of executive orders).

Defendants' counterargument flies in the face of this well-established constitutional practice. They contend that Plaintiffs cannot challenge Section 2(a)'s constitutionality "because the APA is available." Defs.' Br. 10. But this Court has already made clear that a "cause[] of action

in equity to enjoin unlawful Executive action" existed "both before and after the APA." *LULAC*, 780 F. Supp. 3d at 172. Indeed, it is black letter law that the APA "does not repeal" the existence of an equitable cause of action. *Reich*, 74 F.3d at 1328 (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988)). That the implementation of Section 2(a) would give rise to an APA claim doesn't prevent Plaintiffs from challenging the constitutionality of Section 2(a) now to prevent irreparable harm. That is especially true here where the challenged provision itself— regardless of the way it is implemented—is unconstitutional. And of course, any eventual APA claim would challenge an EAC action; this suit concerns the constitutionality of the President's command to the EAC. Put simply, "Plaintiffs are not required to wait for a final agency action before bringing a suit for equitable relief." *PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 555 n.19 (D. Md. 2025); *see also Reich*, 74 F.3d at 1326–27 (reviewing equitable challenge to an executive order even though plaintiffs could have brought an APA claim challenging its implementation).[4]

The RNC tries a different tack. Citing *FedEx*, 39 F.4th at 765, it argues that Plaintiffs' claim must meet the "exacting standard" that applies to certain statutory *ultra vires* claims. RNC Br. 8. That is incorrect for two reasons.

First, Plaintiffs do not bring a *statutory* ultra vires claim; they bring a *constitutional* claim. As the D.C. Circuit recently confirmed, "[f]or implied equitable claims under the Constitution, [the court] ha[s] imposed neither the requirements for *ultra vires* review nor those for APA review." *Vought*, 2025 WL 2371608, at *18; *see also Susman Godfrey LLP v. Exec. Off. of the President*, No. 25-cv-1107, 2025 WL 1779830, at *23 (D.D.C. June 27, 2025) ("*Federal Express Corp.* is inapposite" because "[t]he challenge mounted here . . . is a classic separation-of-powers

---

[4]    Defendants incorrectly suggest that *Reich* turned on "postural quirks" absent here. Defs.' Br. 11–12. In *Reich*, plaintiffs brought an equitable challenge to an executive order; while that suit was pending an agency issued regulations implementing the order. 74 F.3d at 1326–27. The D.C. Circuit nevertheless held that the plaintiffs had an equitable cause of action to challenge the order itself—even though they could have amended their complaint to assert an APA claim. *See id.* at 1328. The lesson of *Reich* is clear: the mere possibility of APA review of implementing regulations does not foreclose an equitable challenge to the underlying executive order. The same is true here. And to the extent Defendants contend that Plaintiffs' equitable claim is unripe, that argument fails as well. *See infra* Section II.B.

claim in the vein of *Youngstown*, where the court was 'asked to decide whether the President was acting within his constitutional power when he issued an [executive] order'") (quoting *Youngstown*, 343 U.S. at 582)); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, No. 25-cv-917, 2025 WL 1502329, at *21 n.24 (D.D.C. May 27, 2025) (similar).

The dispute here falls squarely within the separation of powers category of cases. It is about the President's constitutional authority to regulate elections by telling the EAC what to do. Defendants argue that Article II of the Constitution, and not any specific statute, gives the President the power to "direct[] agencies to exercise their authority to take regulatory actions without any suggestion of *constitutional impropriety.*" Defs.' Br. 5 (emphasis added). In other words, Defendants do not argue that Congress, through the NVRA or HAVA, delegates to the President the power to regulate the Federal Form; instead, they contend that the Constitution necessarily entrusts the EAC's power to maintain the Federal Form to him. *See LULAC*, 780 F. Supp. 3d at 195. As in *Youngstown*, then, Plaintiffs' claim "necessarily turn[s] on whether the Constitution authorized the President's actions." *Dalton v. Spector*, 511 U.S. 462, 473 (1994). Because Article II does not give the President such power, *see supra* Section I.B, Section 2(a) exceeds the President's constitutional authority. The heightened standard for statutory *ultra vires* claims is thus inapplicable.[5]

The D.C. Circuit's recent decisions in *Global Health Council v. Trump*, No. 25-5097 (D.C. Cir. Aug. 28, 2025), and *Vought*, 2025 WL 2371608, confirm that Plaintiffs' claim against Section 2(a) is constitutional in nature. In those cases, the court held that the plaintiffs were bringing statutory *ultra vires* claims, not constitutional claims, because in each case a federal "statute "provide[d] a mechanism for the President to act." *Glob. Health Council*, No. 25-5097, slip. op. at

---

[5]     Defendants' reliance on *Nuclear Regulatory Commission v. Texas*, 605 U.S. 665, 681 (2025), is misplaced. Defs.' Br. 10. That case did not concern a constitutional claim; it involved a statutory claim under a statute that precluded judicial review.  *See* 605 U.S. at 679–80. Unlike here, that case did not concern a constitutional claim; it involved a statutory claim under a statute that precluded judicial review. *See* 605 U.S. at 679–80. As discussed, the requirements for statutory *ultra vires* review do not apply "[f]or implied equitable claims under the Constitution." *Vought*, 2025 WL 2371608, at *18.

23 (holding that a challenge to the President's impoundment of congressional appropriations is statutory because the Impoundment Control Act contemplated presidential action); *see also Vought*, 2025 WL 2371608, at *19–20 (holding that a challenge to the Consumer Financial Protection Bureau's downsizing is statutory because the statutes that create the agency contemplate agency action to conduct changes to staffing). *Global Health Council* explained that where some statute provides a mechanism for presidential action, the claim ultimately alleges that the President exceeded that statute's limits. No. 25-5097, slip. op. at 19–20 (citing *Dalton*, 511 U.S. 462). But the court also made clear that when the President purports to draw authority from a statute that does not "even contemplate[]" presidential action, the claim is constitutional, not statutory. *Id.* at 23 (quoting *Reich*, 74 F.3d at 1332).

That is precisely the case here. As discussed, the NVRA and HAVA "careful[ly] allocate[] regulatory power to a bipartisan panel of experts, accompanied by a requirement for consultation with the States." *LULAC*, 780 F. Supp. 3d at 196. Neither statute contemplates the notion that the President would hijack that process. To the contrary, their "design implicitly forbids any individual member of the Executive Branch from unilaterally exercising the delegated power to regulate State voter registration programs." *Id.* Indeed, it is because neither the Elections Clause nor those statutes empower the President in any way that Defendants are forced to argue that he has inherent Article II authority to order the EAC to change the Federal Form. Defs.' Br. 5. That is exactly "the opposite" of the situation in *Global Health Council* and *Vought* where "[t]he Executive . . . invoked no such freestanding Article II power." *Vought*, 2025 WL 2371608, at *20; *see Glob. Health Council*, No. 25-5097, slip. op. at 20. Therefore, Plaintiffs' claim against Section 2(a) is a constitutional one.

Second, even if Plaintiffs' claim were framed as a statutory *ultra vires* claim (and it should not be), it still would not be subject to the heightened standard because there is no statutory preclusion of review under the NVRA or HAVA. Courts apply the heightened *ultra vires* standard where the plaintiff seeks to enforce a statute that otherwise bars judicial review. *See, e.g.*, *Glob. Health Council*, No. 25-5097, slip. op. at 27–30  (applying the heightened standard because the

Impoundment Control Act precluded judicial review); *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721 (D.C. Cir. 2022) ("The claims here, which challenge agency action under [the Export Control Reform Act of 2018], are barred from APA review, so they must proceed under the strictures of *ultra vires* review"); *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1257–58 (D.C. Cir. 2006) (similar). But where the underlying statute does not bar judicial review, "the 'full scope' of this Court's 'jurisdiction in equity' can provide . . . a remedy." *Mathis*, 749 F. Supp. 3d at 24 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)); *see also Armstrong*, 575 U.S. at 326–27 ("[W]e have long held that federal courts may in some circumstances grant injunctive relief" to prevent "violations of federal law by federal officials.") (citing *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see, e.g.*, *King v. Youngkin*, 122 F.4th 539, 547 (4th Cir. 2024) (no heightened standard reviewing equitable claim for violating federal law that does not itself preclude judicial review); *Crown Castle Fiber, L.L.C. v. City of Pasadena*, 76 F.4th 425, 434 (5th Cir. 2023) (similar). Here, because neither the NVRA nor HAVA precludes judicial review, and Plaintiffs are not seeking to enforce a statute but rather prevent a constitutional violation, Plaintiffs' claim does not trigger the heightened standard under *FedEx*, even if framed as a statutory *ultra vires* claim.

Finally, even if (1) Plaintiffs' constitutional claim was construed as a statutory *ultra vire*s one despite the President's total lack of statutory authority to issue Section 2(a); and (2) the heightened *ultra vires* standard was to apply despite there being no preclusion of judicial review, Plaintiffs would meet that standard. The standard requires Plaintiffs to show that Section 2(a) is contrary to a "clear and mandatory" statutory prohibition. *FedEx*, 39 F.4th at 763; *see also Glob. Health Council*, No. 25-5097, slip. op. at 23 n.14. Here, there is a "clear and mandatory statutory prohibition": the NVRA and HAVA require that the EAC—independently and by a bipartisan majority—determine that a change to the Federal Form is necessary to assess voter eligibility. *See* 52 U.S.C. §§ 20921, 20923(a)(1), (b)(2), 20928. Section 2(a) "disregards [this] specific and unambiguous statutory directive," *FedEx*, 39 F.4th at 764, because it mandates the EAC to change the Federal Form, regardless of whether it concludes that the change is necessary.

II.    **Plaintiffs Have Standing to Challenge Section 2(a).**

A.    **Plaintiffs Properly Rely on Declarations to Establish Their Standing.**

Defendants' main argument against standing is that the declarations introduced in support of Plaintiffs' partial motion for summary judgment constitute "extrinsic evidence" that is inconsistent with the Court's scheduling order and should be disregarded. Defs.' Br. 14. This Court has now rejected that argument because "at the summary-judgment stage, the plaintiff must demonstrate standing by affidavit or other evidence." Mem. Op. & Order, ECF No. 180 at 11 (quoting *Frank v. Autovest, LLC*, 961 F.3d 1185, 1187 (D.C. Cir. 2020) (internal quotation marks omitted)). "Plaintiffs' motions, declarations, and other exhibits" were thus "consistent with th[e] Court's scheduling order." *Id.* at 14. Those declarations and exhibits—which are in relevant part uncontested—clearly establish Plaintiffs' standing. *See infra* Section II.C.

B.    **Plaintiffs' Challenge to Section 2(a) Is Timely.**

Next, Defendants repeat arguments claiming that any injury suffered is either uncertain or premature. But the Court previously rejected these arguments and should do so again. Defendants maintain, for example, that Plaintiffs' injuries are based on "a hypothetical outcome" that has "yet to occur." Defs.' Br. 15. The Executive Order "inflicts no imminent harm," they say, because the EAC "has not completed its rulemaking" and the "outcome of that process" is uncertain. Defs.' Br. 15–16.

The Court should not credit these arguments for the same reasons it has already rejected them. *LULAC*, 780 F. Supp. 3d at 183–88. As the Court explained, Section 2(a)'s plain language—which "mandates that the EAC take action to require documentary proof of citizenship on the Federal Form" and "states that mandate in no uncertain terms"—belies Defendants' suggestion that Plaintiffs' challenge is unripe or that their injury is speculative. *Id.* at 184. By its terms, Section 2(a) "hereby order[s] [that]: the Election Assistance Commission shall take appropriate action to require . . . documentary proof of United States citizenship" on the Federal Form. Exec. Order § 2(a). And it purports to do so "[b]y the authority vested" in the President. Exec. Order

(preamble). Thus, Section 2(a) entirely "dictate[s] the precise contents of the new rule." *LULAC*, 780 F. Supp. 3d at 185.

Indeed, at the preliminary-injunction hearing, Defendants' counsel acknowledged that Section 2(a) means what it says: "the end result will be that [Section] 2(a) will be adopted by EAC even if EAC decides . . . that they do not think it's needed [and] they wouldn't put it in except for the president's order." Tr. of Oral Arg. On Pls.' Mot. for Prelim. Inj. ("PI Tr.") 73:22–74:3; *see also LULAC*, 780 F. Supp. 3d at 188 (counsel "argued that 'documentary proof [of citizenship] is required' on the Federal Form because that is what 'the President has ordered.'" (quoting PI Tr. 71:25–72:1, 74:14–15)). Defendants' effort to retract that admission (*see* Defs.' Br. 8–9) contradicts both counsel's affirmations in open court and the order's plain text.[6]

As this Court has explained, the savings clause does not help Defendants on this point either. *LULAC*, 780 F. Supp. 3d at 175–76. While courts have read saving clauses in executive orders to block pre-enforcement challenges where there was uncertainty about what the agency had been ordered to do, they have not wavered in reviewing executive orders where, as here, there is no uncertainty about the mandated action. *Compare Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002)*, with City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018); *see also LULAC*, 780 F. Supp. 3d at 176 n.27 (collecting cases); *Nat'l Urban League v. Trump*, No. 25-cv-471, 2025 WL 1275613, at *13 (D.D.C. May 2, 2025).

---

[6]    When Defendants tried to reverse course on the same position before another federal court, the court held that they were judicially estopped from doing so. *See California v. Trump*, No. 25-cv-10810, 2025 WL 1667949, at *8 (D. Mass. Jun. 13, 2025). Defendants now contend that judicial estoppel should not preclude them from changing their view because estoppel "would prevent the Government from lawfully enforcing section 2(a)." Defs.' Br. 9. But under their new theory, Section 2(a) is merely a suggestion, leaving nothing to "enforce." And even if estoppel does not apply, their new reading must be rejected as inconsistent with the Order's plain text, which directs that the EAC "shall take appropriate action to require" documentary proof of citizenship on the Federal Form. Executive Order § 2(a); *see also* April 11 EAC Letter, ECF No. 95-1, Ex. A (letter from EAC Executive Director Brianna Schletz to Chief Election Officials making clear that Section 2(a) "provides instruction to the EAC" and "instructs" that documentary proof of citizenship "be required in the national mail voter registration form").

Nor does Defendants' attempt to characterize the EAC's April 11 letter to the States as a mere "first step in the consultation process" support their position that the challenge to Section 2(a) is untimely. Defs.' Br. 16. This Court previously concluded that the letter demonstrated two key points: the EAC has already begun implementing Section 2(a), and the EAC does not view Section 2(a) as merely a suggestion to *consider* a documentary-proof-of-citizenship requirement in some unspecified form. *LULAC*, 780 F. Supp. 3d at 187. Rather, the Court expressly found that the EAC's interpretation of Section 2(a), in fact, aligns with both the Court's and Plaintiffs' understanding: Section 2(a) is a clear, unambiguous "instruction" to adopt the exact documentary proof-of-citizenship requirement outlined in the Executive Order. *Id.*

In sum, "the Article III standing and ripeness issues in this case boil down to the same question"—whether Plaintiffs must wait for actual enforcement before challenging an action that is certain to occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (cleaned up); *see also LULAC*, 780 F. Supp. 3d at 173. Precedent makes clear that the answer is "no." *See Consol. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 824 F. 2d 1071, 1081 (D.C. Cir. 1987) (for ripeness inquiry, "[i]t is enough that the petitioner show that it has suffered sufficient hardship to pass the Article III threshold"); *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016) ("Damocles's sword does not have to actually fall on all appellants before the court will issue an injunction."). For these reasons, the Court should reject Defendants' contention that Plaintiffs' Section 2(a) challenge is premature.

### C. Plaintiffs Have Suffered a Concrete Injury-in-Fact Both to Their Organizations and Their Members.

Defendants next take issue with Plaintiffs' evidence showing organizational harm. Their first assertion—that the Court should disregard Plaintiffs' declarations as "extrinsic evidence" under Federal Rule of Civil Procedure 56(d), Defs.' Br. 14—has already been rejected. *See* Mem. Op. & Order, ECF No. 180. Their second assertion—that the injury to Plaintiffs' organizations is insufficient under *AHM*, 602 U.S. 367—can be easily dispatched. Defs.' Br. 17.

First, Defendants entirely ignore this Circuit's controlling precedent in *Newby*, 838 F.3d 1. There, the court reiterated that harm to an organization's core mission of "registering voters" is a cognizable injury-in-fact for purposes of establishing standing. *Id.* at 9. Although *AHM* postdates *Newby*, nothing in *AHM* contradicts it. Plaintiffs adduced specific facts demonstrating that:

(1) Plaintiffs have a core mission of registering voters.[7]

(2) Plaintiffs regularly do so using the Federal Form, which is a "singularly essential resource to Plaintiffs" because it "enables Plaintiffs to register voters with one consistent form in almost all states."[8]

(3) Plaintiffs in Arizona use the Federal Form to register eligible voters who lack documentary proof of citizenship.[9]

(4) Section 2(a) threatens their core voter registration mission because "[i]f the EAC implements Section 2(a) of the Executive Order, Plaintiffs would be unable to use the Federal Form to register eligible citizens who lack documentary proof of citizenship," including in Arizona, where many voters have no alternative to register to vote.[10]

(5) For example, ASA "ceased voter registration activities" when the Executive Order was issued, "resumed voter registration activities" when this Court preliminarily enjoined Section 2(a), and "would have to stop or dramatically reassess [its] voter registration activities" if the injunction were to end.[11]

---

[7]    League & LULAC Pls.' Statement of Undisputed Material Facts ("SUMF"), ECF No. 145-2 ¶¶ 13–14, 17–18.

[8]    SUMF ¶¶ 14, 21–22.

[9]    SUMF ¶¶ 119–21.

[10]    SUMF ¶¶ 26, 122, 124, 131.

[11]    SUMF ¶¶ 27–29 (quoting Suppl. Decl. of Kyle Nitschke ("Nitschke Suppl. Decl."), ECF No. 145-15, Ex. 12 ¶ 22).

Other than Defendants' now-rejected Rule 56(d) objection, neither Defendants nor the RNC contests these facts,[12] so "the Court may assume [they] are admitted." LCvR 7(h)(1); *see also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) ("This circuit has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court.").

Second, contrary to Defendants' characterization, *AHM* in fact bolsters Plaintiffs' standing. Defs.' Br. 17. *AHM* reiterated that harm to an organization's "core business activities" is a cognizable Article III injury. 602 U.S. at 395 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Here, the harm to Plaintiff organizations is far more concrete than the abstract informational injury addressed in *AHM*, and is in fact directly analogous to the injury the Supreme Court found established standing in *Havens*, as affirmed in *AHM*. *See LULAC*, 780 F. Supp. 3d at 190.

As this Court recognized, the ongoing injury here stems from Plaintiffs having to allocate scarce resources to *counteract* the harmful impact of Section 2(a) on their organizations' core missions. *Id.* (citing *Havens*, 455 U.S. at 379, for the proposition that the organization challenged unlawful racial steering practices that it had "devote[d] significant resources" to "counteract").

---

[12]    *See* Defs.' Resps. to Pls.' Statements of Undisputed Facts ("Defs.' SUMF Resp."), ECF No. 163-1 ¶¶ 13–14, 17–18, 21–22, 26–29, 119–22, 124, 131; Republican Nat'l Comm. Resp. to League and LULAC Pls.' Statement of Material Facts ("RNC SUMF Resp."), ECF No. 161-5 ¶¶ 13–14, 17–18, 21–22, 26–29, 119–22, 124, 131.

That injury is well documented in the record before the Court.[13] And, again, these facts are undisputed.[14]

Finally, with respect to associational standing, Defendants' only retort is that Plaintiffs' supporting declarations should be struck because they violate this Court's scheduling order. Defs.' Br. 17. As discussed, the Court has already ruled that "Plaintiffs' motions, declarations, and other exhibits were consistent with this Court's scheduling order." Mem. Op. & Order, ECF No. 180, at 14. And the declarations from two ASA members who are eligible voters clearly illustrate difficulties that the organization's members face in complying with Section 2(a)'s documentary-proof-of-citizenship requirement because they lack a passport, have inaccessible or unavailable birth certificates, and do not possess other qualifying documents.[15]

---

[13]     SUMF ¶¶ 49–50, 89, 93, 104–06 (The League has already expended resources to counteract the Executive Order and would have to overhaul educational materials on VOTE411.org and other sites to avoid harm caused by providing incorrect or incomplete information if Section 2(a) is implemented); SUMF ¶¶ 90–91, 104–06 (APIAVote has devoted resources to counteracting the Executive Order and would be forced to commit more resources to substantially change its voter registration portal, both "to instruct registrants to provide documentary proof of citizenship" and "create guides in multiple Asian languages" if Section 2(a) is implemented); SUMF ¶ 92 (OCA would have to pull resources from their regular, core activities toward developing a new method of registration to replace or supplement APIAVote's portal); SUMF ¶¶ 93–94, 103–06 (LWVAZ, Hispanic Federation, and LULAC have devoted resources to counteracting the impact of Section 2(a) and will have to overhaul their volunteer training and reevaluate their use of the Federal Form at in-person voter registration events and through voter registration portals if Section 2(a) is implemented); SUMF ¶¶ 60, 94 (the NAACP would have to reevaluate its use of the Federal Form to register voters through Vote.org if Section 2(a) is implemented); SUMF ¶¶ 95–98, 104–06 (SFI has already overhauled its training in response to the Executive Order and would be forced to devote additional resources to changing its training and educational materials if Section 2(a) is implemented); SUMF ¶¶ 104–06, 110 (ASA has already spent resources counteracting the Executive Order and would have to divert resources away from its existing programming if Section 2(a) is implemented).

[14]     *See* RNC SUMF Resp. ¶¶ 49–50, 60, 89–98, 103–06, 110; Defs.' SUMF Resp. ¶¶ 49–50, 60, 65, 89–98, 103–06, 110.

[15]     *See* Nitschke Suppl. Decl. ¶¶ 8–10; Decl. of J. Doe 1, ECF No. 145-29, Ex. 26 ¶¶ 4–7; Decl. of J. Doe. 2, ECF No. 145-30, Ex. 27 ¶¶ 6–9; *see also* Min. Order (July 11, 2025) (granting unopposed motion to file two declarations pseudonymously).

For all these reasons, Plaintiffs have demonstrated organizational and associational standing.

## III.    Plaintiffs are Entitled to a Permanent Injunction.

Plaintiffs are entitled to a permanent injunction because they have met each of the four injunction factors. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Anatol Zukerman & Charles Krause Reporting, LLC v. USPS*, 64 F.4th 1354, 1364 (D.C. Cir. 2023). This Court should therefore (1) declare that Section 2(a) violates the Elections Clause and the constitutional separation of powers and (2) permanently enjoin its implementation.

Defendants are wrong that Plaintiffs may not "seek a declaratory judgment against the President." Defs.' Br. 18. The D.C. Circuit has previously granted declaratory judgment against the President. *See Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 616 (D.C. Cir. 1974); *see also City of New York*, 524 U.S. 417, 425 n.9 (1998) (affirming district court's grant of declaratory judgment against the President, where "neither set of plaintiffs sought injunctive relief against the President"). In any event, Plaintiffs remain entitled to a declaratory judgment and permanent injunction against the EAC Defendants.

### A.  The Injunction Factors Weigh in Plaintiffs' Favor.

Plaintiffs have demonstrated irreparable harm and the inadequacy of any remedy available at law. Defendants' assertion to the contrary due to the absence of final agency action is erroneous, as is their contention that Plaintiffs' claim is not prudentially ripe. *See* Defs.' Br. 12–14. These assertions presume a challenge under the APA, which Plaintiffs do not pursue in this motion, and need not bring to obtain equitable relief to stop unconstitutional action now. *See supra* Section I.C. Section 2(a) is an unconstitutional mandate on the EAC, which immediately acted to implement its terms. *See LULAC*, 780 F. Supp. 3d at 187–88. Without an injunction, the EAC would be operating under an unlawful directive to change the Federal Form. As set out above, Section 2(a) mandates that the EAC require documentary proof of citizenship with the Federal Form. *See supra* Section II.B. A permanent injunction could not constitute an "improper constraint on agency decision-making," Defs.' Br. 23, when the President ordered the EAC to make a specific decision,

constraining its decision-making entirely. Plaintiffs' claim is justiciable now, regardless of any future agency action.

Plaintiffs have more than adequately demonstrated the concrete, irreparable harm they have incurred and would continue to incur should Section 2(a) be implemented. These harms are not speculative. Plaintiffs adduced evidence showing Section 2(a) would upend their voter registration operations and prevent them from registering untold numbers of voters, including individuals without any alternative to the Federal Form. *See supra* Section II.C. Defendants neither contest these facts nor argue that they fail to constitute irreparable harm. Instead, Defendants protest Plaintiffs' reliance on affidavits and other evidence to show harm, an argument this Court has now rejected. Defs.' Br. 17; *see* Mem. Op. & Order, ECF No. 180.

The balance of the equities and public interest factors support Plaintiffs too. *See LULAC*, 780 F. Supp. 3d at 202–03. Defendants argue that the public has a "fundamental" interest in "[f]ree, fair, and honest" elections. Defs.' Br. 24 (quoting Exec. Order § 1); *see* RNC Br. 27–28. But Section 2(a) would hinder, not further, that interest. Indeed, Defendants offer no evidence showing how Section 2(a) supports those interests nor how an injunction here harms those interests and the limited facts the RNC musters are misleading at best. *See* League and LULAC Pls.' Resp. to the Republican Nat'l Comm.'s Statement of Material Facts ¶¶ 9–14. In contrast, Plaintiffs and the public face substantial, concrete burdens if Section 2(a) is implemented.  The public interest is best served when "as many qualified voters" as possible can vote. *LULAC*, 780 F. Supp. 3d at 203 (quoting *Newby*, 838 F.3d at 12).

**B.  Defendants Take No Issue with the Scope of Relief.**

Defendants do not dispute the scope of relief that Plaintiffs seek in their motion for partial summary judgment, nor do they question the Court's authority to grant such relief. That is because there is one Federal Form; it is used nationwide and must be uniform. *ITCA*, 570 U.S. at 4. The only way to provide complete relief for Plaintiffs' injuries is to permanently enjoin Defendants from implementing Section 2(a).

**CONCLUSION**

Plaintiffs respectfully request that the Court grant Plaintiffs' and deny Defendants' and the RNC's motions for partial summary judgment as to their Section 2(a) claim.

Dated: August 29, 2025

Respectfully submitted,

Wendy R. Weiser*
Sean Morales-Doyle*
Eliza Sweren-Becker*
Jasleen K. Singh*
Andrew B. Garber*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
weiserw@brennan.law.nyu.edu
morales-doyles@brennan.law.nyu.edu
sweren-beckere@brennan.law.nyu.edu
singhj@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu

Leah C. Aden*
John S. Cusick*
Brenda Wright*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
jcusick@naacpldf.org
bwright@naacpldf.org

Miranda Galindo*
Cesar Z. Ruiz*
Delmarie Alicea*
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
mgalindo@latinojustice.org
cruiz@latinojustice.org
dalicea@latinojustice.org

Niyati Shah (D.C. Bar No. 1659560)
Alizeh Ahmad (D.C. Bar No. 90018919)
ASIAN AMERICANS
ADVANCING JUSTICE-AAJC
1620 L Street, NW, Suite 1050
Washington, D.C. 20036
(202) 296-2300

*/s/ Sophia Lin Lakin*
Sophia Lin Lakin*
Ethan Herenstein*
Jonathan Topaz*
Clayton Pierce*
Davin Rosborough*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
eherenstein@aclu.org
jtopaz@aclu.org
cpierce@aclu.org
drosborough@aclu.org

Megan C. Keenan (D.C. Bar No. 1672508)
Sarah Brannon (D.C. Bar No. 90024493)
Adriel I. Cepeda Derieux (D.C. Bar No.
90026636)
Jacob Van Leer (D.C. Bar No. 1742196)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20001
(202) 457-0800
mkeenan@aclu.org
sbrannon@aclu.org
acepedaderieux@aclu.org
jvanleer@aclu.org

Michael Perloff (D.C. Bar No. 1601047)
Scott Michelman (D.C. Bar No. 1006945)
Aditi Shah (D.C. Bar. No. 90033136)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
mperloff@acludc.org
smichelman@acludc.org
ashah@acludc.org

*Counsel for Plaintiffs League of Women
Voters Education Fund, League of Women
Voters of the United States, League of*

nshah@advancingjustice-aajc.org
aahmad@advancingjustice-aajc.org

*Women Voters of Arizona, Hispanic Federation, National Association for the Advancement of Colored People, OCA-Asian Pacific American Advocates, and Asian and Pacific Islander American Vote*

*Admitted pro hac vice*

/s/ *Norman L. Eisen*
Norman L. Eisen (D.C. Bar No. 435051)
Tianna J. Mays (D.C. Bar No. 90005882)
Pooja Chaudhuri (D.C. Bar No. 888314523)
Sofia Fernandez Gold (D.C. Bar No. 90010196)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
(202) 601-8678
norman@statedemocracydefenders.org
tianna@statedemocracydefenders.org
pooja@statedemocracydefenders.org
sofia@statedemocracydefenders.org

*Counsel for Plaintiffs League of United Latin American Citizens, Secure Families Initiative, and Arizona Students Association*

/s/ *Danielle Lang*
Danielle Lang (D.C. Bar No. 1500218)
Jonathan Diaz (D.C. Bar No. 1613558)
Robert Brent Ferguson (D.C. Bar No. 1782289)
Anna Baldwin (D.C. Bar No. 998713)
Heather Szilagyi (D.C. Bar No. 90006787)
Benjamin Phillips (D.C. Bar No. 90005450)
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
abaldwin@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
bphillips@campaignlegalcenter.org