**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEAGUE OF UNITED LATIN AMERICAN
CITIZENS, *et al.*,
Plaintiffs,
v.                                                              Civil Action No. 25-0946 (CKK)
EXECUTIVE OFFICE OF THE PRESIDENT,
PRESIDENT, *et al.*,
Defendants,
and
REPUBLICAN NATIONAL COMMITTEE,
Intervenor-Defendant.

_____

DEMOCRATIC NATIONAL COMMITTEE,
*et al.*,
Plaintiffs,
v.                                                              Civil Action No. 25-0952 (CKK)
DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,
Defendants,
and
REPUBLICAN NATIONAL COMMITTEE,
Intervenor-Defendant.

_____

LEAGUE OF WOMEN VOTERS
EDUCATION FUND, *et al.*,
Plaintiffs,
v.                                                              Civil Action No. 25-0955 (CKK)
DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*, )
Defendants,
and
REPUBLICAN NATIONAL COMMITTEE,
Intervenor-Defendant.

_____

**BRIEF OF LAWYERS DEFENDING AMERICAN DEMOCRACY AS AMICUS
CURIAE IN SUPPORT OF NONPARTISAN PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Aderson Francois (D.C. Bar No. 498544)
Civil Rights Clinic

Georgetown University Law Center
600 New Jersey Avenue NW, Suite 352
Washington, DC 20001
Phone: (202) 661-6721
Fax: (202) 662-9634
Aderson.Francois@georgetown.edu

Counsel for Amicus

# TABLE OF CONTENTS

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT** ........................................................ 1

**IDENTITY AND INTEREST OF AMICUS** ................................................................. 1

**SUMMARY OF ARGUMENT** ............................................................................. 2

**ARGUMENT** ........................................................................................... 4

   **I.   Defendants Have Waived Any Objection as to the Scope of the Court's Injunction Against Enforcement of Section 2(a).** ....................................................... 4

   **II. Even if Defendants Have Not Waived Any Objection as to Scope, the Court's Preliminary Injunction Was Appropriately Tailored to Provide Complete Relief to the Nonpartisan Plaintiffs From the Harms Inherent in Section 2(a), Remains Valid Following *CASA*, and Should Be Made Permanent on Summary Judgment** ...................... 5

     A.  The Court's Injunction Is Consistent With Principles of Equity Affording Complete Relief to Plaintiffs for the Harm to Their Core Missions, the Supreme Court's Decision in *CASA*, and the Policies Underlying the NVRA and the HAVA. ........................... 6

     B. The Court's Order Did Not Grant A "Universal" Injunction but Instead Was Properly Tailored to Prevent Harm to the Plaintiffs Before the Court, And This Court Should Make That Relief Permanent. ................................................................ 10

**CONCLUSION** ......................................................................................... 16

**CERTIFICATE OF COMPLIANCE** ........................................................................ 17

**CERTIFICATE OF SERVICE** ........................................................................... 18

# TABLE OF AUTHORITIES

**CASES**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ........................................ 6, 7, 10

*Califano v. Yamasaki,* 442 U.S. 682 (1979) ........................................................................ 9, 12

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) ................................................................................... 12

*Hyatt Corp. v. Hyatt Legal Servs.*, 736 F.2d 1153 (7th Cir. 1984) ............................................. 15

*Interstate Fire and Cas. Co. v. Wash. Hosp. Ctr. Corp.*, 917 F. Supp. 2d 87 (D.D.C. 2013) ........ 4

*Labrador v. Poe*, 144 S. Ct. 921 (2024) ....................................................................................... 11

*LULAC v. Exec. Off. of the President*, 2025 WL 1187730, at *1 (D.D.C. Apr. 24, 2025) .... *passim*

*NAACP* v. *Ala. ex rel. Patterson*, 357 U.S. 449 (1958) ................................................................ 14

*Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709, at *22 (9th Cir. 2025) ............................ 14

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019) ........................................................................ 12

*Shaw v. Hunt*, 517 U.S. 899 (1996) .............................................................................................. 13

*Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952) ........................................................................ 15

*Trump v. CASA Inc.,* 145 S. Ct. 2548 (2025) .......................................................................... *passim*

*Trump v. Hawaii*, 585 U.S. 667  (2018) ...................................................................................... 12

*Washington v. Reno*, 35 F.3d 1093  (6th Cir.1994) .................................................................... 13

**STATUTES**

Administrative Procedure Act ........................................................................................................ 6

Help America Vote Act ("HAVA") ......................................................................................... *passim*

National Voter Registration Act ("NVRA") ............................................................................ *passim*

Paperwork Reduction Act .............................................................................................................. 6

**OTHER AUTHORITIES**

Alan M. Trammell, *Demystifying Nationwide Injunctions*, 98 TEX. L. REV. 67, 72 n.24 (2019)..11

Executive Order 14248 codified at 90 Fed. Reg. 14,005 (Mar. 25, 2025) titled "Preserving and
   Protecting the Integrity of American Elections" ............................................................ *passim*

Howard M. Wasserman, *"Nationwide" Injunctions Are Really "Universal" Injunctions and They
   Are Never Appropriate*, 22 LEWIS & CLARK L. REV. 335, 338 (2018))....................................11

Michael T. Morley, *De Facto Class Actions? Plaintiff- and Defendant-Oriented Injunctions in
   Voting Rights, Election Law, and Other Constitutional Cases*, 39 HARV. J.L. & PUB. POL'Y
   487, 490–91 (2016).................................................................................................................11

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Lawyers Defending American Democracy is a non-partisan tax-exempt 501(c)(3) corporation. Amicus is not owned by any parent corporation and no publicly held company has 10% or more ownership in LDAD.

## IDENTITY AND INTEREST OF AMICUS

Lawyers Defending American Democracy ("LDAD") files this amicus brief in support of the motion filed by the Nonpartisan Plaintiffs[1] ("Nonpartisan Plaintiffs" or "Plaintiffs") for partial summary judgment, and in opposition to Defendants' cross-motion for partial summary judgment. LDAD is a non-profit, nonpartisan organization devoted to: encouraging the legal profession to enforce and uphold principles of democracy and law, consistent with our obligations as lawyers; demanding accountability from lawyers and public officials; and identifying attacks on legal norms and prescribing redress for them. It has a significant interest in this case because the Executive Order at issue[2] undermines basic principles of democracy and the rule of law. All parties have consented to our filing this brief, and a motion for leave to file it is attached.

---

[1]     For purposes of this brief, the terms "Nonpartisan Plaintiffs" and "Plaintiffs" refer to the "League Plaintiffs" (League of Women Voters Education Fund, League of Women Voters of the United States, League of Women Voters of Arizona, Hispanic Federation, National Association for the Advancement of Colored People, OCA-Asian Pacific American Advocates, and Asian and Pacific Islander American Vote) and the "LULAC Plaintiffs" (League of United Latin American Citizens, Secure Families Initiative, and Arizona Students Association).

[2]     This brief addresses Executive Order No. 14,248 ("Executive Order") issued on March 25, 2025, Executive Order 14248, codified at 90 Fed. Reg. 14,005 (Mar. 25, 2025) and titled "Preserving and Protecting the Integrity of American Elections entitled," specifically Section 2(a), which requires the Election Assistance Commission ("EAC") to require "documentary proof of United States citizenship" in the federal form prescribed by Congress for use in registering voters in federal elections (the "Federal Form").

## SUMMARY OF ARGUMENT

As this Court has stated in granting the Preliminary Injunction, these consolidated cases are about the separation of powers. *LULAC v. Exec. Off. of the President*, 2025 WL 1187730, at *1 (D.D.C. Apr. 24, 2025). The Executive Order in Section 2(a) constitutes a serious intrusion by the President on the Constitutional authority of the legislative branch to set the parameters for federal elections. Specifically, Section 2(a) violates the prerogatives of Congress and agencies it designates to determine, in consultation with the states, the requirements for voter registration in federal elections. This Court correctly enjoined Defendants from implementing Section 2(a) in order to prevent irreparable harm to the Nonpartisan Plaintiffs in their core missions of registering eligible citizens to vote. The Court's injunction was no broader than necessary to afford complete relief to Plaintiffs, and fits squarely within the Court's authority under principles of equity articulated by the Supreme Court.

Voting and voter registration in elections for federal office are pillars of our democracy. The well-articulated statutory schemes in the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA") were designed to preserve and promote election integrity and to increase the numbers of eligible citizens who vote in federal elections. The Federal Form for voter registration is a key element that furthers these objectives.

Congress has designated the bipartisan EAC as the agency responsible to propose and promulgate regulations regarding (among other things) what will be included in the Federal Form. But the Federal Form cannot serve its function unless it is as widely and easily available as possible to persons who wish to vote. The Nonpartisan Plaintiffs, who use the Federal Form to help register thousands of citizens to vote, play an essential role in our federal election system. This role would

be severely undermined if the burdensome mandate in Section 2(a) requiring documentary proof of citizenship were implemented.

As the Supreme Court has repeatedly confirmed, most recently in *Trump v. CASA Inc.,* 145 S. Ct. 2548 (2025), affording complete relief to the plaintiffs before the court is a mainstay of equity. *Id.* at 2556. The Court's order preliminarily enjoining Defendants from implementing Section 2(a) was no broader than necessary to prevent irreparable harm to Plaintiffs in pursuing their core missions, most importantly helping citizens to register to vote, and should be made permanent.

Nor does such relief render the injunction suspect; it is not a universal injunction. Enjoining implementation of Section 2(a) is directed only to affording Plaintiffs complete relief, and any benefit to others not before the Court is incidental. Moreover, by enjoining Defendants from implementing Presidentially-imposed changes to the single, uniform Federal Form, an injunction against Section 2(a) would not impose any additional burden on Defendants beyond that needed to afford Plaintiffs complete relief.

As the Nonpartisan Plaintiffs demonstrate, if Section 2(a) were implemented, the harm to their core missions of educating and assisting citizens to register to vote would be concrete, far-reaching and irreparable. To continue carrying out their core voter registration mission, Plaintiffs would need to help citizens in multiple states throughout the country meet the documentary evidence requirement, which for many would be difficult or impossible to do. Plaintiffs would need to divert scarce resources to helping a smaller number of voters and this would undermine their capacity to register more voters. Thus, implementing Section 2(a) would burden Plaintiffs in their core missions of informing citizens and helping them register to vote. Only by enjoining the enforcement of Section 2(a) in its entirety can the harm to the Nonpartisan Plaintiffs be avoided.

This relief is also necessary to avoid Presidential overreach into the constitutionally and legally prescribed powers of Congress over elections, and to prevent new and extra-legal requirements from undermining Congressional policy in favor of increasing the number of eligible citizens who register to vote in federal elections. Allowing the President to dictate the requirements for citizens to be allowed to vote would not only violate the Constitution, the NVRA, and the HAVA, but would undermine the functioning of the federal election system, an essential component of democracy and the rule of law.

For these reasons, Amicus urges the Court to grant the Nonpartisan Plaintiffs' request to permanently enjoin Defendants from implementing Section 2(a) of the Executive Order.

## ARGUMENT

## I.   Defendants Have Waived Any Objection as to the Scope of the Court's Injunction Against Enforcement of Section 2(a).

In their memorandum in support of motion for partial summary judgment, the Nonpartisan Plaintiffs assert that the Supreme Court's recent decision in *Trump v. CASA* does not call into question the scope of the preliminary injunction currently in effect in this case and that the scope of any permanent injunction this Court may issue should be the same. League and LULAC Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment, ECF No. 145-1 at 49–50. Neither the Defendants nor the Intervenor-Defendant responded to this assertion in their respective oppositions to the motion or addressed the scope of any permanent relief in their respective cross-motions. Consequently, the Defendants and the Intervenor-Defendant have waived any challenge to the scope of any permanent relief in this case. *See, e.g.*, *Interstate Fire and Cas. Co. v. Wash. Hosp. Ctr. Corp.*, 917 F. Supp. 2d 87, 92 (D.D.C. 2013) (arguments not

raised in summary judgment motion before district court are waived), *aff'd*, 758 F.3d 378 (D.C. Cir. 2014).

**II. Even if Defendants Have Not Waived Any Objection as to Scope, the Court's Preliminary Injunction Was Appropriately Tailored to Provide Complete Relief to the Nonpartisan Plaintiffs From the Harms Inherent in Section 2(a), Remains Valid Following *CASA*, and Should Be Made Permanent on Summary Judgment.**

As this Court correctly determined, the Nonpartisan Plaintiffs are entitled to complete relief from the harm that Executive Order No. 14,248 causes to their core missions of registering voters. *LULAC*, 2025 WL 1187730, at *56–58. The Executive Order in Section 2(a) ignores Congress' well-articulated and highly specific method for registering voters in federal elections: provide for a uniform Federal Form and have each voter attest to citizenship as part of that Form. Instead, Section 2(a) would undermine the purpose of the Federal Form—to encourage voting by making it easier to register to vote—by imposing an entirely new and burdensome requirement that voters demonstrate through documentary evidence that they are citizens.

If Section 2(a) is not permanently enjoined, the Nonpartisan Plaintiffs would be harmed in carrying out their core mission of assisting eligible persons to vote in federal elections. Rather than using the single, uniform, and straightforward Federal Form to register voters in nearly all states throughout the country, Plaintiffs would be forced to divert resources to assist voters in locating documentary evidence that they are in fact citizens, a difficult task for many citizens, and would suffer irreparable harm to their core mission of registering voters nationwide.

Only by enjoining Defendants from implementing Section 2(a) can the harm to the Nonpartisan Plaintiffs' core mission throughout the country be avoided. Such relief is fully consistent with the policies of the NVRA and the HAVA prescribing nationwide uniformity in voter registration methods, and is the only way to respect those policies as prescribed by Congress. The injunctive relief this Court provided was and is appropriate and should be made permanent.

**A.  The Court's Injunction Is Consistent With Principles of Equity Affording Complete Relief to Plaintiffs for the Harm to Their Core Missions, the Supreme Court's Decision in *CASA*, and the Policies Underlying the NVRA and the HAVA.**

Congress enacted the NVRA with the specific intent to increase voter registration and participation in elections by eligible citizens. 52 U.S.C. § 20501(b)(1)–(4). As this Court has recognized, a key tool for achieving these objectives was the adoption of a uniform Federal Form. *Id.* §§ 20503(a), 20505. In the NVRA, Congress set strict parameters for the Federal Form, both as to what it must include and what it cannot. *LULAC*, 2025 WL 1187730 at *6. The states are required to "accept and use" the Federal Form. 52 U.S.C. § 20505(a)(1); *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) ("*ITCA*").[3]

Changes to the Federal Form can be made only through a rulemaking process conducted by the EAC, which Congress established as a four-member, bipartisan agency, in the HAVA of 2002. 52 U.S.C. §§ 20921, 20923. Further, Congress required the approval of at least three members of the EAC to take any action authorized by the HAVA. 52 U.S.C. § 20928. This Congressionally determined process ensures that "in practice" EAC actions have "bipartisan support." *LULAC*, 2025 WL 1187730 at *8; 52 U.S.C. §§ 20928, 20929. The EAC also must develop the Federal Form "in consultation with the chief election officers of the States." *ITCA*, 570 U.S. at 5 (citing 52 U.S. Code § 20508).[4]

---

[3]    The only exceptions are for a handful of states that either: (1) have "no voter registration requirement for any voter in the State with respect to an election for Federal office," or (2) allow "all voters in the State [to] register to vote at the polling place at the time of voting in a general election for Federal office." 52 U.S.C. § 20503(b).

[4]    The EAC's rulemaking process is governed by the Administrative Procedure Act, which includes a notice-and-comment requirement. 5 U.S.C. § 553. The Federal Form is a "collection of information" under the Paperwork Reduction Act, 44 U.S.C. § 3502(3) and, therefore, subject to the additional notice-and-comment requirements thereof. 44 U.S.C. §§ 3506-08.

The simplicity and nationwide uniformity of the Federal Form helps to ensure that eligible voters can register in federal elections using the same voter registration form throughout the country. This furthers Congress's purpose of "increas[ing] the number of eligible citizens who register to vote." 52 U.S.C. § 20501(b)(1). The Supreme Court has confirmed that this same uniformity for federal elections prevails even if a state decides to require documentary proof of citizenship for state elections. "No matter what procedural hurdles a State's own form imposes, the Federal Form guarantees that a simple means of registering to vote in federal elections will be available." *ITCA*, 570 U.S. at 12.

Section 2(a) of the Executive Order disregards this highly specific, well-articulated legislative scheme set down by Congress, and usurps the EAC's Congressionally mandated authority by executive fiat. Section 2(a) commands the EAC to require that voters present documentary proof of citizenship in order to register to vote in federal elections. Neither the NVRA nor the HAVA contains any such mandate.

Because the Federal Form does not require documentary proof of citizenship, and because the Executive Order's Section 2(a) imposes unlawful requirements on the EAC, this Court properly issued a preliminary injunction enjoining Defendants from implementing it. The Court enjoined Defendants from "taking any action to implement or give effect to Section 2(a) of Executive Order 14,248, including taking any action based on the Executive Order to modify the content of the federal voter registration application form described in 52 U.S.C. § 20508(a)(2) to require documentary proof of United States citizenship." *LULAC*, 2025 WL 1187730 at *62. Such relief is consistent with the terms of the NVRA and the HAVA, properly respects the policies underlying those Acts, and is fully in accord with principles of equity affording complete relief to the Plaintiffs before the Court.

First, enjoining Defendants from implementing Section 2(a) in its entirety maintains the uniformity central to Congress's design. As this Court determined, Section 2(a) is unequivocal in its mandate: the EAC is ordered to "take appropriate action to require" in the Federal Form "documentary proof of United States citizenship." Exec. Order, No. 14,248, § 2(a), 90 Fed. Reg. 14005 (Mar. 28, 2025); *LULAC*, 2025 WL 1187730 at *1. Section 2(a) also spells out exactly what forms of "documentary proof" will be accepted. Exec. Order, No. 14,248, § 2(a)(ii)(A)–(D), 90 Fed. Reg 14005; *LULAC*, 2025 WL 1187730 at *25–26.

Importantly, Section 2(a) orders the EAC to require in the Federal Form such documentary proof of citizenship. *LULAC*, 2025 WL 1187730 at *27. This Court properly enjoined Defendants from implementing Section 2(a), "including taking any action based on the Executive Order to modify the content of the federal voter registration application form . . . to require documentary proof of United States citizenship." *Id.* at *63. In so doing, this Court applied a single, uniform remedy to prevent a single, uniform harm: the Executive Order's attempt to bypass Congress's design in the NVRA and the HAVA by imposing new voter registration requirements across the United States. To preserve the Congressional policies underlying the NVRA and the HAVA, this relief should be made permanent in an order of the same scope if Plaintiffs' Motion is granted.

Second, granting permanent injunctive relief against Section 2(a) preserves Congress's choices about how best to encourage voting and maintain election integrity. The existing federal system does not disregard the principle that only eligible citizens of the United States may vote in federal elections. Instead, the Congressional design of the NVRA and the HAVA is founded specifically on the need to both "protect the integrity of the electoral process" and "enhance[] the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501(b).

Once again, injunctive relief against implementing or giving effect to Section 2(a) means that the voter registration system formulated by Congress and prescribed in the Federal Form will be preserved. The injunctive relief ordered by the Court was warranted under the law and policies underlying the NVRA and the HAVA.

Finally, the Court's injunction was in accord with principles of equity by affording Plaintiffs complete relief for the harm that Section 2(a) would impose on their core missions and activities. To determine whether an injunction precluding the implementation of Section 2(a) is warranted, the Court must be satisfied that the scope of the injunction is no broader than necessary to provide complete relief to the Plaintiffs for their harm.

Complete relief is a mainstay of equity, as the Supreme Court has repeatedly confirmed. "Under this principle, the question . . . is whether an injunction will offer complete relief *to the plaintiffs before the court*." *CASA*, 145 S. Ct. at 2557.[5]

Plaintiffs are organizations that operate throughout the country to help people register to vote and experience *organizational harm* because Section 2(a) unlawfully burdens that core mission. The Nonpartisan Plaintiffs are organizations that carry out their voter education and registration missions at in-person events across the United States. *LULAC*, 2025 WL 1187730 at *12; Statement of Undisputed Material Facts filed by Nonpartisan Plaintiffs (SUMF) ¶¶ 17–22. In assisting voters who wish to register to vote in federal elections, the Plaintiffs use the Federal Form, which facilitates voter registration in nearly every state. *LULAC*, 2025 WL 1187730 at *12; SUMF ¶¶ 21–22. Section 2(a), if implemented, would prevent Plaintiffs from pursuing their core

---

[5]    In addition, the Supreme Court in *CASA* noted: "'[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*.'" 145 S.Ct. at 2557 (citing *Califano v. Yamasaki,* 442 U. S. 682, 702 (1979)). This requirement is also met here. By enjoining implementation of Section 2(a) in its entirety, Defendants incur no more burden than is necessary to provide Plaintiffs with complete relief.

activities in multiple states and locations and would require that they divert resources to retraining staff and volunteers.

Absent permanent injunctive relief, the Nonpartisan Plaintiffs would suffer significant and concrete harm to their ongoing voter registration efforts. Specifically, the Plaintiffs would be forced to try to assist voters throughout the country in obtaining and presenting documentary proof of citizenship (much of which is not available or obtainable), attempt to clear up voters' confusion over the types of proof required, and incur additional costs, which would require Plaintiffs to redirect efforts away from helping to educate and register more voters. *LULAC*, 2025 WL 1187730 at *41; SUMF ¶¶ 23–25 (Hispanic Federation), 69–76 (LWVAZ, LULAC, NAACP), 90–92 (APIAVote), 114–16 (all Plaintiffs).

Any additional documentary proof requirement undermines that core mission and defeats the purpose of the Federal Form. The harm to Plaintiffs from implementing Section 2(a) would be far-reaching and would significantly burden their core missions and activities: voter education, outreach, and most significantly, registering eligible persons to vote. SUMF ¶¶ 17–18, 23–26, 34–40, 44–50, 104.

Complete relief from the nationwide harm that Plaintiffs experience thus requires a permanent injunction preventing Defendants from implementing Section 2(a).

**B. The Court's Order Did Not Grant A "Universal" Injunction but Instead Was Properly Tailored to Prevent Harm to the Plaintiffs Before the Court, And This Court Should Make That Relief Permanent.**

The Court has not veered into the forbidden territory of "universal injunctions." In granting a preliminary injunction in April, the Court focused properly on the nature and extent of harm that Section 2(a) would cause Plaintiffs and took care to craft relief no broader than necessary. So, too,

a permanent injunction of similar scope would do no more than give Plaintiffs appropriate and complete relief.

This Court correctly observed that the preliminary injunction it issued was neither "nationwide" nor "universal." *LULAC,* 2025 WL 1187730 at *59. Those descriptors, as terms of art, refer to injunctions extending beyond actual plaintiffs to reach the entire universe of people— including nonparties—affected by the defendant's unlawful conduct. *See CASA*, 145 S. Ct. at 2548 n.1 (citing Howard M. Wasserman, *"Nationwide" Injunctions Are Really "Universal" Injunctions and They Are Never Appropriate*, 22 LEWIS & CLARK L. REV. 335, 338 (2018)). In other words, relief becomes "universal" when it "directly and intentionally benefits nonparties." Alan M. Trammell, *Demystifying Nationwide Injunctions*, 98 TEX. L. REV. 67, 72 n.24 (2019); *see also* Michael T. Morley, *De Facto Class Actions? Plaintiff- and Defendant-Oriented Injunctions in Voting Rights, Election Law, and Other Constitutional Cases*, 39 HARV. J.L. & PUB. POL'Y 487, 490–91 (2016); Wasserman, *supra*, at 350. The Supreme Court focused on this concern—whether courts may grant relief to nonparties--when it held that universal injunctions exceed the equitable authority that the Judiciary Act of 1789 confers on federal courts. *See CASA*, 145 S. Ct. at 2548, 2562.

The preliminary injunction here was crafted specifically to address Plaintiffs' demonstrated harm and thus did not run afoul of *CASA's* holding. Although the preliminary injunction predated *CASA*, this Court remained attuned to the concerns that animated the Supreme Court's holding. *See LULAC*, 2025 WL 1187730  at *58 (noting the "ongoing debate over the scope of injunctive relief that a single district court may properly issue"); *Id*. (noting Justice Gorsuch's concern that a universal injunction "stray[s] from equity's traditional bounds" (quoting *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring in the grant of stay))). Indeed, the memorandum

opinion makes clear that the Court hewed to the principle that relief should address only the Plaintiffs' harm. *LULAC*, 2025 WL 1187730 at *59 ("It is a remedy tailored to the irreparable harm that Plaintiffs in these consolidated case[s] would suffer in the absence of an injunction.").

Likewise, a permanent injunction that prevents Defendants from implementing Section 2(a) adheres to the equitable principle that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979). It also reflects the nuances of this case. See *CASA*, 145 S. Ct. at 2558 (noting that equity requires a court to "mould each decree to the necessities of the particular case" (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) (internal quotation marks omitted))). Specifically, a permanent injunction takes account of the underlying purpose of the law (a Congressional policy of adopting a single Federal Form), who the plaintiffs are (organizations whose core missions include registering voters), and the extent of their harm (everywhere in the country they help register voters).

Courts sometimes must craft broad relief to remedy the plaintiffs' harm completely, even when nonparties benefit "incidentally." *CASA*, 145 S. Ct. at 2557 (noting that "while party-specific injunctions sometimes 'advantage nonparties,' they do so only incidentally" (quoting *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring))). The Supreme Court offered one such example—a neighbor blasting loud music late at night:

> To afford the plaintiff complete relief, the court has only one feasible option: order the defendant to turn her music down—or better yet, off. That order will necessarily benefit the defendant's surrounding neighbors too; there is no way "to peel off just the portion of the nuisance that harmed the plaintiff."

*Id.* (quoting *Rodgers v. Bryant*, 942 F.3d 451, 462 (8th Cir. 2019) (Stras, J., concurring)).

The quintessential example of such incidental relief comes from cases requiring an indivisible remedy. In these situations, "it is all but impossible for courts to craft relief that is

complete *and* benefits only the named plaintiffs." *Id*. at 2557 n.12. Beyond the nuisance hypothetical, cases involving racially gerrymandered Congressional districts present another instance of indivisible relief that predictably—but incidentally—benefits nonparties. In these cases, there is only one electoral map. *See id*. (citing *Shaw v. Hunt*, 517 U.S. 899 (1996), as an example). Similarly, cases involving common funds often require indivisible relief. For example, in *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994), certain federal inmates sued federal officials for unlawfully raiding a nationwide common commissary fund to finance new security equipment. *Id.* at 1104. An injunction prohibiting this practice only at the facility where the plaintiffs were incarcerated would have been "illusory" if defendants could have paid for equipment at other prisons by raiding the same common fund to which plaintiffs contributed. *Id*. at 1103–04.

This case likewise presents a situation in which the Court necessarily must fashion indivisible relief. Section 2(a) unlawfully seeks to alter the information required on the uniform Federal Form. And akin to the practical impossibility of ordering relief that benefits only certain residents of a Congressional district or certain beneficiaries of a common fund, piecemeal relief here is not possible "for a simple reason: There is only one Federal Form." *LULAC*, 2025 WL 1187730 at *59.

A permanent injunction crafted to limit the relief provided to only the Nonpartisan Plaintiffs would be unworkable as a practical matter. A method would have to be devised to identify which Federal Forms were filed by registrants who obtained the forms from, or were otherwise assisted by, the Nonpartisan Plaintiffs. The burden of developing such a method would necessarily fall to either the States or the EAC. Assuming such a method would require the Nonpartisan Plaintiffs to disclose to the states the identities of individuals they assisted in registering to vote and/or those individuals to disclose to the states that the Nonpartisan Plaintiffs

assisted them in registering to vote, the freedom of association under the First Amendment would be implicated. *See Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709, at *22 (9th Cir. 2025) (citing *NAACP* v. *Ala. ex rel. Patterson*, 357 U.S. 449 (1958)), *stay application pending*, *Noem* v. *Perdomo,* S. Ct. No. 25A169. Further, the administrative burden imposed on the States to identify those specific registrants would far outweigh any benefit achieved by limiting the relief more precisely to the Nonpartisan Plaintiffs. *See* ECF 94-1 (amicus brief of bipartisan former state secretaries of state) at 11 ("The Elections Clause places the burden of administering federal elections on the States.") (internal quotations marks and citations omitted); *Perdomo*, 2025 WL 2181709 at *22 (discussing the unworkability of a "list-of-protected people injunction" that would apply only to members of the plaintiff organizations in the Central District of California because the members number in the thousands).[6] And such a method would result, as a practical matter, in different persons who register in the same State, all of whom have an equal entitlement to use the

---

[6]     In contrast, the Nonpartisan Plaintiffs' memberships (which do not necessarily include all the individuals that they help register to vote) is far greater, as noted by this Court in *LULAC*:

> *See*, e.g., Decl. of Celina Stewart ("Stewart Decl."), ECF No. 34-29, 2 (stating that Plaintiff League of Women Voters of the United States "has more than a million members and supporters and is organized in nearly 800 communities and in every state and the District of Columbia"); Decl. of Tyler Sterling ("Sterling Decl."), ECF No. 34-6, ¶¶ 4, 6 (stating that Plaintiff NAACP "has state and regional conferences representing 48 states and the District of Columbia, with nearly 2,200 units across the United States" and "over two million supporters and members, including voters throughout the United States"); Decl. of Sarah Streyder ("Streyder Decl."), ECF No. 34-13, ¶¶ 4, 6 (stating that Plaintiff Secure Families Initiative has "over 44,000 members" and "has members registered to vote in all 50 states"); Decl. of Juan Proaño ("Proaño Decl."), ECF No. 34-24,(stating that Plaintiff LULAC is a "nationwide" organization with "525 councils (local chapters) and over 325,000 members").

*LULAC*, 2025 WL 1187730 at *23 n.11.

Federal Form, being subject to different registration requirements—a result that would not only frustrate Congress' intent for uniformity, but would also raise serious Constitutional issues.

Finally, the geographic sweep of both a preliminary and permanent injunction in this case is consistent with *CASA*'s instruction that courts must order only plaintiff-protective relief. Geography has become a red herring in the debates about universal injunctions, as the Supreme Court recognized. *See CASA,* 145 S. Ct. at 2548 n.1 ("Even a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court." (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952))); *see also id*. (noting that "[t]he difference between a traditional injunction and a universal injunction is not so much *where* it applies, but *whom* it protects").

Equity has long counseled that courts may accord complete relief wherever a plaintiff has experienced harm. Trademark cases offer a classic example. If the owner of a nationwide mark demonstrates that a defendant has infringed that mark, then a court may issue an injunction that covers the entire area where the plaintiff uses the mark and suffers harm. *See, e.g., Hyatt Corp. v. Hyatt Legal Servs.*, 736 F.2d 1153, 1155–60 (7th Cir. 1984) (noting that both Hyatt Hotels and Hyatt Legal Services operated nationwide and that Hyatt Hotels' mark had been diluted throughout the country).

As discussed previously, the Nonpartisan Plaintiffs pursue their core mission of registering voters everywhere in the country. Section 2(a) thus would harm those efforts in every state. An injunction against implementing Section 2(a)'s requirements would appropriately prevent Defendants from harming Plaintiffs anywhere they operate in the country. The indivisible nature of the remedy here—because there is but one Federal Form—confirms that such an injunction is the only practical means of providing Plaintiffs with complete relief.

**CONCLUSION**

The Executive Order reflects Presidential intrusion on Congress's Constitutional authority over elections, thereby violating the principle of separation of powers fundamental to our democratic system of government. The harm to Plaintiffs from this violation can only be remedied by the injunction as issued by the Court.

Respectfully submitted,

 /s/ Aderson B. Francois
Aderson B. Francois (D.C. Bar No. 498544)
Civil Rights Clinic
Georgetown University Law Center
600 New Jersey Ave., NW
Washington, DC 20001
Phone: (202) 662-9065
aderson.francois@georgetown.edu

Counsel for Amicus

## CERTIFICATE OF COMPLIANCE

Pursuant to LCvR 7(o), I hereby certify that this brief conforms to the requirements of LCvR 5.4, complies with the requirements set forth in Fed. R. App. P. 29(a)(4), and does not exceed 25 pages in length.

DATED this 15th Day of August 2025.

/s/  Aderson B. Francois
Aderson B. Francois (D.C. Bar No. 498544)

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

DATED this 15th day of August 2025.

/s/  Aderson B. Francois
Aderson B. Francois (D.C. Bar No. 498544)