## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br><br> Defendants. | Civil No. 25-cv-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br><br> Defendants. | Civil No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil No. 25-cv-0955 (CKK) |

**REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT AS TO EXECUTIVE ORDER SECTION 2(a)</u>**

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Civil Division, Federal Programs Branch

BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-8679
Bridget.K.O'Hickey@usdoj.gov

MARIANNE F. KIES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

I.  Section 2(a) is not *ultra vires*, nor does it violate the separation of powers. ...................... 1

II.  Section 2(a) does not violate the NVRA .................................................................................. 5

III.  In any case, Plaintiffs lack standing to challenge section 2(a) ............................................... 6

IV.  Plaintiffs lack a cause of action to bring their non-statutory claims. .................................... 8

V.  The Court should grant summary judgment to Defendants on Plaintiffs' APA
    claims challenging section 2(a). ........................................................................................... 11

VI.  Plaintiffs are not entitled to a permanent injunction as to section 2(a), nor a
    declaratory judgment against the President. ....................................................................... 14

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................................................. 10

*\*Arizona v. Inter Tribal Council of Ariz., Inc.,*
570 U.S. 1 (2013) .................................................................................................... 2, 6

*Armstrong v. Exceptional Child Center, Inc.,*
575 U.S. 320 (2015) ................................................................................................. 11

*BedRoc Ltd., LLC v. United States,*
541 U.S. 176 (2004) ................................................................................................... 5

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh,*
295 F.3d 28 (D.C. Cir. 2002) ................................................................................. 3, 4

*Bright v. Gallia Cnty.,*
753 F.3d 639 (6th Cir. 2014) .................................................................................... 12

*Burdick v. Takushi,*
504 U.S. 428 (1992) ................................................................................................. 13

*Chamber of Com. of U.S. v. Reich,*
74 F.3d 1322 (D.C. Cir. 1996) ................................................................................ 11

*Collins v. Yellen,*
594 U.S. 220 (2021) ................................................................................................. 11

*Cook Cnty. Republican Party v. Pritzker,*
487 F. Supp. 3d 705 (N.D. Ill. 2020) ...................................................................... 13

*Crawford v. Mation County Election Board,*
553 U.S. 181 (2008) ................................................................................................. 14

*\*Dalton v. Specter,*
511 U.S. 462 (1994) ......................................................................................... 8, 9, 11

*Daunt v. Benson,*
999 F.3d 299 (6th Cir. 2021) .................................................................................... 13

*Free Enterprise Fund v. Public Co. Accounting Oversight Board,*
561 U.S. 477 (2010) ................................................................................................. 11

*\*Glob. Health Council v. Trump,*
2025 WL 2480618 (D.C. Cir. Aug. 28, 2025) ............................................... 3, 10, 11

*League of Women Voters of U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ................................................................ 4

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ......................................................................... 7

*McCray v. Biden,*
  574 F. Supp. 3d 1 (D.D.C. 2021)......................................................... 15

*Mi Familia Vota v. Fontes,*
  129 F.4th 691 (9th Cir. 2025) ............................................................. 6

*\*Nat'l Treasury Emps. Union v. Vought,*
  2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) ................................. 8, 9, 10

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) ...................................................................... 4, 5

*\*Nuclear Regul. Comm'n v. Texas,*
  605 U.S. 665 (2025) ......................................................................... 10

*Qwest Commc'ns Int'l, Inc. v. FCC,*
  398 F.3d 1222 (10th Cir. 2005) ........................................................... 4

*State Farm Mut. Auto. Ins. Co. v. Williams,*
  824 F.3d 1311 (11th Cir. 2014) ........................................................... 4

*Susman Godfrey LLP v. Executive Office of President,*
  2025 WL 1779830 (D.D.C. June 27, 2025) ........................................... 10

*Temple Univ. Hosp., Inc. v. NLRB,*
  929 F.3d 729 (D.C. Cir. 2019) ......................................................... 4, 5

*Timmons v. Twin Cities Area New Party,*
  520 U.S. 351 (1997) ......................................................................... 13

*Trump v. AFGE,*
  145 S. Ct. 2635 (2025) ...................................................................... 3

*United States v. Lin,*
  101 F.3d 760 (D.C. Cir. 1996) ............................................................. 5

*Wash. Mkt. Co. v. Hoffman,*
  101 U.S. 112 (1879) ......................................................................... 2

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ......................................................................... 15

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ................................................................................. 3, 11

**STATUTES**

5 U.S.C. § 704 ........................................................................................... 10

52 U.S.C. § 20508 .............................................................................. 2, 4, 6, 7

52 U.S.C. § 20929 ......................................................................................... 2

**REGULATIONS**

Preserving and Protecting the Integrity of American Elections,
  Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025) ...................... 1, 3, 13

**RULES**

Fed. R. Civ. P. 56 ........................................................................................ 7

**OTHER AUTHORITIES**

*Succeed*, Merriam-Webster,
  https://www.merriam-webster.com/dictionary/succeed ............................................ 4, 5

## INTRODUCTION

Plaintiffs urge this Court to grant their motion for partial summary judgment on the basis that section 2(a) of Executive Order 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ("EO"), commands the Election Assistance Commission ("EAC") to "impose" a documentary proof-of-citizenship requirement on the national mail voter registration form (the "federal form"), and thereby "assert[s] power the Constitution reserves for Congress and the States." ECF No. 185 at 1. But that reading of the Executive Order is wrong. Section 2(a) simply directs the EAC to initiate its rulemaking process to add a documentary proof-of-citizenship requirement to the federal form. In other words, the EO begins a process that may—or may not—ultimately lead to changes to the federal form. It does not conclude that process. Plaintiffs' claims are premature and should be dismissed for lack of subject-matter jurisdiction. Plaintiffs also lack a cause of action to bring their non-statutory claims; their APA claims fail for lack of final agency action; and all of Plaintiffs' section 2(a) claims are prudentially unripe for similar reasons. But even if this Court reaches the parties' substantive arguments on Plaintiffs' section 2(a) claims, Plaintiffs are not entitled to summary judgment because the President lawfully exercised his constitutional authority to direct the EAC—an Executive agency—to undergo its rulemaking process, consistent with statute, to consider adding a documentary proof-of-citizenship requirement to the federal form.

## ARGUMENT

### I.   Section 2(a) is not *ultra vires*, nor does it violate the separation of powers.

Section 2(a) requires, in relevant part, that the EAC "take appropriate action to require" documentary proof of citizenship on the federal form. Plaintiffs read the words "take appropriate action" out of section 2(a) and, having done so, construe it as a "command" that "the EAC . . . add a documentary proof-of-citizenship requirement to the Federal Form." ECF No. 182 at 5; ECF No.

185 at 3.[1] Based on their incomplete reading, Plaintiffs conclude that section 2(a) violates the separation of powers. ECF No. 182 at 5–6; ECF No. 185 at 2–6. But when every word is given its correct meaning, Plaintiffs' conclusion does not follow. *See, e.g.*, *Wash. Mkt. Co. v. Hoffman*, 101 U.S. 112, 115 (1879) ("It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.").

Section 2(a) of the Executive Order directs the EAC to "take appropriate action to require" documentary proof of citizenship on the federal form. *See* ECF No. 162-1 at 6. When read in its entirety, and consistent with governing statutory law, section 2(a) simply instructs the EAC to take the necessary steps—i.e., commence its rulemaking process—to require adding a documentary proof-of-citizenship requirement to the federal form. That is so because the EAC is required to engage in notice-and-comment rulemaking before altering the federal form. 52 U.S.C. §§ 20508(a)(1), (2), 20929. The EAC's rulemaking process, in turn, requires consultation with state election officers and a period for public notice-and-comment on the future proposed rule. Accordingly, section 2(a) mirrors the NVRA's requirement that the EAC "may require only such . . . information . . . as is necessary" on the federal form "to enable the appropriate state election official to assess the eligibility of the applicant." 52 U.S.C. § 20508(b)(1); *accord Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 18 (2013) ("*ITCA*"). And if the EAC determines that certain information is "necessary" for a state official to assess a voter registration applicant's eligibility to vote, then it must require it on the form. *See id*. Section 2(a) therefore directs the EAC to begin the process for adding a documentary proof-of-citizenship requirement to the federal form and recognizes that if it determines such a requirement is necessary, then it is statutorily required to add it to the form.

---

[1] Unless expressly stated otherwise, record citations herein refer to internal pagination.

The Executive Order's savings clause supports this interpretation, because it requires agencies implementing the EO's provisions to do so "consistent with applicable law." EO § 11(b). At least one Supreme Court Justice and the Court of Appeals for the D.C. Circuit found a similar savings clause conclusive where there was "no occasion to consider whether" the plans, which were not before the Court, would be "carried out consistent with the constraints of law." *Trump v. AFGE*, 145 S. Ct. 2635, 2635 (2025) (Sotomayor, J., concurring); *see also Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) ("[I]f the agency is prohibited, by statute or other law, from implementing the Executive Order, then the Executive Order itself instructs the agency to follow the law."). Therefore, section 2(a) was not issued *ultra vires* and does not violate the separation of powers. ECF No. 162-1 at 5–9.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), does not dictate otherwise. Plaintiffs interpret *Youngstown* to hold that the President has no "freestanding authority" to issue orders "if the authority to act cannot be found elsewhere in a specific provision of the Constitution or statute." ECF No. 185 at 8. Because no "specific constitutional provision authoriz[es] the President to dictate a proof of citizenship requirement for the Federal Form," Plaintiffs argue, section 2(a) is unconstitutional. *Id.* at 7–8.

Plaintiffs' argument rests on three false premises. *First*, as stated above, section 2(a) is not a Presidential command to require documentary proof-of-citizenship on the federal form. Instead, it is a directive to an Executive agency to undergo *the rulemaking process* to *potentially* add such a requirement to the form. Accordingly, this case is unlike *Youngstown*, where no statute authorized the Secretary of Commerce to seize steel mills. 343 U.S. at 582, 585; *Glob. Health Council v. Trump*, 2025 WL 2480618, at *7 (D.C. Cir. Aug. 28, 2025) ("*Youngstown* . . . involved the conceded *absence* of *any* statutory authority, not a claim that the President acted in excess of such

3

authority." (citation omitted)). Here, Congress authorized the EAC to "develop a mail voter registration application form for elections for federal office" and "promulgate regulations needed to carry out that task." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 5, 10 (D.C. Cir. 2016) (citation omitted); 52 U.S.C. § 20508(a)(2). In section 2(a), the President simply exercised his supervisory authority as head of the Executive branch—authority that Plaintiffs do not, and cannot, dispute that he possesses. ECF No. 182 at 5 ("Of course, the President has 'some supervisory authority over subordinate executive officers.'" (citation omitted)); *see Allbaugh*, 295 F.3d at 32–33.

    *Second*, Plaintiffs argue that Defendants' (correct) interpretation of section 2(a) is "barred" because, during a hearing on preliminary injunctive relief at the outset of this case, an attorney for Defendants "conceded as a *factual matter* that the purpose and effect of the EO was to require the EAC to implement a proof of citizenship requirement on the Federal Form." ECF No. 185 at 3 (emphasis in original); *see also* ECF No. 182 at 15 n.6. There is no factual dispute here: the interpretation of a text, here, the EO, is a legal (not factual) question, which the Court should resolve. *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311, 1315 (11th Cir. 2014); *Qwest Commc'ns Int'l, Inc. v. FCC*, 398 F.3d 1222, 1232 (10th Cir. 2005). Regardless of whether interpretation of section 2(a) is a legal question (it is), Plaintiffs alternatively argue that Defendants are judicially estopped from the position advanced here. ECF No. 185 at 4–5. They are mistaken. Under the doctrine of judicial estoppel, a party who "assumes a certain position in a legal proceeding" may not, after "*succeed*[ing] in maintaining that position," "assume a contrary position." *Temple Univ. Hosp., Inc. v. NLRB*, 929 F.3d 729, 733 (D.C. Cir. 2019) (emphasis added) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). To "succeed" means to "attain a desired object or end." *Succeed*, Merriam-Webster, https://www.merriam-

webster.com/dictionary/succeed (last visited Sept. 9, 2025). Defendants did not "succeed in maintaining [their] position" before this Court previously because this Court enjoined section 2(a), and with the benefit of time and preparation Defendants have reached a different legal position. Under these circumstances, there is no risk of "creat[ing] the perception that . . . [the] court was misled"; nor do Defendants derive any unfair advantage. *Temple Univ. Hosp.*, 929 F.3d at 733 (citation omitted).

*Third*, Plaintiffs attempt to evade the Supreme Court's holding in *New Hampshire v. Maine*, 532 U.S. at 749. *New Hampshire v. Maine* prevents a party who "assumes a certain position in a legal proceeding, and succeeds in maintaining that position" from "assum[ing] a contrary position [later], especially if" it will prejudice the other party. *Id*. Plaintiffs argue that Defendants have not pointed to a change in public policy to support their change in position. However, where—as here—Defendants' initial interpretation did not prevail, a change in public policy is not necessary to support their later interpretation. *Temple Univ. Hosp.*, 929 F.3d at 733.

## II.    Section 2(a) does not violate the NVRA.

Plaintiffs argue that "[t]he relevant legislative history, purpose, and judicial precedent confirm that Section 2(a) conflicts with the NVRA," but none of that is true. ECF No. 185 at 20. As a threshold matter, "it is elementary in the law of statutory construction that, absent ambiguity or unreasonable result, the literal language of the statute controls and resort to legislative history is not only unnecessary but improper." *United States v. Lin*, 101 F.3d 760, 765–66 (D.C. Cir. 1996) (quotations omitted); *see also BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). Here, there is no ambiguity; therefore, the literal language of the NVRA controls. And EO section 2(a) does not conflict with the literal language. As reiterated, *supra* Part I, the NVRA provides simply

that the EAC "may require only such . . . information . . . as is necessary" on the federal form "to enable the appropriate state election official to assess the eligibility of the applicant." 52 U.S.C. § 20508(b)(1). Section 2(a) parallels this requirement, by directing the EAC to begin its rulemaking process to determine what, in the EAC's view, is necessary to assess the eligibility of the applicant. Therefore, section 2(a), which directs the EAC to begin a necessity determination process that it is explicitly authorized to conduct, is within the scope of the statute. *ITCA*, 570 U.S. at 18.

The Ninth Circuit's decision in *Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) is neither binding nor to the contrary. *See* ECF No. 185 at 23. To begin, that case involved Arizona laws and the court's rulings focused on preemption issues not present here. *See generally* 129 F.4th 691; *see also, e.g.*, *ITCA*, 570 U.S. at 20 (Supreme Court holding that, while the NVRA "preclude[d] *[a state]* from requiring a Federal Form applicant to submit information beyond that required by the form itself," states could request "that the EAC include such a requirement among the Federal Form's state-specific instructions" (alteration added)). Moreover, the EAC has not required documentary proof-of-citizenship on the federal form and may never. *Infra* Part III (regarding Plaintiffs' lack of standing). Even if *Mi Familia* were relevant, and it is not, its holding regarding Arizona's Documentary Proof of Residence ("DPOR") requirement is inapposite. DPOR was not "necessary" under the NVRA, the court of appeals held, only because under Arizona statute, voters who obtain an out-of-state license or identification and receive a notice from the county recorder requesting confirmation of residency must only attest "under penalty of perjury" that the voter is still a resident of Arizona. 129 F.4th at 713 (citation omitted).

## III.    In any case, Plaintiffs lack standing to challenge section 2(a).

Plaintiffs' alleged standing rests on the same fallacies as their arguments on the merits—to wit, that the outcome of the EAC's rulemaking process is predetermined and will inevitably lead

to a documentary proof-of-citizenship requirement on the federal form. The problem with this argument, as Defendants have explained here and elsewhere, is that it is wrong. Because Plaintiffs' standing depends upon speculation about the eventual outcome of hypothetical future events, there is no "Sword of Damocles" on which Plaintiffs' alleged impending injury-in-fact can be properly premised. *See, e.g.*, ECF No. 185 at 24–26.

The evidence illustrates why Plaintiffs' alleged fears are unfounded and therefore unable to establish Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). For instance, although Plaintiffs cite EO section 2(a)(i) (providing that, "[w]ithin 30 days of the date of this order," the EAC "shall take appropriate action"), though it is currently enjoined, ECF No. 103 at 2, the only step the EAC has taken to "implement" the EO was to send a letter soliciting input from states' Chief Election Officers—the first step in the consultation process, ECF No. 95-1 at 5. The preliminary, nonfinal nature of the letter is self-evident. It states:

> The EAC is seeking consultation on how states would propose to implement Section 2 of EO 14248, *if required*. The EAC is also seeking feedback on the impact of implementation on voter registration in your state. As required by 52 U.S.C. § 20508, the EAC will consider responses in any amendments to the national mail voter registration form or EAC implementing regulations.

*Id.* (emphasis added). The letter underscores, rather than undercuts, Defendants' argument that EO section 2(a) does not preordain the conclusion of the EAC's rulemaking process.

Defendants appreciate that the Court denied their Motion for relief pursuant to Federal Rule of Civil Procedure 56(d). *See* ECF No. 160. Nonetheless, for preservation purposes, Defendants maintain their position that they have been severely prejudiced by Plaintiffs' one-sided discovery effort on a motion for summary judgment as to which all parties had agreed, in advance, that no discovery would be necessary. Defendants further object to their inability to take any discovery of Plaintiffs' hundreds of pages of declarant testimony. To be clear, Defendants do not concede that

Plaintiffs have established organizational, associational, or competitive standing. Plaintiffs' conduct has simply made it impossible for Defendants to respond to Plaintiffs' evidence.

## IV.    Plaintiffs lack a cause of action to bring their non-statutory claims.

Plaintiffs argue that they may bring their non-statutory claims that section 2(a) was issued *ultra vires* and violates the separation of powers because their claims are not that "an official exceeded his statutory authority" but that "he acted in violation of the Constitution." ECF No. 185 at 28; *see also* ECF No. 182 at 9–10. But Plaintiffs' claims are really claims that officials acted in excess of statutory authority dressed up as constitutional claims. Plaintiffs argue that the President lacks statutory authority to issue section 2(a) and that section 2(a) violates the separation of powers because the actions that the EO directs violate the NVRA and HAVA. *LULAC v. EOP*, No. 1:25-cv-946, ECF No. 1 (LULAC Compl.) ¶¶ 184–93; *Democratic Nat'l Comm. v. Trump*, No. 1:25-cv-952, ECF No. 1 (DPP Compl.) ¶¶ 131–32, 135–39; *League of Women Voters Educ. Fund v. Trump*, No. 1:25-cv-955, ECF No. 1 (League Compl.) ¶¶ 107–15, 116–23.

Plaintiffs cannot salvage their claims simply by calling the claims something they're not. *Nat'l Treasury Emps. Union v. Vought*, 2025 WL 2371608, at *20 (D.C. Cir. Aug. 15, 2025), holds that claims like Plaintiffs' must be analyzed as *ultra vires* claims, despite Plaintiffs' insistence that they are constitutional claims. ECF No. 185 at 29; *see also* ECF No. 182 at 10–11. In *Vought*, the D.C. Circuit held that non-statutory review is unavailable when a plaintiff claims that an Executive official violated the constitutional separation-of-powers doctrine by acting in excess of statutory authority. 2025 WL 2371608, at *19 ("[S]tatutory claims do not become constitutional ones by operation of the separation-of-powers principles that prevent the States and the Executive Branch from disregarding federal statutes."). For example, in *Dalton v. Specter*, 511 U.S. 462 (1994), "[t]he plaintiffs argued that the President's decision to close the shipyard violated various provisions in the governing statute." *Vought*, 2025 WL 2371608, at *19 (citing *Dalton*, 511 U.S.

at 471–72). Those statutory violations, the plaintiffs maintained, "had a 'constitutional aspect' because 'whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine.'" *Id.* The Supreme Court rejected that argument for constitutionalizing statutory claims, explaining that "unconstitutional and ultra vires conduct" are "separate categories." *Id*. Such claims must be analyzed as *ultra vires* ones. *Id*. at *20. And, for the reasons explained previously (*i.e.*, that they should be brought, when proper, as APA claims), Plaintiffs are not entitled to *ultra vires* review on their challenges to EO section 2(a). ECF No. 162-1 at 10–12.

Plaintiffs assert that section 2(a) is *ultra vires* and violates the separation of powers because it usurps duties given to the EAC by statute (the NVRA and HAVA). DPP Compl. ¶¶ 131, 136–39; LULAC Compl. ¶¶ 187–89; League Compl. ¶¶ 110–13, 118–21.[23] Here, like in *Dalton*, Plaintiffs' claims are really claims that the President's decision to issue the EO—and the agency conduct the EO directs—violates the NVRA and HAVA. *See* ECF No. 182 at 13. ("Here, there is a 'clear and mandatory statutory prohibition': the NVRA and HAVA require that the EAC—independently and by a bipartisan majority—determine that a change to the Federal Form is necessary to assess voter eligibility."). The Supreme Court has already rejected the argument Plaintiffs make to repackage these claims as constitutional ones. And the D.C. Circuit has recognized that they must therefore

---

[2] The Democratic Party Plaintiffs cite counts I-III in their complaint. ECF No. 185 at 28 (citing DPP Compl. ¶¶ 126-45). Count III, however, is not directed at the EAC and makes no mention of section 2(a) of the EO. It appears to concern only Plaintiffs' claims with respect to section 7(a).

[3] Plaintiffs assert that "Defendants do not argue that Congress, through the NVRA or HAVA, delegates to the President the power to regulate the Federal Form; instead, they contend that the Constitution necessarily entrusts the EAC's power to maintain the Federal Form to him." ECF No. 182 at 11. Plaintiffs mischaracterize Defendants' argument. The President, through section 2(a), is directing the EAC, an Executive agency, to take particular actions granted to it by Congress consistent with federal statutes. *See supra* Part I; ECF No. 162-1 at 5–8.

be analyzed as *ultra vires* claims. *Vought*, 2025 WL 2371608, at *20. Plaintiffs argue this case is like *Susman Godfrey LLP v. Executive Office of President*, 2025 WL 1779830, at *7 (D.D.C. June 27, 2025), which "presented a classic separation-of-powers claim in the vein of *Youngstown*," ECF No. 185 at 30, but that case concerned challenges to an executive order that were not based on statutory violations like Plaintiffs' claims here.

The LULAC and League Plaintiffs assert that Plaintiffs' *ultra vires* claims should not be "subject to the heightened standard [applied to *ultra vires* claims] because there is no statutory preclusion of review under the NVRA or HAVA." ECF No. 182 at 12. But the NVRA and HAVA do not provide private plaintiffs with a cause of action against the federal government. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress."). Rather, plaintiffs must bring suit to challenge agency action in violation of those laws, if at all, under the APA, which prohibits judicial review unless and until there is final agency action. 5 U.S.C. § 704; ECF No. 162-1 at 10–13. Still, preclusion of judicial review is not the only thing that makes *ultra vires* review inappropriate. "To succeed on an *ultra vires* claim, the plaintiff must show that (1) judicial review is not expressly foreclosed; (2) the agency made an extreme legal error; and (3) there is no alternative means for the plaintiff to seek judicial review." *Vought*, 2025 WL 2371608, at *18. Here, the APA provides an alternative means for judicial review. ECF No. 162-1 at 10–13; *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) ("Ultra vires review is also unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review[.]'").

*Global Health Council*, 2025 WL 2480618, at *6, further confirms that Plaintiffs lack a non-statutory cause of action. There, the D.C. Circuit held that the plaintiffs lacked a cause of action to bring their non-statutory claim to "vindicate separation-of-powers principles" and

"recast" their "statutory claim[] as [a] constitutional one[]." *Id*. The same is true here. The D.C. Circuit held that neither *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), nor *Collins v. Yellen*, 594 U.S. 220 (2021), provided a cause of action because in those cases the plaintiffs challenged the constitutionality of the statute at issue. *Glob. Health Council*, 2025 WL 2480618,  at *7. *Youngstown* was also of no help because *Youngstown* "involved the conceded *absence of any* statutory authority, not a claim that the President acted in excess of such authority," as is the case here. *Id*. (citing *Youngstown*, 343 U.S. 579; *Dalton*, 511 U.S. at 473). *Armstrong* also "rejected the idea that a plaintiff may transform a statutory claim into a constitutional one to avoid limits on judicial review," *id*. at *8 (citing *Armstrong v. Exceptional Child Center, Inc*., 575 U.S. 320 (2015)), and *Reich* is not to the contrary because it did not concern whether "statutory claims [could] be transformed into constitutional ones," *id*. at *8 (citing *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)).

## V.     The Court should grant summary judgment to Defendants on Plaintiffs' APA claims challenging section 2(a).

The material facts relevant to Plaintiffs' APA claims are undisputed. There is no reason to defer resolving them. Indeed, the Scheduling Order expressly directed Phase One briefing to include all claims challenging section 2(a). ECF No. 141 at 2. Therefore, Defendants are entitled to judgment as a matter of law on Plaintiffs' APA claims that section 2(a) violates the NVRA and the right to vote.

Plaintiffs contend that "resolving summary judgment on their [APA claims] is premature," because "Defendants have not yet been required to produce an administrative record." ECF No. 185 at 34; *see also* ECF No. 182 at 20. But the Scheduling Order did not contemplate any administrative record to resolve Plaintiffs' challenges to section 2(a). Rather, "[a]ll parties agree that Plaintiffs' challenges to Section 2(a) of Executive Order 14,248 can be resolved without

discovery on cross-motions for summary judgment" and that "the parties shall brief Plaintiffs'

challenges to section 2(a) . . . on the following schedule." ECF No. 141 at 2. The Scheduling Order

does not contain a carve-out for APA claims. Therefore, the Court should resolve these claims now.

Plaintiffs' APA claims fail both at the threshold and on the merits. At the threshold, because

there is no final agency action upon which Plaintiffs' APA claims can rest, they should be

dismissed. *See* ECF No. 162-1 at 12–13. The claims are, in any event, meritless. First, Plaintiffs'

claims that section 2(a) results in unlawful agency action contrary to the NVRA, DPP Compl. ¶¶

171–78; LULAC Compl. ¶¶ 213–21, fail for the same substantive reasons as their non-statutory,

*ultra vires* claims: As previously explained, section 2(a) is consistent with the NVRA. *See supra*

Part II; ECF No. 162-1 at 18–20.

Second, Plaintiffs' APA claim that section 2(a) results in unlawful agency action contrary

to the First and Fifth Amendment right to vote also fails as a matter of law.[4] *See* ECF No. 162-1 at

20–23. Section 2(a)'s purpose is plainly legitimate. That is enough for a facial challenge. If

Plaintiffs object to how section 2(a) is applied, that is a challenge for another day.

Plaintiffs argue that "many disputes of fact remain as to both the burden Section 2(a)

imposes and the governmental interests it purportedly serves" and that this claim is inappropriate

for summary judgment "before the development of a factual record." ECF No. 185 at 38, 44. But

Plaintiffs' right-to-vote APA challenge to section 2(a) is facial, DPP Compl. ¶¶ 205–12, and, thus,

whether section 2(a) does in fact unconstitutionally burden the right to vote is a legal question. *See*

*Bright v. Gallia Cnty.*, 753 F.3d 639, 652 (6th Cir. 2014) (explaining that "legal conclusions

---

[4] Plaintiffs claim that Defendants cannot plausibly establish that no genuine dispute of material fact exists as to the government's interest because they did not submit a statement of undisputed material facts with their summary-judgment motion. ECF No. 185 at 40. But no statement of undisputed material facts is necessary to the resolution of this legal claim. The interests furthered by section 2(a)'s proposed amendment are clearly set forth in the EO.

masquerading as factual allegations" do not convert legal questions into factual ones); *Cook Cnty. Republican Party v. Pritzker*, 487 F. Supp. 3d 705, 717 (N.D. Ill. 2020) ("Under [*Anderson-Burdick*], the level of scrutiny depends on the regulation at issue: the more severely it burdens constitutional rights, the more rigorous the inquiry into its justifications . . . . And because Plaintiff makes a facial challenge to the May Amendments, the analysis of their validity must not go beyond [their] facial requirements and speculate about hypothetical or imaginary cases." (quotations omitted)). While "*Anderson-Burdick* can . . . be a fact-intensive inquiry," courts "have not shied away from disposing of *Anderson-Burdick* claims at the motion-to-dismiss stage where a plaintiff's allegations failed as a matter of law." *Daunt v. Benson*, 999 F.3d 299, 313 (6th Cir. 2021). "Where, as here, the alleged severity of the burdens imposed can be gleaned from the face of the challenged law and they can be weighed against the asserted state interests, dismissal on the pleadings is warranted." *Id.*

When an election law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and [Fifth] Amendment rights of voters," the government's "important regulatory interests are generally sufficient to justify the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). No *genuine* dispute of fact exists as to whether a documentary proof-of-citizenship requirement imposes a "reasonable, nondiscriminatory restriction[]" or the governmental interests it serves. *Id.* If the EAC determines that documentary proof of citizenship is necessary for the federal form, then such a requirement is reasonable, and is nondiscriminatory as it applies to any citizen registering to vote in a federal election. And the EO itself lists the governmental interests it serves—ensuring that American elections comply with "Federal laws that protect Americans' voting rights and guard against dilution by illegal voting." EO § 1; *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) ("Nor do we require elaborate, empirical verification

13

of the weightiness of the State's asserted justifications."). These undisputed interests justify any reasonable, nondiscriminatory restriction on the right to vote imposed by a documentary proof-of-citizenship requirement, if adopted pursuant to 2(a). But again, if that happens, at that point, there will be agency action and a record that will allow for resolution of these issues.

Plaintiffs attempt to factually distinguish *Crawford*, ECF No. 185 at 42–43, but there the Supreme Court made clear that "the propriety" of the interests that Defendants assert here— "counting only the votes of eligible voters" and preventing election fraud—is "perfectly clear." *Crawford v. Mation County Election Board*, 553 U.S. 181, 196 (2008). And because "[a] facial challenge must fail where the statute has a plainly legitimate sweep," the Supreme Court concluded that in *Crawford*, those interests were "sufficient to defeat petitioners' facial challenge" to Indiana's broadly applicable statute that applied to all voters and therefore imposed only a limited burden on voters' rights. *Id*. at 202–03. So too here. If the EAC updates the federal form to add a documentary proof-of-citizenship requirement, it will broadly apply to everyone using the federal form to register to vote. Any burden on voters' rights will be minimal, and Defendants' legitimate interests are sufficient to defeat Plaintiffs' facial challenge.

## VI.    Plaintiffs are not entitled to a permanent injunction as to section 2(a), nor a declaratory judgment against the President.

Plaintiffs assert that they are entitled to a permanent injunction because without one "the EAC would be operating under an unlawful directive to change the Federal Form" because "the President ordered the EAC to make a specific decision." ECF No. 182 at 20–21; ECF No. 185 at 31. But for the reasons explained, that understanding misconstrues section 2(a)'s directive. *See supra* Part I. Plaintiffs are not entitled to a permanent injunction on their section 2(a) claims because they will not "suffer irreparable injury absent an injunction." ECF No. 185 at 31. This Court lacks jurisdiction to adjudicate Plaintiffs' premature section 2(a) claims, and they fail on

other non-jurisdictional threshold grounds. *See* ECF No. 162-1 at 5–18, 23–24. If Plaintiffs object to any future implementation of section 2(a)'s directive, they will have an opportunity at that later point in time to seek equitable relief. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'"). Plaintiffs are further not entitled to injunctive relief, however, because their claims challenging section 2(a) fail substantively as a matter of law. *See* ECF No. 162-1 at 5–18, 23–24; *supra* Parts I, II, V.

The LULAC and League Plaintiffs are also not entitled to a declaratory judgment against the President, *see* ECF No. 162-1 at 18, despite their insistence to the contrary, ECF No. 182 at 20. Declaratory relief is not available against the President when "relief is available against other executive officials." *McCray v. Biden*, 574 F. Supp. 3d 1, 11 (D.D.C. 2021). The Democratic Party Plaintiffs appear to concede that they do not seek declaratory relief against the President. ECF No. 184 at 33 n.7 ("[I]t is also a red herring because Plaintiffs seek declaratory relief against the officials charged with enforcing Section 2(a).").

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion for Partial Summary Judgment and dismiss Plaintiffs' claims challenging section 2(a).

Dated: September 12, 2025                          Respectfully submitted,

                                                   BRETT A. SHUMATE
                                                   Assistant Attorney General

                                                   ERIC J. HAMILTON
                                                   Deputy Assistant Attorney General
                                                   Civil Division, Federal Programs Branch

                                                   JOSEPH E. BORSON
                                                   Assistant Branch Director
                                                   Civil Division, Federal Programs Branch

                                                   */s/ Bridget K. O'Hickey*
                                                   BRIDGET K. O'HICKEY
                                                   Counsel to the Assistant Attorney General
                                                   U.S. Department of Justice, Civil Division
                                                   950 Pennsylvania Avenue, NW
                                                   Washington, DC 20530
                                                   (202) 353-8679
                                                   Bridget.K.O'Hickey@usdoj.gov

                                                   MARIANNE F. KIES
                                                   Trial Attorney
                                                   U.S. Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   1100 L Street, NW
                                                   Washington, D.C. 20005
                                                   (202) 353-1819
                                                   Marianne.F.Kies@usdoj.gov

                                                   *Attorneys for Defendants*