# EXHIBIT 4

**Civil Action No. 25-0946 (CKK)**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br>　v.<br>EXECUTIVE OFFICE OF THE PRESIDENT,<br>*et al.*,<br><br>　　　　　　*Defendants*. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br>　v.<br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　　*Defendants*. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br>　v.<br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　　*Defendants*. | Civil Action No. 25-0955 (CKK) |

**DECLARATION OF IRMA C. GONZALEZ**

　　　I, Irma Gonzalez, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct to the best of my knowledge and belief:

　　　1.　　I am at least 18 years of age and competent to make this declaration.

1

2.   I am a U.S. citizen. I vote regularly in federal and local elections, including in primaries and general elections.

3.   I currently serve as the President of the League of United Latin American Citizens (LULAC) Council 2890, the San Benito County, California, LULAC. I have held this position for three years. I have been a member of LULAC and this Council for twenty-five years, since 2000.

4.   I also sit on the California State Board of LULAC. In that capacity, I work on marketing as a public information officer.

5.   LULAC Council 2890 has thirty members. It is one of the relatively larger LULAC Council. Nearly all our members are registered voters. More than half of the members of our Council vote by mail.

6.   My understanding of the President's Executive Order, "Preserving and Protecting the Integrity of American Elections," is that it attempts to prevent California from counting mail-in ballots postmarked by Election Day and received by mail at the local election board no later than seven days after Election Day, even though state law requires that these ballots be counted.

7.   *Vote by Mail:* If this section of the Order were to go into effect, this would disenfranchise the elderly, disabled, and student members of LULAC Council 2890. Four members, including myself, are over sixty years old. We all vote by mail.

8.   I have mobility issues that make it very difficult for me to stand for any significant period of time. I had foot surgery in January of this year and have had many complications that have obstructed the healing process. The foot surgery has compounded the pain and stress of my prior neck and back issues. I vote by mail, and I usually mail my ballot in via the post office.

9. Our Council also has a member, who is thirty-seven years old, who is disabled and unable to drive. She relies exclusively on the vote by mail process. She returns her mail-in ballot via the post office.

10. Another member is disabled with back and shoulder issues. Standing for prolonged periods, as well as driving, are difficult for her. She also relies on the vote by mail process. She usually returns her mail-in ballot via the post office.

11. Another member is a student at the University of California, San Francisco. He lives at on campus at UCSF, but is registered to vote in Hollister, California, at his parents' and his permanent address. The distance between Hollister and San Francisco is 96 miles—and Hollister is a smaller, rural town. Mail takes a long time to get to and from Hollister to San Francisco. This student member also receives his mail-in ballot at a college campus residence—mail at the college dorms is not entirely reliable. Sometimes, it takes extra days for mail to get delivered on college campuses. And he returns his mail-in ballot via post office.

12. Because of their unique circumstances—such as mobility limitations, inability to stand for long periods, lack of access to transportation, or being away at school—these members must rely on voting by mail. Importantly, mailing their ballot far in advance of Election Day is often not feasible for them. That is why we all rely on California's grace period for receiving mail-in ballots.

13. For members with disabilities, their ability to return their ballots by mail depends on others who can take those ballots to the post office, which frequently means that their ballots are mailed very close to Election Day. Or they must personally deliver the ballot to the post office, which depends on how their health is on a given day.

14. In the case of the student member, unreliable dormitory mail delivery often delays receipt of the ballot until just before Election Day, leaving him little choice but to send it back at the last possible moment, either the day before or on Election Day.

15. Because of these circumstances, these voters cannot consistently get ballots delivered by Election Day, even though they are postmarked and mailed on time. They have therefore depended on California's law allowing timely postmarked ballots to be counted if received within seven days after the election. Without this additional window, members in these situations face a heightened risk of having validly cast ballots discarded, through no fault of their own. I, along with several others in my Council, typically wait until the day before or even on Election Day to mail our ballots. My husband, who is also a member of LULAC Council 2890, follows the same practice.

16. There are a couple of reasons we mail our ballots closer to Election Day or on Election Day. First, in my experience, critical information frequently emerges in the final days of a campaign. In my own experience, I have changed my voting decisions on both candidates and California ballot propositions based on late-breaking policy developments—or even because a candidate withdrew from the race. Under the new Executive Order, however, we would be forced to cast our votes earlier, without access to the full set of information, and risk voting for a candidate who has dropped out or make decisions without all the facts.

17. Even if we were to cast our ballots earlier, my Council's rural area and others similarly situated face postal service delivery hurdles. The state of California has an online system that voters can use to track their ballots. My understanding is that my mail gets picked up in Hollister at six or seven in the evening, then goes out to San Jose, which is 46 miles away from Hollister, for processing and stamping, and finally then comes back to Hollister. Thus, when my

4

local board mails out ballots to me, they often come late. That is also the case for other members—they receive their mail-in ballots closer to Election Day—particularly those who live in the more rural parts of Hollister. Given the delays in receiving our ballots, we have no choice but to mail those ballots closer to Election Day. As with all mail, my understanding is that our ballots first go to San Jose for processing and then go to our local board of election. The seven-day period following Election Day is essential to ensuring that our ballots are counted.

18.     ***Curing Mail-in Ballots:*** My understanding is that the Executive Order's new ballot deadline will also impact the ability of voters to cure their ballots after Election Day. I personally have had to cure my mail-in ballot on two occasions in the past.

19.     Under California law, voters have until 5 p.m. two days prior to the certification of the election to provide a signature verification statement.

20.     In 2016, I mistakenly left out the middle initial of my name from my mail-in ballot, and the county board contacted me two days after Election Day so I could cure my ballot. In 2020, I encountered a similar issue when I wrote my last name with a lowercase rather than uppercase letter. In both instances, I was able to cure my ballots after Election Day.

21.     If this section of the Executive Order were implemented and California had to eliminate its post-Election Day cure process, voters like me who return mail ballots—even if they arrive by Election Day—would be disenfranchised for the slightest defect in my ballot since the opportunity to cure after Election Day would no longer exist. If there was no post-Election Day cure, neither my 2016 nor my 2020 ballot would have been counted.

22.      If this Order goes into effect, there are members of my Council, including myself, with physical limitations who would likely be disenfranchised by the potential elimination of the mail-in ballot return deadline after Election Day and the post-Election cure period.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 13 th day of September, 2025, in Hollister, California.

Irma C. Gonzalez