**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>  *Plaintiffs*,<br>  v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>  *Defendants*. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>  *Plaintiffs*,<br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>  *Defendants*,<br><br>and<br><br>REPUBLICAN NATIONAL COMMITTEE<br><br>  *Intervenor Defendant.* | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>  *Plaintiffs*,<br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>  *Defendants*. | Civil Action No. 25-0955 (CKK) |

**LULAC PLAINTIFFS' RESPONSE TO THE REPUBLICAN NATIONAL COMMITTEE'S STATEMENT OF MATERIAL FACTS**

In accordance with Local Civil Rule 7(h), LULAC Plaintiffs respond to the Republican National Committee's Statement of Material Facts (ECF No. 176-2 and submit this "concise statement of genuine issues" that preclude partial summary judgment in favor of the RNC as intervenor-defendant on their defense of Section 7(a) of the Executive Order. The RNC does not defend Section 3(d) of the Executive Order, as to which LULAC Plaintiffs also cross-move. When LULAC Plaintiffs respond to a statement made by the RNC as "undisputed," it does not mean that they are admitting the truth of the matter asserted. Rather, LULAC Plaintiffs are acknowledging only that they do not currently dispute the statement for purposes of resolving RNC's summary judgment motion. LULAC Plaintiffs reserve the right to dispute any statement made by the RNC at a later stage of this case. The RNC notes that it incorporates its previous statement of undisputed facts as to the Section 2(a) briefing (ECF 161-3) and the LULAC Plaintiffs likewise incorporate by reference their responses to those assertions (ECF 182-1). LULAC Plaintiffs respond to each numbered paragraph of the RNC's Statement of Material Facts as follows:

1. On March 25, 2025, President Trump issued Executive Order 14248 to "enforce Federal law and to protect the integrity of our election process." §1, 90 Fed. Reg. 14005, 2025 WL 929182, at *14006 (Mar. 25, 2025).

**RESPONSE: Partially undisputed.** It is undisputed that the Executive Order contains the quoted language. However, the assertion that the Executive Order was issued "to" do these things is a matter of subjective intent which LULAC Plaintiffs are unable to comment on.

2. Section 7(a) of the Executive Order directs the Attorney General to "take all necessary action to enforce 2 U.S.C. 7 and 3 U.S.C. 1 against States that violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes

1

for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives." Exec. Order 14248, §7(a).

**RESPONSE: Undisputed.**

3. In 1845, Congress passed the first of the election-day statutes, winnowing down a 34-day period for States to appoint electors for President and Vice President to just one day, the Tuesday after the first Monday in November in each presidential election year. *Compare* Act of Mar. 1, 1792, ch. 8, §1, 1 Stat. 239, *with* Act of Jan. 23, 1845, ch. 1, 5 Stat. 721.

**RESPONSE: Undisputed.** It is undisputed that Congress passed the election day statutes in 1845 and set the first Tuesday after the first Monday in November as the date for appointment of presidential electors.

4. After the Civil War, in 1872, Congress extended the election-day deadline to congressional elections, providing that for House elections, "the Tuesday next after the first Monday in November, in every second year" is "hereby fixed and established as the day for the election." Act of Feb. 2, 1872, ch. 11, §3, 17 Stat. 28. After the 17th Amendment was ratified, Congress extended the uniform election day to Senate elections. *See* Act of June 4, 1914, ch. 103, §1, 38 Stat. 384.

**RESPONSE: Disputed in part.** It is undisputed that Congress passed laws setting the first Tuesday after the first Monday in November as election day for House and Senate elections. However, it is disputed that this date is a "deadline," as none of the cited statutes refer to it as such. It is simply the date on which the election is to occur.

5. The Executive Order recognizes that these election-day statutes "require that votes be cast and received by the election date established in law" as "the United States Court of Appeals

for the Fifth Circuit recently held." Exec. Order No. 14248, §1; *see RNC v. Wetzel*, 120 F.4th 200, 209 (5th Cir. 2024).

**RESPONSE: Disputed in part.** Disputed as misleading and incomplete. The Executive Order includes the quoted language, and that language generally aligns with the Fifth Circuit's *Wetzel* decision. However, the characterization of this radical departure as "recogniz[ing]" and the assertion about what the election day statutes require is misleading and incorrect.

6.  Within a week of President Trump signing the Executive Order, Plaintiffs sued, demanding not only that this Court enjoin the Order from being carried out by multiple federal government agencies but also that the Court countermand the Fifth Circuit's interpretation of the federal election-day statutes. DNC Compl. (Doc. 1 No. 1:25-cv-952) at 17-18; LULAC Compl. (Doc. 1) at 46.

**RESPONSE: Undisputed.** LULAC Plaintiffs do not dispute that they filed this lawsuit within a week of the Executive Order being signed, and that the lawsuit asked that various federal agencies be enjoined from enforcing unlawful sections of the Order. While LULAC Plaintiffs' complaint made no mention of the Fifth Circuit's *Wetzel* decision, it is undisputed that LULAC Plaintiffs do not think this Court should follow that outlier opinion (which of course does not bind this Court).

7.  On April 7, 2025, the Democratic Party Plaintiffs moved for a preliminary injunction of the election-day enforcement directive of Section 7(a) as well as the citizenship assessment directive of Section 2(d) of the Executive Order. *See* DNC PI Mot. (Doc. 53) at 2.

**RESPONSE: Undisputed.**

8.  This Court denied their motion concerning the election-day enforcement directive of Section 7(a) concluding that "the Democratic Party Plaintiffs are not entitled to a preliminary

3

injunction against enforcement of Section 7(a)" in part because "the most natural parties to seek an injunction against enforcement under Section 7(a) are the States themselves, not the Democratic Party Plaintiffs." *LULAC v. Exec. Off. of the President*, 2025 WL 1187730, at *52 (D.D.C.).

**RESPONSE: Undisputed.** It is undisputed that the Court's memorandum opinion granting in part and denying in part the Plaintiffs' motions for a preliminary injunction includes the quoted language.

9. On June 12, 2025, the Court granted the RNC intervention by right in this case to permit the RNC to vindicate its "interest in competing in fair contests for public office by registering, educating, and turning out voters" and to defend Sections 2(a) 2(b), 2(d), 3(a), and 7(a) of the Executive Order. Order Granting Interv. (Doc. 135) at 9.

**RESPONSE: Undisputed.** It is undisputed that the Court's memorandum and order granting in part and denying in part the RNC's motion to intervene contains the quoted language and makes reference to the cited sections of the Executive Order.

10. To protect the integrity of federal elections and ensure that the federal election-day statutes are faithfully executed, the RNC has sued multiple States that have adopted laws allowing post-election ballot receipt. *E.g., RNC v. Wetzel*, 120 F.4th at 203-04; *RNC v. Burgess*, 2024 WL 3445254 (D. Nev.), *appealed* No. 24-5071 (9th Cir. 2025).

**RESPONSE: Disputed in part.** It is undisputed that the RNC has sued multiple states that permit post-election day receipt of ballots mailed on or before election day, including in the two cases cited, but LULAC Plaintiffs are unable to discern the RNC's reason for filing these suits and dispute that the RNC's requested relief "faithfully execute[s]" the Election Day statutes.

11. The RNC prevailed in *RNC v. Wetzel*, where the Fifth Circuit held that "[t]ext, precedent, and historical practice" all "confirm" that the "'day for the election'" established by

4

Congress "is the day by which ballots must be both *cast* by voters and *received* by state officials," 120 F.4th at 203-04.

**RESPONSE: Undisputed but immaterial.** The RNC did prevail in *Wetzel*, but that decision is an outlier which does not determinate the legality of the President's command to the Attorney General in Section 7(a) of the Executive Order to "enforce" the Election Day statutes in a manner that is contrary to validly enacted state laws. The Election Day statutes provide no grant of enforcement authority to the Attorney General or anyone else.

12. The RNC has "a unique interest in defending the decision of the U.S. Court of Appeals for the Fifth Circuit in *RNC v. Wetzel*" because "[t]hat decision directly implicates the RNC's private, partisan interests in a particular set of election procedures, and the RNC has no guarantee that the Government will defend against any collateral attack on the *Wetzel* decision in a way that will adequately protect those interests." Order Granting Interv. 11.

**RESPONSE: Undisputed but immaterial.** LULAC Plaintiffs respectfully refer the Court to its order granting intervention for a true and accurate statement of its contents. *See* ECF 135.

13. Post-election ballot-receipt deadlines harm Republican candidates and voters. Ambrosini Suppl. Decl. (Doc. 161-2) at ¶20.

**RESPONSE: Disputed in part.** The voting practices and preferences of individual voters may change over time, and the cited declaration does not establish that Republican party affiliation inherently and unchangingly is associated with particular timing of the return of mail and absentee ballots.

14. Democrats disproportionately benefit from post-election ballot-receipt deadlines. Decl. of Hakeem Jeffries (Doc. 53-2) at ¶7; Decl. of Chuck Schumer (Doc. 53-3) at ¶¶6, 9; Decl.

5

of Liberty Schneider (Doc. 53-4) at ¶7; Decl. of Jillian Edelman (Doc. 53-5) at ¶11; Decl. of Lillie Snyder (Doc. 53-6) at ¶6; Decl. of Erik Ruselowski (Doc. 53-7) at ¶7.

**RESPONSE: Disputed in part.** The voting practices and preferences of individual voters may change over time, and the cited declarations do not establish that particular party affiliations inherently and unchangingly are associated with particular timing of the return of mail and absentee ballots.

15. Democratic voters tend to mail their ballots later on average than Republican voters, which results in late-arriving ballots favoring Democratic candidates. Ambrosini Suppl. Decl. ¶20. And because voting by mail is starkly polarized by party, late deadlines favor Democratic candidates and harm Republican candidates. *Id.*

**RESPONSE: Disputed in part.** The voting practices and preferences of individual voters may change over time, and the cited declaration does not establish that particular party affiliations inherently and unchangingly are associated with particular timing of the return of mail and absentee ballots.

16. Late-arriving ballots that skew heavily in favor of one party undermine Republican voters' confidence in the integrity of the election, dilute the timely votes of Republican voters, and harm the RNC, its members, and voters. Ambrosini Suppl. Decl. ¶21.

**RESPONSE: Disputed.** The claim that post-Election ballot receipt windows undermine voter confidence is speculative, and the claim that counting all lawfully cast ballots "dilutes" any other lawfully cast votes is legally baseless and misleading.

17. Because post-election mail-in ballot receipt deadlines violate federal law, they result in an inaccurate tally of the lawfully cast votes. *Id.* ¶22. Including ballots that arrive after election day in the final vote tally dilutes the effectiveness of votes cast and received before the

6

close of election day. The inaccurate vote tally undermines Republican candidates' rights to a fair and accurate electoral count, and it undermines confidence in the election. *Id.*

**RESPONSE: Disputed.** The Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. Const. art. I, § 4, cl. 1. As this Court acknowledged previously, the Elections Clause has a "broad" substantive scope that gives States the authority to provide a complete code for federal elections. ECF 104 at 7. The constitutional "default" is thus that States make the rules for federal elections, up to the point that Congress enacts any superseding laws because "the Congress may at any time by Law make or alter such Regulations." U.S. Const. art. I, § 4, cl. 1. Thus, States have primary responsibility for setting elections rules, "but only so far as Congress declines to pre-empt state legislative choices.'" *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (citation omitted). Congress has not acted to displace State election laws that allow for the States to receive and count mail ballots that were timely cast by Election Day during a set period of time thereafter. It is entirely speculative whether this ordinary and intended understanding of the constitutional framework for elections regulation undermines any group of voters' confidence in elections.

18.    The number of ballots received after the federally prescribed election day can determine the outcome of federal elections. *See Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 732-33 (2021) (Thomas, J., dissenting from the denial of certiorari).

**RESPONSE: Undisputed but immaterial.** Elections can be and sometimes are decided by close margins.

7

19. Enjoining enforcement of the election-day provisions of President Trump's Executive Order will require the RNC to divert more resources toward absentee-voting, poll-watching activities, voter-roll monitoring, and voter-registration efforts. *Id.* ¶28.

**RESPONSE: Disputed in part.** A correct understanding of federal law makes clear that the Election Day Statutes neither establish a uniform federal deadline for ballot receipt nor give the Attorney General any authority to enforce them. Given that this is the long-standing baseline, it is unclear why the RNC would be required to devote more resources to the activities set out.

20. In its previous partial summary judgment motion memorandum, the Democratic Party Plaintiffs acknowledged the RNC's standing as their "direct competitor," that "the RNC's mission is to 'elect Republican candidates to state and federal office'" and that "enjoining" various provisions of the Executive Order "will require RNC to pursue its mission in other ways." DNC §2(a) MSJ Br. (Doc. 146-1) at 22 n.5. They argued that the RNC's standing put to rest any "doubts" about the standing of the Democratic Party Plaintiffs. *Id.*

**RESPONSE: Undisputed but immaterial.** LULAC Plaintiffs respectfully refer the Court to the memorandum cited for its complete context, which referred only to documentary proof of citizenship requirements in Section 2(a) and did not address standing for Section 7(a).

Dated: September 17, 2025

Respectfully submitted,

*/s/ Pooja Chaudhuri*
Pooja Chaudhuri (D.C. Bar No. 888314523)
Sofia Fernandez Gold (D.C. Bar No. 90010196)
Jacob Kovacs-Goodman (D.C. Bar No. 90032363)
Norman L. Eisen (D.C. Bar No. 435051)
Tianna J. Mays (D.C. Bar No. 90005882)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
(202) 601-8678
pooja@democracydefenders.org
sofia@democracydefenders.org
jacob@democracydefenders.org
norman@democracydefenders.org
tianna@democracydefenders.org

*/s/ Jon Greenbaum*
Jon Greenbaum (D.C. Bar No. 489887)
JUSTICE LEGAL STRATEGIES PLLC
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com

*Counsel for Plaintiffs League of United Latin American Citizens, Secure Families Initiative, and Arizona Students' Association*

*/s/ Anna M. Baldwin*
Anna M. Baldwin (D.C. Bar No. 998713)
Danielle Lang (D.C. Bar No. 1500218)
Jonathan Diaz (D.C. Bar No. 1613558)
Robert Brent Ferguson (D.C. Bar No. 1782289)
Heather Szilagyi (D.C. Bar No. 90006787)
Benjamin Phillips (D.C. Bar No. 90005450)
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
abaldwin@campaignlegalcenter.org
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
bphillips@campaignlegalcenter.org