# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br> Defendants. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 25-0955 (CKK) |

**DEMOCRATIC PARTY PLAINTIFFS' RESPONSES TO THE RNC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF PHASE II SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h)(1) of the Rules of the United States District Court for the District of Columbia, Plaintiffs the Democratic National Committee ("DNC"), the Democratic Governors Association ("DGA"), the Democratic Senatorial Campaign Committee ("DSCC"), the Democratic Congressional Campaign Committee ("DCCC") (collectively, "Party Organizations"), and the Democratic leaders of the U.S. Senate and U.S. House of Representatives, Charles E. "Chuck" Schumer and Hakeem S. Jeffries (together with the Party Organizations, "Democratic Party Plaintiffs") respectfully submit the following Responses to each statement in the Republican National Committee's ("RNC") Statement of Material Facts in support of its motion for summary judgment as to Sections 2(d) and 7(a) of Executive Order 14248. *See* ECF No. 176-2.

Any statements herein that a fact is disputed, undisputed, or disputed in part are made for purposes of the instant Phase II summary judgment motions only and should not bind Democratic Party Plaintiffs or otherwise limit evidence available for future summary judgment motions, trial, or otherwise. *See* Fed. R. Civ. P. 56(g); Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment (noting "a party's ability to accept a fact for purposes of the [summary judgment] motion only"); Local Civil Rule 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Any response that a statement made by the RNC is "undisputed" does not mean that Democratic Party Plaintiffs admit the truth of the matter asserted, but rather only that they do not dispute the statement for purposes of resolving the Phase II summary judgment motions before the Court, as it is not a material fact that must be resolved for purposes of ruling on the motions.

Democratic Party Plaintiffs respond to each numbered paragraph in the RNC's Statement of Facts as follows:

1

## RESPONSES TO THE RNC'S STATEMENT OF MATERIAL FACTS

1. On March 25, 2025, President Trump issued Executive Order 14248 to "enforce Federal law and to protect the integrity of our election process." §1, 90 Fed. Reg. 14005, 2025 WL 929182, at *14006 (Mar. 25, 2025).

**Democratic Party Plaintiffs' Response: DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent the statement asserts that Executive Order 14248 "enforce[s] federal law" or "protect[s] the integrity of our election process"; the cited document does not describe any findings of fact or evidence supporting those points. It is further disputed as an improper legal conclusion, and immaterial because it is not a fact capable of affecting the outcome of the motions. The statement is otherwise undisputed for purposes of this motion only to the extent it quotes the Executive Order.

2. Section 7(a) of the Executive Order directs the Attorney General to "take all necessary action to enforce 2 U.S.C. 7 and 3 U.S.C. 1 against States that violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives." Exec. Order 14248, §7(a).

**Democratic Party Plaintiffs' Response: DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent the statement asserts that Section 7(a) "enforce[s] 2 U.S.C. 7 and 3 U.S.C. 1," and that States "violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives." It is further disputed as an improper legal conclusion, and immaterial because it is not a fact capable of affecting the outcome of the motions. The statement is otherwise undisputed for purposes of this motion only to the extent it quotes the Executive Order.

3. In 1845, Congress passed the first of the election-day statutes, winnowing down a 34-day period for States to appoint electors for President and Vice President to just one day, the

Tuesday after the first Monday in November in each presidential election year. *Compare* Act of Mar. 1, 1792, ch. 8, §1, 1 Stat. 239, *with* Act of Jan. 23, 1845, ch. 1, 5 Stat. 721.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent the statement implies that States are prohibited under the Election Day Statutes from counting mail ballots received after Election Day. It is further disputed as an improper legal conclusion, and immaterial because it is not a fact capable of affecting the outcome of the motions. The statement is otherwise undisputed for purposes of this motion only.

4.  After the Civil War, in 1872, Congress extended the election-day deadline to congressional elections, providing that for House elections, "the Tuesday next after the first Monday in November, in every second year" is "hereby fixed and established as the day for the election." Act of Feb. 2, 1872, ch. 11, §3, 17 Stat. 28. After the 17th Amendment was ratified, Congress extended the uniform election day to Senate elections. *See* Act of June 4, 1914, ch. 103, §1, 38 Stat. 384.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent the statement implies that States are prohibited under the Election Day Statutes from counting mail ballots received after Election Day. It is further disputed as an improper legal conclusion, and immaterial because it is not a fact capable of affecting the outcome of the motions. The statement is otherwise undisputed for purposes of this motion only.

5.  The Executive Order recognizes that these election-day statutes "require that votes be cast and received by the election date established in law" as "the United States Court of Appeals for the Fifth Circuit recently held." Exec. Order No. 14248, §1; *see RNC v. Wetzel*, 120 F.4th 200, 209 (5th Cir. 2024).

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading, incomplete, and without evidentiary basis to the extent the statement implies that States are prohibited under the Election Day Statutes from counting mail ballots received after Election Day;

3

the cited case, *RNC v. Wetzel*, was wrongly decided, mischaracterizes the historical record and precedent, and misinterprets the text of the Election Day Statutes. *See* DPP Phase II Mot. § III (Sept. 17, 2025). It is further disputed as an improper legal conclusion, and immaterial because it is not a fact capable of affecting the outcome of the motions. The statement is otherwise undisputed for purposes of this motion only to the extent it quotes the Executive Order.

6.  Within a week of President Trump signing the Executive Order, Plaintiffs sued, demanding not only that this Court enjoin the Order from being carried out by multiple federal government agencies but also that the Court countermand the Fifth Circuit's interpretation of the federal election-day statutes. DNC Compl. (Doc. 1 No. 1:25-cv-952) at 17-18; LULAC Compl. (Doc. 1) at 46.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and incomplete to the extent that the statement implies that Plaintiffs sued to enjoin enforcement of every provision of the Executive Order; Plaintiffs asserted claims against some, but not all, of its provisions. *See* Compl., ECF No. 1 ("*LULAC* Compl."); Compl., *Democratic Nat'l Comm. v. Trump*, No. 1:25-cv-0952 (D.D.C. Mar. 31, 2025), ECF No. 1 ("*DNC* Compl."); Compl., *League of Women Voters Educ. Fund v. Trump*, No. 1:25-cv-0955 (D.D.C. Apr. 1, 2025), ECF No. 1 ("*LWV* Compl."). It is further disputed as misleading to the extent that the statement implies this Court is bound by Fifth Circuit precedent or that Plaintiffs ask this Court to "countermand" the Fifth Circuit. Finally, it is disputed as an improper legal conclusion, and immaterial because it is not a fact capable of affecting the outcome of the motions. The statement is otherwise undisputed for purposes of this motion only.

7.  On April 7, 2025, the Democratic Party Plaintiffs moved for a preliminary injunction of the election-day enforcement directive of Section 7(a) as well as the citizenship assessment directive of Section 2(d) of the Executive Order. *See* DNC PI Mot. (Doc. 53) at 2.

**Democratic Party Plaintiffs' Response**: **UNDISPUTED.**

4

8. This Court denied their motion concerning the election-day enforcement directive of Section 7(a) concluding that "the Democratic Party Plaintiffs are not entitled to a preliminary injunction against enforcement of Section 7(a)" in part because "the most natural parties to seek an injunction against enforcement under Section 7(a) are the States themselves, not the Democratic Party Plaintiffs." *LULAC v. Exec. Off. of the President*, 2025 WL 1187730, at *52 (D.D.C.).

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and incomplete to the extent that the statement implies that Democratic Party Plaintiffs are not harmed by Section 7(a): Section 7 interferes with the Party Organizations' core activities, and frustrates their ability to make critical strategic decisions about how to plan for future elections. SOF ¶¶ 59-61. Section 7 also illegally structures the campaign environment to the detriment of Democratic Party organizations, candidates, and voters, among other harms. *See LaRoque v. Holder*, 650 F.3d 777, 787 (D.C. Cir. 2011) (citation omitted); SOF ¶¶ 53-61. Members of the Democratic Party Plaintiffs are also harmed because many of them are voters who have cast mail ballots in recent elections and had their ballots count solely by operation of the state laws that Section 7 targets. SOF ¶ 63. These voters are now actively discouraged from voting by mail due to concern and confusion about the proper deadlines for receipt. SOF ¶ 64. The statement is otherwise undisputed for purposes of this motion only to the extent it quotes the Court's April 24, 2025 order.

9. On June 12, 2025, the Court granted the RNC intervention by right in this case to permit the RNC to vindicate its "interest in competing in fair contests for public office by registering, educating, and turning out voters" and to defend Sections 2(a) 2(b), 2(d), 3(a), and 7(a) of the Executive Order. Order Granting Interv. (Doc. 135) at 9.

**Democratic Party Plaintiffs' Response**: **UNDISPUTED.** Undisputed as immaterial because it is not a fact capable of affecting the outcome of the motions.

10. To protect the integrity of federal elections and ensure that the federal election-day statutes are faithfully executed, the RNC has sued multiple States that have adopted laws allowing

5

post-election ballot receipt. *E.g.*, *RNC v. Wetzel*, 120 F.4th at 203-04; *RNC v. Burgess*, 2024 WL 3445254 (D. Nev.), appealed No. 24-5071 (9th Cir. 2025).

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent that the statement asserts that the RNC's lawsuits "protect the integrity of federal elections and ensure that the federal election-day statutes are faithfully executed"; the cited materials do not describe any findings of fact or evidence proving that its activities benefit the integrity of elections. The statement is otherwise undisputed for purposes of this motion only to the extent it asserts that the RNC filed the cited lawsuits challenging States' extended ballot-receipt deadlines.

11.  The RNC prevailed in *RNC v. Wetzel*, where the Fifth Circuit held that "[t]ext, precedent, and historical practice" all "confirm" that the "'day for the election'" established by Congress "is the day by which ballots must be both cast by voters and received by state officials," 120 F.4th at 203-04.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent that the statement asserts that "[t]he text, precedent, and historical practice all confirm that the day for the election established by Congress is the day by which ballots must be both cast by voters and received by state officials." *RNC. v. Wetzel* was wrongly decided, mischaracterizes the historical record and precedent, and misinterprets the text of the Election Day Statutes. *See* DPP's Phase II Mot. § III (Sept. 17, 2025) . Further disputed to the extent it claims the RNC has "prevailed" in ongoing litigation presently subject to a petition for certiorari. *See Watson v. RNC*, No. 24-60395 (U.S.). The statement is otherwise undisputed for purposes of this motion only to the extent it quotes the Fifth Circuit's decision in *Wetzel*.

12.  The RNC has "a unique interest in defending the decision of the U.S. Court of Appeals for the Fifth Circuit in *RNC v. Wetzel*" because "[t]hat decision directly implicates the RNC's private, partisan interests in a particular set of election procedures, and the RNC has no

6

guarantee that the Government will defend against any collateral attack on the *Wetzel* decision in a way that will adequately protect those interests." Order Granting Interv. 11.

**Democratic Party Plaintiffs' Response**: **UNDISPUTED.** Undisputed as immaterial because it is not a fact capable of affecting the outcome of the motions.

13.    Post-election ballot-receipt deadlines harm Republican candidates and voters. Ambrosini Suppl. Decl. (Doc. 161-2) at ¶ 20.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent that the statement implies that extended ballot-receipt deadlines are harmful to anyone; that "Democratic voters tend to mail their ballots later on average than Republican voters," Ambrosini Suppl. Decl. ¶ 20, even if true, is not "harmful." The statement is otherwise undisputed as immaterial to the extent it describes the RNC's core activities, because they are not facts capable of affecting the outcome of the motions.

14.    Democrats disproportionately benefit from post-election ballot-receipt deadlines. Decl. of Hakeem Jeffries (Doc. 53-2) at ¶ 7; Decl. of Chuck Schumer (Doc. 53-3) at ¶¶ 6, 9; Decl. of Liberty Schneider (Doc. 53-4) at ¶ 7; Decl. of Jillian Edelman (Doc. 53-5) at ¶ 11; Decl. of Lillie Snyder (Doc. 53-6) at ¶ 6; Decl. of Erik Ruselowski (Doc. 53-7) at ¶ 7.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent that the statement implies that Democratic candidates *unfairly* benefit from extended ballot-receipt deadlines; the Party Organizations have "expended significant resources to encourage voters to vote by mail, because that method is often the most convenient or accessible way for voters to participate." Schneider Decl. (ECF No. 53-4) ¶ 7; *see also* Edelman Decl. (ECF No. 53-5) ¶ 11; Snyder Decl. (ECF No. 53-6) ¶ 6; Ruselowski (ECF No. 53-7) ¶ 7. The statement is otherwise undisputed for purposes of this motion only to the extent it implies that a "significantly greater portion of mail voters are Democrats compared to Republicans." Edelman Decl. ¶ 11.

15. Democratic voters tend to mail their ballots later on average than Republican voters, which results in late-arriving ballots favoring Democratic candidates. Ambrosini Suppl. Decl. ¶ 20. And because voting by mail is starkly polarized by party, late deadlines favor Democratic candidates and harm Republican candidates. *Id.*

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent that the statement implies that Democratic candidates unfairly benefit from extended ballot-receipt deadlines and that the counting of valid ballots is "harmful"; the Party Organizations have "expended significant resources to encourage voters to vote by mail, because that method is often the most convenient or accessible way for voters to participate." Schneider Decl. ¶ 7; *see also* Edelman Decl. ¶ 11; Snyder Decl. ¶ 6; Ruselowski ¶ 7. It is further disputed to the extent that the statement implies that ballots lawfully arriving after election day are "late"; numerous state laws allow for the counting of ballots received within prescribed periods after election day. *See* SOF ¶¶ 48-50. The statement is otherwise undisputed for purposes of this motion only to the extent it implies that a "significantly greater portion of mail voters are Democrats compared to Republicans." Edelman Decl. ¶ 11.

16. Late-arriving ballots that skew heavily in favor of one party undermine Republican voters' confidence in the integrity of the election, dilute the timely votes of Republican voters, and harm the RNC, its members, and voters. Ambrosini Suppl. Decl. ¶ 21.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent that the statement implies that Democratic candidates *unfairly* benefit from extended ballot-receipt deadlines; the Party Organizations have "expended significant resources to encourage voters to vote by mail, because that method is often the most convenient or accessible way for voters to participate." Schneider Decl. ¶ 7; *see also* Edelman Decl. ¶ 11; Snyder Decl. ¶ 6; Ruselowski ¶ 7. It is further disputed to the extent that the statement implies that ballots lawfully arriving after election day are "late"; numerous state laws allow for

8

the counting of ballots received within prescribed periods after election day. *See* SOF ¶¶ 48-50. Finally, it is further disputed that the counting of valid ballots is "harm[ful]," "dilutes" votes of Republican voters, or "undermine[s] Republican voters' confidence" in election integrity; the cited document is conclusory and does not describe any findings of fact or evidence proving these claims. There is nothing harmful about counting lawfully cast ballots from qualified voters. The statement is otherwise undisputed for purposes of this motion only to the extent it implies that a "significantly greater portion of mail voters are Democrats compared to Republicans." Edelman Decl. ¶ 11.

17. Because post-election mail-in ballot receipt deadlines violate federal law, they result in an inaccurate tally of the lawfully cast votes. *Id.* ¶ 22. Including ballots that arrive after election day in the final vote tally dilutes the effectiveness of votes cast and received before the close of election day. The inaccurate vote tally undermines Republican candidates' rights to a fair and accurate electoral count, and it undermines confidence in the election. *Id.*

**Democratic Party Plaintiffs' Response: DISPUTED.** Disputed as misleading and without evidentiary basis; the cited document does not describe any findings of fact or evidence supporting that extended ballot-receipt deadlines "result in an inaccurate tally of the lawfully cast votes." It is further disputed that the counting of valid ballots "dilutes the effectiveness of votes cast and received before the close of election day," "undermines Republican candidates' rights to a fair and accurate electoral count," or "undermines confidence in the election"; the cited document is conclusory and does not describe any findings of fact or evidence proving these claims. It is further disputed as an improper legal conclusion.

18. The number of ballots received after the federally prescribed election day can determine the outcome of federal elections. *See Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 732-33 (2021) (Thomas, J., dissenting from the denial of certiorari).

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading to the extent the statement implies that States are precluded under the Election Day Statutes from counting mail ballots received after Election Day. The statement is otherwise undisputed for purposes of this motion only.

19.  Enjoining enforcement of the election-day provisions of President Trump's Executive Order will require the RNC to divert more resources toward absentee-voting, pollwatching activities, voter-roll monitoring, and voter-registration efforts. *Id.* ¶ 28.

**Democratic Party Plaintiffs' Response**: **DISPUTED IN PART.** Disputed as misleading and without evidentiary basis to the extent that the statement implies that extended ballot-receipt deadlines have any effect on "pollwatching activities," "voter-roll monitoring," or "voter-registration efforts"; the cited document is conclusory and does not describe any findings of fact or evidence proving those claims. The statement is otherwise undisputed as immaterial to the extent it describes the RNC's core activities, because they are not facts capable of affecting the outcome of the motions.

20.  In its previous partial summary judgment motion memorandum, the Democratic Party Plaintiffs acknowledged the RNC's standing as their "direct competitor," that "the RNC's mission is to 'elect Republican candidates to state and federal office'" and that "enjoining" various provisions of the Executive Order "will require RNC to pursue its mission in other ways." DNC §2(a) MSJ Br. (Doc. 146-1) at 22 n.5. They argued that the RNC's standing put to rest any "doubts" about the standing of the Democratic Party Plaintiffs. *Id*.

**Democratic Party Plaintiffs' Response**: **UNDISPUTED.** Undisputed as immaterial because it is not a fact capable of affecting the outcome of the motions.

Dated: September 17, 2025                                                  Respectfully submitted,

10

*/s/ Aria C. Branch*
**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Aria C. Branch (DC 1014541)
Lalitha D. Madduri (DC 1659412)
Christopher D. Dodge (DC 90011587)
Jacob D. Shelly (DC 90010127)
Harleen K. Gambhir (DC 1781869)
James J. Pinchak (DC 90034756)*
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave. Suite 2100
Seattle, WA 98101
T: (206) 656-0177

*Admitted pro hac vice*

11