**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 25-cv-0946 (CKK) |
| EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, | |
| Defendants. | |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 25-cv-0952 (CKK) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 25-cv-0955 (CKK) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |

**DECLARATION OF ARIA C. BRANCH PURSUANT TO RULE 56(D) IN SUPPORT OF DEMOCRATIC PARTY PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS (PHASE II)**

I, Aria C. Branch, declare as follows:

1.      I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration, which are true and correct to the best of my knowledge, information, and belief.

2.      I am a partner at Elias Law Group LLP and an attorney of record for the Democratic National Committee, the Democratic Governors Association, the Democratic Senatorial Campaign Committee, the Democratic Congressional Campaign Committee, and the respective Democratic leaders of the U.S. Senate and U.S. House of Representatives, Charles E. "Chuck" Schumer and Hakeem S. Jeffries (together, Democratic Party Plaintiffs, or DPPs) in these consolidated cases, in which the DPPs assert that Defendants' implementation of several provisions of a March 2025 Executive Order entitled *Preserving and Protecting the Integrity of American Elections* violates the U.S. Constitution and federal law. *See* Exec. Order 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) (EO).

3.      Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, I submit this declaration in support of the DPPs' request that the Court deny or defer consideration of Defendants' motions for summary judgment on certain claims for which final judgment is premature because facts necessary to resolve the claims have not yet been produced or discovered. *See Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (citing *Convertino v. U.S. Department of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012)).

4.      As required by Rule 56(d), this declaration describes particular material facts that the DPPs have not yet been able to discover, why they have not yet been able to obtain them, and why the facts are discoverable. *Jeffries*, 965 F.3d at 855. Accordingly, to the extent the Court does not enter judgment for the Democratic Party Plaintiffs, it should "defer consideration of the

[Federal Defendants' and RNC's] motion[s]," "deny" those motions, or "allow time . . . to take discovery," as appropriate. Fed. R. Civ. P. 56(d).

## BACKGROUND

5.    On March 31, 2025, the Democratic Party Plaintiffs filed their Complaint, which alleges several claims challenging Defendants' implementation of specific provisions of the EO under eleven different counts. *See* Democratic Party Pls. Compl. ¶¶ 126–218.

6.    Soon after filing their Complaint, the Democratic Party Plaintiffs moved for preliminary injunctions against the implementation of some of these provisions. *See* Dem. Party Pls.' Mot. for Preliminary Inj., ECF No. 53. The Democratic Party Plaintiffs attached declarations setting out the factual bases for their standing, as well as other documents available to Plaintiffs in the public record. *See* ECF Nos. 32-6, 32-13, 32-20, 32-23 to 32-25, 32-29 to 32-31, 53-2 to 53-7.

7.    This Court granted Plaintiffs' motion in part and preliminarily enjoined the implementation of two provisions of the Executive Order, including Section 2(a), which orders the Election Assistance Commission ("EAC") to modify the federal voter registration application form to require applicants to provide documentary proof of U.S. citizenship, as well as Section 2(d), which directs federal agencies that are required to provide the form to anyone seeking their services to conduct an independent citizenship assessment only of those who receive public assistance. *LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 226 (D.D.C. 2025) (Kollar-Kotelly, J.) (*LULAC*).

8.    Following the preliminary injunction proceedings, the parties filed a joint scheduling proposal. *See* Minute Order (Apr. 28, 2025); ECF No. 119 at 4. The Federal Defendants stated that they did not intend to move to dismiss Plaintiffs' claims and asserted that all Plaintiffs' claims "can be decided without discovery" because they "present pure legal issues," and thus

insisted that no factual discovery or administrative records were necessary for their own summary judgment motions in this case. ECF No. 119 at 4; Joint Civil Rule 16.3 Report (LCvR 16.3 Report), ECF No. 137 at 11, 16 (arguing that "discovery is not appropriate"). The Federal Defendants thus requested "one round of motions for summary judgment" and no discovery for any party. LCvR 16.3 Report at 15, 19.

9.      The Democratic Party Plaintiffs, however, maintained that the Court should permit discovery on their claims regarding several of their challenges, including Sections 2(b), 2(d), 3(a), 3(d), 4(a), 5(b), 7(a), and 7(b), as well as administrative records for all their APA claims. LCvR 16.3 Report at 2–10.

10.     Following a scheduling conference, this Court issued a detailed order setting out a three-phase procedure for motions for summary judgment. *See* Scheduling Order, ECF No. 141.

11.     The first phase of the ordered schedule called for cross-motions for summary judgment regarding Plaintiffs' challenges to Section 2(a), which would proceed without discovery from any party, with initial motions due on July 11, 2025. *Id.* at 2. Those motions are now fully briefed.

12.     The second phase of the schedule called for opening motions for summary judgment by Defendants, which would be opposed by Plaintiffs. *Id.* The order also noted that "Plaintiffs reserved the right to cross move for summary judgment at this stage." *Id.* at 2. The Court further determined in the Order that "to efficiently resolve issues regarding the ripeness and justiciability of certain of Plaintiffs' claims," Plaintiffs were entitled to "limited *initial* discovery," specifically, "targeted factual interrogatories . . . to discern the existence *vel non* of final agency actions and the 'contours of the precise policy at issue' in their claims." *Id.* (emphasis added) (quoting *Hispanic Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)).

13.     Consistent with the Order, Plaintiffs timely propounded initial, limited interrogatories on June 27, 2025, seeking information about the Federal Defendants' efforts to

implement the EO.

14.    The Federal Defendants resisted even this initial, limited court-ordered discovery. Just two days before their responses were due, the Federal Defendants raised a blanket objection and stated they would not respond to Plaintiffs' interrogatories on the ground that the interrogatories were not proportional to the needs of the case. *See* Ex. B to ECF No. 147 at 6.

15.    Following a conference among the parties at which the Federal Defendants confirmed that they would not provide any response to Plaintiffs' interrogatories, Plaintiffs moved to compel discovery responses. This Court granted Plaintiffs' motion in part, concluding "that the interests of justice are best served by . . . direct[ing] production of responses to a targeted set of interrogatories that are proportional to the needs of the case in its current posture." Order, ECF No. 154 (Aug. 1, 2025) at 2.

16.    This Court confirmed in its Order that this "initial limited" round of discovery was proper and proportional at this early stage to help "illuminate . . . actions that have already been taken or that are in progress" to implement the EO and that "more intrusive discovery, if appropriate, will take place after the Court has resolved Defendants' threshold arguments about ripeness and justiciability." *Id.* at 2–3 (citation omitted). This Court revised Plaintiffs' interrogatories, aiming to "minimize the extent to which the interrogatories request information about plans or potential future actions." *Id.* at 3.

17.    The Federal Defendants served their responses on August 15, 2025. *See* Fed. Defs.' Resp. to Pls.' Interrog., ECF No. 177 (FD ROG Resp.). The Federal Defendants disclaimed any obligation to provide information beyond actions they determined they "ha[d] *already taken to implement*" the EO. *Id.* at 10 (emphasis in original). The Federal Defendants accordingly provided limited information in response to a handful of Plaintiffs' interrogatories, but otherwise responded,

"None." *Id.* at 8–28.

18.    On August 19, I emailed counsel for the Federal Defendants to obtain clarification about several of their interrogatory responses. The parties later conferred as to the scope and meaning of the Federal Defendants' responses. My email also reminded counsel for the Federal Defendants of their ongoing obligation to supplement Defendants' discovery responses and reserved the Democratic Party Plaintiffs' right to seek further discovery as needed to resolve outstanding questions of fact about the implementation of § 2(b) and § 3(a) by DOGE, DHS, USCIS, and SSA.

19.    On August 20, 2025, Defendants filed their Phase II motions, moving for partial summary judgment on all Plaintiffs' remaining claims. *See* ECF Nos. 176, 177. The Federal Defendants rely in part on their own limited interrogatory responses to advance many of their arguments. FD Mot. at 7, 9, 12, 18, 19, 25.

## FACTS AND DISCOVERY NEEDED

20.    As the Democratic Party Plaintiffs explain in their Opposition and Cross-Motion, the record is sufficient for the Court to grant judgment for Plaintiffs on several of their claims, including nearly all their constitutional and *ultra vires* claims asserting that the President lacked authority to issue the relevant provisions of the EO, which involve mostly legal questions. Those *ultra vires* and constitutional claims are ripe because the relevant EO provisions create "binding, enforceable obligations" on the subject agencies and officers, *LULAC*, 780 F. Supp. 3d at 175, and "dictate particular outcomes" with little or no agency discretion as to implementation, *id.* (citation omitted).

21.    In contrast, many of the Democratic Party Plaintiffs' Administrative Procedure Act (APA) claims involve predicate factual questions that are not yet ready for final adjudication. For these claims, the Court should not attempt to definitively resolve these factual questions until the

administrative records (AR) required by the APA and this Court's local rules are produced and—depending on the contents of the ARs—until further discovery occurs, such that the Democratic Party Plaintiffs can test various factual assertions made by the Federal Defendants.

22.    Further, while the Democratic Party Plaintiffs contend that sufficient facts exist to permit judgment on one of their APA claims—concerning DHS, DOGE, and SSA's enhancements to SAVE in response to §§ 2(b) and 3(a) of the EO—the Court may ultimately conclude that outstanding questions of fact preclude judgment at this time. To the extent it does, granting judgment to the Federal Defendants would also be improper, as the Democratic Party Plaintiffs would be entitled to discovery to test various assertions made by the Federal Defendants in support of their motion for summary judgment.

**I.    The Court should not presently grant judgment for the Federal Defendants on Plaintiffs' APA claims challenging §§ 2(b) and 3(a).**

23.    The Federal Defendants seek full judgment as to the Democratic Party Plaintiffs' APA claim against § 2(b) and § 3(a), but as detailed below, outstanding questions of fact make that request premature at this time. Further, while the Democratic Party Plaintiffs believe no genuine dispute of material fact exists as to particular application of § 2(b) and § 3(a), to the extent the Court disagrees, it should permit further discovery on that claim and defer its resolution to Phase III to allow for the discovery and examination of the relevant factual disputes.

**A.    Facts regarding certain DOGE personnel's asserted status as "employees of DHS" are required for the Court to determine whether DHS and SSA disclosures to those individuals are consistent with the Privacy Act.**

24.    In support of their motion for summary judgment on the Democratic Party Plaintiffs' claim challenging DHS's disclosures of records protected by the Privacy Act to DOGE personnel, Defendants rely on the assertion that these DOGE officials are actually "employees" of DHS for purposes of using the records in question. FD Mot. 22 (citing FD ROG Resp. at 11).

25.     However, it is well established that an individual's employment status with one versus another federal agency is a heavily fact dependent question that turns on "what work they do, where they work, and who supervises them." *AFL-CIO v. OPM*, 2025 WL 1621714, at *27 (S.D.N.Y 2025) (holding DOGE personnel were likely not OPM employees because a detailee "cannot be deemed an employee of multiple agencies at the same time" (citing *Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 131–32 (D.C. Cir. 2005))).

26.     Plaintiffs have not been able to discover information about the status of DOGE personnel because no AR has been produced and only Defendants have access to information regarding (1) the identities of the DOGE personnel, (2) what work they are doing and where, including the nature and extent of the work they are doing for DHS as compared to other agencies, and (3) who is supervising them in this work.

27.     Additional discovery on these questions would involve Defendants producing the required ARs and, to the extent the ARs are insufficient to resolve the legal question, other document productions, interrogatories, and/or depositions. *See All. for Retired Americans v. Bessent*, No. 25-cv-0313 (CKK), 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025).

28.     This information is discoverable because it is material to a defense asserted by the Federal Defendants to Plaintiffs' claim targeting disclosures of protected records to DOGE. *Cf. Does 1-9 v. DOJ*, No. 25-CV-325 (JMC), 2025 WL 894120, at *9 (D.D.C. Mar. 22, 2025) (allowing discovery on "every non-DOJ person, including White House personnel and DOGE personnel, who is known to have, or had, access to the data collected").

29.     While this question precludes granting judgment to the Federal Defendants, it does not preclude granting the Democratic Party Plaintiffs' partial cross-motion because there is no dispute that the recent SAVE enhancements have granted State and local officials access to SSA

NUMIDENT information without proper authorization. Whether DOGE employees are in fact DHS employees is not material to that issue.

**B.     Facts regarding individuals whose information has been disclosed by the Federal Defendants are required for the Court to determine one of Plaintiffs' standing theories.**

30.     In their Phase II Cross Motion for Partial Summary Judgment, the Democratic Party Plaintiffs thoroughly explain why they have Article III standing to bring their claims against § 2(b) and § 3(a).

31.     Nonetheless, to the extent the Court believes such standing is not yet established, the Democratic Party Plaintiffs have identified facts that are only in Defendants' possession and that have not yet been discovered that would permit them to supplement the facts underlying their injury allegations on these claims to the extent necessary. *See Urquhart-Bradley v. Mobley*, 964 F.3d 36, 48 (D.C. Cir. 2020) ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000)); *Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. Cir. 2023) ("A plaintiff need only have a good faith belief that reasonable discovery could supplement [its] jurisdictional allegations.").

32.     To the extent necessary,  the Democratic Party Plaintiffs request discovery into the identities of the individuals whose information has in fact been accessed through any system of records being used to implement the Executive Order, *see* FD ROG at 1, so that the Democratic Party Plaintiffs have a fair and meaningful opportunity to identify all their members who have been harmed in this manner and to "supplement" the record accordingly. *Urquhart-Bradley*, 964 F.3d at 48.

33.     The Democratic Party Plaintiffs have not been able to discover these facts because

no AR has been produced and only the Federal Defendants have information that would reveal the extent to which the personal information of individuals has been disclosed by the Federal Defendants.

34.    This discovery would involve Defendants producing the required AR and, likely, additional requests for the production of documents identifying any individuals whose information has been disclosed from DHS to DOGE, from SSA to DHS, from SSA to DOGE, and from any Federal Defendants to state and local election officials through SAVE or any other system of records. *See, e.g.*, FD ROG Resp. at 10 (acknowledging that more than 8 million "cases" have been created in SAVE).

35.    These facts are discoverable because they are material to the Democratic Party Plaintiffs' standing in this matter, including the invasion of privacy and breach-of-confidence harms alleged by the Democratic Party Plaintiffs, and the Democratic Party Plaintiffs have a good-faith basis to believe such additional factual development will allow them to supplement their jurisdictional arguments.

**C.    Facts regarding decisions that have been made as to § 2(b) and § 3(a) are required for the Court to determine final agency action, ripeness, and standing issues pressed by the Federal Defendants.**

36.    As the Democratic Party Plaintiffs explain in their Phase II Cross Motion for Summary Judgment, the Federal Defendants concede that certain final agency action has occurred in response to § 2(b)(i), to § 2(b)(iii), and § 3(a) and that such action is ripe for review. The Democratic Party Plaintiffs agree and therefore partially cross-move for judgment as to this final agency action. *See* Cross-Motion § V.

37.    The Federal Defendants have more broadly moved for complete judgment on this claim, but outstanding questions of fact preclude the Court from determining whether the Federal

Defendants have committed additional Privacy Act violations beyond the recent SAVE enhancements. These outstanding questions bar any final determination on the Federal Defendants' assertions that they are entitled to judgment on Plaintiffs' APA claims against § 2(b) and § 3(a) based on lack of final agency action, standing, and ripeness grounds.

38.    ***Final agency action.*** To resolve the final agency action issue, the Court will need to determine whether the relevant agency has made any decision(s) to implement a policy or practice that results in disclosures of information, as such decisions represent the "consummation of the agency's decision-making process," "by which [the information holder's] rights [and the agency's] obligations have been determined." *Venetian Casino Resort LLC v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008); *AFL-CIO v. DOL*, 778 F. Supp. 3d 56, 78 (D.D.C. 2025) (same); *see also, e.g.*, *Brotherhood of Locomotive Engineers & Trainmen v. Fed. Railroad Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020) (recognizing "finality" is not defeated by the absence of a written memorialization or the decision being "subject to change"). In other words, this Court will need to assess whether additional decisions have been made by the agencies, not just what actions the Federal Defendants believe have already taken place.

39.    The Democratic Party Plaintiffs request discovery on the full extent of decisions made by DHS, DOGE, DOS, and SSA to carry out § 2(b) and § 3(a) of the EO, including all non-privileged information as to any actual or planned final action. The limited record already suggests that further final actions are occurring. *See, e.g.*, SOF ¶ 94 (agency documents showing Federal Defendants have "committed" to executing additional changes to databases); FD ROG Resp. at 12 (stating that "DHS granted its DOGE Team access to a stand-alone HIS SharePoint site," which was "created specifically to facilitate large file transfers of USCIS data by DHS's DOGE Team," and that this "initiative is ongoing," but providing no additional information); FD ROG Resp. at

10 (noting that DHS has disclosed information from ICE databases to state or local election officials but providing no additional information).

40.    Plaintiffs have not been able to discover these facts because no AR has been produced; only the Federal Defendants have access to facts about decision-making by the DHS, SSA, DOS, and DOGE officials; and the Defendants have thus far refused to provide such information to the Democratic Party Plaintiffs.

41.    This discovery would involve the Federal Defendants producing the required AR and, likely, additional requests for production of documents, interrogatories, and depositions aimed at identifying such decision-making to the extent the ARs produced are insufficient.

42.    This information is discoverable because the existence of final agency action is material to all of Plaintiffs' claims asserting Privacy Act violations under the APA. *See, e.g.*, *Bessent*, 2025 WL 1114350, at *3.

43.    ***Ripeness and standing.*** The Court will need to assess similar factual questions to resolve the ripeness and standing issues pressed by the Federal Defendants as to Plaintiffs' APA claims. *See Venetian Casino Resort*, 409 F.3d at 366 (recognizing overlap between all these issues).

44.    To resolve these defenses, this Court will need to determine, for example, whether and what decisions have been made to implement policies or practices that would result in the disclosure of information, even if the decision has not yet been enforced. *See, e.g.*, *Genentech, Inc. v. Bowen*, 676 F. Supp. 301, 310 (D.D.C. 1987) (rejecting ripeness arguments because "[t]he case law plainly indicates that [] agency decisions may be reviewable even though not yet officially enforced"); *Venetian Casino Resort*, 409 F.3d at 366 ("Venetian has standing, because it has demonstrated that there is a substantial probability that the alleged disclosure policy will harm its

concrete and particularized interest in retaining the confidentiality of protected information.").

45.     This discovery would involve the Federal Defendants producing the required AR and, likely, additional requests for production of documents, interrogatories, and depositions aimed at identifying such decision-making to the extent the ARs produced are insufficient.

46.     Plaintiffs have not been able to discover these facts for the same reasons stated above with respect to final agency action.

47.     This information is discoverable because it is material to the ripeness and standing defenses pressed by the Federal Defendants, and the Democratic Party Plaintiffs have a good-faith basis for believing additional facts will supplement their ability to respond.

## II.     The Court should not presently grant judgment for the Federal Defendants on Plaintiffs' APA claims challenging § 2(d) and § 3(d).

### A.     Facts regarding decisions that have been made as to implementation of § 2(d) and § 3(d) are required for the Court to determine final agency action(s).

48.     As explained in the Democratic Party Plaintiffs' Phase II Cross-Motion for Summary Judgment, their *ultra vires* and separation of powers causes of action as to § 2(d) and § 3(d) are ripe for adjudication.

49.     The Democratic Party Plaintiffs also have raised APA-based causes of action against these provisions, alleging that they are contrary to the NVRA, UOCAVA, and the U.S. Constitution. *See* Democratic Party Pls. Compl. ¶¶ 171–94. Additional facts are required to resolve Defendants' motion for summary judgment on Plaintiffs' claims that § 2(d) and § 3(d) violate the APA on the grounds that there is no final agency action and that these claims are unripe for largely the same reasons described above. To date, these facts have not been made available to the Democratic Party Plaintiffs.

50.     The necessary facts include information about any decision-making by the Federal Defendants as to § 2(d) and § 3(d). As for § 2(d), this includes facts regarding decisions by federal

public assistance agencies about how they intend to implement § 2(d) and their process for "assessing" the citizenship of applicants. As for § 3(d), this includes decisions by DOD about how it proposes to require inclusion of documentary proof of citizenship and eligibility on the Federal Post Card, including but not limited to what "eligibility" to vote in a voter's home state means.

51.    Plaintiffs have been unable to discover these facts because no AR has been produced and because only the Federal Defendants have access to information regarding decision-making by Defendants as to these provisions. Additionally, because the Federal Defendants assert that the injunctions prohibiting enforcement of these provisions prevents factual development, deferral of the Court's consideration of these claims is warranted.

52.    This discovery would involve the Federal Defendants producing the required AR and, likely, additional requests for production of documents, interrogatories, and depositions aimed at identifying such decision-making to the extent the ARs produced are insufficient.

53.    This information is discoverable because it is material to the final agency action and ripeness defenses pressed by the Federal Defendants, and the DPPs have a good-faith basis for believing additional facts will supplement their ability to respond.

**B.    Facts regarding state interests underlying § 2(d) and § 3(d) are required for the Court to resolve the merits of their APA claims.**

54.    Additional facts are required to resolve Defendants' motions for summary judgment on Plaintiffs' claims that § 2(d) and § 3(d) are contrary to the Fifth Amendment.

55.    The necessary facts include information, at minimum, concerning the government interest(s) underlying § 2(d)'s requirement that the Federal Defendants assess only public assistance enrollees before providing the Federal Form, and the government interest(s) underlying § 3(d)'s imposition of documentary proof of citizenship and eligibility requirements on overseas voters. The existence of a sufficient state interest to justify the burden imposed by these provisions

is a question of fact. *See Fish v. Schwab*, 957 F.3d 1105, 1136 (10th Cir. 2020); *Soltysik v. Padilla*, 910 F.3d 438, 448 (9th Cir. 2018).

56.    Plaintiffs have been unable to discover these facts because no AR has been produced and because only the Federal Defendants have access to information regarding the government interests underlying the provisions. Additionally, because the Federal Defendants assert that the injunctions prohibiting enforcement of these provisions prevent factual development, deferral of the Court's consideration of these claims may be warranted until those injunctions are either dissolved, if ever.

57.    This discovery would involve the Federal Defendants producing the required AR and, likely, additional requests for production of documents, interrogatories, and depositions aimed at identifying state interests underlying the provisions to the extent the ARs produced are insufficient.

58.    This information is discoverable because it is material to the merits of the DPPs' APA claims against implementation of § 2(d) and § 3(d).

## III.    The Court should not presently grant judgment for the Federal Defendants on Plaintiffs' APA claims challenging §7.

### A.    Facts regarding implementation and planned enforcement of § 7(a) and § 7(b) are required for the Court to determine final agency action.

59.    As explained in the Democratic Party Plaintiffs' Phase II Cross-Motion for Summary Judgment, their *ultra vires* and separation of powers causes of action as to these provisions are ripe for adjudication.

60.    The Democratic Party Plaintiffs also have raised APA-based causes of action against these provisions, alleging that they are contrary to the federal Election Day statutes. *See* Democratic Party Pls. Compl. ¶¶ 164–70. Additional facts are required to resolve Defendants'

motion for summary judgment on Plaintiffs' claims that § 7(a) and § 7(b) violate the APA on the grounds that there is no final agency action and that these claims are unripe for largely the same reasons described above.

61.    The necessary facts include information about any decision-making regarding the decisions by the Attorney General, Justice Department, or EAC about the scope and permissible implementation of the provision, including with regards to the AG's understanding or interpretation of "all necessary action" in § 7(a).

62.    Plaintiffs have been unable to discover these facts because no AR has been produced and because only the Federal Defendants have access to information regarding decision-making by Defendants as to these provisions. Additionally, because the Federal Defendants assert that the injunctions prohibiting enforcement of these provisions prevent factual development, deferral of the Court's consideration of these claims is warranted.

63.    This discovery would involve the Federal Defendants producing the required AR and, likely, additional requests for production of documents, interrogatories, and depositions aimed at identifying such decision-making to the extent the ARs produced are insufficient.

64.    This information is discoverable because it is material to Defendants' final agency action, ripeness, and merits arguments as to the DPPs' challenges to these provisions.


I declare under penalty of perjury that the foregoing is true and correct.

Executed September 17, 2025, in Washington, D.C.

*/s/ Aria C. Branch*_____
Aria C. Branch

*Counsel for the Democratic Party Plaintiffs*