# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>    Defendants. | Civil No. 25-cv-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | Civil No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br>    Defendants. | Civil No. 25-cv-0955 (CKK) |

# **DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Director
Civil Division, Federal Programs Branch

MARIANNE F. KIES
CHRISTIAN DIBBLEE
WINSTON SHI
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*

Defendants submit this brief in response to the Court's November 24, 2025 Minute Order. For the reasons discussed below, the Democratic Party Plaintiffs' (DPPs) Privacy Act challenge to section 2(b)(i) of Executive Order 14,248 is moot. Even if the challenge is not moot, the Court should not issue any equitable relief out of respect for an order issued by another federal court.

## BACKGROUND

Count IX of the DPP Complaint alleges generically that "[m]ultiple parts" of Executive Order 14,248 "grant unauthorized third parties access to systems and databases containing personal information of voters," violating the Privacy Act and therefore the Administrative Procedure Act (APA). *See* No. 1:25-cv-952, ECF No. 1 (Compl.) ¶¶ 195–204 (Count IX).[1] DPPs complain about multiple EO sections in Count IX, including—as relevant here—section 2(b)(i). That provision directs the Department of Homeland Security (DHS) to, "consistent with applicable law, ensure that State and local officials have . . . access to appropriate systems for verifying the citizenship or immigration status" of registered voters. *See* 90 Fed. Reg. 14005, 14006 (Jan. 20, 2025).[2] The Complaint does not indicate the factual bases for Count IX in further detail.

In August, Defendants responded to an interrogatory that asked certain Defendants (including the Department of Homeland Security (DHS)) to describe all actions "taken to update, expand, or otherwise alter [DHS's] Systematic Alien Verification for Entitlements (SAVE) service for the purpose of verifying or providing information about the citizenship, immigration status, or qualifications of individuals registering to vote or who have already registered." ECF No. 177-3 at 12. DHS responded that SAVE "is an online service for registered federal, state, territorial,

---

[1] All other ECF citations herein are to the docket in No. 25-cv-946.

[2] Defendants do not waive their other independent arguments for why Count IX is deficient, such as lack of standing and lack of ripeness. *See, e.g.*, ECF No. 177-1 at 5–6, 17–20, 22–26.

1

tribal, and local government agencies to verify immigration status and U.S. citizenship of applicants seeking benefits, licenses, and other purposes authorized by law, including for voter verification." *Id.* at 13. DHS also listed recent enhancements made to the SAVE verification process. *Id.* Defendant Social Security Administration (SSA) likewise responded that "pursuant to 8 U.S.C. § 1373(a) and a May 15, 2025, Letter Agreement for Information Sharing with DHS," SSA had "allowed DHS to access Numident data for the purpose of verifying individuals' citizenship and immigration status for benefits and licenses." *Id.* at 14.[3]

DPPs' theory of liability under Count IX only became clear at the summary judgment stage when they argued that Defendants' utilization of SAVE and Numident violate the Privacy Act. ECF 196-1 at 41–56. Specifically, DPPs denied that DHS's and SSA's existing systems of record notices (SORNs) allowed the use of SAVE and Numident to verify citizenship for voter eligibility purposes and contended that the changes to SAVE "could have been aired through the Privacy Act's procedures" (i.e., through an updated SORN). *Id.* at 55–56. DPPs' reply reiterated this point, namely that Defendants "did not comply with the [Privacy] Act's notice and comment provisions" when updating SAVE. ECF No. 220 at 29.

On October 31, 2025—the day summary judgment briefing closed—DHS published for comment a modified SORN for SAVE that proposed, among other things, to explicitly "update the purpose of SAVE to include the addition of expanded search functionality for registered SAVE user agencies to verify the U.S. citizenship of U.S. citizens by birth and to clarify use of SAVE for voter verification." 90 Fed. Reg. 48948, 48949 (Oct. 31, 2025). DHS also revised the record source categories for SAVE to include the data from SSA and added as a new routine use the

---

[3] Numident is SSA's master file of individuals who have applied for or obtained a Social Security Number. *See* Systems of Record Notice, 90 Fed. Reg. 10025, 10026 (Feb. 20, 2025).

2


sharing of information with SSA "and other federal, state, tribal, territorial, local, governments and other authorized entities to assist user agencies determine U.S. citizenship and immigration status of an individual." *See id.* at 48954.  That new routine use became effective on December 1, 2025.  *See id.* at 48949.  Days later, SSA proposed a modified SORN for the Master Files of Social Security Number (SSN) Holders and SSN Applications (the system of records that is queried by Numident) that explicitly added a new routine use allowing disclosures "[t]o DHS . . . regarding the citizenship and immigration status, lawful or unlawful, of any individual pursuant to 8 U.S.C. § 1373(a)."  90 Fed. Reg. 50879, 50883 (Nov. 12, 2025).  That new routine use became effective on December 12, 2025.  *See id.* at 50880.

Defendants notified the Court of these factual developments.  *See* ECF No. 222.  The Court directed Defendants to file this supplemental brief by December 19.  Minute Order, Nov. 24, 2025.

## LEGAL STANDARD

The mootness doctrine "ensures compliance with Article III's case and controversy requirement by limiting federal courts to deciding actual, ongoing controversies."  *Guedes v. ATF*, 920 F.3d 1, 12 (D.C. Cir. 2019) (quotation marks omitted).  A dispute is moot when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought."  *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quotation marks and brackets omitted).  Also, "[c]orrective action by an agency is one type of subsequent development that can moot a previously justiciable issue."  *Natl. Res. Def. Council, Inc. v. Nuclear Reg. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982).  These principles can moot individual claims.  *See Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004).

# ARGUMENT

The Privacy Act generally prohibits disclosure of information about an individual from a system of records unless that disclosure meets one of the exceptions set forth in the Act. *See* 5 U.S.C. § 552a(b). One exception allows disclosure for a "routine use," *id.* § 552a(b)(3), meaning a use that is "compatible with the purpose for which [that record] was collected," *id.* § 552a(a)(7). The Privacy Act further requires each agency maintaining a system of records to publish in the Federal Register a systems of record notice (SORN) of any new use and allow at least a thirty-day period for "interested parties" to submit comments. *See id.* § 552a(e)(4)(D), (e)(11).

## I. The Court Should Dismiss Count IX's Challenge to Section 2(b)(i) as Moot.

As revealed in recent summary-judgment briefing, DPPs' theory under Count IX, as to section 2(b)(i), is that DHS's utilization of SSA's Numident data in SAVE violates the Privacy Act because neither DHS nor SSA had, at the time, published SORNs authorizing that use. *See, e.g.*, ECF No. 196-1 at 55 (cataloguing reasons why the existing SORNs purportedly did not authorize Defendants' actions); ECF No. 220 at 29 (arguing that Defendants' actions did not comply with Privacy Act's notice and comment procedures). But whether or not the Privacy Act applies to this information-sharing, *but see* 8 U.S.C. § 1373, or the prior SORNs permitted it, DHS and SSA have now published the SORNs that DPPs said were required by the Privacy Act, and the agencies did so in accordance with the Act's "notice and comment" provisions. ECF 220 at 29.[4] Therefore, Plaintiffs' APA claim to set aside section 2(b)(i) as contrary to law is moot.

---

[4] DPPs' reference to "notice and comment provisions," *e.g.*, ECF No. 220 at 29, refers to the provisions in the Privacy Act that require publication in the Federal Register, 5 U.S.C. § 552a(e)(4), for "any new use or intended use of the information" in a particular system, *id.* § 552a(e)(11).

4

Although Defendants do not concede that these specific updates to these SORNs were required, the Court need not decide that question now, because DHS and SSA have now addressed DPPs' stated concerns through the new SORNs, which explicitly (1) authorize the use of SAVE for verifying citizenship, including of U.S.-born native citizens, (2) identify Numident as an authorized source of information for SAVE, and (3) authorize sharing of Numident data to DHS for purposes of verifying citizenship.  In other words, regardless of whether the agencies' previous actions violated the Privacy Act, those agencies took "[c]orrective action" by publishing the revised SORNs.  *Natl. Res. Def. Council*, 680 F.2d at 814.  The result is that, as to Count IX's challenge to section 2(b)(i), DPPs' alleged Privacy Act violation no longer exists.  By publishing SORNs, the agencies have done everything that DPPs "have asked this Court to force the government to do," *González-Vera v. Townley*, 83 F. Supp. 3d 306, 311 (D.D.C. 2015)—whether or not doing so was required by the Privacy Act.

Because "[a] new system is now in place," in which published SORNs authorize the use of SAVE to verify citizenship and the sharing of SSA data for that purpose, *Nat'l Min. Ass'n v. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001), the Court cannot grant "any effectual relief" to DPPs as to section 2(b)(i), *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (cleaned up).  The challenge in Count IX to section 2(b)(i) is thus moot.  *See Coal. of Airline Pilots Ass'ns*, 370 F.3d at 1191 (reissuing rule with notice and comment mooted claim that rule was promulgated without those procedures); *Collette v. District of Columbia*, 2019 WL 3502927, at *12 (D.D.C. Aug. 1, 2019) (claims asserting procedural violations mooted when those violations had been remedied).

Neither of the two exceptions to mootness apply here: (1) actions "capable of repetition yet evading review" and (2) a defendant's "voluntary cessation of the offending conduct."  *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (quotation marks omitted).

***Capable of Repetition Yet Evading Review.*** The capable-of-repetition-yet-evading-review exception requires that "a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quotation marks omitted). Disputes that are "sharply focused on a unique factual context" "rarely present a reasonable expectation that the same complaining party would be subjected to the same actions again." *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (quotation marks omitted). Here, the current dispute regards a particular use of SAVE and Numident and the propriety of that use under specific Privacy Act SORNs—a unique context. Moreover, the "discrete wrong" alleged by DPPs—specifically, DHS accessing SSA data in SAVE without following the Privacy Act's provisions—will not occur again. *Harvey v. Lynch*, 123 F. Supp. 3d 3, 8 (D.D.C. 2015). That alleged wrong "came to an end" when the revised SORNs became effective, *id.*, and any future use of SAVE for the same purpose will be authorized by a SORN published pursuant to the Privacy Act.

***Voluntary Cessation.*** The voluntary-cessation exception does not apply either. That exception prevents a defendant from manipulating the judicial process by stopping unlawful activity when sued, only to resume it again to avoid judicial review. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Here, DHS and SSA have now published SORNs that directly and explicitly authorize the actions DHS has taken to implement section 2(b)(i). DPPs cannot show that DHS and SSA will retract or rescind SORNs explicitly authorizing the conduct set out in the EO just to continue their prior actions, particularly if (as DPPs have said all along) those SORNs ensure compliance with the Privacy Act. To the extent DPPs suggest otherwise, they would be asking this Court to improperly "impute . . . manipulative conduct to a coordinate branch of government" against the D.C. Circuit's express guidance. *Alaska v. USDA*, 17 F.4th 1224, 1227 (D.C. Cir. 2021) (quotation marks omitted).

6

## II. Vacating Changes to SAVE Risks Exposing Defendants to Conflicting Court Orders in Violation of Equitable Principles.

At a minimum, principles of equity and comity require the Court not to enter any form of equitable relief (such as vacatur or an injunction) against the data sharing between SAVE and SSA. Defendants previously informed the Court of other litigation challenging various aspects of SAVE. *See* ECF No. 223 at 2, n.1. One court has since "approved and incorporated by reference" a settlement agreement requiring DHS to ensure integration between SAVE and SSA's systems to allow searches with full or partial Social Security Numbers. *See, e.g.*, ECF Nos. 30-1 at 4, 31 at 2, *Florida v. DHS*, No. 3:24-cv-509 (N.D. Fla.). State plaintiffs in three other SAVE cases signed that agreement and subsequently dismissed their suits. *See Ohio v. DHS*, No. 3:24-cv-283 (S.D. Ohio); *Indiana v. DHS*, No. 1:25-732 (S.D. Ind.); *Bird v. Noem*, No. 4:24-cv-423 (S.D. Iowa).

An order from this Court vacating, reversing or setting aside the changes to SAVE risks placing the United States "in [the] unenviable position" of facing conflicting orders that impose irreconcilable legal obligations. *NAACP, Jefferson Cnty. Branch v. Brock*, 619 F. Supp. 846, 850 (D.D.C. 1985). The agencies cannot simultaneously integrate SSA data into SAVE—as required by the settlement agreement in *Florida*—while also reversing the actions taken to ensure that integration—as would be required by DPPs' requested relief. "[C]onsiderations of comity require more than the usual measure of restraint" in this scenario when "an injunction sought in one federal proceeding would interfere with another federal proceeding." *Common Cause v. Jud. Ethics Comm'n*, 473 F. Supp. 1251, 1253–54 (D.D.C. 1979). The Court must "defer to the judgment of its sister court[s]" to avoid that interference and to avoid imposing contradictory mandates on DHS and SSA. *Id.* at 1254; *see also Feller v. Brock*, 802 F.3d 722, 727–28 (4th Cir. 1986) ("Prudence dictates that whenever possible, coordinate courts should avoid issuing conflicting orders.").

## CONCLUSION

The Court should dismiss the portion of DPPs' Count IX alleging that implementation of section 2(b)(i) violates the Privacy Act or, at a minimum, not issue any equitable relief for that portion of Count IX.

Dated: December 19, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Director
Civil Division, Federal Programs Branch

/s/ *Marianne F. Kies*
MARIANNE F. KIES
CHRISTIAN DIBBLEE
WINSTON SHI
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*