# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, et al., <br><br> Defendants. | Civil Action No. 25-cv-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Civil Action No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Civil Action No. 25-cv-0955 (CKK) |

## DEMOCRATIC PARTY PLAINTIFFS' SUPPLEMENTAL
## PHASE II BRIEF REGARDING COUNT IX

**INTRODUCTION**

Defendants published two mandatory system of records notices (SORNs) six months *after* implementing their abrupt overhaul of the Systematic Alien Verification for Entitlements System (SAVE). During those six months, Defendants consistently disavowed any legal obligation to comply with the Privacy Act's procedures—a legal position they apparently still maintain today. While Defendants' delayed issuance of notice and comment is a step in the right direction—and essentially an admission that those procedures were always required—it does not moot the Democratic Party Plaintiffs' claim asserting Privacy Act violations. Nor does it obviate the need for declaratory relief as to Defendants' "ongoing policy" to implement Section 2(b)(i) or resolve DPPs' remaining substantive challenges to SAVE's overhaul under the Administrative Procedure Act (APA). Even if the Court deemed DPPs' claim moot—and it should not—it should not countenance Defendants' strategy of violating the Act and belatedly issuing a new SORN to moot the violation.

There is hardly any serious dispute that Defendants disregarded the Privacy Act's notice-and-comment requirements when they failed to (1) notify Congress to permit evaluation of "the probable or potential effect" of their proposal, and (2) "provide an opportunity" for public comment through publication of required notice—before ordering significant changes to SAVE. 5 U.S.C. § 552a(r), (e)(4)(D), (e)(11). Their belated attempts to comply do not moot DPPs' claims; it is well settled that "offering the public notice and the opportunity to comment after the fact is no cure." *E.B. v. U.S. Dep't of State*, 583 F. Supp. 3d 58, 70 (D.D.C. 2022).

DPPs' claims also are not moot because prospective APA relief alone would provide DPPs a remedy. A challenge is not "moot where it seeks declaratory relief as to an ongoing policy." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). The record shows Defendants intend to make further modifications to SAVE and that they have already taken steps to do so. Plaintiffs' request for declaratory relief thus pertains to Defendants' *ongoing* implementation

of changes to SAVE under an unlawful view of the Privacy Act's requirements.

For similar reasons, exceptions to mootness apply: Defendants' voluntary cessation of their challenged practice cannot moot this case unless they show the practice cannot "reasonably be expected to recur," *FBI v. Fikre*, 601 U.S. 234, 241–42 (2024), and the dispute is capable-of-repetition yet evading review, *FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462 (2007). Despite now partially complying with long overdue obligations, Defendants still refuse to acknowledge that the Privacy Act's procedural requirements apply to their unprecedented changes to SAVE—which they admit are still ongoing. *See* ECF No. 196-5 at 11; *see also* Ex. A at 7 n.9, 15. As such, Defendants do not even attempt to argue that they will abide by these statutory requirements in the future. This warrants declaratory relief specifying that Defendants, in carrying out the EO, cannot "establish[] or revise[]" uses of federal data without adhering to the mandates of the Privacy Act. 5 U.S.C. § 552a(e)(4).

Finally, DPPs' substantive APA challenges against SAVE's expansion remain part of this case; DPPs expressly reserved briefing on these challenges for Phase III after production of an administrative record. *See* ECF Nos. 141, 197-1 at 42. The Court should hold that Count IX is not moot and declare that Defendants must comply with the Privacy Act's procedural requirements.

## LEGAL STANDARD

Defendants' "burden of demonstrating mootness is a heavy one." *Daingerfield Island Protective Soc'y v. Lujan*, 920 F.2d 32, 36 (D.C. Cir. 1990) (citation modified). A case becomes moot only when "intervening events make it impossible to grant the prevailing party effective relief." *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citation omitted). "[E]ven the availability of a partial remedy" prevents a case from becoming moot. *Byrd v. EPA*, 174 F.3d 239, 244 (D.C. Cir. 1999) (citation modified). An "interest[]" in "declaratory relief" that goes "to an ongoing policy" defeats mootness. *Crowley Gov't Servs., Inc. v. GSA*, 143 F.4th 518, 531 (D.C. Cir. 2025).

**ARGUMENT**

**I.      Defendants' post-hoc notice-and-comment efforts do not moot the procedural claim.**

Post-hoc compliance with the Privacy Act's notice-and-comment provisions does not cure Defendants' legal violations because it "failed to provide notice or an opportunity to comment *before*" the changes to SAVE "went into effect." *E.B.*, 583 F. Supp. 3d at 69. The Act's strict procedural requirements obligate agencies to take two actions in advance of "establish[ing] or revis[ing]" a system of records to include a "routine use." 5 U.S.C. § 552a(e)(4)(D), (e)(11), (r). *First*, the agency "shall provide adequate *advance notice*" to two congressional committees and the Office of Management and Budget (OMB) "to permit an evaluation of the probable or potential effect of such proposal on the privacy or other rights of individuals." *Id.* § 552a(r) (emphasis added). *Second*, "at least 30 days prior to publication" of a new or revised use, agencies must "publish [a notice] in the Federal Register" and "provide an opportunity for interested persons to submit written data, views, or arguments." *Id.* § 552a(e)(11); *see also* 40 Fed. Reg. 28948, 28966 (July 9, 1975) (explaining a revised public notice "must be published before a 'routine use' is put into effect; i.e., before a record is disclosed for such a use," agencies "must review" comments, and should explain "any changes made . . . as a result of the public comment"); OMB Circular A-108 (Dec. 12, 2016), at 12–13.

Defendants violated these provisions by implementing significant changes to SAVE several months before they issued notices and solicited comments. It is well established that, in the analogous context of the APA, "[p]ermitting the submission of views after the effective date is no substitute for the right of interested persons to make their views known to the agency in time to influence" its decision. *N.J. Dep't of Env't Prot. v. EPA*, 626 F.2d 1038, 1049 (D.C. Cir. 1980) (citation omitted).[1]

_____

[1] The Privacy Act's notice-and-comment language borrows heavily from the APA. *Compare* 5 U.S.C § 553(c), *with id.* § 552a(e)(11). While § 552a(e)(11) was "designed to supplant the informal rule-making provisions" of the APA, "the accommodation of the public comments in the judicial review

3

Under that rule, Defendants' belated notices did not "magically transform" their unlawful expansion of SAVE into lawful action. *Nat'l Treasury Emps. Union v. Newman*, 768 F. Supp. 8, 12 (D.D.C. 1991) (rejecting mootness argument where government issued "post-hoc publication and opportunity for comment"). "Congress intended that there be *meaningful* public notice" in the Privacy Act and "that the routine use exception 'should serve as a caution to agencies to think out *in advance* [its] uses'" of information. *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 548 (3d Cir. 1989) (emphasis added) (quoting congressional record). Permitting Defendants to flip the order of these requirements—act first, think later—would make the notice-and-comment requirements "virtually unenforceable." *E.B.*, 583 F. Supp. 3d at 68 (quoting *N.J. Dep't of Env't Prot.*, 626 F.2d at 1049).

Defendants' cited cases do not conclude otherwise. In *National Resources Defense Council, Inc. v. NRC*, the agency mooted a notice-and-comment deficiency only by "reconsider[ing]" a decision after the Court stayed it, evidenced by the agency's written response to public comments when it "readopted" the rule months later. 680 F.2d 810, 813 (D.C. Cir. 1982); 47 Fed. Reg. 4490 (Feb. 1, 1982). But here, Defendants did not put their expansion of SAVE on hold pending comments from the public and Congress, but "rather left" their unlawful conduct "in place and merely accepted comments" on a decision they "already adopted." *Spirit of Sage Council v. Norton*, 294 F. Supp. 2d 67, 90 (D.D.C. 2003) (rejecting similar argument), *appeal dismissed and vacated in part on other grounds*, 411 F.3d 225 (D.C. Cir. 2005). And far from assuring this Court that it has been "sufficiently open-minded," *N.J. Dep't of Env't Prot.*, 626 F.2d at 1050, to comments, Defendants *still* refuse to admit that they were required to solicit comments *at all*, Defs.' Suppl. Br. 5, ECF No. 226 ("Br.").[2]

---

of the rule-making exercise was intended wherever practicable." 40 Fed. Reg. at 28948; *see also* 5 U.S.C. § 552a(v) (requiring OMB to "develop guidelines and regulations").

[2] The other cases Defendants cite are even further afield. *See* Br. 3–5 (citing *Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1191 (D.C. Cir. 2004) (challenged rules made "devoid of any legal

The proper remedy in this situation would be to require DHS and SSA to begin anew the Privacy Act's notice-and-comment procedures while their changes to SAVE are put on hold. At a minimum, they should be required to consider existing public and congressional feedback and affirm that "no further modifications are necessary." OMB Circular A-108 at 12; *see Allied–Signal, Inc. v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (noting the relevant considerations include "the seriousness" of defendants' "deficiencies" and "the disruptive consequences of an interim change that may itself be changed" (citation omitted)). It is well established that "deficient notice" is itself a serious deficiency, which "almost always requires vacatur." *E.B.*, 583 F. Supp. 3d at 70 (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)). It is especially serious here: Congress created a narrow "routine use" exception in the Privacy Act for the sharing of personal data without first obtaining "prior written consent" on an individual basis, but it required "*meaningful*" notice for that use to fall within the exception. *Britt*, 886 F.2d at 548 (emphasis added); 5 U.S.C. § 552a(b). Defendants' decision to bypass those requirements—providing *no* notice or opportunity to comment before pooling protected data of millions of Americans—is a "serious" one. And "Defendants have presented no evidence suggesting that the egg has been scrambled so that there is no apparent way to restore the status quo ante" while they either start anew the notice-and-comment procedures or meaningfully consider existing comments. *E.B.*, 583 F. Supp. at 70 (citation modified).

II.    **Plaintiffs' request for declaratory relief is not moot.**

Even assuming Defendants corrected the procedural Privacy Act violations at issue in Phase II, Plaintiffs' request for declaratory relief concerning Defendants' failures is not moot because they seek declaratory relief "not only to a specific agency action," but as to an "ongoing policy" too.

---

effect"); *Nat'l Min. Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001) ("new rules add[ed] other procedural protections" but "old set of rules" were still "the subject of th[e] lawsuit"); *Collette v. District of Columbia*, 2019 WL 3502927, at *12 (D.D.C. Aug. 1, 2019) (failing to discuss notice and comment at all); *González-Vera v. Townley*, 83 F. Supp. 3d 306, 311 (D.D.C. 2015) (same).

*Crowley*, 143 F.4th at 530 (citation omitted); *see also* Compl. ¶¶ 195–204; *id.* at 68–69 (Prayer for Relief seeking declaratory judgment); *Del Monte Fresh Produce Co.*, 570 F.3d at 321 (noting a "plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy").

The record shows that Defendants are "committed" to implementing additional changes to SAVE and other databases to carry out the EO. Rule 56(d) Declaration at 11, ECF No. 196-5. Defendants themselves describe their policy as "ongoing." *Id.* Just last December, DHS supplemented interrogatory responses to disclose that on December 6, it "established an application programming interface connection between SAVE" and a State Department database "to enable automated individual queries of U.S. passport records" (manual searches were previously required). Ex. A at 7 n.9, 15. Defendants "do[] not contend [they] will cease" following their view of their notice-and-comment obligations "*going forward.*" *EB5 Holdings, Inc. v. Jaddou*, 717 F. Supp. 3d 86, 101 (D.D.C. 2024). Plaintiffs' request for declaratory relief under the APA is "not moot." *Id.*

## III.    Exceptions to mootness apply.

Even if the claim were moot—and it is not—Defendants could not avoid judgment on DPPs' Privacy Act claim because they have failed to satisfy the "formidable burden" of showing the violation cannot "reasonably be expected to recur." *Fikre*, 601 U.S. at 241 (holding "defendant may [not] 'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued" (first quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); and then *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Though Federal Defendants claim to have corrected their violations, the same requirements must be satisfied "any time" similar changes are made to SAVE and other systems. *LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 165 (D.D.C. 2025). Defendants have at no point suggested they will abide by the requirements for forthcoming changes, which they have not ruled out. ECF No. 196-5 at 11. Nothing in Section 2(b)(i) imposes a limit to which databases DHS is to "make available"

to state and local officials, and Defendants are still in the process of modifying SAVE's reach. Ex. A at 15. Dismissing DPPs' claim as moot under these circumstances would encourage Defendants to "repeat 'this cycle' as necessary until [they] achieve[] all of [their] allegedly 'unlawful ends'" on the timeline they prefer—while shirking duties imposed by the Act. *Fikre*, 601 U.S. at 242 (quoting *Already*, 568 U.S. at 91). In other words, it would encourage precisely the kind of unchecked use of federal data Congress proscribed, with no recourse for DPPs or others injured by Defendants' actions.

Defendants argue DPPs "cannot show that DHS and SSA will retract or rescind SORNs . . . just to continue their prior actions," Br. 6, but as explained, it is not DPPs' burden to "show" the challenged practice "will" recur, *Friends of the Earth*, 528 U.S. at 189–90. Defendants are also wrong that Plaintiffs need show that Defendants will "retract" the new SORNs, Br. 6, such that the "precise legal wrong" returns, *Jackson v. U.S. Parole Comm'n*, 806 F. Supp. 2d 201, 208 (D.D.C. 2011). Instead, dismissal is appropriate only if there is *no reasonable expectation* the "*practice*"—here, failing to comply with the Privacy Act's procedural requirements in implementing the EO—will recur in *similar* circumstances. *Id.* at 207–08 (emphasis added) (rejecting argument that exception did not apply because "precise" violation would not return); *see Del Monte*, 570 F.3d at 324 (rejecting view that "precise historical facts that spawned the plaintiff's claims [must be] likely to recur").[3]

The same result holds under the capable-of-repetition yet evading review exception. *See* Br. 6; *Wis. Right To Life*, 551 U.S. at 462 ("[E]xception applies [if] (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action."). Here, any time forthcoming revisions to SAVE become subject to the same APA challenge, Defendants could simply issue belated SORNs and claim mootness after the 30-day comment period runs—avoiding the

---

[3] *Alaska v. USDA* does not support Defendants' position because there was no prospect the rescinded regulation would be reinstated. *See* Br. 6 (citing 17 F.4th 1224 (D.C. Cir. 2021)).

required *advance* scrutiny. *See Del Monte*, 570 F.3d at 322 ("[A]gency actions of less than two years' duration cannot be 'fully litigated' prior to cessation or expiration"). And, for the reasons just explained, there is a "reasonable expectation" the procedural violations will recur.

## IV.    Plaintiffs' remaining substantive claims are not moot.

Even if DPPs' procedural claims were moot and no exception applied, Defendants' assertion that Count IX is *entirely* moot as to Section 2(b)(i) disregards the remaining substantive claims against implementation of the EO. *See* Compl. ¶ 196; *id.* ¶ 202 (alleging EO directs agencies to "grant unauthorized" access to databases and files); *id.* ¶ 204 (alleging there is a "risk of . . . improper removal from voter rolls by state officials"); *id.* (alleging that "matching information contained in federal databases to voter registration data is an extremely error-prone endeavor").

DPPs moved for partial summary judgment at Phase II as to the SAVE overhaul only as to procedural violations because, as Defendants concede, no additional facts were necessary to resolve the relevant issues. *See* Br. 2. The SAVE overhaul remains subject to *substantive* review under the APA. DPPs reserve the right to seek leave to supplement or amend their Complaint to clarify the remaining APA claims, if any, following resolution of Phase II, if necessary, or at the Court's request.

Insofar as Defendants assert the SORNs resolve these substantive claims, the argument goes nowhere: To address it, "the Court would need to find" that SAVE's expansion "satisf[ies] the [Privacy Act's substantive requirements] and the APA. This is not a mootness argument but . . . an invitation to rule on the merits." *Jackson*, 806 F. Supp. 2d at 208 (citation omitted).[4]

## CONCLUSION

The Court should grant partial judgment for Plaintiffs on Count IX, as previously requested.

---

[4] It makes no difference that Defendants might have relied on the SAVE overhaul to settle other litigation. *See* Br. 7. The cited consent judgments do not consider nor "approve[]" of the overhaul's compliance with the Act, *id.*, and Defendants certainly cannot settle their way out of statutory mandates.

Dated: January 14, 2026

Respectfully submitted,

*/s/ Aria C. Branch*
**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
Aria C. Branch (DC 1014541)
Lalitha D. Madduri (DC 1659412)
Christopher D. Dodge (DC 90011587)
Jacob D. Shelly (DC 90010127)
Harleen K. Gambhir (DC 1781869)
James J. Pinchak (DC 90034756)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652

Tyler L. Bishop (DC 90014111)
1700 Seventh Ave. Suite 2100
Seattle, WA 98101
T: (206) 656-0177

*Counsel for the Democratic Party Plaintiffs*