# Exhibit A

Civil Action No. 25-cv-0952 (CKK)
(Lead Case: No. 25-cv-00946 (CKK))

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, <br><br> Defendants. | Civil No. 25-cv-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br> Defendants. | Civil No. 25-cv-0955 (CKK) |

**DEFENDANTS' FOURTH SUPPLEMENTAL RESPONSES AND OBJECTIONS TO "DEMOCRATIC PARTY AND LULAC PLAINTIFFS' FURTHER REVISED FIRST SET OF INTERROGATORIES"**

1

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, D.D.C. Local Civil Rule 26.2, the Court's June 20, 2025, Scheduling Order (ECF 141), and the Court's August 1, 2025, Order on Plaintiffs' Motions to Compel and Defendants' Motion for Protective Order (ECF 154), Defendants[1] hereby provide their fourth supplemental responses to "Democratic Party and LULAC Plaintiffs' Further Revised First Set of Interrogatories" (hereafter, "Interrogatories"),[2] as follows.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     **Definition of "Communication."** Defendants object to the definition of "Communication" because it references "ephemeral messaging applications," which Defendants do not understand. Defendants interpret "Communication" as it is commonly understood and consistent with the Federal Rules and caselaw, i.e., any transfer of information whether oral, written, electronic, or other.

2.     **Definition of "You" and "your."** Defendants object to the definition of "You" and "your" to the extent that Plaintiffs purport to require a Defendant not referenced in an Executive Order provision to nonetheless respond to one or more Interrogatories concerning the provision. *See* Definition 7 ("A complete response requires an answer from each Defendant acting to implement the referenced provision, *even if not expressly named in the interrogatory or Executive Order*." (emphasis added)). If, on the face of the Executive Order, a Defendant

---

[1] Unless otherwise expressly stated herein, "Defendants" refers to the seven entities to whom these Interrogatories are directed, namely: (1) the U.S. Department of Justice ("DOJ"), (2) the U.S. Election Assistance Commission ("EAC"), (3) the U.S. Department of Homeland Security ("DHS"), (4) the U.S. DOGE Service ("USDS"), (5) the U.S. Social Security Administration ("SSA"), (6) the U.S. Department of State ("DOS"), and (7) the U.S. Department of Defense ("DoD"). *See* Interrogatories at 2 (Preamble).

[2] The "Democratic Party" Plaintiffs are the Plaintiffs in Case No. 25-cv-952. The "LULAC" Plaintiffs are the Plaintiffs in Case No. 25-cv-946. ECF 141 at 2 n.1; *see also* Interrogatories at 2 (Preamble).

has no role in implementing the provision at issue in a given Interrogatory, an Interrogatory requiring an answer from that Defendant would not seek relevant information proportional to the needs of the case.

3.      **Instruction 3.** Defendants object to Instruction 3 because it does not accurately characterize Federal Rule of Civil Procedure 33(b)(4). Thereunder, an objection not stated is waived *unless* the court, for good cause, excuses the omission.

4.      **Instruction 5.** Defendants object to Instruction 5 because it is Plaintiffs' burden to propound discovery that is both relevant and proportionate to the needs of the case, considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* ECF 154. Defendants will make specific objections consistent with and as required by Federal Rule of Civil Procedure 33(b)(4).

5.      **Instruction 8.** Defendants object to Instruction 8 to the extent that it purports to require Defendants to provide personal contact information, including cell phone numbers and email addresses, of government employees. If identities of government employees are responsive to an Interrogatory, such individuals should be contacted, if at all, through defense counsel. Defendants will, therefore, provide only their names, titles, and assigned office(s) in answering the Interrogatories, to the extent disclosure of such information is otherwise consistent with Rule 26.

6.      **Instruction 9.** Defendants object to Instruction 9 because Plaintiffs provide no support that a privilege log is required for an *interrogatory response* that implicates privileged information, rather than a document that contains privileged information. Even if a privilege log for interrogatory responses were appropriate, the instruction is still improper because it is

3

not consistent with Federal Rule of Civil Procedure 26(b)(5)—specifically, the Instruction to "state each fact on which the claimed privilege is based." Any privilege log that Defendants would produce would be consistent with the requirements of Rule 26(b)(5). Defendants will not prepare a privilege log for their interrogatory responses.

7.     **Instructions 10 and 12.** Defendants object to Instructions 10 and 12 because they expressly ask Defendants to speculate about events that have not transpired and that are months if not years into the future. Instr. 10 ("If you *expect* to obtain further information or expect the accuracy of a response given to change between the time responses are served *and the time of trial*, you should state this fact in each response." (emphases added)); Instr. 12 ("For each interrogatory where you describe or identify any action or effort you have taken, *or plan to take*, please identify which provision of the Executive Order you took (*or will take*) that action or effort in response to." (emphases added)). Defendants are not required to, and will not, so speculate. Moreover, the purpose of these Interrogatories is to determine the ripeness and justiciability of certain of Plaintiffs' claims today. ECF 141 at 2; ECF 154 at 3–4. (Indeed, Plaintiffs' own Instructions define the relevant timeframe as January 20, 2025, to present; *see* Instruction 11.) Defendants will comply with Federal Rule of Civil Procedure 26(e).

8.     **Incorporation.** Each of these Objections above is incorporated into each response provided below, as if fully set forth therein.

### DEFENDANTS' SPECIFIC OBJECTIONS AND RESPONSES TO FURTHER REVISED FIRST SET OF INTERROGATORIES

**Interrogatory No. 1 [EO § 2(b)(i)-(ii)]:** Describe all systems and databases maintained by or accessible to you (including Defendants DHS and DOS) that have been used to verify, investigate, or assess the citizenship, immigration status, or qualifications of individuals registering to vote or individuals who have already registered to vote. Your answer should include, but not be limited to, descriptions of (i) the categories of data contained within the database or system, (ii) the groups of individuals whose information is contained within, or accessible through, the database or system, and (iii) all System of Records Notices, agreements, policies, and procedures related to use of the database or system.

**RESPONSE TO ROG 1:** Defendants object to Interrogatory 1 to the extent that it purports to require Defendants with no involvement in EO Sections 2(b)(i)–(ii)—i.e., Defendants other than DHS and DOS—to nonetheless answer the Interrogatory.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 2(b)(i) states that DHS "shall, consistent with applicable law, ensure that State and local officials have, without the requirement of the payment of a fee, access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered." Under Section 2(b)(ii), DOS "shall take all lawful and appropriate action to make available information from relevant databases to State and local election officials engaged in verifying the citizenship of individuals registering to vote or who are already registered." Instead of narrowly seeking actions that DHS and DOS have taken *to provide State and local officials access* to appropriate systems and information, as would be appropriate to resolve the justiciability of Plaintiffs' claims, this Interrogatory asks for DHS and DOS to simply describe "all systems and databases maintained by or accessible to" the Agencies that "have been used" to assess the citizenship, immigration status, or qualifications of voters. The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about systems and databases that they have used to implement EO Sections 2(b)(i)–(ii) since March 25, 2025.

Defendants further object to this Interrogatory because its request for "all" "agreements, policies, and procedures related to use of the database or system" is overly broad.

Subject to these objections, Defendants answer as follows, following a reasonable,

diligent inquiry:

**DHS (FOURTH SUPPLEMENTAL / SECOND SUPPLEMENTAL FOR THIS RESPONSE):** Databases and systems that "have been used" by DHS to implement EO Sections 2(b)(i)–(ii) since March 25, 2025 are:

1.    Systematic Alien Verification for Entitlements ("SAVE"),[3]

2.    The Automated Targeting System/Unified Passenger ("ATS/UPAX"),[4]

3.    Person Centric Query Service ("PCQS"),[5]

4.    ENFORCE Alien Removal Module ("EARM"),[6]

5.    TECS,[7]

6.    Numident,[8] and

---

[3] *See* DHS/USCIS-004 SAVE Program System of Records, October 31, 2025, 90 FR 48948, *as amended*; *see also* SAVE Privacy Impact Assessments, *available at* https://www.dhs.gov/publication/systematic-alien-verification-entitlements-save-program (last updated Mar. 6, 2025).

[4] *See* DHS/CBP-006 Automated Targeting System, May 22, 2012, 77 FR 30297; *see also* CBP ATS Privacy Impact Assessments, *available at* https://www.dhs.gov/publication/automated-targeting-system-ats-update (last updated Dec. 11, 2024).

[5] *See* USCIS PCQS Privacy Impact Assessments, *available at* https://www.dhs.gov/publication/dhsuscispia-010-person-centric-query-service (last updated Mar. 31, 2023).

[6] The following ICE Privacy Impact Assessments cover EARM: https://www.dhs.gov/publication/dhsicepia-015h-enforcement-integrated-database-eid-criminal-history-information-sharing (last updated Mar. 31, 2023).

[7] *See* DHS/CBP-011 U.S. Customs and Border Protection TECS, Dec. 19, 2008, 73 FR 77778; *see also* CBP TEC Privacy Impact Assessment, *available at* https://www.dhs.gov/publication/dhscbppia-021-tecs-system-platform (last updated Apr. 10, 2025).

[8] Master Files of Social Security Number (SSN) Holders and SSN Applications, 60-0058, 90 FR 10025.

7.    Consolidated Consular Database ("CCD").[9]

The sources identified in Footnotes 3 through 9, *supra*, provide detailed descriptions of these databases and systems, including the categories of data contained and the groups of individuals whose information is contained. DHS privacy policies and procedures are found at: https://www.dhs.gov/privacy-policy-guidance (last updated Sept. 26, 2024). Descriptions of any policies and procedures related to DHS's use(s) of databases or systems would be found in those documents. Additionally, in general, DHS privacy policies and procedures are found at the same location (https://www.dhs.gov/privacy-policy-guidance).

**DOS:** Databases and systems that "have been used" by DOS to implement EO § 2(b)(i)–(ii) since March 25, 2025 are: None.

**SSA:** Databases and systems that "have been used" by SSA to implement EO Sections 2(b)(i)–(ii) since March 25, 2025 are: Numident. Namely, pursuant to 8 U.S.C. § 1373(a) and a May 15, 2025, Letter Agreement for Information Sharing with DHS, and subject to the requirements of the Privacy Act of 1974, 5 U.S.C. § 552a; the Federal Information Security Management Act of 2014 (Pub. L. 113-283); 20 C.F.R. § 401.120; and other laws, rules, regulations and applicable agency policies, SSA has allowed DHS to access to query Numident data for the purpose of verifying individuals' citizenship and immigration status for voter

---

[9] *See* Privacy Act; System of Records: Passport Records, State-26**,** 80 FR 15653, https://www.federalregister.gov/documents/2015/03/24/2015-06691/privacy-act-system-of-records-passport-records-state-26; *see also* Privacy Impact Assessment, CCD, *available at* https://www.state.gov/wp-content/uploads/2025/02/CCD-CA-PIA-Public-facing-PIA.pdf (last updated Nov. 2022). The CCD SORN was listed as a source system in the previous SAVE SORN, 85 FR 31798 (May 27, 2020), but DHS is listing it separately here because the use by DHS has expanded to more effectively identify acquired U.S. citizenship for voter verification. On December 5, 2025, DHS established an application programming interface connection between SAVE and CCD/ACRQ to enable automated individual queries of U.S. passport records to verify U.S. citizenship. Previously, utilizing U.S. passport records through CCD/ACRQ to verify U.S. citizenship required manual searches.

verification and other authorized inquiries. For a detailed description of the Numident,
including the categories of data contained and the groups of individuals whose information is
contained, see Master Files of Social Security Number (SSN) Holders and SSN Applications,
60-0058, 90 FR 10025.

**Remaining Defendants (DoD, DOJ, EAC, USDS):** None.

**Interrogatory No. 2 [EO § 2(b)(i)-(ii)]:** Describe the data and other information that has been
shared between you (including DHS and DOS) and state or local officials to carry out EO
§ 2(b), including to verify, investigate, or assess the citizenship, immigration status, or
qualifications of individuals registering to vote or who have already registered. Your answer
should include the means and dates of sharing such information and the identity of all
individuals who have received, will receive, or have requested to receive such data or
information.

**RESPONSE TO ROG 2:** Defendants object to Interrogatory 2 to the extent that it purports to
require Defendants with no involvement in EO Sections 2(b)(i)–(ii)—i.e., Defendants other
than DHS and DOS—to nonetheless answer the Interrogatory.

Defendants further object to this Interrogatory because it does not seek discovery
authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly
on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order
14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 2(b)(i)
states that "the Secretary of Homeland Security shall, consistent with applicable law, ensure
that State and local officials have, without the requirement of the payment of a fee, access to
appropriate systems for verifying the citizenship or immigration status of individuals
registering to vote or who are already registered." Under Section 2(b)(ii), "the Secretary of
State shall take all lawful and appropriate action to make available information from relevant
databases to State and local election officials engaged in verifying the citizenship of individuals
registering to vote or who are already registered." Instead of narrowly seeking actions that DHS
and DOS have taken *to provide State and local officials access* to appropriate systems and

8

information, as would be appropriate to resolve the justiciability of Plaintiffs' claims, this Interrogatory asks for DHS and DOS to describe the *content* of any data and information shared to verify, investigate, or assess the citizenship, immigration status, or qualifications of individuals registering to vote or who have already registered. Defendants further object to this Interrogatory because its request for "the means and dates of sharing such information and the identity of all individuals who have received, will receive, or have requested to receive such data or information" is overly broad and unduly burdensome with respect to DHS, for the reasons set forth in DHS's answer below.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**DHS (FOURTH SUPPLEMENTAL / SECOND SUPPLEMENTAL FOR THIS RESPONSE):** Since 1987, and for a period before that as a pilot program, U.S. Citizenship & Immigration Services ("USCIS"), a component of DHS and USCIS's predecessor the Immigration and Naturalization Service, have administered SAVE, which is an online service for registered federal, state, territorial, tribal, and local government agencies to verify immigration status and U.S. citizenship of applicants seeking benefits, licenses, and other purposes authorized by law, including for voter verification. *See* https://www.uscis.gov/save; DHS/USCIS-004 SAVE Program System of Records, May 27, 2020, 85 FR 31798, *as amended* (now 90 FR 48948 (October 31, 2025)). State and local agencies that have registered to use SAVE for voter verification (including verification of voter registration and/or voter list maintenance) may, at any time, create cases for verification of U.S. citizenship or immigration status.[10] Agencies from the following States currently have an active SAVE Memorandum of

---

[10] A sample agreement is here: https://www.uscis.gov/sites/default/files/document/legal-docs/save-non-fed-moa-sample.pdf.

Agreement ("MOA") to verify U.S. citizenship or immigration status for voter registration and/or list maintenance: Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Michigan, Mississippi, Missouri, Montana, North Carolina, North Dakota, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, and Wyoming, and can submit or create SAVE cases for this purpose at any time. Agencies from the following States currently have a pending SAVE registration request to verify U.S. citizenship or immigration status for voter registration or list maintenance under review: Nebraska, Nevada, Oklahoma, and South Dakota. Data collection and use is described in the SAVE System of Record Notice ("SORN") at 85 FR 31798, now 90 FR 48948. Since March 2025, various USCIS and state and local agency users and administrators from 22 states (Alabama, Arkansas, Arizona, Colorado, Florida, Georgia, Iowa, Idaho, Indiana, Kansas, Louisiana, Michigan, Mississippi, Missouri, North Carolina, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, and Wyoming) have created approximately 49.4 million voter verification cases using SAVE.

In addition, as of April 2025, DHS's Immigration and Customs Enforcement ("ICE") investigative arm, Homeland Security Investigations ("HSI"), provides limited personal identifiable information to state and local officials to obtain records relating to aliens who may have registered to vote and/or may have voted in federal elections—to include but not limited to State and County Records Boards and State Board of Elections—to determine possible fraud and/or criminal activity. Information provided to the States was conducted for investigative purposes on a case-by-case basis.

**DOS:** None.

**Remaining Defendants (DoD, DOJ, EAC, SSA, USDS):** None.

**Interrogatory No. 3 [EO § 2(b)(iii)]:** Describe any data and other information concerning the citizenship, immigration status, or qualifications of individuals registering to vote or who have already registered to vote to which Defendant DOGE or any individual associated with DOGE

has been granted access by you (including Defendant DHS). Your answer should include how such data was made available to DOGE and when.

**RESPONSE TO ROG 3:** Defendants object to Interrogatory 3 to the extent that it purports to require Defendants with no involvement in EO Section 2(b)(iii)—i.e., Defendants other than DHS and USDS—to nonetheless answer the Interrogatory. Defendants further object because the phrase "any individual associated with DOGE" is vague, ambiguous, and overbroad.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 2(b)(iii) states that DHS, "in coordination with the DOGE Administrator," shall "review each State's publicly available voter registration list and available records concerning voter list maintenance . . . for consistency with Federal requirements." Instead of narrowly seeking actions that DHS and USDS have taken *to review* records concerning voter list maintenance, as would be appropriate to resolve the justiciability of Plaintiffs' claims, this Interrogatory asks for DHS and DOS to describe the *content* of any data or information to which DHS has granted USDS access concerning the citizenship, immigration status, or qualifications of individuals registering to vote or who have already registered to vote. The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information to which Defendants have granted USDS access to implement EO Section 2(b)(iii) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**DHS:** On April 3, 2025, USCIS provided access to USCIS systems to members of DHS's DOGE Team, including access to SAVE. For clarity, DHS's "DOGE Team" constituted

DHS employees and detailees to DHS. Data use is described in the SAVE System of Record Notice ("SORN") at 85 FR 31798.

In addition, in April 2025, DHS granted its DOGE Team access to a stand-alone HSI SharePoint site. The SharePoint site was created specifically to facilitate large file transfers of USCIS data by DHS's DOGE Team to HSI rather than relying on email or other file transfer methods. The HSI SharePoint site contains information pertaining to potential aliens who may have registered to vote and/or may have voted in federal elections, in addition to information developed from the USCIS data. This initiative is ongoing; therefore this SharePoint site is still active.

**USDS:** USDS has not been granted access by any other Defendant to data or information concerning the citizenship, immigration status, or qualifications of voters to implement EO Section 2(b)(iii). By way of further response, and although not directly responsive to this Interrogatory, USDS further answers that USDS employees are sometimes detailed or onboarded to other federal agencies, but in that capacity, they are acting as agency employees subject to agency policies and agency supervision, and any responsive information about their activities is in the possession of the agencies by which they are employed.

**SSA:** None. By way of further response, and although not directly responsive to this Interrogatory, SSA answers that, as stated in response to Interrogatory No. 1 *supra*, pursuant to 8 U.S.C. § 1373(a) and a May 15, 2025, Letter Agreement for Information Sharing with DHS, and subject to the requirements of the Privacy Act of 1974, 5 U.S.C. § 552a; the Federal Information Security Management Act of 2014 (Pub. L. 113-283); 20 C.F.R. § 401.120; and other laws, rules, regulations and applicable agency policies, SSA has allowed DHS to access Numident data for the purpose of verifying individuals' citizenship and immigration status for benefits and licenses.

**Remaining Defendants (DOS, DoD, DOJ, EAC):** None.

**Interrogatory No. 4 [EO §§ 2(b)(i), (iii); 3(a)]:** Describe all actions you (including Defendants DHS, DOGE, and SSA) have taken to update, expand, or otherwise alter the Systematic Alien Verification for Entitlements (SAVE) service for the purpose of verifying or providing information about the citizenship, immigration status, or qualifications of individuals registering to vote or who have already registered. Your answer should include the date of such actions and the individuals who carried out such actions.

**RESPONSE TO ROG 4:** Defendants object to Interrogatory 4 to the extent that it purports to require Defendants with no involvement in EO Sections 2(b)(i), 2(b)(iii), and 3(a)—i.e., Defendants other than DHS, USDS, and SSA—to nonetheless answer the Interrogatory.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 2(b)(i) states that "the Secretary of Homeland Security shall, consistent with applicable law, ensure that State and local officials have, without the requirement of the payment of a fee, access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered." EO Section 2(b)(iii) states that DHS, "in coordination with the DOGE Administrator," shall "review each State's publicly available voter registration list and available records concerning voter list maintenance . . . for consistency with Federal requirements." Finally, Section 3(a) provides that SSA "shall take all appropriate action to make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information to all State and local election officials engaged in verifying the eligibility of individuals registering to vote or who are already registered[.]." The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about any updates Defendants have made to the SAVE system to implement EO Sections 2(b)(i), (iii),

and 3(a) since March 25, 2025.

Subject to this objection, Defendants answer as follows, following a reasonable, diligent inquiry:

**DHS (FOURTH SUPPLEMENTAL / FIRST SUPPLEMENTAL FOR THIS RESPONSE):** Since 1987, and for a period before that as a pilot program, USCIS, a component of DHS and USCIS's predecessor the Immigration and Naturalization Service, have administered SAVE, which is an online service for registered federal, state, territorial, tribal, and local government agencies to verify immigration status and U.S. citizenship of applicants seeking benefits, licenses, and other purposes authorized by law, including for voter verification. *See* https://www.uscis.gov/save. USCIS recently implemented enhancements to the SAVE verification process, as follows:

1. On April 15, 2025, USCIS eliminated fees for State and local government users (effective April 1, 2025).

2. On May 1, 2025, USCIS implemented a feature that allows user agencies to submit bulk inquiries by uploaded CSV-delimited files.

3. On May 1, 2025, USCIS implemented a feature increasing the user agency's ability to audit, view, and download case information.

4. On May 16, 2025, USCIS implemented searches based on a first and last name, date of birth, and nine-digit social security number.

5. On July 11, 2025, USCIS implemented an "error file" download feature, which enables user agencies to identify errors and resubmit queries.

6. On July 11, 2025, USCIS implemented a "file history retrieval dashboard," which helps improve file retrieval for bulk uploads.

7. On July 11, 2025, USCIS implemented bulk escalation capability, allowing states to

escalate numerous cases to secondary review at the same time.

8. On August 15, 2025, USCIS implemented searches based on first and last name, date of birth, and partial (last four digits) social security number.

9. On August 15, 2025, USCIS implemented automatic escalation to additional (manual) verification for all voter verification queries that resulted in a status other than U.S. Citizen. This capability results in all voter verification queries returning an initial verification status other than U.S. Citizen undergoing manual review by an Immigration Verification Status Officer prior to a final response being returned to the user agency.

10. On August 28, 2025, USCIS established processes to utilize Department of State systems to verify U.S. citizenship using U.S. passport records during additional (manual) verification.

11. On December 5, 2025, USCIS established a connection between SAVE and the Department of State systems to verify U.S. Citizenship using U.S. passport records during initial (automated) verification.

**SSA (FOURTH SUPPLEMENTAL / FIRST SUPPLEMENTAL FOR THIS RESPONSE):** None. By way of further response, and although not directly responsive to this Interrogatory, SSA answers that, as stated in response to Interrogatory No. 1 *supra*, pursuant to 8 U.S.C. § 1373(a) and a May 15, 2025, Letter Agreement for Information Sharing with DHS (and subsequent amendment to this agreement), and subject to the requirements of the Privacy Act of 1974, 5 U.S.C. § 552a; the Federal Information Security Management Act of 2014 (Pub. L. 113-283); 20 C.F.R. § 401.120; and other laws, rules, regulations and applicable agency policies, SSA has allowed DHS to access Numident data for the purpose of verifying individuals' citizenship and immigration status for benefits and licenses.

**Remaining Defendants (DOS, DoD, DOJ, EAC, USDS):** None.

**Interrogatory No. 5 [EO § 3(a)]:** Describe the systems and federal databases—including but not limited to the Social Security Number Verification Service and Death Master File—that have been made available by you (including Defendant SSA) to state or local election officials engaged in verifying, investigating, or assessing the eligibility of individuals who are registering or who have already registered to vote. Your answer should include but not be limited to descriptions of (i) when and by what means such systems and databases were made available to any state and local officials, (ii) any data or other information that has been shared, is being shared, or will be shared, and (iii) all System of Record Notices, agreements, policies, and procedures related to the use of any such systems and databases.

**RESPONSE TO ROG 5:** Defendants object to Interrogatory 5 to the extent that it purports to require Defendants with no involvement in EO Section 3(a)—i.e., Defendants other than SSA—to nonetheless answer the Interrogatory.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, Section 3(a) provides that SSA "shall take all appropriate action to make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information to all State and local election officials engaged in verifying the eligibility of individuals registering to vote or who are already registered[.]" The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about any database and systems that have been made available to State and local officials to implement EO § 3(a) since March 25, 2025.

Defendants further object to this Interrogatory to the extent that it seeks attorney-client or deliberative-process-privilege protected information.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

16

**SSA:** SSA has not made the Social Security Number Verification Service ("SSNVS", https://www.ssa.gov/employer/ssnv.htm), the Death Master File ("DMF," an extract of death data from SSA's Master Files of Social Security Number ("SSN") Holders and SSN Applications, 60-0058 (90 Fed. Reg. 10025, Feb. 20, 2025)), or any other database available to state or local officials for voter verification purposes to implement EO Section 3(a).

**Remaining Defendants (DOS, DHS, DoD, DOJ, EAC, USDS):** None.

**Interrogatory No. 6 [EO § 3(d)]:** Describe any action or effort you (including Defendant DOD) have taken or initiated to update the Federal Post Card Application to require documentary proof of citizenship or proof of eligibility. Your answer should include, but not be limited to, the dates of such actions or efforts and all individuals involved in carrying them out.

**RESPONSE TO ROG 6:** Defendants object to Interrogatory 6 to the extent that it purports to require Defendants with no involvement in EO Section 3(d)—i.e., Defendants other than DoD—to nonetheless answer the Interrogatory. Defendants also object to this Interrogatory to the extent that it seeks pre-decisional, deliberative (privileged) information. For clarity, and in compliance with the Court's August 1, 2025, Order (ECF 154), Defendants interpret "initiated" as used in this Interrogatory to mean agency action that is underway but not complete. By contrast, "planned" action—which the Court struck from the Interrogatory language, *id* at 4— refers to internal, pre-action Agency deliberations. Defendants will not, in responding to the Interrogatory, reveal "planned" action, as such information is privileged.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, Section 3(d) provides that DoD shall "update the Federal Post Card Application" to require: (i) documentary proof of United States citizenship, and (ii) proof of eligibility to vote. The Interrogatory does

not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about any updates Defendants have made or initiated to the Federal Post Card Application to implement EO Section 3(d) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**DoD:** None.

**Remaining Defendants (DOS, DHS, DOJ, EAC, SSA, USDS):** None.

**Interrogatory No. 7 [EO § 3(d)]:** Identify and describe any rules or guidance you (including Defendant DOD) have issued regarding the methods, procedures, or standards by which states must review Federal Post Card Applications to assess a voter's documentary proof of citizenship or proof of eligibility to vote.

**RESPONSE TO ROG 7:** Defendants object to Interrogatory 7 to the extent that it purports to require Defendants with no involvement in EO Section 3(d)—i.e., Defendants other than DoD—to nonetheless answer the Interrogatory.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, Section 3(d) provides that DoD shall "update the Federal Post Card Application" to require: (i) documentary proof of United States citizenship, and (ii) proof of eligibility to vote. The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about rules or guidance Defendants have issued regarding the methods, procedures, or standards by which states must review Federal Post Card Applications to implement EO Section 3(d) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**DoD:** None. By way of further response, and although not directly responsive to this Interrogatory, DoD answers that it does not issue rules or guidance regarding the methods, procedures, or standards by which the States must review the Federal Post Card Application for documentary proof of citizenship or proof of eligibility to vote. Elections are administered by the States. Thus, the States establish their own internal processes for such review and verification.

**Remaining Defendants (DOS, DHS, DOJ, EAC, SSA, USDS):** None.

**Interrogatory No. 8 [EO § 4(a)]:** Describe any action or effort you (including Defendant EAC) have taken or initiated to withhold federal funds or grants from states that fail to require documentary proof of citizenship from voter registration applicants who use the federal voter registration form. Your answer should include but not be limited to a description of (i) all such funds or grants, (ii) all guidance, policies, or procedures that have been or will be used to assess whether a state is requiring documentary proof of citizenship from applicants, and (iii) all individuals involved in making such assessments.

**RESPONSE TO ROG 8:** Defendants object to Interrogatory 8 to the extent that it purports to require Defendants with no involvement in EO Section 4(a)—i.e., Defendants other than EAC—to nonetheless answer the Interrogatory. Defendants also object to this Interrogatory to the extent that it seeks pre-decisional, deliberative (privileged) information. For clarity, and in compliance with the Court's August 1, 2025, Order (ECF 154), Defendants interpret "initiated" as used in this Interrogatory to mean agency action that is underway but not complete. By contrast, "planned" action—which the Court struck from the Interrogatory language, *id* at 5— refers to internal, pre-action Agency deliberations. Defendants will not, in responding to the Interrogatory, reveal "planned" action, as such information is privileged.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, Section 4(a)

provides that the EAC shall "take all appropriate action" "to cease providing Federal funds to States" that do not comply with federal laws, including "the requirement in 52 U.S.C. 20505(a)(1) that States accept and use the national mail voter registration form issued pursuant to 52 U.S.C. 20508(a)(1)." The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about actions Defendants have taken or initiated to implement EO Section 4(a) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**EAC:** None.

**Remaining Defendants (DoD, DOS, DHS, DOJ, SSA, USDS):** None.

**Interrogatory No. 9 [EO § 4(a)]:** Identify any states that have communicated to you (including Defendant EAC) their acceptance or plan to accept any funding conditions established in EO § 4(a) and any states that have communicated to you their rejection or plan to reject any such funding conditions.

**RESPONSE TO ROG 9:** Defendants object to Interrogatory 9 to the extent that it purports to require Defendants with no involvement in EO Section 4(a)—i.e., Defendants other than EAC—to nonetheless answer the Interrogatory. Subject to this objection, Defendants answer as follows, following a reasonable, diligent inquiry:

**EAC:** None. By way of further response, and although not directly responsive to this Interrogatory, EAC answers that Guam and Nevada responded to EAC's April 11, 2025, Consultation Request letter.[11]

**Remaining Defendants (DoD, DOS, DHS, DOJ, SSA, USDS):** None.

**Interrogatory No. 10 [EO § 4(b)]:** Describe any action or effort you (including Defendant EAC) have taken or initiated to amend the Voluntary Voting System Guidelines 2.0 and issue other guidance establishing standards for voting systems, including any action or effort to

---

[11] The responses are publicly available: https://www.eac.gov/sites/default/files/2025-05/April_11_2025_Consultation_Letter_Package.pdf (Nevada: Page 9; Guam: Page 18).

review and recertify voting systems, or rescind previous certifications. Your answer should include, but not be limited to, the dates of such actions or efforts and all individuals involved in carrying them out.

**RESPONSE TO ROG 10:** Defendants object to Interrogatory 10 to the extent that it purports to require Defendants with no involvement in EO Section 4(b)—i.e., Defendants other than EAC—to nonetheless answer the Interrogatory. Defendants also object to this Interrogatory to the extent that it seeks pre-decisional, deliberative (privileged) information. For clarity, and in compliance with the Court's August 1, 2025, Order (ECF 154), Defendants interpret "initiated" as used in this Interrogatory to mean agency action that is underway but not complete. By contrast, "planned" action—which the Court struck from the Interrogatory language, *id* at 5— refers to internal, pre-action Agency deliberations. Defendants will not, in responding to the Interrogatory, reveal "planned" action, as such information is privileged.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, Section 4(b) provides, *inter alia*, that the EAC shall (i) "initiate" "appropriate" action to amend the Voluntary Voting System Guidelines 2.0 and issue other appropriate guidance establishing standards for voting systems to protect election integrity, and (ii) within 180 days of the EO, take "appropriate action" to review voting systems under the new standards established under subsection (b)(i) and re-certify voting systems as appropriate. The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about actions or efforts Defendants have undertaken or initiated to amend the Voluntary Voting System Guidelines 2.0 or to issue other guidance establishing standards for voting systems to implement EO Section 4(b) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**EAC:** On April 28, 2025, the EAC Chief Election Technology Officer and Director of Testing and Certification circulated a working draft update of the Voluntary Voting System Guidelines 2.0 ("VVSG 2.0") to the National Institute of Standards and Technology ("NIST"), which is EAC's statutorily required partner. 52 U.S.C. § 20971. The EAC received feedback from NIST on May 28, 2025, and incorporated it. The substance of the working draft and feedback are deliberative-process-privileged. In developing voluntary voting system guidelines and modifications of such guidelines, the EAC's Executive Director must consider recommendations provided by the Technical Guidelines Development Committee. 52 U.S.C. § 20962(b)(1). Therefore, on June 12, 2025, the EAC Alternate Designated Federal Officer for the EAC's Technical Guidelines Development Committee circulated the draft update of the VVSG 2.0 among members of the EAC Technical Guidelines Development Committee. A copy of the draft was also posted on the EAC website.[12] On July 2, July 30, and August 8, 2025, the EAC held public meetings of the EAC Technical Guidelines Development Committee to discuss the draft update of the VVSG 2.0. *See* 90 FR 24603; 90 FR 31196; 90 FR 34260. The meetings were live-streamed and recorded on YouTube.[13]

**Remaining Defendants (DoD, DOS, DHS, DOJ, SSA, USDS):** None.

**Interrogatory No. 11 [EO § 4(c)]:** Describe any action or effort you (including Defendant EAC) have taken or initiated to conduct any audit of a state's use of Help America Vote Act funds. Your answer should include but not be limited to a description of (i) whether EAC has identified any discrepancies or issues related to a state's certification process, (ii) whether any such discrepancies or issues have been reported to Defendant DOJ, and (iii) the dates of such

---

[12]         Available         here:         https://www.eac.gov/sites/default/files/2025-06/DRAFT_Voluntary_Voting_System%20Guidelines_Version_2.1_TGDC_Member_Review.pdf.

[13] Available here: https://www.youtube.com/@u.s.electionassistancecomm2110/streams.

actions or efforts and all individuals involved in carrying them out.

**RESPONSE TO ROG 11:** Defendants object to Interrogatory 11 to the extent that it purports to require Defendants with no involvement in EO Section 4(c)—i.e., Defendants other than EAC—to nonetheless answer the Interrogatory. Defendants also object to this Interrogatory to the extent that it seeks pre-decisional, deliberative (privileged) information. For clarity, and in compliance with the Court's August 1, 2025, Order (ECF 154), Defendants interpret "initiated" as used in this Interrogatory to mean agency action that is underway but not complete. By contrast, "planned" action—which the Court struck from the Interrogatory language, *id* at 5— refers to internal, pre-action Agency deliberations. Defendants will not, in responding to the Interrogatory, reveal "planned" action, as such information is privileged.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 4(c) provides that "following an audit of Help America Vote Act fund expenditures conducted pursuant to 52 U.S.C. 21142, the Election Assistance Commission shall report any discrepancies or issues with an audited State's certifications of compliance with Federal law to the Department of Justice for appropriate enforcement action." The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about actions or efforts Defendants have taken or initiated to audit a State's use of Help America Vote Act funds to implement EO Section 4(c) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**EAC:** None.

**Remaining Defendants (DoD, DOS, DHS, DOJ, SSA, USDS):** None.

**Interrogatory No. 12 [EO § 4(d)]:** Describe any action or effort you (including Defendant DHS) have taken or initiated to withhold or limit federal funds or grants from states that fail to comply with the Voluntary Voting System Guidelines 2.0 developed by the U.S. Election Assistance Commission or complete testing through the Voting System Test Labs accreditation process. Your answer should include but not be limited to a description of (i) all such federal funds or grants, (ii) any guidance, policy, or procedure that has been or will be used to assess whether a state is in compliance with the guidelines and testing requirements identified in EO § 4(d), and (iii) all individuals involved in making such assessments.

**RESPONSE TO ROG 12:** Defendants object to Interrogatory 12 to the extent that it purports to require Defendants with no involvement in EO Section 4(d)—i.e., Defendants other than DHS—to nonetheless answer the Interrogatory. Defendants also object to this Interrogatory to the extent that it seeks pre-decisional, deliberative (privileged) information. For clarity, and in compliance with the Court's August 1, 2025, Order (ECF 154), Defendants interpret "initiated" as used in this Interrogatory to mean agency action that is underway but not complete. By contrast, "planned" action—which the Court struck from the Interrogatory language, *id* at 5— refers to internal, pre-action Agency deliberations. Defendants will not, in responding to the Interrogatory, reveal "planned" action, as such information is privileged.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 4(d) provides that DHS shall, in considering the provision of funding for State or local election offices or administrators through the Homeland Security Grant Programs, "heavily prioritize" compliance with the VVSG 2.0 developed by the EAC and with the completion of testing through the Voting System Test Labs accreditation process. The Interrogatory does not limit itself to the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about actions or efforts Defendants have taken or initiated to limit federal

funds or grants from states that fail to comply with the VVSG 2.0 or complete testing through the Voting System Test Labs accreditation process to implement EO Section 4(d) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**DHS:** The following Notices of Funding Opportunities ("NOFOs") for FY 2025 apply and/or cite the Executive Order:

- Homeland Security Grant Program ("HSGP");[14]

- Tribal Homeland Security Grant Program ("THSGP");[15]

- Transit Security Grant Program ("TSGP");[16]

- Port Security Grant Program ("PSGP");[17]

- Intercity Bus Security Grant Program ("IBSGP");[18] and

- Intercity Passenger Rail Program ("IPR").[19]

---

[14] Available here: https://files.simpler.grants.gov/opportunities/4d66b22d-90b7-489c-b009-f958c5e357e1/attachments/756a6d1e-fe87-4770-aa2c-1c3619c21481/Fiscal_Year_2025_Homeland_Security_Grant_Program_NOFO_508.pdf.

[15] Available here: https://files.simpler.grants.gov/opportunities/40e6de9e-bc94-4c24-8ae9-fed5016f6ff8/attachments/7fc1ae94-5415-45a5-81e0-2dee1164ecb0/FY_2025__THSGP_NOFO_06-09-25_clean_508-ed_updated_1.pdf.

[16] Available here: https://files.simpler.grants.gov/opportunities/e3b95a2f-6188-4bd0-81e8-d8f656fb333b/attachments/8440ad94-9c42-449b-a53b-5ee02b4e98c6/FY_2025_TSGP_NOFO_08_08_25_clean_508.pdf.

[17] Available here: https://files.simpler.grants.gov/opportunities/b90b5e63-27e6-497c-9872-0e2a89a4dac7/attachments/69c6d261-1758-4906-924d-fabbddf77b30/FY_2025_PSGP_NOFO_08_06_25_508-ed.pdf.

[18] Available here: https://files.simpler.grants.gov/opportunities/23e32395-0e2e-46fb-bfc1-e867a8edb6c5/attachments/a219ca0b-b281-4f6d-bb90-c6064da11023/FY_2025_IBSGP_NOFO_08-12_508.pdf.

[19] Available here: https://files.simpler.grants.gov/opportunities/2752c8ca-9194-4281-ab9d-

The Homeland Security Grant Programs (HSGP and THSGP) and the Transit Grant Programs (TSGP, PSGP, IBSGP, and IPR) utilize a set of National Priority Areas ("NPAs") established annually by DHS. For Fiscal Year 2025, NPA #3 is "Enhancing Election Security." Recipients of these grants are incentivized to integrate the EO's directives into their grant-funded projects under this NPA, as discussed below.

For competitive transit grant programs (TSGP, PSGP, IBSGP), applications proposing projects that address an NPA receive a 20% multiplier in their final review score. This multiplier incentivizes applicants to align their projects with the priorities outlined in EO 14248 and the corresponding NPA. While EO 14248 and NPA #3 are referenced in the IPR program, it is not a competitive program. The sole eligible applicant is Amtrak, and therefore no score multiplier is applied.

For HSGP and THSGP, 3% of the awarded funds are withheld from drawdown until the recipient demonstrates compliance with EO 14248.

**Remaining Defendants (DoD, DOS, DOJ, EAC, SSA, USDS):** None.

**Interrogatory No. 13 [EO § 7(a)]:** Describe any enforcement mechanism that you (including Defendant DOJ) have used or are using to use **[sic]** against any state that allegedly violates 2 U.S.C. § 7 and/or 3 U.S.C. § 1 by including mail-in ballots received after election day in the final tabulation of votes in any federal election. Your answer should include but not be limited to a description of (i) any guidance, policy, or procedure that has been or will be used to assess whether a state has violated 2 U.S.C. § 7 and/or 3 U.S.C. § 1, as well as (ii) all individuals involved in making such assessments.

**RESPONSE TO ROG 13:** Defendants object to Interrogatory 13 to the extent that it purports to require Defendants with no involvement in EO Section 7(a)—i.e., Defendants other than DOJ—to nonetheless answer the Interrogatory. Defendants also object to this Interrogatory to the extent that it seeks pre-decisional, deliberative (privileged) information. For clarity, and in

2e1af19db879/attachments/825f6c63-0e43-47ad-9a8e-
ebd39f2d3855/FY_2025__IPR_NOFO_08-12_508.pdf.

compliance with the Court's August 1, 2025, Order (ECF 154), Defendants interpret "using to use" as used in this Interrogatory to mean agency action that is underway but not complete. By contrast, "planned" action—which the Court struck from the Interrogatory language, *id* at 4— refers to internal, pre-action Agency deliberations. Defendants will not, in responding to the Interrogatory, reveal "planned" action, as such information is privileged.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 7(a) provides that the Attorney General "shall take all necessary action" to "enforce 2 U.S.C. 7 and 3 U.S.C. 1 against States that violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives." The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about actions or efforts Defendants have taken or initiated to implement EO Section 7(a) by enforcing it against States since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**DOJ (THIRD SUPPLEMENTAL):** Michael Gates, at the time the Deputy Assistant Attorney General of the Department of Justice's Civil Rights Division, has contacted the State of Ohio to urge it to change its ballot receipt deadline to comply with DOJ's interpretation of the Election Day statutes (as set forth in the briefing in this case). The primary point of contact at the State of Ohio was the Ohio Attorney General's Office, although Mr. Gates has also

contacted the Ohio Secretary of State. By way of further response, and although not directly responsive to this Interrogatory, the Department of Justice specifically confirms and clarifies that Mr. Gates transmitted a letter dated September 29, 2025, to the State of Ohio, which Assistant Attorney General Harmeet Dhillon had signed. Mr. Gates sent the letter to the Ohio State Attorney General, with copies to the Ohio Governor and the Ohio Secretary of State.

DOJ has not contacted any other states. DOJ has not filed any criminal or civil enforcement actions against any states, including Ohio.

With respect to ROG 13's request for any "guidance, policy, or procedure that has been or will be used to assess whether a state has violated" the Election Day statutes, DOJ's position (as expressed in the briefing in this case) is that a state violates the statutes if it has a ballot receipt deadline falling after Election Day.

**Remaining Defendants (DoD, DHS, DOS, EAC, SSA, USDS):** None.

**Interrogatory No. 14 [EO § 7(a)]:** Identify any states that have communicated to you (including Defendant DOJ) a change, a plan to change or possible change, or a refusal to change policies, practices, or procedures regarding the inclusion or exclusion of mail-in ballots received after election day in the final tabulation of votes in any federal election in response to EO § 7(a).

**RESPONSE TO ROG 14:** Defendants object to Interrogatory 14 to the extent that it purports to require Defendants with no involvement in EO Section 7(a)—i.e., Defendants other than DOJ—to nonetheless answer the Interrogatory.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order 14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 7(a) provides that the Attorney General "shall take all necessary action" to "enforce 2 U.S.C. 7 and 3 U.S.C. 1 against States that violate these provisions by including absentee or mail-in ballots

received after Election Day in the final tabulation of votes for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives." Defendants interpret this Interrogatory to seek information about actions or efforts Defendants have taken or initiated to implement EO Section 7(a) by enforcing it against States.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**DOJ (FIRST SUPPLEMENTAL):** Ohio.

**Remaining Defendants (DoD, DHS, DOS, EAC, SSA, USDS):** None.

**Interrogatory No. 15 [EO § 7(b)]:** Describe any action or effort you (including Defendant EAC) have taken or initiated to withhold federal funds or grants from states that fail to adopt a ballot receipt deadline of election day for all methods of voting. Your answer should include but not be limited to a description of (i) all such federal funds or grants, (ii) any guidance, policy, or procedure that has been or will be used to assess whether a state adopted a satisfactory ballot receipt deadline, and (iii) all individuals involved in making such assessments.

**RESPONSE TO ROG 15:** Defendants object to Interrogatory 15 to the extent that it purports to require Defendants with no involvement in EO Section 7(b)—i.e., Defendants other than EAC—to nonetheless answer the Interrogatory. Defendants also object to this Interrogatory to the extent that it seeks pre-decisional, deliberative (privileged) information. For clarity, and in compliance with the Court's August 1, 2025, Order (ECF 154), Defendants interpret "initiated" as used in this Interrogatory to mean agency action that is underway but not complete. By contrast, "planned" action—which the Court struck from the Interrogatory language, *id* at 5— refers to internal, pre-action Agency deliberations. Defendants will not, in responding to the Interrogatory, reveal "planned" action, as such information is privileged.

Defendants further object to this Interrogatory because it does not seek discovery authorized by this Court's August 1, 2025, Order, to wit: "interrogatories that focus narrowly on *actions* that the Federal Defendants have *already taken* to *implement* Executive Order

29

14,248." ECF 154 at 3–4 (emphases added). Relevant to this Interrogatory, EO Section 7(b) provides that, consistent with applicable law, the EAC "shall condition any available funding to a State on that State's compliance with the requirement in 52 U.S.C. 21081(a)(6) that each State adopt uniform and nondiscriminatory standards within that State that define what constitutes a vote and what will be counted as a vote," including a uniform and nondiscriminatory ballot receipt deadline of Election Day. The Interrogatory does not mention the Executive Order at issue in these cases. Defendants interpret this Interrogatory to seek information about actions or efforts Defendants have taken or initiated to withhold federal funds or grants from states that fail to adopt a ballot receipt deadline of election day for all methods of voting, to implement EO Section 7(b) since March 25, 2025.

Subject to these objections, Defendants answer as follows, following a reasonable, diligent inquiry:

**EAC:** None.

**Remaining Defendants (DoD, DHS, DOS, DOJ, SSA, USDS):** None.


Dated:  December 23, 2025                    Respectfully submitted, ***as to objections***,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            ERIC J. HAMILTON
                                            Deputy Assistant Attorney General
                                            Civil Division, Federal Programs Branch

                                            JOSEPH E. BORSON
                                            Assistant Director
                                            Civil Division, Federal Programs Branch

                                            */s/ Marianne F. Kies*
                                            MARIANNE F. KIES
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The Department of Justice served this document today, December 23, 2025, by email service to all counsel of record.

*/s/ Winston Shi*
Winston Shi